1  PAUL J. ANDRE, Bar No. 196585
2  LISA KOBIALKA, Bar No. 191404
   PERKINS COIE LLP
3  101 Jefferson Drive
   Menlo Park, CA 94025-1114
4  Telephone: (650) 838-4300
   Facsimile: (650) 838-4350
5
6  Attorneys for PharmaStem Therapeutics, Inc.

7
8             IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
9                  SAN FRANCISCO DIVISION

10
11 PHARMASTEM THERAPEUTICS, INC., a        Case No.: 04- 3072 JSW
   Delaware corporation,

12                    Plaintiff,
                                           PHARMASTEM THERAPEUTICS,
13     v.                                  INC.'S MOTION TO DISMISS
                                           DEFENDANT CBR'S FIRST, SECOND,
14 CORD BLOOD REGISTRY, INC. dba CBR, a    THIRD, FOURTH, FIFTH AND SIXTH
   Delaware corporation, and SUTTER HEALTH, COUNTERCLAIMS
15 INC., a California corporation,
16                    Defendants.          Judge:    Jeffrey S. White
                                           Location: Courtroom 2
17                                         Date:     December 10, 2004 at 9:00 a.m.
18
19 AND RELATED COUNTERCLAIMS

20
21
22
23
24
25
26
27
   PHARMASTEM THERAPEUTICS, INC.'S MOTION TO DISMISS DEFENDANT
28 CBR'S FIRST, SECOND THIRD, FOURTH, FIFTH AND SIXTH COUNTERCLAIMS

   CASE NO. 04-3072 JSW                                          [40923-0005/BY042580.070]

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................2

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................................2

II.     SUMMARY OF THE ISSUES TO BE DECIDED .................................................2

III.    STATEMENT OF THE RELEVANT FACTS .......................................................3

IV.     ARGUMENT.............................................................................................4

    A.      A Motion To Dismiss Is Proper Where CBR Has Failed To State A l Claim Upon Which Relief Can Be Granted.................................................................4

    B.      CBR's Counterclaim Fails To State Cognizable Claims For IIntentional And Negligent Interference With Contractual Or Other Economic Relationships Against PharmaStem. ..............................................................5

        1.      The First Counterclaim For Intentional Interference Fails To Allege The Actual Disruption Of Any Relationship As Result of PharmaStem. ................................................................................5

        2.      The Second Counterclaim For Negligent Interference Fails To Allege The Actual Disruption Of Any Relationship As Result of PharmaStem And That PharmaStem Owed CBR Any Duty Of Care. ....................................................................................7

        3.      The Claims For Intentional And Negligent Interference Cannot Include Speculative Expectancies. ........................................8

    C.      CBR's Fifth Counterclaim For Violation Of The Lanham Act Fails As A Matter Of Law.........................................................................................9

        1.      The Allegedly Offending Language Was Not Made In Bad Faith And Is Not False. ........................................................9

        2.      The Allegedly Offending Language Is Not Commercial Speech Or An Advertisement Which Is Required For A Violation Of The Lanham Act. ............................................................12

    D.      *Res Judicata* Bars CBR's Counterclaims For Interference, Unfair Competition, Trade Libel, and False Advertising. ...........................................14

E.    Since PharmaStem's Conduct Has Not Been Unlawful, CBR Does Not Have A Claim For Interference, Unfair Competition, Trade Libel, and False Advertising. ....................................................................................... 15

V.    CONCLUSION ......................................................................................... 16

1

## TABLE OF AUTHORITIES

2

**Cases**

3

4

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
   260 F.Supp.2d 941 (N.D. Cal. 2003) ...................................................5

5

*C.R. Bard, inc. v. M3 Sys., Inc.*,
   157 F.3d 1340 (Fed. Cir. 1998)........................................................11

6

*Cellars v. Pacific Coast Packaging, Inc.*,
   189 F.R.D. 5751 (N.D.Cal. 1999)......................................................8

7

8

*Clark v. Bear Stearns & Co., Inc.*,
   966 F.2d 1318 (9th Cir. 1992)........................................................15

9

10

*Concrete Unlimited, Inc. v. Cementcraft, Inc.*,
   776 F.2d 1537 (Fed. Cir. 1985).......................................................10

11

*E.I. DuPont De Nemours and Co. v. Monsanto Co.*,
   903 F.Supp. 680 (D.Del. 1995).......................................................11

