IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**RECEIVED**
**AUG - 4 2004**

| | | |
|---|---|---|
| PHARMASTEM THERAPEUTICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-148-GMS |
| | ) | |
| VIACELL, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT MOTION
TO HOLD PHARMASTEM IN CONTEMPT
AND FOR APPROPRIATE SANCTIONS**

Defendants ViaCell, Inc., Cryo-Cell International, Inc., CorCell, Inc., and CBR Systems, Inc. ("Defendants") hereby collectively move the Court to hold plaintiff PharmaStem Therapeutics, Inc. ("PharmaStem") in contempt, and to order appropriate relief. As grounds therefor, Defendants rely upon a memorandum of points and authorities in support of this motion filed contemporaneously. The relief Defendants seek is described more particularly in their accompanying memorandum and in the attached proposed form of order.

August 4, 2004

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

*/s/ Richard Kirk*

Richard D. Kirk (Bar I.D. 922)
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6960

On behalf of all Defendants

EXHIBIT C

**Attorneys for ViaCell, Inc.:**

Jeffrey L. Moyer (#3309)
Richards Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Paul F. Ware, Jr., P.C.
John C. Englander
James W. McGarry
Elaine Herrmann Blais
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

**Attorneys for Corcell, Inc. and Cryo-Cell International, Inc.:**

Robert F. Stewart, Jr. (#871)
Dilworth Paxson LLP
First Federal Plaza, Suite 500
Wilmington, DE 19801

James J. Rodgers
Evelyn McConathy
Dilworth Paxson LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103

**Attorneys for CBR Systems, Inc.:**

Richard D. Kirk (#922)
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899

William F. Abrams
Thomas F. Chaffin
Pillsbury Winthrop LLP
2475 Hanover Street
Palo Alto, California 94304-1115

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 02-148-GMS |
| ) | |
| VIACELL, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' JOINT MOTION
TO HOLD PHARMASTEM IN CONTEMPT AND FOR APPROPRIATE SANCTIONS**

Defendants hereby collectively move the Court to hold plaintiff PharmaStem Therapeutics, Inc. ("PharmaStem") in contempt, and to order appropriate relief. The basis for this motion is straightforward. This Court's July 2, 2004 Order found that PharmaStem had made false and misleading statements in a June 1, 2004 letter to obstetricians. Among other things, the Court ruled that PharmaStem's letter regarding alleged obstetrician liability for collecting cord blood was false and misleading because the letter left out several elements necessary to establish contributory infringement. The Order also prohibited PharmaStem from making any further false or misleading communications to obstetricians.

Unfortunately, Defendants are compelled to return to this Court, because PharmaStem has refused to follow the Court's Order. Instead, PharmaStem has launched an even more aggressive attack on the medical community, in which it once again indicates that obstetricians can be liable for patent infringement merely for collecting cord blood, while *omitting the limitations on contributory infringement* explicitly delineated in the Court's July 2 Order. Specifically, PharmaStem has initiated additional lawsuits against all Defendants, as well as

several obstetricians, based upon additional PharmaStem patents which are essentially the same as the patents on which PharmaStem previously sued. This Motion, however, is not directed at the lawsuits themselves. Rather, this Motion is directed at a press release that PharmaStem issued on August 2, 2004. The press release, attached hereto as Exhibit A, nominally announces the lawsuits, but in fact is a crafty restatement of the same false and misleading threats against obstetricians contained in PharmaStem's June 1 letter. The press release thus continues the same PharmaStem strategy of attempting to improperly pressure Defendants, through the obstetricians, in order to force Defendants to take a license and to preempt the Court's ruling on the pending post-trial motions. The August 2 press release directly contravenes the Court's Order. A contempt finding is appropriate.

I.  **BACKGROUND**

On June 29, 2004, Defendants filed a "Joint Motion for Temporary Restraining Order and Injunctive Relief while Court's Ruling on Post-Trial Motions is Pending" [D.I. 516](the "Injunction Motion"). The Injunction Motion addressed statements made by PharmaStem in a June 1, 2004 letter regarding obstetrician liability for patent infringement. In response, this Court issued an Order on July 2, 2004 which expressly found that PharmaStem's June 1, 2004 letter contained false and misleading statements. Of particular relevance to this Motion, the Court found PharmaStem's June 1 letter misleading because its statements regarding obstetrician liability for patent infringement omitted "several important elements that must be proved to show contributory infringement," including:

> (1) that there must be a <u>sale</u> or <u>offer to sell</u> by the party that is accused of contributory infringement;
>
> (2) that the party accused of contributory infringement must be "acting in concert or working together" with the other parties whose combined conduct performed each and every element of the patented process, and

>    (3) that, under §271(c), a sale of a service, as opposed to a sale of a tangible physical object, is not sufficient to satisfy the requirements of the contributory infringement statute.

