1  PAUL J. ANDRE, Bar No. 196585
    LISA KOBIALKA, Bar No. 191404
2  AMANDA M. FOX, Bar No. 212939
    PERKINS COIE LLP
3  101 Jefferson Drive
    Menlo Park, CA  94025-1114
4  Ph: (650) 838-4300
    Fx: (650) 838-4350
5
    Attorneys for Counterdefendant
6  Nicholas Didier

7

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11                  **SAN FRANCISCO**

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> CORD BLOOD REGISTRY, INC., dba CBR, a California corporation, and SUTTER HEALTH, INC., a California corporation. <br><br> Defendant. | **CASE NO. 04-3072 JSW** <br><br> **COUNTERDEFENDANT NICHOLAS DIDIER'S NOTICE OF MOTION AND MOTION TO DISMISS CBR SYSTEMS, INC.'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER** <br><br> **Date/Time:  January 7, 2005 at 9:00 a.m.** <br> **Courtroom:  2** <br> **Judge:  Hon. Jeffrey S. White** |
| CBR SYSTEMS, INC., dba CBR a California corporation <br> Counterclaimant <br> v. <br><br> PHARMASTEM THERAPEUTICS, INC., a Delaware corporation; STEMBANC, INC., a Ohio corporation; NICHOLAS DIDIER; and ARCHIBALD A. GRABINSKI <br><br> Counterdefendants. | |

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ................................................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED .......................................... 2

III.  STATEMENT OF RELEVANT FACTS ................................................. 3

IV.   ARGUMENT ................................................................................. 5

    A.    CBR FAILS TO ALLEGE JURISDICTIONAL FACTS SUFFICIENT FOR THIS COURT TO ESTABLISH PERSONAL JURISDICTION OVER MR. DIDIER. ........................................................................................ 5

    B.    CBR'S FIRST THROUGH SIXTH COUNTERCLAIMS FAIL TO MEET THE CASE OR CONTROVERSY REQUIREMENT OF ARTICLE III, SECTION TWO, OF THE UNITED STATES CONSTITUTION. ................. 6

    C.    CBR'S FIRST THROUGH SIXTH COUNTERCLAIMS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED. ............................ 7

    D.    CBR'S FIRST THROUGH SIXTH COUNTERCLAIMS FAIL TO STATE A CAUSE OF ACTION AGAINST MR. DIDIER IN HIS PERSONAL CAPACITY. ..................................................................................... 8

    E.    THE COURT SHOULD ALSO DECLINE ASSERTING SUPPLEMENTAL JURISDICTION OVER CBR'S NON-PATENT-RELATED COUNTERCLAIMS, BECAUSE THEY ARE UNRELATED TO THE LEGAL ISSUES AND OPERATIVE FACTS OF THE UNDERLYING PATENT INFRINGEMENT SUIT AND BECAUSE ANOTHER DISTRICT COURT ALREADY HAS JURISDICTION OVER THE NON-PATENT-RELATED ISSUES. ....................................................... 9

        1.    CBR's Fifth Counterclaim cannot salvage the lack of a predicate for this Court to assert jurisdiction over the remainder of CBR's non-patent-related counterclaims. ............................................................... 9

        2.    Recent Federal Circuit decisions do not save CBR's federal unfair competition claim, because they add bad faith, which CBR has not and cannot allege, to the elements of a Lanham Act violation for patent publication. .............................................................................. 10

F.    THE COURT SHOULD ALSO DECLINE ASSERTING JURISDICTION OVER CBR'S NON-PATENT-RELATED COUNTERCLAIMS, BECAUSE CBR HAS ALREADY ASKED ANOTHER FEDERAL DISTRICT COURT TO EXERCISE JURISDICTION OVER IDENTICAL ISSUES AND THE OTHER FEDERAL DISTRICT COURT HAS ALREADY ASSERTED JURISDICTION OVER THOSE ISSUES AND MAINTAINS SUCH JURISDICTION AT THIS TIME................................. 13

    1.    CBR's First through Sixth Counterclaims are duplicative of the issues over which the United States District Court for the District of Delaware already has jurisdiction. ...................................................... 13

    2.    The Court should decline to assert jurisdiction over the duplicative claims. .............................................................................................. 14

V.    CONCLUSION ........................................................................................ 15

DIDIER'S MOT. TO DISMISS CBR'S COUNTERCLAIMS
CASE NO. 04-3072 JSW

[40923-0005/BY042530.009]

# TABLE OF AUTHORITIES

**Cases**

*Balistreri v. Pacifica Police Dep't,*
 901 F.2d 696 (9th Cir. 1988)..................................................................... 7

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
 223 F.3d 1082 (9th Cir. 2000) ................................................................. 5

*Century 21 Real Estate Corp. v. Sandlin,*
 846 F.2d 1175 (9th Cir. 1988)................................................................. 10

*Colorado River Water Conservation Dist. v. United States,*
 424 U.S. 800 (1976) ................................................................................ 14

*Durning v. First Boston Corp.,*
 815 F.2d 1265 (9th Cir. 1987).................................................................. 8

*Fila U.S.A., Inc. v. Kim,*
 884 F.Supp. 491 (S.D. Fla. 1995) ........................................................... 10

*Globetrotter Software, Inc. v. Elan Computer Group,*
 362 F.3d 1367 (Fed. Cir. 2004) ............................................................... 12

*Golan v. Pingel Enter.* ....................................................................... 11, 12

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,*
 153 F.3d 1318 (Fed.Cir. 1998)................................................................. 11

*In re Syntex Corp. Securities Litigation,* 95 F.3d 922 (9th Cir. 1996)....................................... 8

*In re: Arthur Treacher's Franchisee Litig.,*
 689 F.2d 1150 (3rd. Cir. 1982) ................................................................ 15

