BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In re: PharmaStem Therapeutics Patent Litigation,

MDL Docket No. _____

MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER FOR CONSOLIDATION
AND
COORDINATION OF PRETRIAL PROCEEDINGS IN A SINGLE FORUM

Cryo-Cell International, Inc., CorCell, Inc., ViaCell, Inc. and CBR Systems, Inc. and 15 other individuals and entities[1] ("Movants") move the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407 to take jurisdiction over seven actions presenting claims related to a series of patents held by PharmaStem Therapeutics, Inc. ("PharmaStem") and transfer them to

---

[1] The four corporations listed are joined in this motion by the following entities, each of which has been named as a defendant in an action for patent infringement brought by PharmaStem Therapeutics, Inc. ("PharmaStem"):
Bruce Zafran, M.D., Molly McBride, M..D., Carlo M. Croce, M.D., Sutter Health, Obstetrical and Gynecological Associates, P.A., Fempartners, Inc., and Caritas St. Elizabeth's Medical Center of Boston, Inc., Monica Aszlerbaum, Andrew Cassidenti, Eunice U. Lee, Carla Wells, Anita York, Bruce A. Hagadorn, Rahasree T. Seshadri and Arthur Goldstein.

the United States District Court for the District of Delaware (Hon. Gregory M. Sleet) for consolidation and coordination of pretrial proceedings in a single forum.[2]

These cases should be consolidated in the District of Delaware before Judge Sleet because

- All of the cases involve issues that are already under consideration in one or both of the cases presently before Judge Sleet;

- The cases involve a set of patents that have very similar claims, virtually the same specification, and the relevant prior art as to each patent is identical;

- Judge Sleet, who has already conducted a jury trial and decided post-trial motions relating to two of the patents, has gained considerable knowledge concerning these patents and the issues that will be litigated; and

- All remaining defendants in the infringement suits brought by PharmaStem have joined in the request for consolidation of these cases in Delaware.

## Preliminary Statement

The cases that are the subject of this motion involve claims of patent infringement brought by PharmaStem Therapeutics, Inc. ("PharmaStem"). Each case involves patents derived from a single patent application, serial no. 07/119,746, filed November 12, 1987. The patents are U. S. Patents nos. 5,004,681 ('681 patent), 5,192,553 ('553 patent), 6,569,427 ('427 patent) and 6,461,645 ('645 patent). In general, these patents relate to compositions and methods

---

[2] A list of the cases is attached to the motion as Schedule A. Copies of the complaints and, where applicable, counterclaims, are attached as Exhibits F through P to the Affidavit of James J. Rodgers ("Rodgers Affidavit") submitted herewith.

involving the preservation of stem cells derived from human umbilical cord blood and therapeutic uses of such cells. The bulk of the specification of each patent is identical, and there are close parallels among the claims. The prior art that will be relevant to the defenses of anticipation and obviousness will also be the same in each of the infringement cases. All of the remaining defendants in all of the infringement cases join in the request for consolidation.

Judge Sleet has already conducted a jury trial on validity and infringement issues, and has ruled on post-verdict motions by PharmaStem the first action filed in Delaware in 2002 against several companies engaged in the private banking of umbilical cord blood, including ViaCell, CBR, CorCell and Cryo-Cell, alleging infringement of the '681 and '553 patents. Judge Sleet is also engaged in conducting ancillary proceedings relating to PharmaStem's conduct regarding its threats of enforcement of all of its patents, in which the scope of the claims of those patents is at issue. As Judge Sleet recently observed, he is "intimately familiar" with the issues in the lawsuits.[3]

## Procedural Background

PharmaStem filed its initial action in Delaware in February, 2002, alleging infringement of the '681 and '553 patents. That complaint named as defendants a number of companies engaged in the private banking of umbilical cord blood, i.e., the storage of a newborn's cord

