1  PILLSBURY WINTHROP LLP
   William F. Abrams (State Bar No. 88805)
2  Thomas F. Chaffin (State Bar No. 112368)
   Chang H. Kim (State Bar No. 195554)
3  Peter H. Nohle (State Bar No. 209446)
   2475 Hanover Street
4  Palo Alto, CA 94304-1115
   Telephone: (650) 233-4500
5  Facsimile: (650) 233-4545

6  Attorneys for Defendants and Counterclaimants
   CBR SYSTEMS, INC. and SUTTER HEALTH
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12 PHARMASTEM THERAPEUTICS, INC., a    )  **No. C 04 3072 JSW**
   Delaware corporation,               )
13                                     )  CBR SYSTEMS, INC.'S NOTICE OF
              Plaintiff,               )  MOTION AND MOTION TO STAY
14                                     )  PROCEEDINGS PENDING RESOLUTION
       vs.                             )  OF THE MULTIDISTRICT LITIGATION
15                                     )  MOTION TO TRANSFER FOR
   CORD BLOOD REGISTRY, INC., dba      )  CONSOLIDATION AND COORDINATION
   CBR, a California corporation, and SUTTER ) OF PRETRIAL PROCEEDINGS IN A SINGLE
16 HEALTH, INC., a California corporation, ) FORUM AND SUPPORTING
                                       )  MEMORANDUM OF POINTS AND
17            Defendants.              )  AUTHORITIES IN SUPPORT THEREOF
                                       )
18                                     )  Date:  February 2, 2005
                                       )  Time:  9:00 a.m.
19                                     )  Location:  Courtroom 2
                                       )  Judge:  Hon. Jeffrey S. White
20                                     )
   CBR SYSTEMS, INC., dba CBR, a       )
21 California corporation, and SUTTER  )
   HEALTH, a Not For-Profit Public Benefit )
22 corporation,                        )
                                       )
23            Counterclaimants,        )
                                       )
24     vs.                             )
                                       )
25 PHARMASTEM THERAPEUTICS, INC.,      )
   a Delaware corporation, STEMBANC, INC., )
26 a Ohio corporation, NICHOLAS DIDIER, )
   and ARCHIBALD A. GRABINSKI,         )
27                                     )
              Counterdefendants.       )
28                                     )

60380174v1                                    MOTION TO STAY PENDING MDL MOTIONS
                                                      CASE NO. C 04 3072 JSW

**I.  NOTICE OF MOTION**

1. To PharmaStem Therapeutics, Inc. ("PharmaStem"), Nicholas Didier ("Didier"), Stembanc, Inc. ("Stembanc"), and Archibald A. Grabinski ("Grabinski"), collectively and individually referred to herein as "Counterdefendants," and their attorneys, PLEASE TAKE NOTICE THAT at 9:00 a.m. on February 2, 2005, or earlier as counsel may be heard before the Honorable Jeffrey S. White in the United States District Court at 450 Golden Gate Ave., San Francisco, California, Defendant and Counterclaimant CBR Systems, Inc. ("CBR") will move the Court to stay all proceeding pending the decision from the Multi-District Litigation Panel (the "MDL Panel") on CBR's and Sutter Health's Motion to Transfer for Consolidation and Coordination of Pretrial Proceedings in a Single Forum (the "MDL Motion").  This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, Declaration of Chang H. Kim, and such other material as may be presented to the Court before or at the hearing.

CBR is also requesting, in separate papers filed concurrently herewith, that this Court schedule the hearing for CBR's Motion to Stay Proceedings on November 12, 2004, December 10, 2004, January 7, 2005, or January 14, 2005.

**II.  MEMORANDUM OF POINTS AND AUTHORITIES**

**A.  INTRODUCTION**

This is not the first time PharmaStem and CBR have been adversaries in litigation involving the same family of patents relating to compositions and methods relating to the preservation of stem cells derived from human umbilical cord blood and therapeutic uses of such cells.  Over two and a half years ago, on February 2002, PharmaStem sued CBR, along with other defendants,[1] in the Delaware District Court ("Delaware Action"), alleging infringement of U. S. Patent Nos. 5,004,681 (the "'681 patent") and 5,192,553 (the "'553

---

[1] Defendants include, *inter alia,* ViaCell, Inc., Cryo-Cell International, Inc. and CorCell, Inc.

patent").[2]  Exh. 1[3].  The Delaware Action was assigned to Judge Gregory M. Sleet.