12

13

*Fuller Brothers, Inc. v. Int'l Marketing, Inc.*,
   870 F.Supp. 299 (D. Or. 1994).......................................................13

14

15

*Golan v. Pingel Enterprise, Inc.*,
   310 F.3d 1360 (Fed. Cir. 2002)...................................................10, 11

16

17

*Hsu v. Oz Optics Ltd.*,
   211 F.R.D. 615 (N.D. Cal. 2002)......................................................7

18

*Hunter Douglas, Inc. v. Mone Design, Inc.*,
   153 F.3d 1318 (Fed. Cir. 1998).......................................................10

19

20

*Intermedics, Inc. v. Ventritex, Inc.*, 775 F.Supp.
   1258 (N.D.Cal. 1991) ................................................................5

21

*Joy Technologies, Inc. v. Flakt, Inc.*,
   6 F.3d 770 (Fed. Cir. 1993) .........................................................11

22

23

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
   165 F.3d 891 (Fed. Cir. 1998).......................................................10

24

25

*Neilson v. Union Bank of Cal., N.A.*,
   290 F.Supp.2d 1101 (C.D. Cal. 2003)................................................5

26

27

28

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*,
    02-148-GMS ("Delaware Action") ................................................................................2

*Rice v. Fox Broadcasting Co.*,
    330 F.3d 1170 (9th Cir. 2003) ...........................................................................9

*Robi v. Five Platters, Inc.*,
    838 F.2d 318 (9th Cir. 1988) ...........................................................................15

*Shaw v. State of California Dept. of Alcoholic Beverage Control*,
    788 F.2d 600 n. 2(9th Cir. 1986) ...................................................................14

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F.Supp.1303 (N.D.Cal. 1997) ...............................................................4, 7

*Stewart v. U.S. Bancorp*,
    297 F.3d 953 (9th Cir. 2002) .........................................................................14

*Weststeyn Dairy 2 v. Eades Commodities Co.*,
    280 F.Supp.2d 1044 (E.D. Cal. 2003) ............................................................7

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999) ....................................................................10

**Statutes**

35 U.S.C. § 271(c) .........................................................................................10

Lanham Act, 15 U.S.C. § 1125(a) ...............................................................2, 3

Rule 8(a)(2), F.R.Civ.P. ...................................................................................5

**Other Authorities**

California Business & Professions Code § 17500 ...........................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

On December 10, 2004 at 9:00 a.m., or as soon thereafter as the matter may be heard by Judge Jeffrey S. White in Courtroom 2 of the United States District Court, 450 Golden Gate, Ave., San Francisco, CA 94102, Plaintiff PharmaStem Therapeutics, Inc. ("PharmaStem") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) will move to dismiss Cord Blood Registry, Inc.'s ("CBR's") First, Second, Third, Fourth, Fifth and Sixth Counterclaim for failure to state a cause of action and request judicial notice. This motion is based on the accompanying memorandum of points and authorities and any arguments presented at the hearing on this motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff PharmaStem Therapeutics, Inc. ("PharmaStem") respectfully requests the Court to grant this motion to dismiss with prejudice Cord Blood Registry, Inc.'s ("CBR's") first through sixth counterclaims because CBR has failed to state a cause of action.  The basis for CBR's counterclaims are statements PharmaStem made in a letter to obstetricians and hospitals and a press release to the public about a number of patent infringement actions PharmaStem filed against obstetricians and unlicensed cord blood banks.  CBR's allegations in support of its first and second counterclaims for intentional and negligent interference are deficient, missing key elements of both causes of action.  Additionally, the statements PharmaStem has made are lawful. It therefore does not create a basis for the first through sixth counterclaims, much less violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Finally, CBR's counterclaims are barred by the doctrine of *res judicata*.  In a case pending before the United States District Court for the District of Delaware in the action entitle *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, Case No. 02-148-GMS ("Delaware Action"), CBR already sought relief based on the same conduct that it alleges is the basis for its first through sixth counterclaims.[1]  CBR should not be permitted to take a second bite at the apple.  For these reasons, PharmaStem seeks to have these counterclaims dismissed with prejudice.

## II.     SUMMARY OF THE ISSUES TO BE DECIDED

A.     Has CBR failed to plead a claim for intentional interference with contractual and other economic relations?

B.     Has CBR failed to plead a claim for negligent interference with contractual and other economic relations?

---

[1]  To the extent necessary, PharmaStem requests judicial notice of the Delaware Action and has provided the Court with copies of the relevant papers filed in the pending Delaware Action.