July 2, 2004 Order at 2. The Order also prohibited PharmaStem from making further false and misleading statements to obstetricians. *Id.*

As indicated, on August 2, 2004 PharmaStem issued a press release, ostensibly to announce the series of new lawsuits against Defendants and certain obstetricians. In these new lawsuits, the only patent asserted against the obstetrician defendants is a method patent (U.S. Patent No. 6,569,427)[1] which contains essentially the same claims as the '553 patent asserted against Defendants in the lawsuit tried before this Court in October 2003.[2] The Court will recall that the claims of the '553 patent asserted by PharmaStem before this Court required a series of steps, culminating in the introduction of umbilical cord blood into a human host to establish hematopoietic reconstitution. Obstetricians at most collect cord blood, nothing more. As there is no claim of the '427 patent limited to the collection of cord blood, there is no claim for which PharmaStem can assert direct infringement against obstetricians. Thus, as with the '553 patent, PharmaStem's claims are necessarily contributory infringement claims. Like the asserted claims

---

[1] In its press release, PharmaStem states that the new lawsuits "assert infringement of two recently issued patents, U.S. Patent Nos. 6,569,427 and 6,605,275." This statement is also false, and indicative of PharmaStem's careless approach to this matter generally. First, the '275 patent is *not* asserted in any of the new lawsuits. Moreover, the '427 patent, attached hereto as Exhibit B, was issued well over one year ago, hardly a recent occurrence.

[2] Indeed, PharmaStem itself stated in its August 18, 2003 Trial Brief [D.I. 355, Exhibit O], when arguing that these later patents were relevant to the trial on the '681 and '553 patents, that the '427 patent is "essentially the same invention as what is claimed in the Patents-In-Suit." Trial Brief at 3. *See also* PharmaStem's Opposition to Motion in Limine to Exclude Evidence Regarding Prosecution of Related Patents (MIL #9)[D.I. 339] at 1-2 ("substantially the same invention").

Claim 19 of the '427 patent is representative, and virtually identical to the '553 claims at trial:

>    "A method for treating a human patient in need of hematopoietic reconstitution comprising: (a) obtaining human neonatal or fetal blood components comprising hematopoietic stem cells derived from the umbilical cord blood or placental blood of a human collected at birth of said human; (b) cryopreserving the blood components; (c) thawing the blood components; and (d) introducing the blood components into the human patient so as to provide hematopoietic reconstitution."

3

of the '553 patent, 48 out of the 56 claims in the '427 patent are methods for treating a human with cord blood. Obstetricians do not treat patients with cord blood. The remaining eight claims are directed to a method of storing cord blood, which obstetricians do not do either.

Nevertheless, despite the obvious similarities between the '427 claims and the '553 claims, and despite this Court's prior Order declaring PharmaStem's earlier statements regarding liability for mere collection to be misleading, PharmaStem issued a press release which again targeted obstetricians, and indicated that they could be liable for patent infringement merely for collecting cord blood. Notably, in this press release PharmaStem was not content merely to announce the new lawsuits. Instead, PharmaStem once again targeted the obstetricians without disclosing the significant limitations on any claim of contributory infringement. Thus, PharmaStem said:

> While we would prefer not to sue any obstetricians or health care providers, it is important to protect our intellectual property rights for the benefit of our licensees. To date, we have 15 licensed cord blood banks so obstetricians and health care providers have many choices available to them. *PharmaStem's license agreements provide a license to obstetricians and health care providers **for the collection of umbilical cord blood** provided they work with licensed banks.*

(Exhibit A, emphasis added).

This statement is strikingly similar to statements in PharmaStem's June 1 letter -- *compare* "PharmaStem wants to assure you that we have taken all the necessary steps to protect the obstetricians from any intellectual property liability, provided they work with any one of the following licensed companies" (June 1 letter, emphasis in original) *with* "PharmaStem's license agreements provide a license to obstetricians and health care providers for the collection of umbilical cord blood provided they work with licensed banks." (August 2 press release).

4

Notably, PharmaStem's press release did not mention the limitations on liability which would obtain as equally to the '427 patent as to the '553 patent. PharmaStem did not say that there must be a sale or offer to sell by the party that is accused of contributory infringement, that the party accused of contributory infringement must act in concert or work together with others to perform every step of the method, or that a sale of a service does not satisfy the contributory infringement statute.

## II.  ARGUMENT

### A.  PharmaStem is in Contempt.

A court has the authority to find a party in contempt and award relief if: "(1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995). Contempt must be shown by "clear and convincing" evidence. *Id.* at 1326.

There is no question that the Court's Order is valid and that PharmaStem knew of it. Thus, the only issue before the Court on PharmaStem's liability is whether PharmaStem violated the Order. There can be little doubt that it did. The Court's Order clearly stated that PharmaStem was not permitted to make false and misleading statements to obstetricians. It also expressly stated that PharmaStem's prior communication to obstetricians was false and misleading because it left out "several important elements that must be proved to show contributory infringement." Each of those elements is, once again, missing from PharmaStem's public statements to obstetricians. The press release makes no mention of the sale or offer to sell requirement, the "acting in concert or working together" requirement, or that the sale of a service cannot satisfy §271(c). As such, PharmaStem's statements are, once again, false and misleading and the *Harris* standards are satisfied by clear and convincing evidence.