*Inamed Corp. v. Kuzmak,*
 249 F.3d 1356 (Fed.Cir. 2001) .................................................................. 6

*International Order of Job's Daughters v. Lindeburg & Co.,*
 633 F.2d 912 (9th Cir. 1980) ................................................................... 10

*John H. Harland Co. v. Clarke Checks, Inc.,*
 711 F.2d 966 (11th Cir. 1983) ................................................................. 10

*Johns-Manville Corp. v. United States,*
 855 F.2d 1556 (Fed.Cir. 1988) ................................................................ 15

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,*
 342 U.S. 180 (1952) ................................................................................ 15

- iii -

*Khoury v. Maly's of California,*
   14 Cal.App.4th 612 (1993)..................................................................12

*Messerschmidt Development Co. v. Crutcher Resources Corp.,*
   84 Cal.App.3d 819 (1978)....................................................................6

*Michaelis v. Benavides,*
   61 Cal.App.4th 681 (1998)...................................................................9

*Nat'l Ass'n for the Advancement of Psychoanalysis v. California Bd. of Psychology,*
   228 F.3d 1043 (9th Cir. 2000)..............................................................7

*Qarbon.com Inc. v. eHelp Corp.,*
   315 F.Supp.2d 1046, 1052-53 (N.D. Cal. 2004) ..............................12

*Robertson v. Dean Witter Reynolds, Inc.*
   749 F.2d 530 (9th Cir. 1984)...............................................................7

*Roth v. Garcia Marquez,*
   942 F.2d 617,  (9th Cir. 1991).............................................................8

*Ruger v. Superior Court,*
   118 Cal.App.3d 427 (1981)..................................................................6

*Shearer v. Superior Court,*
   70 Cal.App.3d 424 (1977)....................................................................6

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.,*
   983 F.Supp. 1303 (N.D. Cal. 1997) .................................................1, 8

*Toho Co., Ltd. v. Sears, Roebuck & Co.,*
   645 F.2d 788 (9th Cir. 1981)..............................................................10

*Tworivers v. Lewis,*
   174 F.3d 987 (9th Cir. 1999)...............................................................7

*United States Liab. Ins Co. v. Haidinger-Hayes,*
   1 Cal.3d 586 (1970).........................................................................2, 9

*Western Mining Council v. Watt,*
   643 F.2d 618 (9th Cir. 1981)...............................................................7

*World-Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980).......................................................................5, 6

*Zenith Electronics Corp. v. Exzec, Inc.,*
   182 F.3d 1340 (Fed. Cir. 1999)....................................................1, 8, 11

[40923-0005/BY042530.009]

**Statutes**

15 U.S.C. § 1114 (1976) ..................................................................................... 10

15 U.S.C. § 1125(a) ............................................................................................. 10

15 U.S.C. § 1125(a)(1) ........................................................................................ 10

15 U.S.C. § 1125(a)(1)(B) .................................................................................... 10

15 U.S.C. § 1125(c)(4)(B) .................................................................................... 10

28 U.S.C. 1337 ....................................................................................................... 9

28 U.S.C. 1367 ................................................................................................... 2, 9

Art. III, § 2, U.S. Constitution.................................................................. i, 1, 2, 6, 7

Fed. R. Civ. P. 11 ................................................................................................... 1

**Other Authorities**

Reporter's Notes, § 354, p. 600 ............................................................................. 9

Rest.2d Agency, §§ 352, 354, Appendix................................................................. 9

DIDIER'S MOT. TO DISMISS CBR'S COUNTERCLAIMS
CASE NO. 04-3072 JSW                                                    [46923-0005/BY042530.009]

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE THAT counterdefendant Nicholas Didier hereby moves the

3  Court to dismiss counterclaimant CBR Systems, Inc.'s ("CBR") First, Second, Third, Fourth, Fifth,

4  and Sixth Counterclaims insofar as they are asserted against him in his personal capacity, pursuant

5  to Rule 12 of the Federal Rules of Civil Procedure.  This motion has been set for hearing on

6  January 7, 2005 at 9:00 a.m., or as soon thereafter as may be heard.

7      The movant respectfully requests the Court to strike or dismiss the First, Second, Third,

8  Fourth, Fifth, and Sixth Counterclaims of CBR's answer and counterclaims ("Counterclaims") in

9  the above-captioned action insofar as they are asserted against him in his personal capacity.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF ARGUMENT

CBR's First through Sixth Counterclaims plead various torts for Counterdefendants' alleged statements regarding the potential liability of obstetricians for infringement of the Patents-In-Suit, which are generally directed toward the collection and cryopreservation of umbilical cord blood for later therapeutic use.  Essentially, CBR alleges that such statements are wrong and have detrimentally impacted CBR's cord blood banking business.  However, the patent issue of obstetrician liability for infringement of the Patents-In-Suit has never before been adjudicated or otherwise determined.  Hence, CBR's derivative torts, which assume that obstetricians cannot be liable for infringement of the Patents-In-Suit under any legal theory, will not ripen until such time as the underlying patent issues are adjudicated or otherwise resolved.  As a result, CBR's non-patent-related counterclaims fail to meet the case or controversy requirement of Article III.  Art. III, § 2, U.S. Const.