---

[3] As Judge Sleet stated in a telephonic conference with counsel for the parties in the initial Delaware action on October 5, 2004, "Well, this Court is intimately familiar. It has had it now, as you point out in the plaintiff's motion for the issuance of a preliminary injunction, is very familiar with the background involved here, with the particular issues that are in dispute. The Court, after all, has had a jury trial and presided over a jury trial on the matter and has had the opportunity to peruse and investigate and consider in-depth post-verdict motions and the record in support of those motions. So to the extent that these other patents might be placed before this court …after all, as I understand it, they raise, if not identical issues, at least very, very similar issues to the '681 and '553 patents." (Transcript of hearing, October 5, 2004 at pp. 10-11, a copy of which is attached to the Affidavit of James J. Rodgers as Exhibit "T."

blood for the use of the child or its family.[4] The initial Delaware action proceeded to a trial in October, 2003 and ended in a jury verdict against ViaCell, CBR, Cryo-Cell and CorCell, finding the patents valid and infringed. On September 15, 2004, Judge Sleet entered his ruling on post-trial motions finding, *inter alia*, that the defendants were entitled to judgment as a matter of law on infringement of the '553 patent and a new trial on infringement of the '681 patent.[5]

While the post-trial motions in the initial Delaware action were pending, on July 2, 2004, Judge Sleet issued a preliminary injunction order against PharmaStem. Judge Sleet found that certain statements made by PharmaStem, in an effort to dissuade obstetricians from collecting umbilical cord blood for their patients who were customers of one of the defendants, were false and misleading, and he enjoined PharmaStem from making any further false and misleading statements directed to obstetricians. Subsequent motions raising issues of contempt of the July 2, 2004 order are pending before Judge Sleet.

On July 28, 2004, PharmaStem filed an action in the Northern District of California against CBR and Sutter Health, alleging infringement of the '645 patent by CBR and of the '427 patent by both CBR and Sutter Health. CBR has filed an answer and counterclaim, in which it has joined Nicholas Didier ("Didier"), PharmaStem's Chief Executive Officer, Stembanc, Inc. ("Stembanc") and Stembanc's CEO, Archibald Grabinski. CBR's counterclaim asserts claims

---

[4] Several of the initial defendants in that case went out of business shortly before or shortly after the case was filed. One defendant went out of business immediately before trial, and a default was entered against it. Another defendant reached a settlement with PharmaStem shortly before trial.

[5] The issues that were dispositive on these points are directly relevant to issues of infringement of the '427 and '645 patents, which are the subject of the five actions filed in late July and early August 2004 by PharmaStem against the same four cord blood banks, as well as fifteen other moving defendants, including obstetricians, medical practices and health care facilities.

for violations of the Lanham Act and state law claims, *inter alia*, for unfair and deceptive trade practices and tortious interference (in addition to claims for a declaration of invalidity and non-infringement) arising from conduct that includes threats to obstetricians of liability for infringement of PharmaStem's patents. The counterclaim-defendants have filed motions to dismiss, which have not yet been briefed. No discovery has been conducted.

Also on July 28, 2004, PharmaStem filed an action in the District of Massachusetts against ViaCell, Obstetrical and Gynecological Associates, P.A., Fempartners, Inc., and Caritas St. Elizabeth's Medical Center of Boston, Inc., alleging infringement of the '645 patent by ViaCell and of the '427 patent by ViaCell, Obstetrical and Gynecological Associates, P.A., Fempartners, Inc., and Caritas St. Elizabeth's Medical Center of Boston, Inc. No response has yet been filed to the complaint, and no discovery has taken place.

On the same day, PharmaStem filed an action in the Eastern District of Pennsylvania against CorCell, Molly McBride MD and Carlo Croce, MD, alleging infringement of the '645 patent by CorCell and of the '427 patent by CorCell and Drs. McBride and Croce. Dr. McBride has filed a motion to dismiss for lack of personal jurisdiction and CorCell and Dr. Croce have answered the complaint. CorCell asserted a counterclaim against PharmaStem, Didier and Stembanc for violations of the Lanham Act and state law claims, *inter alia*, for tortious interference, based on similar allegations to those made by CBR. PharmaStem and Stembanc have filed motions to dismiss the counterclaims. No discovery has taken place.