In October 2003, one and a half year after PharmaStem filed the complaint in the Delaware Action, a jury returned a verdict finding the '681 patent and '553 patent valid and infringed in the Delaware Action.  Exh. 1 to PharmaStem's July 28, 2004 Notice of Pendency of Other Action Pursuant to Civil Local Rule 3-13.  However, on September 15, 2004, Judge Sleet entered his ruling on post-trial motions in the Delaware Action finding, *inter alia*, that CBR and other defendants were entitled to judgment as a matter of law on non-infringement of the '553 patent and a new trial on infringement of the '681 patent.  Exh. 2.

Not satisfied with the proceeding in the Delaware Action, on July 2004, PharmaStem sued CBR and Sutter Health in this court, alleging infringement of U. S. Patents Nos. 6,569,427 (the "'427 patent") and 6,461,645 (the "'645 patent").  CBR and Sutter Health answered denying all charges, and CBR counterclaimed that PharmaStem and counterdefendants Didier, PharmaStem's CEO, Stembanc, a licensee of PharmaStem, and Grabinski, Stembanc's CEO, engaged in, *inter alia*, intentional and negligent interference with contractual or other economic relationships, unfair competition, trade libel, violation of § 43(a) of the Lanham Act, and violation of Cal. Bus. & Prof. Code § 17500.

Also, in July and August 2004, PharmaStem filed four other lawsuits in four different district courts on these same patents: (a) *PharmaStem Therapeutics, Inc. v. CureSource, Inc., et al.,* filed on August 4, 2004, in the United States District Court for the Central District of California as Civil Action No. SA-CV-04-921 GLT, and assigned to the Honorable Gary L. Taylor (the "Central District Action") (Exh. 3); (b) *PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al.,* filed on July 28, 2004, in the United States District

---

[2] *PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al.*, filed on February 22, 2002, in the United States District Court for the District of Delaware as Civil Action No. 02-148 GMS.

[3] All exhibits, except as noted, are attached to the Declaration of Chang H. Kim in Support of CBR's Motion to Stay Proceedings Pending Resolution of the Multidistrict Litigation Motion to Transfer for Consolidation and Coordination of Pretrial Proceedings in a Single Forum.

1 Court for the District of Massachusetts Civil Action No. 04-CV-11673 RWZ (the
2 "Massachusetts Action") (Exh. 4); (c) *PharmaStem Therapeutics, Inc. v. Cyro-Cell*
3 *International, Inc., et al.,* filed on July 28, 2004, in the United States District Court for the
4 Middle District of Florida Civil Action No. 8:04-CV-1740-T-30TGW (the "Florida
5 Action") (Exh. 5); and (d) *PharmaStem Therapeutics, Inc. v. Corcell, Inc., et al.,* filed on
6 July 28, 2004, in the United States District Court for the Eastern District of Pennsylvania
7 Civil Action No. 2:04-CV-03561-RK (the "Pennsylvania Action") (Exh. 6).

8     Below is the table identifying PharmaStem's patents that it alleges are infringed by
9 the defendants in the six different actions. The '427 patent and the '553 patent are
10 continuation and/or continuation-in-parts to the '681 patent and the '553 patent.

|  | the '681 patent | the '553 patent | the '427 patent | the '645 patent |
|---|---|---|---|---|
| Delaware Action | Asserted | Asserted | Not Asserted | Not Asserted |
| Northern District Action | Not Asserted | Not Asserted | Asserted | Asserted |
| Central District Action | Asserted | Not Asserted | Asserted | Asserted |
| Massachusetts Action | Not Asserted | Not Asserted | Asserted | Asserted |
| Florida Action | Not Asserted | Not Asserted | Asserted | Asserted |
| Pennsylvania Action | Not Asserted | Not Asserted | Asserted | Asserted |

19     PharmaStem filed six separate lawsuits involving the same PharmaStem family of
20 patents in six different district courts. And, all four patents (i.e., the '681 patent, the '553
21 patent, the '427 patent and the '645 patent) relate to compositions and methods involving
22 the preservation of stem cells derived from human umbilical cord blood and therapeutic
23 uses of such cells and are the same family of patents.