C.    Has CBR failed to plead a cause of action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)?

D.    Is CBR's first through sixth counterclaims barred by the doctrine of *res judicata*?

E.    Does CBR's first through sixth counterclaims fail to state a cause of action because PharmaStem did not engage in any unlawful conduct?

## III.    STATEMENT OF THE RELEVANT FACTS

PharmaStem is the owner of five patents ("PharmaStem's Patents) that are from the same patent family. Counterclaims ¶ 10. On July 28, 2004, PharmaStem filed a patent action against CBR and Sutter Health, Inc., asserting infringement of two PharmaStem's Patents, U.S. Patent Nos. 6,461,645 and 6,569,427 (the "Patents-In-Suit"). On August 23, 2004, CBR filed its Answer and Counterclaims against PharmaStem, among others. This is not the first patent litigation that PharmaStem has initiated against CBR. On February 2002, PharmaStem filed the Delaware Action against CBR and several other companies, alleging infringement of two patents from the same family as the Patents-In-Suit. *See* Counterclaims ¶¶ 11-13. In the Delaware Action, "a jury verdict was entered in favor of PharmaStem and against CBR ... finding [PharmaStem's patents] valid and infringed." Counterclaims ¶ 12. On the same day the Complaint in this case was filed, PharmaStem filed a Notice of Pendency of Other Action Pursuant to Local Rule 3-13 regarding the Delaware Action and the jury verdict form which was entered by the Court, in which the jury found that CBR willfully infringed PharmaStem's patents. *See* July 28, 2004 Notice of Pendency, Docket No. 2.

In its counterclaims, CBR has asserted claims against PharmaStem for intentional and negligent interference with contractual or other economic relationships, unfair competition, trade libel, violation of § 43(a) of the Lanham Act ("Section 43(a)"), and violation of California Business & Professions Code § 17500.[2] To support these counterclaims, CBR alleges that

---

[2] CBR is also seeking a declaratory judgment regarding infringement, validity and enforceability of the Patents-In-Suit.

1    PharmaStem made a number of allegedly offending statements in a June 1, 2004 letter ("Letter")

2    to obstetricians, which informed obstetricians of PharmaStem's position regarding obstetricians'

3    potential liability for patent infringement if they deal with unlicensed cord blood banks, such as

4    CBR.  Counterclaims ¶¶ 14-20 and Exhibit A thereto.  CBR also points to an August 2, 2004

5    PharmaStem press release ("Press Release") announcing the fact that PharmaStem initiated a

6    number of new lawsuits against unlicensed cord blood banks, including CBR, as well as

7    obstetricians.  *Id.* ¶ 21 and Exhibit C thereto.  On September 8, 2004, PharmaStem filed a Notice

8    of Pendency of Other Actions Pursuant to Civil Local Rule 3-13, identifying these other lawsuits.

9    *See* September. 8, 2004 Notice of Pendency, Docket No. 13.

10           As described in its counterclaims, CBR brought its claims regarding PharmaStem's Letter

11   to the attention of the Honorable Gregory M. Sleet, the judge in the Delaware Action.

12   Counterclaims ¶¶ 17-20.  CBR, along with the other defendants in the Delaware Action, moved

13   for a temporary restraining order and injunctive relief, which was granted.  Exh. A to Declaration

14   of Lisa Kobialka ("Kobialka Decl."), filed herewith; Counterclaims, Exh. B.  PharmaStem filed its

15   response to the motion.  Kobialka Decl., Exh. B.  On August 4, 2004, CBR, along with the other

16   defendants in the Delaware Action, filed another motion in connection with PharmaStem's Press

17   Release, which to date is still pending.  Kobialka Decl., Exh. C.  The parties subsequently held a

18   telephone conference with the judge on August 6, 2004 regarding the Press Release.  *See*

19   Kobialka Decl., Exh. D (Delaware Action Court Docket).

## IV.    ARGUMENT

### A.    A Motion To Dismiss Is Proper Where CBR Has Failed To State A l Claim Upon Which Relief Can Be Granted.

24           Pursuant to Federal Rule of Civil Procedure 12(b)(6), PharmaStem is moving to dismiss

25   CBR's counterclaim against it for failure to state a claim upon which relief can be granted.  *Silicon*

26   *Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp.1303, 1307 (N.D.Cal. 1997).  "All material

27   allegations in the complaint will be taken as true and construed in light most favorable to the

28

1   [counterclaimant]." *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F.Supp.2d 941, 947

2   (N.D. Cal. 2003). The Court, however, "need not accept as true conclusory allegations or legal

3   characterizations cast in the form of factual allegations." *Silicon Knights*, 983 F.Supp. at 1307.