Although PharmaStem's "good faith" is not a defense to the contempt issue, *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 149 (3d. Cir. 1994), there can similarly be no dispute that the entire purpose of this press release is to make obstetricians think they are liable for patent infringement merely for collecting cord blood. This is the very same false assertion that PharmaStem made before, that gave rise to the Court's previous injunction, and as to which the Court gave specific direction in its July 2, 2004 Order. Just as PharmaStem's June 1 letter to obstetricians was nothing more than an attempted end-run around the Court's deliberations on the post-trial motions, its August 2, 2004 press release is nothing more than an attempted end-run around this Court's July 2, 2004 Order. The intent of the statement and its effect are clear. Sanctions are appropriate.

### B. Defendants are Entitled to Relief.

District courts are afforded broad discretion to fashion a contempt sanction that will achieve full remedial relief. *In re: Arthur Treacher's Franchisee Litig.*, 689 F.2d 1150, 1158-59 (3d. Cir. 1982). Given PharmaStem's violation of this Court's Order, Defendants seek the following relief, which is set forth in the attached Proposed Order:

- An Order declaring that the statements in the PharmaStem press release are false and misleading;

- An Order directing PharmaStem to remove its most recent press release from its website;

- An Order requiring PharmaStem to post this Court's July 2, 2004 Order on its website, as well as any further Order issued regarding this Motion for Contempt, and directing PharmaStem to disseminate this Court's Orders to its licensees;

- An Order directing PharmaStem not to further post or disseminate its press release or any similar release directed to any obstetricians, hospitals, health care providers, or the public; and

- An Order directing PharmaStem to pay Defendants' costs and legal fees for the filing of this motion and any additional proceedings arising therefrom.

Finally, Defendants want the record to be clear as to what they do *not* complain about here, and as to what relief they are not seeking. Defendants' Motion is not directed at, or based upon, the new lawsuits. Unsurprisingly, Defendants believe the lawsuits are procedurally and substantively meritless, but the lawsuits are not the subject of this Motion, and they will be addressed in due course. Nor do Defendants contend that it would have been improper for PharmaStem to issue a press release that merely announced the filing of the lawsuits. But that is not what PharmaStem did. Instead, despite the explicit direction from the Court as to what was misleading about its June 1 letter, PharmaStem chose to repeat its error and to misleadingly and incorrectly threaten obstetricians with patent liability merely for collecting cord blood. As indicated, Defendants' Motion is based upon the statements in PharmaStem's press release relating to its, for example, licensing program, i.e., the statements that obstetricians may avoid liability "*for the collection of umbilical cord blood* provided they work with licensed banks." Given this Court's prior Order, there can be no question that the plain implication of this statement -- that obstetricians are liable for collecting blood -- is false and misleading.

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court issue an order in substantially the form filed therewith.

August 4, 2004

                                     MORRIS, JAMES, HITCHENS & WILLIAMS LLP

                                     /s/ Richard D. Kirk
                                     Richard D. Kirk (Bar I.D. 922)
                                     222 Delaware Avenue, 10th Floor
                                     P.O. Box 2306
                                     Wilmington, DE 19899
                                     (302) 888-6960

                                     On behalf of all Defendants

**Attorneys for ViaCell, Inc.:**

| | |
|---|---|
| Jeffrey L. Moyer (#3309) | Paul F. Ware, Jr., P.C. |
| Richards Layton & Finger, P.A. | John C. Englander |
| One Rodney Square | James W. McGarry |
| P.O. Box 551 | Elaine Herrmann Blais |
| Wilmington, DE 19899 | Goodwin Procter LLP |
| | Exchange Place |
| | Boston, MA 02109 |

**Attorneys for Corcell, Inc. and Cryo-Cell International, Inc.:**

| | |
|---|---|
| | James J. Rodgers |
| Robert F. Stewart, Jr. (#871) | Evelyn McConathy |
| Dilworth Paxson LLP | Dilworth Paxson LLP |
| First Federal Plaza, Suite 500 | 3200 Mellon Bank Center |
| Wilmington, DE 19801 | 1735 Market Street |
| | Philadelphia, PA 19103 |

**Attorneys for CBR Systems, Inc.:**

| | |
|---|---|
| Richard D. Kirk (#922) | William F. Abrams |
| Morris, James, Hitchens & Williams LLP | Thomas F. Chaffin |
| 222 Delaware Avenue | Pillsbury Winthrop LLP |
| P.O. Box 2306 | 2475 Hanover Street |
| Wilmington, DE 19899 | Palo Alto, California 94304-1115 |

RDK/104674-0001/1027433/1

8