Furthermore, in naming Mr. Didier, in his personal capacity, CBR improperly seeks to add the spectre of personal liability to his involvement in the present case.  However, CBR has failed to sufficiently plead causes of action against Mr. Didier that would justify personally haling him into court as an individual counterdefendant.  While CBR may believe that the best defense is a good offense, at an irreducible minimum, defense or offense must be interposed for some proper purpose, be warranted by existing law, and allege factual contentions that have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  Fed. R. Civ. P. 11.  As demonstrated below, because CBR omits necessary elements from its tort claims, CBR does not sufficiently plead any of its non-patent related counterclaims against any counterdefendant.  *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1309-13 (N.D. Cal. 1997)(must plead existing third party contract or specific economic relationship with probable future economic benefit for tortuous interference; must plead duty for negligence); *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1352-55 (Fed. Cir. 1999)(must plead bad faith for state or federal claims sounding in tort to

1  overcome patent holder's rights and privileges); much less so against Mr. Didier in his personal

2  capacity, *see United States Liab. Ins Co. v. Haidinger-Hayes*, 1 Cal.3d 586, 595 (1970)(corporate

3  officers not liable for tortuous conduct not involving personal injury or physical damage to

4  property).

5        Finally, as CBR's non-patent-related counterclaims do not "form part of the same case or

6  controversy under Article III of the United States Constitution" as PharmaStem's patent

7  infringement claims and CBR's patent-related counterclaims, the exercise of jurisdiction over

8  CBR's First, Second, Third, Fourth, Fifth, and Sixth Counterclaims for various commercial torts is

9  discretionary with the Court.  28 U.S.C. § 1367.  The Court should decline assertion of such

10  jurisdiction because, in addition to the reasons mentioned above, at CBR's behest another federal

11  district court already has jurisdiction over CBR's non-patent-related issues.[1]

12  ## II.     STATEMENT OF ISSUES TO BE DECIDED

13
14  1.  CBR fails to allege jurisdictional facts sufficient for this Court to establish personal
    jurisdiction over Mr. Didier.

15  2.  CBR's First through Sixth (non-patent-related) Counterclaims are unripe and fail to meet the
16      case or controversy requirement of Art. III, § 2, of the U.S. Const.

17  3.  CBR's First through Sixth Counterclaims fail to sufficiently plead requisite elements of the
    claimed torts, among them: actually breached or disrupted contracts or specific economic
18      relationships; the duty owed by Counterdefendants' to such unalleged third parties; and
    Counterdefendants' bad faith.

19  4.  CBR's First through Sixth Counterclaims fail to sufficiently plead requisite elements of the
20      claimed torts to sue corporate officer Mr. Didier in his personal and individual capacity,
    namely, non-pecuniary damages.

21

22

23
    _____

24      [1] CBR's counterclaims are also barred for the reasons set forth in PharmaStem
    Therapeutics, Inc.'s Motion to Dismiss filed September 14, 2004 (Docket No. 18).  CBR already
25  sought relief in a case before the United States District Court for the District of Delaware in the
    action entitled *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, Case No. 02-148-GMS
26  ("Delaware Action"), based on the exact same conduct that CBR now alleges is the basis for its
    first through sixth counterclaims against Mr. Didier.  CBR should not be permitted to take a
27  second bite at the apple, seeking relief from two separate courts for the same alleged activities by
28  PharmaStem and Mr. Didier.  *See* PharmaStem's Motion to Dismiss at pp. 14-15.

- 2 -

5.  CBR's First through Sixth Counterclaims pertain to subject matter unrelated by either fact or issue to the underlying Complaint for patent infringement, filed by Plaintiff PharmaStem in the above-captioned action.

6.  CBR's First through Sixth Counterclaims duplicate litigation already pending before another federal district court.

### III.    STATEMENT OF RELEVANT FACTS

Nicholas Didier is the CEO and President of PharmaStem.  Counterclaims at ¶ 14. PharmaStem is the owner of five patents ("PharmaStem Patents") that are from the same patent family.  Counterclaims at ¶ 10.  On July 28, 2004, PharmaStem filed the above-captioned patent action against CBR and Sutter Health, Inc., asserting the infringement of two PharmaStem Patents, U.S. Patent Nos. 6,461,645 and 6,569,427 (collectively, "Patents-In-Suit").  On August 23, 2004, CBR answered and counterclaimed for invalidity, noninfringement, and unenforceability of the Patents-In-Suit and various unrelated against PharmaStem, Mr. Didier, and others.

Previously, on February 2002, PharmaStem filed the Delaware Action against CBR and several other companies, alleging infringement of two patents from the same family as the Patents-In-Suit.  Counterclaims at ¶¶ 11-13.  In the Delaware Action, "a jury verdict was entered in favor of PharmaStem and against CBR … finding [PharmaStem's patents] valid and infringed." Counterclaims at ¶ 12.  On the same day the Complaint in this case was filed, PharmaStem filed a Notice of Pendency of Other Action Pursuant to Local Rule 3-13 regarding the Delaware Action accompanied by the special verdict that was entered by the Delaware district court, in which the jury found, *inter alia*, that CBR willfully infringed the PharmaStem Patents asserted in that case. *See* July 28, 2004 Notice of Pendency, Docket No. 2.[2]

In its non-patent-related counterclaims, CBR has asserted various tortious interference, unfair competition, and trade libel claims against Mr. Didier in his individual capacity.

---

[2] On September 15, 2004, the Court in the Delaware Action confirmed the jury's findings regarding the validity and enforceability of PharmaStem's patents (U.S. Patent Nos. 5,004,681 and 5,192,553).  The Court set aside the jury's verdict that the Delaware Defendants infringed U.S. Patent No. 5,192,553, and ordered a partial retrial with regards to infringement and damages in connection with U.S. Patent No. 5,004,681.

- 3 -

1   Counterclaims at ¶¶ 14-25, 36-61 and Exhibits A ("PharmaStem Letter") and C ("Press Release")

2   thereto. All of CBR's non-patent-related counterclaims revolve around the central accusation that

3   PharmaStem and Mr. Didier, through the alleged PharmaStem Letter, Press Release, and further

4   similar statements, made false and misleading statements when discussing the potential liability of

5   obstetricians for infringement of the Patents-In-Suit. *Id.* In particular, the Press Release

6   announces PharmaStem's initiation of a number of new lawsuits against unlicensed cord blood

7   banks, including CBR, as well as obstetricians. *Id.* at ¶ 21 and Exhibit C thereto. On September

8   8, 2004, PharmaStem filed a Notice of Pendency of Other Actions Pursuant to Civil Local Rule 3-

9   13, identifying these other lawsuits. *See* September. 8, 2004 Notice of Pendency, Docket No. 13.