Also on July 28, 2004, PharmaStem filed an action in the Middle District of Florida against Cryo-Cell and Dr. Bruce Zafran alleging infringement of the '645 patent by Cryo-Cell and of the '427 patent by Cryo-Cell and Dr Zafran. The defendants have answered the complaint

and Cryo-Cell has asserted a counterclaim against PharmaStem and Didier for violations of the Lanham Act and state law claims, *inter alia*, for unfair and deceptive trade practices and tortious interference, based on allegations similar to those made by CBR and CorCell. PharmaStem and Stembanc have filed motions to dismiss the counterclaims. No discovery has taken place.

On August 5, 2004, PharmaStem filed an action in the Central District of California against CureSource, Inc., a recently-formed private cord blood bank, and twelve physicians, asserting infringement by CureSource of the '681 and '645 patents, and of the '427 patent by CureSource and all of the physician-defendants. It is believed that CureSource and three of the physician defendants have been dismissed from the action by PharmaStem pursuant to agreement. A default has been entered against one of the physicians. The eight remaining physician-defendants have filed an answer and counterclaims for a declaration of non-infringement and invalidity of the '427 patent. No discovery has been taken in this action.

On October 7, 2004, ViaCell, joined in an amended complaint by Cryo-Cell and CorCell, brought an action in the District of Delaware against PharmaStem, presenting claims of antitrust and Lanham Act violations by PharmaStem, as well as state law claims for tortious interference and for unfair and deceptive trade practices arising from PharmaStem's efforts to require obstetricians to agree to refrain from conduct that is beyond the scope of PharmaStem's patents as a condition of avoiding suit for infringement of those patents.[6] Judge Sleet has scheduled a hearing on ViaCell's motion for preliminary injunction on November 9, 2004. Limited discovery related to that motion has been conducted.

In addition, Judge Sleet has scheduled a hearing on PharmaStem's motion for preliminary injunction in the original Delaware action, also for November 9, 2004.

## Argument

### I. THE PENDING LAWSUITS SHOULD BE CONSOLIDATED IN A SINGLE FORUM FOR PRETRIAL PROCEEDINGS.

Consolidation and coordination in a single forum of the seven actions will significantly advance the just and efficient conduct of the litigation as well as the convenience of the parties, because of the great similarity in subject matter of all the cases. Choosing the District of Delaware as that forum makes the most since because the first case was brought there, the judge there has already conducted a trial of issues related to those commonly presented in all of the cases and it is a forum that is convenient for most parties. Moreover, Judge Sleet will be conducting a hearing on issues involving the scope of the patents asserted in the cases filed in the other jurisdictions as a result of claims raised in the most recent case filing in Delaware.

Section 1407 (a) provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district of coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

---

[6] Although PharmaStem has not brought any suit on U.S. Patent No. 6,605,275 (which also has a common parent application to the other PharmaStem patents) it is also the subject of some of the conduct at issue in the recently filed Delaware action.

28 U.S.C. § 1407. Under this provision, the pending actions should be transferred to and consolidated in a single forum for coordinated pretrial proceedings.

In each one of the actions (except the last filed by ViaCell), PharmaStem has pleaded claims relating to allegations of infringement of at least two of four patents that arise from a common patent application. The specifications of each patent are the same (with some added material in the later-filed applications), the claims are closely related, and this relevant prior part is identical. Without exception, every case presents common questions of fact. The law is clear that slight pleading differences (including in claims and parties) do not affect the appropriateness of coordinating and consolidating the suits. See In re Eastern Airlines, Inc. Flight Attendant Weight Program Litig., 391 F. Supp. 763, 764 (J.P.M.L. 1975). The definitive question under section 1407 is whether the cases have the requisite factual similarity that allows a transfer to meet the policy goals that coordination and consolidation seek to advance – i.e., convenience and efficiency.