24     Last month, counterdefendants PharmaStem, Didier, Stembanc and Grabinski filed
25 motions in this Action, including their respective motion to dismiss and
26 PharmaStem's/Didier's motion to sever. These motions are currently noticed for three
27 separate hearing dates: December 10, 2004, and January 7 and 14, 2005.

28

CBR, Sutter Health, and other defendants in the six lawsuits recently filed its MDL Motion. Exh. 7 and Exh. 8. In the MDL Motion, CBR, Sutter Health, and other defendants request the MDL Panel to transfer for consolidation and coordination of pretrial proceedings in a single forum for all Actions.

**B.     REQUESTED RELIEF**

CBR requests this Court to stay all proceeding pending the decision of the MDL Panel on the MDL Motion.

**C.     STATEMENT OF RELEVANT FACTS**

1. PHARMASTEM PATENTS

PharmaStem brought this instant Action against CBR and Sutter Health, alleging infringement the '427 patent and the '645 patent. Both the '427 patent and the '645 patent derived from a single patent application, Serial No. 07/119,746, filed November 12, 1987, which is now the '681 patent. The '427 patent also derives from the '553 patent. In general, all four patents relate to compositions and methods involving the preservation of stem cells derived from human umbilical cord blood and therapeutic uses of such cells. The bulk of the specification of each patent is identical, and there are close parallels among the claims. Below are exemplary claims in the PharmaStem's patents.

| PharmaStem's Asserted Patents | Exemplary Patent Claims |
|---|---|
| the '681 patent | Claim 1 reads "[a] cryopreserved therapeutic composition comprising: viable human neonatal or fetal hematopoietic stem cells derived from the umbilical cord blood or placental blood of a single human collected at the birth of said human, in which said cells are present in an amount sufficient to effect hematopoietic reconstitution of a human adult; and an amount of cryopreservative sufficient for cryopreservation of said cells." |
| the '645 patent | Claim 1 reads "A cryopreserved pharmaceutical composition comprising: (a) viable human neonatal or fetal hematopoietic stem cells derived from the umbilical cord blood or placental blood of a single human collected at the birth of said human, in which said cells are present in an amount sufficient to effect hematopoietic reconstitution of a human adult; (b) an amount of cryopreservative |

| | | |
|---|---|---|
| | | sufficient for cryopreservation of said cells; and (c) a pharmaceutically acceptable carrier." |
| | the '553 patent | Claim 13 reads "A method for hematopoietic or immune reconstitution of a human comprising: (a) isolating human neonatal or fetal blood components containing hematopoietic stem cells; (b) cryopreserving the blood components; (c) thawing the blood components; and (d) introducing the blood components into a suitable human host, such that the hematopoietic stem cells are viable and can proliferate within the host. |
| | the '427 patent | Claim 1 reads "A method for treating a human patient in need of hematopoietic reconstitution comprising introducing into the human patient a composition comprising a cryoprotective agent and human neonatal or fetal hematopoietic stem cells derived from the umbilical cord blood or placental blood of a human collected at birth of said human so as to provide hematopoietic reconstitution." |

2.   PROCEDURAL HISTORY

In February 2002, PharmaStem filed a patent infringement suit in Delaware against several companies, including CBR, engaged in the private banking of umbilical cord blood, alleging infringement of the '681 and '553 patents. In October 2003, a jury trial was completed. Exh. 3. On September 15, 2004, Judge Sleet entered his ruling on post-trial motions finding, *inter alia*, that the defendants, including CBR, were entitled to judgment as a matter of law on non-infringement of the '553 patent and a new trial on infringement of the '681 patent. The issues that were dispositive on these points are directly relevant to issues of infringement of the '427 and '645 patents, which are the subject of the instant Action.