4   "Pursuant to Rule 8(a)(2), F.R.Civ.P., a complaint must contain a 'short and plain statement of the

5   claim showing that the pleader is entitled to relief …' To assert claims against individual

6   defendants, a complaint must contain allegations indicating how the defendant violated the law or

7   injured the plaintiff to survive a motion to dismiss." *Id.* at 1318. CBR, however, has failed to

8   provide a plain statement of a claim that would entitled it to relief.

9       In this case, to the extent necessary, PharmaStem requests that the Court take judicial

10  notice of the filings in the Delaware Action. *See* Kobialka Decl., Exhs. A-D. The Court "may

11  take judicial notice of facts outside the pleadings without converting the motion into one for

12  summary judgment only when the facts are properly the object of 'strict notice.'" *Intermedics,*

13  *Inc. v. Ventritex, Inc.*, 775 F.Supp. 1258, 1261 (N.D.Cal. 1991) (citations omitted). Facts

14  properly held the object of judicial notice in the context of a motion to dismiss can include items

15  in the record of the case or matters of general public records. *Id.*; *see also Neilson v. Union Bank*

16  *of Cal., N.A.*, 290 F.Supp.2d 1101, 1113 (C.D. Cal. 2003)(judicial notice of court orders and

17  filings).

18

19      **B.    CBR's Counterclaim Fails To State Cognizable Claims For**
20      **Intentional And Negligent Interference With Contractual Or Other**
21      **Economic Relationships Against PharmaStem.**

22          **1.    The First Counterclaim For Intentional Interference Fails To**
23          **Allege The Actual Disruption Of Any Relationship As Result of**
           **PharmaStem.**

24      CBR's first counterclaim for intentional interference with contractual or other economic

25  relationships fails to sufficiently allege facts necessary to establish such a claim. The following

26  five elements are necessary for a claim of intentional interference with contractual relations: (1) a

27

28

1   valid contract between CBR and a third party; (2) PharmaStem's knowledge of this contract; (3)

2   PharmaStem's intentional acts were designed to induce a breach or disruption of the contractual

3   relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

4   damage. *Silicon Knights*, 983 F.Supp. at 1309. Nowhere in CBR's counterclaim is there an

5   allegation that: (a) there was an actual breach or disruption of a valid contract between it and a

6   third party due to PharmaStem's conduct, (b) that PharmaStem knew of such a contract, (c) that

7   PharmaStem intentionally attempted to induce breach or disruption of the unnamed contractual

8   relationship, and (d) that CBR was injured as a result of PharmaStem's intentional behavior.

9       The only allegation in CBR's counterclaims directed at pleading "interference" with CBR's

10  relationships is the statement that PharmaStem's conduct "has had the effect of interfering ...with

11  CBR's contractual or other economic relationships with persons who desire, or who may desire, to

12  purchase their [sic] services." Counterclaims ¶ 37. Merely having "the effect of interfering" falls

13  well short of pleading that PharmaStem's acts have caused an actual breach or disruption of some

14  alleged contractual relationship between CBR and a third party. Furthermore, while "other

15  economic relationships" used in CBR's first and second counterclaims is hopelessly ambiguous as

16  CBR has not identified what this means in its counterclaims, CBR has not alleged that

17  PharmaStem's acts caused an actual breach or disruption of any "other economic relationships."

18      Likely because there is no predicate allegation of an "actual breach or disruption" of

19  CBR's relationship with a third party, CBR's counterclaim also does not allege that PharmaStem

20  had knowledge of CBR's alleged relationship, that PharmaStem acted in a manner such that it

21  intentionally sought to disrupt that relationship, and that CBR was actually injured as a result of

22  the "actual breach or disruption" of that relationship. While CBR attempts to allege that

23  PharmaStem's conduct was willful and that CBR has suffered damages in the form of lost profits

24  due to some alleged interference, CBR, at no time, actually alleges that PharmaStem's acts

25  intentionally caused an actual breach or disruption of a relationship with any third party that

26  damaged CBR. Counterclaims ¶¶37-38. Without these allegations, CBR's first counterclaim fails

27

28

to state a cause of action as a matter of law. CBR's first counterclaim does not satisfy Rule 8(a)'s requirements since there are no facts from which the Court or PharmaStem can infer that some contract was actually disrupted or impeded, that PharmaStem knew of such a contract and intentionally sought to disrupt it through wrongful means, and that CBR suffered any damages as a result of some actual breach of a contractual relationship. *See Silicon Knights*, 983 F.Supp. at 1310 (dismissal of intentional interference with contractual relations dismissed).