10          As described in CBR's counterclaims, CBR, together with the other defendants in the

11  Delaware Action, (collectively, "Delaware Defendants") moved for injunctive and remedial relief

12  against the PharmaStem for the PharmaStem Letter and Press Release before the Honorable

13  Gregory M. Sleet, the judge in the Delaware Action, in the United States District Court for the

14  District of Delaware. Counterclaims at ¶¶ 17-21. An injunction was granted before PharmaStem

15  had an opportunity to be heard.[3] While CBR attaches the resulting Order, *id.* at Exhibit B thereto,

16  it omits to mention the hearing ultimately held on the tort issues, when the Delaware Defendants

17  moved for contempt on the basis of the publication of the alleged Press Release. Fox Decl., Exh.

18  1. At that hearing, Judge Sleet held that "it is my view at this stage of this discussion that

19  PharmaStem is probably not in contempt of the Court's July 2 order." Fox Decl. Exh. 1, Tr.,

20  25:15-17. Judge Sleet further recognized "PharmaStem's right to announce, in good faith, the

21  existence of lawsuits and its intent to protect its intellectual property rights." Fox Decl. Exh. 1,

22  Tr., 27:13-20. In conclusion, Judge Sleet announced that "[t]he Court will hold this matter under

23  advisement" and reiterated that "I am not inclined to a finding of contempt under the

24  circumstances." Fox Decl., Exh. 1, Tr., 33:12-35:1.

25

26  _____

27     [3] PharmaStem's motion to dissolve the injunction is still pending. Declaration of Amanda
    Fox ("Fox Decl."), Exhibit 1, Transcript (contempt hearing in Delaware Action), dated August 6,
28  2004, 13:19-14:20.

DIDIER'S MOT. TO DISMISS CBR'S COUNTERCLAIMS                                    [40923-0005/BY042539.009]
CASE NO. 04-3072 JSW

1

Further relevant facts are set forth in the paragraphs below.

2

## IV.    ARGUMENT

3

## A.    CBR FAILS TO ALLEGE JURISDICTIONAL FACTS SUFFICIENT FOR THIS COURT TO ESTABLISH PERSONAL JURISDICTION OVER MR. DIDIER.

4

5

At all times pertinent, Mr. Didier has been a resident of New York.  Counterclaims at ¶ 3.

6

CBR vaguely and ambiguously alleges that PharmaStem and Mr. Didier caused the mailing of the

7

PharmaStem Letter to approximately 25,000 obstetricians and hospitals, the dissemination of the

8

Press Release (by posting it on PharmaStem's Internet web site), and the issuance of purported

9

further actionable statements.  *Id.* at ¶¶ 14-25.  None of these contacts are sufficient to establish

10

personal jurisdiction over Mr. Didier.

11

The Ninth Circuit has summarized the Supreme Court's jurisprudence by setting forth a

12

three-factor test to determine whether asserting jurisdiction over an out-of-state defendant

13

comports with due process.  Jurisdiction may be exercised when the following requirements are

14

met:

15

    (1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which

16

               he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

17

    (2)    the claim must be one which arises out of or relates to the defendant's forum-related activities; and

18

    (3)    the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

19

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).

20

Due process requires the contacts (or relationship) between a nonresident defendant and

21

the forum state to be such that it is fair and reasonable to require a defendant to submit to suit in

22

the distant forum.  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980).

23

"Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant,

24

while always a primary concern, will in an appropriate case be considered in light of other relevant

25

factors, including the forum State's interest in adjudicating the dispute; the plaintiff's interest in

26

obtaining convenient and effective relief ... the interstate judicial system's interest in obtaining the

27

most efficient resolution of controversies; and the shared interest of the several States in furthering

28

[40923-0005/BY042530.009]

1  fundamental substantive social policies." *World-Wide*, 444 U.S. at 292 (internal citations

2  omitted).  The burden rests on CBR to prove those facts establishing the requisite relationship for

3  the exercise of personal jurisdiction.  *Shearer v. Superior Court*, 70 Cal.App.3d 424, 430 (1977);

4  *Messerschmidt Development Co. v. Crutcher Resources Corp.*, 84 Cal.App.3d 819, 825 (1978).

5      The Federal Circuit recently analyzed the propriety of exercise of specific jurisdiction over

6  a New Jersey resident in California, where the contacts comprised a good-faith infringement letter

7  coupled with other contacts in the forum.  *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360

8  (Fed.Cir. 2001).  Although the court determined that the letter was "directed at" California-

9  resident Inamed, it concluded that a good-faith infringement letter alone was insufficient to

10  establish purposeful availment.  *Inamed*, 249 F.3d at 1361 (collecting Federal Circuit cases);

11  *compare Ruger v. Superior Court*, 118 Cal.App.3d 427, 434 (1981)("[I]t is unreasonable under

12  due process standards that Ruger should personally answer as a defendant in actions brought in

13  this state against his corporate employer.  No matter how egregious his alleged conduct, plaintiffs

14  cannot here extrapolate precepts of liability into precepts of jurisdiction without offending

15  traditional notions of fair play and substantial justice.").  As disapproved of in *Ruger*, it is obvious

16  that CBR "extrapolate[s] precepts of liability into precepts of jurisdiction," as it merely assumes

17  that personal jurisdiction over PharmaStem will confer personal jurisdiction over Mr. Didier.