Here, the substantial overlap of common questions of fact warrants consolidation of these actions for coordinated pretrial proceedings. See e.g., In re Phonometrics, Inc., Elec. Long Distance Call Cost Computer and Recorder Patent Litig., No. 1141, 1997 WL 83673, at *1 (J.P.M.L. Feb. 19, 1997); In re Cuisinart Food Processor Antitrust Litig., 506 F. Supp. 651, 654 (J.P.M.L. 1981); In re 'The Exorcist' Copyright Infringement Litig., 411 Supp. 793, 794 (J.P.M.L. 1976).

As the Panel stated in In re Computervision Corp. Sec. Litig.:

> [T]he Panel finds that the seventeen actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the District of Massachusetts will best serve the convenience of the parties and witnesses and

>promote the just and efficient conduct of this litigation. All actions are rooted in allegations that defendants, in connection with an August 1992 public offering of Computervision Corp. securities, misrepresented or omitted material facts concerning Computervision's financial and operating condition. Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings...and conserve the resources of the parties, their counsel and the judiciary.

In re Computervision Corp. Sec. Litig., 814 F. Supp. 85, 85-6 (J.P.M.L. 1993) (noting that fourteen of the seventeen actions were brought in the Massachusetts district, Computervision was headquartered in Massachusetts and the Massachusetts actions had already been consolidated); see also In re Food Fair Sec. Litig., 465 F. Supp. 1301, 1303 (J.P.M.L. 1979) (granting consolidation and transfer of numerous securities and derivative cases after finding that common questions of fact existed).

It is no bar to transfer that the issues presented, and the patents involved, in the cases are not perfectly congruent. "Section 1407 does not require a complete identity or even a majority of common factual issues as a predicate to transfer." Cygnus Telecommunications Technology LLC, Patent Litigation, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001)(rejecting argument that transfer was unnecessary where discovery taken in a prior action on the same patent was available; case transferred to a judge who had previously been assigned to one of the cases). similarly, the fact that the cases proposed for consolidation are geographically scattered and no single district is the focal point of the litigation does not preclude transfer. Wireless Telecommunications Replacement Protection Programs Litigation, 180 F. Supp. 2d 1381 (J.P.M.L. 2001)(cases transferred to court where one action was already pending). Clearly, given the virtually identical content of the patents in suit here, consolidation is warranted.

Transferring the actions so that all seven actions are united in a single forum will serve "the convenience of parties and witnesses and...promote the just and efficient conduct of [the] actions". 28 U.S.C. § 1407. All of the second wave lawsuits have been commenced within the past 90 days, and no discovery has occurred in any of the infringement cases. Given the overlap of factual questions and the similarity of the claims and defenses, discovery in each case will cover a substantial number of common issues. Absent transfer, consolidation and coordination, discovery – and any resulting motion practice – could significantly duplicate itself. That would unduly burden the parties, needlessly waste judicial resources and potentially result in inconsistent rulings on discovery motions and other pretrial issues. Such repetitive discovery could also impose substantial burdens on witnesses, many of whom would be subject to multiple depositions on the same issues in different fora.

These are precisely the problems that section 1407 was designed to cure. See S. Rep. No. 454, 90th Cong., 1st Sess. 2 (1967) ("the main purpose of transfer for consolidation or coordination of pretrial proceedings is to promote the ends of efficient justice"). Consolidation would allow a single judge to formulate a comprehensive pretrial discovery plan that would avoid repetitive discovery, reduce litigation costs, minimize inconvenience to parties and witnesses and allow all actions to proceed most efficiently. See In re Cooper Tire & Rubber Co. Tires Prods. Liab. Litig., No. 1393, 2001 WL 253115 at *1 (J.P.M.L. Feb. 23, 2001) (centralization is "necessary in order to eliminate duplicative discovery, prevent inconsistent trial rulings, and conserve the resources of parties, their counsel and the judiciary"); In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 844 F. Supp. 1553, 1554 (J.P.M.L. 1994) (same); In re Silicone Gel Breast Implants Prods. Liab. Litig., 793 F. Supp. 1098, 1100

(J.P.M.L. 1992) (same); In re Air Crash Disaster Near Chicago, 476 F. Supp. 445, 447 (J.P.M.L. 1979) (listing the avoidance of repetitious depositions and the forestalling of conflicts in pretrial rulings among the benefits of consolidated pretrial proceedings).