Judge Sleet has also considered motions relating to PharmaStem's conduct regarding its threats of enforcement of all of its patents, in which the scope of the claims of those patents is at issue. While the post-trial motions in the Delaware Action were pending, on July 2, 2004, Judge Sleet issued an injunction order against PharmaStem. Exh. 9. Judge Sleet found that certain statements made by PharmaStem, in an effort to dissuade obstetricians and hospitals from collecting umbilical cord blood for their patients who were customers of one of the defendants, were false and misleading, and he enjoined

PharmaStem from making any further false and misleading statements directed to obstetricians. Id. Subsequent motions raising issues of contempt of the July 2, 2004 order are pending before Judge Sleet. There are also numerous other motions currently pending before Judge Sleet, including Defendants' Motion for Certification for Interlocutory Appeal, Defendants' Motion for Partial Reconsideration of Post-Trial Rulings, Defendants' Motion for Contempt and for Injunctive Relief, and Plaintiff's Motion for Preliminary Injunction. Exh. 10.

In several of the recently-filed actions, the defendant cord blood banks, including CBR, have asserted counterclaims against PharmaStem, Didier, Stembanc, and Grabinski. These claims are for unfair trade practices, tortious interference and similar claims arising out of allegations of false and misleading statements made to obstetricians and the general public threatening enforcement of PharmaStem's patents beyond the scope of those patents. In one action, several cord blood banks presented claims of antitrust and Lanham Act violations by PharmaStem arising from PharmaStem's efforts to require obstetricians to agree to refrain from conduct that is beyond the scope of PharmaStem's patents as a condition of avoiding suit for infringement of those patents. A preliminary injunction hearing in that case is scheduled for November 3, 2004, before Judge Sleet.

### D. ARGUMENTS

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *Landis v. North American Co.*, 299 U.S. 248, 254-255, 257 S.Ct. 163, 166, 81 L.Ed. 153, 158-159 (1936). To accomplish this, "a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it pending resolution of independent proceedings which bear on the case. This rule applies whether the separate proceedings are judicial, administration, or arbitral in character." *Leyva v. Certified Grocer's of California Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) (citations omitted), quoted in *Mediterranean Enterprises, Inc. v. Ssangyung*, 708

1  F.2d 1458, 1465 (9th Cir. 1983).  Factors to be considered in deciding whether to enter a
2  stay include judicial efficiency, burden on the parties imposed by proceeding with two
3  actions, and any prejudice caused by delay.  See *Micron Technology, Inc. v. Mosel Vitelic*
4  *Corp.*, 1999 U.S. Dist. Lexis 4792, *10 (D.C. Idaho 1999); *Organon Teknika Corp. v.*
5  *Hoffman-La Roche, Inc.*, 1997 U.S. Dist. Lexis 3798, *7 (M.D. N.C. 1997).  With the
6  increased calendar congestion in federal courts and other considerations of judicial
7  efficiency, it is not only appropriate by necessary for courts to avoid parallel actions
8  wherever possible.  *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979); *Yamaha Hatsudoki*
9  *Kabushiki Kaisha v. Bombardier, Inc.*, 60 U.S.P.Q. 2d (BNA) 1541 (C.D. Cal. 2001).
10       As Judge Sleet recently observed, he is "intimately familiar" with the issues in the
11  lawsuits.[4]  CBR, Sutter Health, along with other defendants in the other related lawsuits,
12  filed the MDL Motion to transfer for consolidation and coordination of pretrial proceedings
13  in a single forum.  Consolidation and coordination in a single forum of these actions will
14  significantly advance the just and efficient conduct of the litigation as well as the
15  convenience of the parties, because of the great similarity in subject matter of all the cases.
16  Choosing the District of Delaware as that forum makes the most sense because the first case
17  was brought there, the judge there has already conducted a trial of issues related to those
18  commonly presented in all of the cases and it is a forum that is convenient for most parties.
19  Even certain Counterdefendants concede in their motion to dismiss papers that CBR's
20  counterclaims subject to those motions should be addressed by the Delaware District Court.