### 2. The Second Counterclaim For Negligent Interference Fails To Allege The Actual Disruption Of Any Relationship As Result of PharmaStem And That PharmaStem Owed CBR Any Duty Of Care.

CBR's second counterclaim for negligent interference with contractual or other economic relationships also fails to sufficiently allege facts necessary to establish such a claim. This counterclaim, a virtual copy of the first counterclaim for intentional interference with a few minor changes regarding negligence, misses key elements for presenting such a claim. As a preliminary matter, negligent interference only arises when the accused owes the claimant a duty of care. *Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F.Supp.2d 1044, 1090 (E.D. Cal. 2003); *see also Silicon Knights*, 983 F.Supp. at 1313; *Hsu v. Oz Optics Ltd.*, 211 F.R.D. 615, 621 (N.D. Cal. 2002).[3] "This duty may arise from a contractual, statutory or 'special relationship' between [the parties]." *Silicon Knights*, 983 F.Supp. at 1313. There is nothing in CBR's counterclaims that pleads, much less suggests, that PharmaStem somehow owed CBR a special duty of care and breached that duty. PharmaStem and CBR are not competitors, and they do not have any contractual, statutory or otherwise special relationship. Merely claiming that a wrongful act has been committed without more does not satisfy this element of a negligent interference claim. *Id.* at 1313 (if no special relationship or duty required, then a negligent interference claim "would

---

[3] Ordinarily this tort is raised when a third party is affected by the accused's negligent performance under a contract, but is unable to sue under the contract because the third party lacks privity. *Hsu*, 211 F.R.D. at 621.

1   necessarily be subsumed within the tort of intentional interference with economic relations").

2   This alone makes CBR's claim for negligent interference implausible.

3           Moreover, CBR did not plead a number of the basic elements of negligent interference.

4   The five elements of this claim are: (1) an economic relationship between CBR and a third party

5   or parties; (2) PharmaStem's knowledge of that relationship; (3) negligent acts to disrupt that

6   relationship; (4) wrongfulness of the interference by some legal measure other than the fact of the

7   interference itself; (5) actual disruption of the relationship; and (6) economic harm proximately

8   caused by the acts of PharmaStem.  *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575,

9   581 (N.D.Cal. 1999).  Like CBR's faulty counterclaim for intentional interference, CBR's second

10  counterclaim does not identify (a) any actual disruption of an economic relationship with a

11  specific third party, (b) that PharmaStem knew of that relationship, (c) that PharmaStem's

12  conduct interfered with that relationship and (d) that CBR was harmed as a result of the actual

13  disruption.

14          Once again, CBR's allegation that PharmaStem's conduct "has had the effect of

15  interfering" with CBR's contractual or economic relationships is a far cry from an actual

16  disruption of a relationship.  Counterclaim ¶ 42.  Like the intentional interference counterclaim,

17  CBR's negligent interference claim does not establish that PharmaStem knew of a relationship,

18  that it actually interfered with the relationship such that CBR was damaged.  Without these basic

19  elements, CBR's second counterclaim for negligent interference fails as a matter of law.

20              **3.    The Claims For Intentional And Negligent Interference Cannot**
21                      **Include Speculative Expectancies.**

22          In addition to the fact that PharmaStem's conduct has not actually interfered with CBR's

23  relationship with any specific relationship, CBR's first and second counterclaims are also incurable

24  because they do not identify the "persons who desire, or who may desire, to purchase [CBR's]

25  services."  Counterclaims ¶¶ 37, 42.  "The law precludes recovery for overly speculative

26  expectancies by initially requiring proof the business relationship contained 'the probability of

27  future economic relationship.'"  *Silicon Knights*, 983 F.Supp. at 1311.  Hypothetical relationships

28

1  not developed at the time of the allegedly tortious acts do not support a claim for intentional or