18  However, PharmaStem initiated the above-captioned patent infringement suit by filing it in this

19  jurisdiction, obviously submitting to personal jurisdiction in this forum.  Mr. Didier is not a

20  plaintiff in this suit and cannot be similarly deemed to have voluntarily submitted to personal

21  jurisdiction in this forum.  Therefore, due process does not support personal jurisdiction over Mr.

22  Didier.

23  **B.    CBR'S FIRST THROUGH SIXTH COUNTERCLAIMS FAIL TO MEET**
24  **THE CASE OR CONTROVERSY REQUIREMENT OF ARTICLE III,**
     **SECTION TWO, OF THE UNITED STATES CONSTITUTION.**

25      As a preliminary matter, CBR's non-patent-related counterclaims are unripe and

26  hypothetical as they essentially concern the truth of matters which will be adjudicated in this very

27  case.  For example, as the predicate for its various commercial tort claims, CBR alleges that

28

- 6 -

1    "[u]nder no proper interpretation of the PharmaStem Patents could an obstetrician be liable for

2    patent infringement based on collecting umbilical cord blood at the time of delivery and providing

3    it to the patient for the patient's shipment of the blood to a bank." Counterclaims at ¶ 22. But that

4    is the very question to be decided. Obviously, if obstetrician liability is found or settled, then

5    CBR's non-patent-related counterclaims will become moot. Only if obstetrician liability is not

6    found, will the question ripen whether PharmaStem's or Mr. Didier's statements were made with

7    the requisite bad faith to sustain a tort claim. Thus, CBR's non-patent-related counterclaims fail

8    Article III's case or controversy requirement. Art. III, § 2, U.S. Const. To permit CBR to go

9    forward with its tort claims, which rely—for their legal existence—on the *assumption* that

10   obstetricians cannot be liable for indirect infringement of the Patents-In-Suit, at the same time as

11   the underlying patent infringement case for obstetrician liability simply serves no legitimate

12   purpose.

13   **C.    CBR'S FIRST THROUGH SIXTH COUNTERCLAIMS FAIL TO STATE**
14   **CLAIMS UPON WHICH RELIEF CAN BE GRANTED.**

15          In adjudicating a motion for dismissal for failure to state a claim, the Court "accept[s] all

16   factual allegations of the complaint as true and draw[s] all reasonable inferences in favor of the

17   nonmoving party." *See Nat'l Ass'n for the Advancement of Psychoanalysis v. California Bd. of*

18   *Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000), quoting *Tworivers v. Lewis*, 174 F.3d 987, 991

19   (9th Cir. 1999). However, the Court need not accept as true conclusory allegations or legal

20   characterizations cast in the form of factual allegations. *See Western Mining Council v. Watt,* 643

21   F.2d 618, 624 (9th Cir. 1981), *cert. denied,* 454 U.S. 1031 (1981). Dismissal can be based on

22   either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

23   cognizable legal theory. *See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988);

24   *Robertson v. Dean Witter Reynolds, Inc.* 749 F.2d 530, 533-34 (9th Cir. 1984). In determining

25   whether counterclaimants can prove facts in support of their claim that would entitle them to

26   relief, the Court may consider facts contained in documents attached to the complaint or

27   documents whose contents are alleged in the complaint and whose authenticity no party questions,

28   but which are not physically attached to the pleading. *See Nat'l Ass'n.*, 228 F.3d at 1049, citing

-7-

1    *Roth v. Garcia Marquez,* 942 F.2d 617, 625 n.1 (9th Cir. 1991)(citing *Durning v. First Boston*

2    *Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987)); *In re Syntex Corp. Securities Litigation,* 95 F.3d 922,

3    926 (9th Cir. 1996).

4         As CBR's allegations against Mr. Didier are limited to the conduct of Mr. Didier within the

5    scope of his authority and capacity as a corporate officer of PharmaStem, if the non-patent-related

6    counterclaims are dismissed against PharmaStem, then they should also be dismissed against Mr.

7    Didier.[4]  CBR fails to allege numerous necessary elements of its non-patent-related causes of

8    action, which are fatal to each and every one of its First through Sixth Counterclaims.  At an

9    irreducible minimum, CBR's First through Sixth Counterclaims must be dismissed because they

10   fail to allege the existence of any contracts or specific economic relationships with third parties

11   with the probability of future economic benefits, any duty of care PharmaStem or Mr. Didier may

12   owe to such or other third parties, *see Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp.

13   1303, 1309-13 (N.D. Cal. 1997), or any bad faith, *see Zenith Electronics Corp. v. Exzec, Inc.*, 182

14   F.3d 1340, 1352-55 (Fed. Cir. 1999)(when in conflict with patent rights, both federal and state

15   unfair competition claims require bad faith).  Thus, CBR's non-patent-related counterclaims fail to

16   state claims upon which relief can be granted as to any of the named counterdefendants.

17   **D.    CBR'S FIRST THROUGH SIXTH COUNTERCLAIMS FAIL TO STATE A**
     **CAUSE OF ACTION AGAINST MR. DIDIER IN HIS PERSONAL**
18   **CAPACITY.**

19        As is apparent from within the four corners of CBR's Counterclaims, and all accompanying

20   exhibits, the substance of CBR's counterclaims for various torts alleged against Mr. Didier relates

21   solely to the alleged PharmaStem Letter, Press Release, and alleged further similar statements.  In

22   CBR's own words, "Didier, the CEO and President of PharmaStem, on PharmaStem's letterhead,

23   sent [the PharmaStem Letter] to obstetricians and hospitals…"  Counterclaims at ¶ 14.  The

24   provenance of the Press Release is equally obvious, *i.e.*, PharmaStem, the corporation.  Thus,

25   CBR's Counterclaims allege no conduct or misconduct against Mr. Didier except in his capacity as

26

27   _____

28      [4] *See* PharmaStem's Motion to Dismiss, filed September 13, 2004 (Docket No. 18).