## II. THE CASES SHOULD BE CONSOLIDATED IN THE DISTRICT OF DELAWARE

The District of Delaware is by far the most appropriate forum for consolidated pretrial proceedings. The first case was filed there by PharmaStem, and Judge Sleet of that court is "intimately familiar" with the issues in the lawsuits. See In re Evergreen Valley Project Litig., 366 F. Supp. 510, 512 (J.P.M.L. 1973) (finding appropriate transferee forum to be a district that was already familiar with the parties and the underlying transactions); In re Multi-Piece Rim Prods. Liab. Litig., 464 F. Supp. 969, 975 (J.P.M.L. 1979) (finding an appropriate transferee forum to be a district in which the judge "has already become familiar with the issues involved in this litigation").

The District of Delaware is easily accessible by train and other transportation facilities. There are frequent flights from every major city to Philadelphia, whose airport serves Wilmington. A litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, has relatively predictable weather and offers a well developed support system for legal services.

The District of Delaware is an appropriate forum for transfer because a review of the Federal Judicial Caseload Profile report for 2003 shows that the District of Delaware has the available resources to undertake the management of this litigation. The median time from filing to trial in civil cases in Delaware is 24 months, less than that in the Northern District of

California (30.3) and the District of Massachusetts (28.5), and not significantly greater than that in the other districts in which PharmaStem patent cases are pending.[7] Moreover, of the districts in which these cases have been filed, the District of Delaware had the greatest drop in new filings from 2002 to 2003, 32.9%. See In re Preferential Drug Prods. Pricing Antitrust Litig., 429 F. Supp. 1027, 1029 (J.P.M.L. 1977) (transferring cases to the district with the shorter median time from filing to disposition); see also In re Peruvian Road Litig., 380 F. Supp. 796, 798 (J.P.M.L. 1974) (condition of court's docket is relevant factor in selection of transferee forum).

All defendants in the infringement suits filed by PharmaStem have joined in the request for consolidation in the District of Delaware.

## CONCLUSION

For the reasons stated above, the Panel should take jurisdiction over the seven currently pending actions and enter an order transferring to the District of Delaware the five actions filed in other districts for consolidated and coordinated pretrial proceedings.

October 26, 2004

Respectfully submitted,

James J. Rodgers, Esq.
Evelyn H. McConathy, Esq.
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
215-575-7143

---

[7] Median time from filing to trial was 21.2 months in the Central District of California, 20.2 months in the Middle District of Florida and 19 months in the Eastern District of Pennsylvania.

Attorneys for Cryo-Cell International, Inc.
CorCell, Inc., Bruce Zafran, M.D., Molly
McBride, M.D. and Carlo M. Croce, M.D.

Paul F. Ware, P.C.
John C. Englander, Esq.
Elaine Herrmann Blais, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
617-570-1000
Attorneys for ViaCell, Inc., Obstetrical and
Gynecological Associates, P.A.,
Fempartners, Inc., and Caritas St.
Elizabeth's Medical Center of Boston, Inc.

William F. Abrams, Esq.
Thomas F. Chaffin, Esq.
Pillsbury Winthrop LLP
2475 Hanover Street
Palo Alto, CA 94304-1114
650-233-4668
Attorneys for CBR Systems, Inc., Sutter
Health, Monica Aszterbaum, M.D., Andrew
Cassidenti, M.D., Eunice U. Lee, M.D.,
Carla Wells, M.D., Anita York, M.D., Bruce
A. Hagadorn, M.D., Rafasree T. Seshadri,
M.D., and Arthur Goldstein, M.D.