---

[4] As Judge Sleet stated in a telephonic conference with counsel for the parties in the Delaware Action on October 5, 2004, "Well, this Court is intimately familiar.  It has had it now, as you point out in the plaintiff's motion for the issuance of a preliminary injunction, is very familiar with the background involved here, with the particular issues that are in dispute.  The Court, after all, has had a jury trial and presided over a jury trial on the matter and has had the opportunity to peruse and investigate and consider in-depth post-verdict motions and the record in support of those motions.  So to the extent that **these other patents might be placed before this court** …after all, as I understand it, **they raise, if not identical issues, at least very, very similar issues to the '681 and '553 patents**." (emphasis added) (Transcript of hearing, October 5, 2004 at pp. 10-11, a copy of which is attached as Exh. 11).

This Court has authority to stay all proceedings pending the decision by the Judicial Panel on Multidistrict Litigation.  See *Hertz Corp. v. The Gator Corp.*, 250 F.Supp.2d 421, 426 (D.N.J. 2003); see also *Moore v. Wyeth-Ayerst Laboratories*, 236 F. Supp.2d 509, 511 (D.Md 2002) (The MDL Panel has held that a district court has the authority to wait for a transfer order without ruling on a motion).  There is no justifiable reason why this Court should not granted a stay in this Action as it would clearly promote judicial efficiency, lessen the burden on the parties and the courts imposed by proceeding in the several jurisdictions, and there is no prejudice to the Counterdefendants caused by the stay.

While the MDL Motion is pending, all proceedings[5] should be stayed to avoid wasting this Court's resources and time because if the MDL Motion is granted, there may be inconsistent rulings and duplicative effort by the different courts..  See *Moore* at 511 (The MDL Panel noted that "[c]entralization under Section 1407 is…necessary in order to eliminate duplicative discovery, prevent inconsistent or repetitive pretrial rulings,…, and conserve the resources of the parties, their counsel and the judiciary).  As noted above, the Delaware Court is intimately familiar with the patents at issue and the issues relating to CBR's counterclaims.  During the past two and a half years, PharmaStem, CBR and the Delaware Court have been intimately involved in, *inter alia*, (1) a claim construction hearing on the '681 and '553 patents, (2) discovery disputes and motions, (3) a two week jury trial, (4) preliminary injunction motions and hearing, and (5) numerous post trial motions.  In fact, Judge Sleet already granted CBR an injunction on the issue of false and misleading statements, which is at the center of certain of CBR's counterclaims.

Absent a stay in this Action, there is a real concern for inconsistent rulings.  For example, the parties, particularly PharmaStem, can bring issues before any of the six district courts and argue about which ruling applies.  One such obvious concern is that PharmaStem can conduct parallel claim construction hearings at different district courts, and there is a

---

[5] "All proceedings" includes, but not limited to, initial disclosures, case management conferences, discovery, and motions.

1 real danger that the claim construction rulings will be inconsistent among the district courts.

2 Moreover, there will not be any prejudice or injury to Counterdefendants during the stay. Counterdefendants' pending motions will be adequately addressed after the stay is lifted, whether in this Court or the transferee's court. *Hertz Corp.* at 426 (granting motion to stay pending MDL motion because the party opposing the stay can secure effective relief after the stay is terminated). Counterdefendants will not suffer any irreparable injury as a result of this stay. The practical effect of the stay in this Action will ultimately promote judicial efficiency, lessen the burden on the parties, and will not cause any prejudice to the parties involved.

### C.    CONCLUSION

Accordingly, CBR moves this Court to stay all proceedings relating to the instant Action pending the resolution of the MDL Motion.

Dated:  October 28, 2004.

PILLSBURY WINTHROP LLP
William F. Abrams
Thomas F. Chaffin
Chang H. Kim
Peter H. Nohle
2475 Hanover Street
Palo Alto, CA 94304-1115

By _____

Attorneys for Defendant and Counterclaimant,
CBR SYSTEMS, INC.