2  negligent interference. *See id.* In this case, CBR's conclusory counterclaims have no facts to

3  support its contention that PharmaStem's conduct "had the effect of interfering" or interfered with

4  individuals "who desire, or who may desire, to purchase" CBR's services. In either case, such

5  hypothetical individuals are merely speculative expectancies as they have not entered into any

6  agreement with CBR or do not have some relationship with CBR. Since "[d]ismissal can be

7  based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged

8  under a cognizable legal theory," which PharmaStem has demonstrated herein, PharmaStem

9  requests the dismissal of CBR's first and second counterclaims. *Silicon Knights*, 983

10  F.Supp.1318.

### C. CBR's Fifth Counterclaim For Violation Of The Lanham Act Fails As A Matter Of Law.

#### 1. The Allegedly Offending Language Was Not Made In Bad Faith And Is Not False.

While CBR has entitled its fifth counterclaims as "unfair competition," this claim appears

to be a false advertising claim under the Lanham Act. To prove false advertising under the

Lanham Act, CBR must establish:

> "(1) in advertisements, PharmaStem made false statements of fact about its own or another's product; (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; (3) such deception is material, in that it is likely to influence the purchasing decision; (4) PharmaStem caused its falsely advertised goods to enter interstate commerce; and (5) CBR has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to PharmaStem or by lessening of the goodwill which its products enjoy with the buying public."

*Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003)(citations omitted). CBR

alleges that purportedly false statements made in a June 1, 2004 Letter sent to obstetricians and

hospitals is false and misleading because the Letter:

1

2

3

> "made no mention (1) of the sale or offer to sell requirement of 35 U.S.C.
> § 271(c), (2) of the 'acting in concert or working together' requirement of
> 35 U.S.C. § 271(c), or (3) that the sale of a service cannot satisfy 35
> U.S.C. § 271(c)."

4

5

6

7

Counterclaims ¶¶ 15-16, 19.  CBR additionally claims that the statement regarding "the Court rul[ing] infringement occurs even if the cryopreservation and storage is performed by a third party" is misleading, since the Court never ruled on conduct by obstetricians and because the sentence left out several elements of contributory infringement.  *Id.* ¶ 19.

8

9

10

11

12

CBR also points to PharmaStem's August 2, 2004 Press Release, alleging that it purportedly contains similar statements as the letter.  *Id.* ¶ 21.  The Press Release, attached as Exhibit C to CBR's Answer and Counterclaims, is nothing more than an announcement that PharmaStem initiated new lawsuits against a number of unlicensed cord blood banks, including CBR, as well as obstetricians.  *Id.* ¶ 21 and Exh. C, thereto.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CBR's fifth counterclaim (as well as CBR's first through sixth counterclaims) turns on the allegation that PharmaStem is not entitled to make statements about patent infringement liability that CBR and medical professionals who use unlicensed cord blood banks face.  PharmaStem, however, has the legal right and obligation to contact the obstetricians and others regarding their potential infringement of PharmaStem's patents, and cannot be held liable for doing so unless CBR can demonstrate that PharmaStem did so in bad faith.  *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, 1370-71 (Fed. Cir. 2002)("federal patent law bars the imposition of liability [under federal or state law] for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith."), *quoting Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999); *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998); *Hunter Douglas, Inc. v. Mone Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998); *Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1538 (Fed. Cir. 1985)("a patent owner has the right to enforce its patent, and that includes threatening alleged infringers with suit.")

27

28

Moreover, the law recognizes a presumption that the assertion of a duly granted patent is made in good faith, and that this presumption is overcome by affirmative evidence of bad faith. *Golan*, 310 F.3d at 1371, *citing C.R. Bard, inc. v. M3 Sys., Inc.*, 157 F.3d 1340 (Fed. Cir. 1998). Therefore, to the extent that the Letter or Press Release contained any inaccuracies or misconceptions regarding PharmaStem's Patents, the outcome of the Delaware Action, or the infringement of the patents, PharmaStem is not liable unless such inaccuracies were made in bad faith. CBR has not alleged, nor is there any factual basis for any such allegation, that PharmaStem acted in bad faith in sending the letters to obstetricians and hospitals or issuing the Press Release.