DIDIER'S MOT. TO DISMISS CBR'S COUNTERCLAIMS                    [40923-0005/BY042530.009]
CASE NO. 04-3072 JSW

1    a corporate officer of PharmaStem.  As a proximate result, Mr. Didier has no notice whatsoever of

2    the grounds of any claims upon which he may be held personally liable.

3    　　　　Even accepting *arguendo* the substantive allegations of CBR's counterclaims as true,

4    CBR's pleadings and allegations against Mr. Didier in his personal capacity still fail to state any

5    claim upon which relief can be granted.  The main reason is obvious.  They fail to allege any

6    conduct or misconduct on the part of Mr. Didier in his personal capacity, or against the interests of

7    PharmaStem, at all.  Moreover, they fail to allege any non-purely pecuniary harm, a prudent and

8    necessary predicate without which the personal liability of a corporate officer cannot flow.  *See*

9    *United States Liab. Ins Co. v. Haidinger-Hayes*, 1 Cal.3d 586, 595 (1970)("Liability imposed upon

10   agents for active participation in tortuous acts of the principal have been mostly restricted to cases

11   involving physical injury, not pecuniary harm, to third persons."), quoting Rest.2d Agency, §§

12   352, 354, Appendix, Reporter's Notes, § 354, p. 600; *see also Michaelis v. Benavides*, 61

13   Cal.App.4th 681, 687 (1998)(distinguishing pecuniary from "economic" damages: "[a]s legally

14   defined, 'economic' damages include both damages to a person and to his property").  CBR does

15   not allege personal injuries or physical damage to property of third parties.  Thus, for these reasons

16   alone, CBR's First through Sixth Counterclaims against Mr. Didier in his individual capacity fail

17   to state a claim upon which relief can be granted.

18   **E.    THE COURT SHOULD ALSO DECLINE ASSERTING SUPPLEMENTAL**
19   **JURISDICTION OVER CBR'S NON-PATENT-RELATED**
     **COUNTERCLAIMS, BECAUSE THEY ARE UNRELATED TO THE**
20   **LEGAL ISSUES AND OPERATIVE FACTS OF THE UNDERLYING**
     **PATENT INFRINGEMENT SUIT AND BECAUSE ANOTHER DISTRICT**
21   **COURT ALREADY HAS JURISDICTION OVER THE NON-PATENT-**
     **RELATED ISSUES.**
22
     **1.    CBR's Fifth Counterclaim cannot salvage the lack of a predicate for**
23   **this Court to assert jurisdiction over the remainder of CBR's non-**
     **patent-related counterclaims.**
24
25   　　　　CBR asks this Court to assert jurisdiction over its First, Second, Third, Fourth, and Sixth

26   Counterclaims pursuant to 28 U.S.C. § 1337; and, its Fifth Counterclaim pursuant to 28 U.S.C. §

27   1367.  Counterclaims at ¶ 7.  With the exception of its Fifth Counterclaim, CBR requires the

28   Court's exercise of discretionary supplemental jurisdiction over the majority of its non-patent-

- 9 -

1    related counterclaims.  As shown below, CBR's Fifth Counterclaim for federal unfair competition

2    is a spurious "throw in" that cannot compel the Court to assert jurisdiction over all of CBR's non-

3    patent-related counterclaims.

4    The federal statutory ground for CBR's Fifth Counterclaim is 15 U.S.C. § 1125(a), which

5    according to CBR "prohibits Counterdefendants from using false, misleading, or disparaging

6    representations of fact that misrepresent the nature, characteristics, or qualities of CBR's goods,

7    services, or commercial activities."  Counterclaims at ¶ 57.  The statutory language is drawn from

8    15 U.S.C. § 1125(a)(1)(B).  *See* 15 U.S.C. § 1125(a)(1)(B).  With respect to 15 U.S.C. §

9    1125(a)(1), generally, it is clear that it is primarily directed to trademark-type matters, not at issue

10    here.  *See Fila U.S.A., Inc. v. Kim*, 884 F.Supp. 491, 495 (S.D. Fla. 1995)("if there is no issue of

11    genuine fact as to trademark infringement, then there is none as to unfair competition"); citing

12    *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 981 (11th Cir. 1983); *Century 21 Real*

13    *Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988)(observing that "[t]he ultimate test for

14    unfair competition is exactly the same as for trademark infringement")(internal citations omitted).

15    As repeatedly observed by the Ninth Circuit Court of Appeals, "the Lanham Act's protections

16    extend to only two species of the generic tort of unfair competition: infringement of registered

17    trademarks, 15 U.S.C. § 1114 (1976), and false designation of the origin of goods, 15 U.S.C. §

18    1125(a) (1976)."  *See International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912,

19    915 (9th Cir. 1980); *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791-92 (9th Cir.

20    1981).  CBR also fails to allege that PharmaStem or Mr. Didier engaged in commercial speech.

21    *See* 15 U.S.C. § 1125(c)(4)(B).  *See* PharmaStem's Motion to Dismiss at pp. 9-14 (Docket No. 18).

22    Thus, under the traditional interpretation of the Lanham Act, CBR fails to state a legally

23    cognizable cause of action for the conduct alleged.