Furthermore, nothing in the Letter or Press Release is false. The Letter simply sets forth PharmaStem's position regarding obstetricians' potential liability to PharmaStem for patent infringement should they deal with unlicensed cord blood banks. *See* Counterclaims, Exh. A. PharmaStem's general business understanding that, after a three week trial which culminated in a finding of willful infringement against CBR and the subsequent entry of the Delaware Court's judgment (which it issued immediately after the jury returned its verdict) was that there had been a "ruling" in favor of PharmaStem and that infringement had occurred. *See* Counterclaim ¶ 12; July 28, 2004 Notice of Pendency, Docket No. 2. The Letter does not go into detail, dissecting all possible theories of patent infringement, because it is a letter, not a legal treatise. Nowhere does the Letter purport to offer any analysis or legal advice on the various species of dependent infringement. Moreover, while a method or process claim is directly infringed by practicing the patented method, "a party cannot avoid liability for infringement by having someone else perform one or more steps of a patented process for them." *E.I. DuPont De Nemours and Co. v. Monsanto Co.*, 903 F.Supp. 680 (D.Del. 1995), *aff'd* 92 F.3d 1208 (Fed. Cir. 1996)(table); *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993). Thus, with respect to PharmaStem's Patents – three of which were not the subject of the Delaware Action –

PharmaStem accurately stated that "[p]atent infringement occurs when a person or institution practices all or part of a patented process." Counterclaims, Exh. A.

Thus, PharmaStem's Letter does not contain any knowingly false or misleading statements regarding the Delaware Action or PharmaStem's position, but a layperson's basic understanding of the effect of the jury's verdict of willful patent infringement and patent infringement. Moreover, there can be no bad faith on the part of PharmaStem. While CBR may disagree regarding underlying liability, PharmaStem has filed a number of patent lawsuits against various defendants, including obstetricians and medical groups, such as defendant Sutter Health, Inc., around the United States.

The Press Release also does not contain any false or misleading statements. It merely is an announcement regarding the multiple lawsuits for patent infringement that PharmaStem filed to protect its intellectual property rights. As noted in the headline of the Press Release, PharmaStem brought an action against a number of obstetricians who collect umbilical cord blood for unlicensed cord blood banks. PharmaStem's position all along has been that obstetricians and other medical professionals face potential liability if they continue to work with the unlicensed cord blood banks. Like the Letter, the Press Release is not a treatise, expounding an exhaustive list of PharmaStem's legal theories of patent liability. Thus, the Press Release is not false or misleading because it failed to present every theory of liability.

### 2. The Allegedly Offending Language Is Not Commercial Speech Or An Advertisement Which Is Required For A Violation Of The Lanham Act.

Noticeably absent from CBR's allegations is something regarding the relative competition between PharmaStem and CBR. As a preliminary matter, PharmaStem's statements do not make a statement about the quality of CBR's services; they are directed at PharmaStem's position regarding patent infringement and liability. Furthermore, since PharmaStem is a patent owner and not a competitor in the same business as CBR, CBR is hard pressed to explain how these

1   statements constitute an advertisement, are competitive or would deceive CBR's potential and

2   actual customers.  Counterclaims ¶¶ 9-10; *see Fuller Brothers, Inc. v. Int'l Marketing, Inc.*, 870

3   F.Supp. 299, 303 (D. Or. 1994)(the alleged conduct "must in some discernible way be

4   competitive").  If there is no commercial speech, then there can be no injury compensable under

5   the Lanham Act.  *Fuller Bros.*, 870 F.Supp. at 303 ("recovery under section 43(a) in a false

6   advertising case is 'confined to injury to a competitor'").

7        For a representation to constitute commercial advertising or promotion, it must be:

8            (1) commercial speech (2) by the accused who is in commercial
9            competition with CBR (3) for the purpose of influencing consumers to buy
             the accused's goods or services. *Rice*, 330 F.3d at 1181. "While the
10          representations need not be made in a 'classic advertising campaign,' but
             may consist instead of more informal types of 'promotion,' the
11          representations must be disseminated sufficiently to the relevant purchasing
             public to constitute 'advertising' or 'promotion' within that industry."

12   *Rice*, 330 F.3d at 1181 (citations omitted)(representation was not commercial speech).  "The core

13   notion of commercial speech is speech which does no more than propose a commercial

14   transaction." *Rice*, 330 at 1181.

15        Taking CBR's allegations as true for purposes of this motion, these alleged false

16   statements do not meet this test because they are not advertising, and therefore do not fall within

17   the purview of the Lanham Act.  These statements are not for promotional purposes about CBR's

18   products and services, and CBR does not allege that they are.  They express PharmaStem's

19   position regarding its patent rights and its belief regarding patent liability, which PharmaStem has

20   the right to make.