24    **2.    Recent Federal Circuit decisions do not save CBR's federal unfair
25    competition claim, because they add bad faith, which CBR has not and
       cannot allege, to the elements of a Lanham Act violation for patent
26    publication.**

27    While the scope of unfair competition claims for the publication of a patent has been the

28    subject of recent debate in the courts, even under the Federal Circuit's recently articulated legal

- 10 -

1    standards, CBR fails to allege a colorable federal unfair competition claim. *Zenith Electronics*

2    *Corp. v. Exzec, Inc.* decided, as a matter of first impression, the question "whether recognizing a §

3    43(a) claim in the context [of marketplace representations of patent infringement] would present

4    an irreconcilable conflict with the patent ... laws." 182 F.3d at 1351. Prior to *Zenith*, the law was

5    that " a patentee's allegedly false representation of patent infringement is not actionable under §

6    43(a), but that a patentee's allegedly false representation that it is the exclusive source of a certain

7    type of product because of its patent is so actionable." *Zenith*, 182 F.3d 1340, 1344 (citations

8    omitted). *Zenith*, itself, involved allegations that the accused patentee made false representations

9    (1) of patent infringement and (2) of accused infringer's inability to design around the patents.

10   *Zenith* at 1347.

11        *Zenith* articulated the new standard that "before a patentee may be held liable under § 43(a)

12   for marketplace activity in support of its patent, and thus be deprived of the right to make

13   statements about potential infringement of its patent, the marketplace activity must have been

14   undertaken in bad faith." *Id.* at 1353. *Zenith* simultaneously made explicit that its bad faith

15   requirement was "in addition to the elements required by § 43(a) itself, as § 43(a) alone does not

16   require bad faith." *Id.* (Citations omitted.) *Golan v. Pingel Enter.*, later clarified that "[i]n

17   general, a ***threshold showing*** of incorrectness or falsity, or disregard for either, is required in order

18   to find bad faith in the communication of information about the existence or pendency of patent

19   rights." 310 F.3d 1360, 1371 (Fed.Cir. 2002)(emphasis added). *Zenith* also reiterated the Federal

20   Circuit's earlier opinion that "to avoid patent law preemption of ... ***state law tort claims***, bad faith

21   must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort

22   claim." *Zenith* at 1355, citing *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318,

23   1336-37 (Fed.Cir. 1998)(emphasis added).

24        In additional, *Golan* clarified that "the party challenging such statements under state or

25   federal law [must] present[] clear and convincing evidence that the infringement allegations are

26   objectively false, and that the patentee made them in bad faith, *viz.*, with knowledge of their

27   incorrectness or falsity, or disregard for either, the statements are actionable and are not protected

28

- 11 -

1  by the existence of a patent." *Golan*, 310 F.3d at 1371.  Ultimately, "[t]o survive summary

2  judgment, the party challenging such statements must present affirmative evidence sufficient for a

3  reasonable jury to conclude that the patentee acted in bad faith, in light of the burden of clear and

4  convincing evidence that will adhere at trial." *Golan* at 1371; *see also Globetrotter Software, Inc.*

5  *v. Elan Computer Group*, 362 F.3d 1367, 1377 (Fed. Cir. 2004)("A [party] claiming that a patent

6  holder has engaged in wrongful conduct by asserting claims of patent infringement must establish

7  that the claims of infringement were objectively baseless.").

8      As discussed above, CBR has failed to allege bad faith necessary to sustain the required

9  "threshold showing" under *Golan*.  *Golan* at 1371.  Nothing has modified the long-standing rule

10 that "[a] plaintiff alleging unfair business practices under the unfair competition statutes must state

11 with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury*

12 *v. Maly's of California*, 14 Cal.App.4th 612, 619 (1993)(citations omitted); *Qarbon.com Inc. v.*

13 *eHelp Corp.*, 315 F.Supp.2d 1046, 1052-53 (N.D. Cal. 2004)(holding that, under the *Khoury*

14 standard, defendant failed to allege unfair competition counterclaim with "reasonable

15 particularity" where it did not provide a factual basis for its allegation that plaintiff knew or should

16 have known that the patent-at-issue was invalid or not infringed when it made allegedly

17 misleading statements regarding the scope, enforceability, and infringement of the patent-at-issue).

18      In its Counterclaims, CBR alleges only that counterdefendants' conduct has been "extreme

19 and outrageous."  Counterclaims at ¶¶ 36-61.  These vague accusations do not allege bad faith, nor

20 suffice to put Mr. Didier on notice of how, or whether, he knew or should have known that the

21 Patents-In-Suit were in some way noninfringed, invalid, or unenforceable.  Of course, CBR should

22 be hard-pressed to put forward an allegation of bad faith with reasonable particularity -- especially

23 within the confines of Rule 11 -- since a jury verdict was entered in favor of PharmaStem in the

24 Delaware Action after a full jury trial, in which the jury returned a special verdict of direct and

25 contributory infringement, willful infringement, validity, and enforceability of the related patents

26

27

28

- 12 -

against the Delaware Defendants, including CBR.[5]  Thus, for these independent reasons, CBR's

First through Sixth Counterclaim also fail to state a claim upon which relief can be granted.

**F.  THE COURT SHOULD ALSO DECLINE ASSERTING JURISDICTION OVER CBR'S NON-PATENT-RELATED COUNTERCLAIMS, BECAUSE CBR HAS ALREADY ASKED ANOTHER FEDERAL DISTRICT COURT TO EXERCISE JURISDICTION OVER IDENTICAL ISSUES AND THE OTHER FEDERAL DISTRICT COURT HAS ALREADY ASSERTED JURISDICTION OVER THOSE ISSUES AND MAINTAINS SUCH JURISDICTION AT THIS TIME.**

**1.  CBR's First through Sixth Counterclaims are duplicative of the issues over which the United States District Court for the District of Delaware already has jurisdiction.**

Regarding the same alleged wrongs, between similar parties, and substantially seeking the

same relief, on June 30, 2004, CBR, along with the other Delaware Defendants, requested that the

Delaware district court exercise jurisdiction over the same issues as those re-asserted in CBR's

First through Sixth Counterclaims,[6] in the form of a joint motion for temporary restraining order

and injunction against PharmaStem from making statements concerning "potential obstetrician

liability under the PharmaStem patents" ("Motion for Injunctive Relief").  The subject matter of

the Motion for Injunctive Relief was the PharmaStem Letter alleged in the instant action.  Judge

Sleet, presiding over the Delaware Action, entered the proposed temporary restraining order and

order for injunctive relief without modification and prior to briefing or oral argument.