21        While the information contained in PharmaStem's Letter and Press Release may be

22   informative for CBR's actual and potential customers, who are expectant parents seeking to have

23   their newborn's umbilical cord blood collected and preserved, they were not directed toward

24   CBR's actual and potential customers in the form of promotional materials.  *See* Counterclaims ¶

25   9.  They are not statements in a commercial advertisement or promotion about CBR's product.

26   Consequently, PharmaStem's statements are not ones that have actually deceived or have the

27   tendency to deceive a substantial segment of CBR's potential and actual customers.  Indeed, CBR

28

does not plead as much, only alleging that the statements have "influenced, and will continue to influence the purchasing decisions of CBR's potential and actual customers." Counterclaims ¶ 54. For these reasons, PharmaStem's Letter and Press Release do not constitute commercial speech and fail to state a claim for false advertising under the Lanham Act.

### D.    *Res Judicata* Bars CBR's Counterclaims For Interference, Unfair Competition, Trade Libel, and False Advertising.

The doctrine of res judicata prohibits lawsuits on any claims that were raised or could have been raised in a prior action. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)(dismissal granted due to claim preclusion).[4]  In this case, CBR elected to raise in the Delaware Action the very conduct that is the subject of its first through sixth counterclaims for intentional and negligent interference, unfair competition under state and federal law, trade libel and false advertising.  In the Delaware Action, CBR brought a motion regarding the allegedly false statements contained in PharmaStem's Letter to the attention of Judge Sleet.  Judge Sleet issued an Order granting the relief CBR was seeking in connection with the Letter and the same type of statements CBR complains of in its counterclaims.  Counterclaims ¶¶ 17-20, Exhibit B thereto; Kobialka Decl., Exh. A.  Similarly, CBR brought anther motion regarding PharmaStem's Press Release to the attention of the Delaware Court, which is still pending.  Kobialka Decl., Exhs. C, D.  Thus, CBR elected the Delaware Action as the appropriate forum to seek relief on the same claims it is now trying to assert against PharmaStem in this case with its first through sixth counterclaims.  CBR should not be permitted to take a second bite at the apple, particularly since it already received the relief it sought with respect to its first motion in the Delaware Action.

---

[4] "The term 'res judicata' can be used not only to refer to claim preclusion but also in a broader sense to include both issue and claim preclusion." *Shaw v. State of California Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 606 n. 2(9th Cir. 1986).

"Claim preclusion 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). Issue preclusion bars the relitigation of all issues that were litigated in a prior proceeding, even if the second proceeding is an action on a claim different from the one asserted in the first action." *Shaw*, 788 F.2d at 605. These doctrines bar CBR from now attempting to seek the same or additional relief from this Court based on the same claims it has already presented or could have presented to the Delaware Court. There is an identity of the issues presented in the Delaware Action, an order issued granting CBR the relief it requested in the Delaware Action, and the parties are identical in both cases. *See Stewart*, 297 F.3d at 956. Apparent from CBR's counterclaims themselves, which quote from the Court's order, whether PharmaStem's statements were false and misleading were a critical and necessary part of the order in the Delaware Action. *See generally, Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992). For these reasons, CBR's first through sixth counterclaims should be dismissed with prejudice.

**E.    Since PharmaStem's Conduct Has Not Been Unlawful, CBR Does Not Have A Claim For Interference, Unfair Competition, Trade Libel, and False Advertising.**

As noted above in Section C1, PharmaStem's statements were not false or misleading. Additionally, PharmaStem has the legal right and obligation to contact those parties regarding their potential infringement of PharmaStem's Patents. Therefore, CBR does not have any facts to support a violation of any common, state or federal law because PharmaStem has not engaged in any unlawful conduct. Consequently, CBR's first through sixth counterclaims should be dismissed with prejudice for failing to state a cause of action.

1

## V.     CONCLUSION

2      For the foregoing reasons, PharmaStem requests the Court to dismiss CBR's first, second,

3  third, fourth, fifth and sixth counterclaims with prejudice.

4

5

6  DATED: September 14, 2004                    **PERKINS COIE LLP**

7                                              By: _____/s/_____

8                                                 Paul J. Andre
                                                  Attorneys for Plaintiff PharmaStem
9                                                 Therapeutics, Inc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28