Subsequently, the Delaware Defendants moved for contempt sanctions against PharmaStem for

the publication of the Press Release, also alleged in the instant action ("Contempt Motion").  Judge

---

[5]  At the time CBR filed its Answer and Counterclaims, such jury verdicts remained in place because the Court in the Delaware Action had not yet issued rulings on post-trial motions. On September 15, 2004, the Court in the Delaware Action confirmed the jury's findings regarding the validity and enforceability of PharmaStem's Patents, U.S. Patent Nos. 5,004,681 and 5,192,553.  The Court set aside the jury's verdict that the Delaware Defendants infringed U.S. Patent No. 5,192,553, and ordered a partial retrial with regards to infringement and damages in connection with U.S. Patent No. 5,004,681.

[6]  *See* PharmaStem's Motion to Dismiss at pp. 14-15 (Docket No. 18).

DIDIER'S MOT. TO DISMISS CBR'S COUNTERCLAIMS
CASE NO. 04-3072 JSW
[40923-0005/BY042530.009]

1   Sleet held a telephonic hearing on the Contempt Motion, at which all parties appeared, on August

2   6, 2004. *See* Fox Decl., Exh. 1.

3        At the August 6, 2004 hearing, all parties finally had an opportunity to be heard on their

4   positions regarding the conflict between the patent laws and unfair competition laws with respect

5   to the protection and enforcement of patent rights. Consequently, Judge Sleet held that "it is my

6   view at this stage of this discussion that PharmaStem is probably not in contempt of the Court's

7   July 2 order… [a]t least for that reason, and perhaps others, that it would be, I think, prudent for

8   the Court to consider this as a motion to amend the July 2 order rather that to find PharmaStem in

9   contempt of that order." Fox Decl., Exh. 1, Tr., 24:8-27:20. After providing guidance as to the

10   parties' respective rights and privileges, Judge Sleet directed the parties toward an informal

11   resolution: "So I'm interested in knowing what, if anything, you can conceive among you that you

12   can do about this release that will accommodate PharmaStem's right to announce, in good faith,

13   the existence of lawsuits and its intent to protect its intellectual property rights while at the same

14   time not interfering with this Court's process and interfering with the ability of potential customers

15   out there, obstetricians and patients, to collect cord blood in an appropriate way." Fox Decl., Exh.

16   1, Tr., 27:13-20. After reiterating that "[a]nd, again, I want to remind you, Mr. Englander [counsel

17   appearing on behalf of Delaware Defendants], that I am not inclined to a finding of contempt

18   under the circumstances," Judge Sleet held—and is still so holding—the matter "under

19   advisement." Fox Decl., Exh. 1, Tr., 33:12-35:17.

20        **2.**    **The Court should decline to assert jurisdiction over the duplicative**

21            **claims.**

22        As part of its general power to administer its docket, a district court may dismiss a suit that

23   is duplicative of another federal court suit. *See Colorado River Water Conservation Dist. v.*

24   *United States*, 424 U.S. 800, 817 (1976)("As between federal district courts, ... though no precise

25   rule has evolved, the general principle is to avoid duplicative litigation."). The complex problems

26   that can arise from multiple federal filings do not lend themselves to a rigid test, but require

27   instead that the district court consider the equities of the situation when exercising its discretion.

28   *See Colorado River*, 424 U.S. at 817. The power to dismiss a duplicative lawsuit is meant to

- 14 -

1    foster judicial economy and the "comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-*

2    *O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952).

3            Thus, CBR should be precluded or estopped from bringing its First through Sixth

4    Counterclaims to this action because, of its own volition, it sought and achieved the Delaware

5    district court's jurisdiction over the same subject matter. "Claims are the same where they arise

6    from the same operative facts even if the operative facts support different legal theories which

7    cannot all be brought in one court." *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1567

8    (Fed.Cir. 1988). Here, the operative facts are exactly the same as those at issue in the other court.

9    The relevant parties are also the same. Lastly, the relief sought is also exactly the same.[7] Thus,

10   for this independent reason alone, CBR should be precluded from being permitted to bring the

11   duplicative claims before this Court.

12                        V.        CONCLUSION

13           For all of the above reasons, counterdefendant Nicholas Didier respectfully requests that

14   the Court dismiss CBR's First, Second, Third, Fourth, Fifth, and Sixth Counterclaims with

15   prejudice, and for what other relief the Court may deem proper and just.

16

17   DATED: September 20, 2004                **PERKINS COIE** LLP

18

19                                           By _____/s/_____
                                                Paul J. Andre, Esq.
20                                              Attorneys for Nicholas Didier

21

22   _____

23       [7] Notably, all of the relief requested by CBR, under its non-patent-related counterclaims, is
24   injunctive and exactly the same as that sought—and to a measure—already achieved in its Motion
     for Injunctive Relief, before another court. The sole exception is a vague and unsupportable
25   request for an impossibly speculative accounting, damages to be proven at trial, punitive damages,
     and costs and fees, which were within the Delaware district court's discretion to award for the
26   Delaware Defendants' Contempt Motion. *See In re: Arthur Treacher's Franchisee Litig.*, 689 F.2d
     1150, 1158-59 (3rd. Cir. 1982)(district courts are afforded broad discretion to fashion a contempt
27   sanction that will achieve ***full remedial relief***). Given Judge Sleet's inclination to deny CBR such
28   relief, CBR is obviously attempting another bite at the apple in this jurisdiction.
                                                - 15 -