1  PILLSBURY WINTHROP LLP
   William F. Abrams (State Bar No. 88805)
2  Thomas F. Chaffin (State Bar No. 112368)
   Chang H. Kim (State Bar No. 195554)
3  Peter H. Nohle (State Bar No. 209446)
   2475 Hanover Street
4  Palo Alto, CA 94304-1115
   Telephone: (650) 233-4561
5  Facsimile:  (650) 233-4545

6  Attorneys for Defendants and Counterclaimants
   CBR SYSTEMS, INC. and SUTTER HEALTH, INC.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11
   PHARMASTEM THERAPEUTICS, INC., a )   No. C 04 3072 JSW
12 Delaware corporation,             )
                                     )   CBR SYSTEMS, INC.'S OPPOSITION TO
13              Plaintiff,           )   NICHOLAS DIDIER'S MOTION TO
                                     )   DISMISS CBR SYSTEMS, INC.'S FIRST,
14        vs.                        )   SECOND, THIRD, FOURTH, FIFTH, AND
                                     )   SIXTH COUNTERCLAIMS PURSUANT
15 CORD BLOOD REGISTRY, INC., dba    )   TO FED. R. CIV. P. 12(b)(6)
   CBR, a California corporation; and SUTTER )
16 HEALTH, INC., a California corporation, )  Date:     January 7, 2005
                                     )   Time:     9:00 a.m.
17              Defendants.          )   Room:     Courtroom 2
                                     )   Judge:    Hon. Jeffrey S. White
18                                   )
                                     )
19                                   )
                                     )
20                                   )
                                     )
21 CBR SYSTEMS, INC., dba CBR, a     )
   California corporation; and SUTTER )
22 HEALTH, INC., a California corporation, )
                                     )
23              Counterclaimants,    )
                                     )
24        vs.                        )
                                     )
25 PHARMASTEM THERAPEUTICS, INC.,    )
   a Delaware corporation; STEMBANC, INC., )
26 a Ohio corporation; NICHOLAS DIDIER; )
   and ARCHIBALD A. GRABINSKI,       )
27                                   )
                Counterdefendants.   )
28                                   )

Table of Contents

Page

I. STATEMENT OF FACTS ................................................................................................ 1

II. ARGUMENT. ................................................................................................................... 1

    A. Standard on Motion to Dismiss for Lack of Personal Jurisdiction. ..................... 1

    B. This Forum has Specific Personal Jurisdiction Over Didier. ............................. 2

        1. Didier purposefully directed his activities toward this forum. ............... 2

        2. CBR's first through sixth counterclaims arise out of Didier's conduct directed toward this forum. ................................................................... 7

        3. Didier has not, and will not, be able to meet his burden of demonstrating that this Court's exercise of jurisdiction over him is unreasonable. ..................... 7

    C. CBR's Counterclaims Are Ripe For Consideration By This Court .................... 8

    D. CBR's First Through Sixth Counterclaims Sufficiently State Claims Upon Which Relief Can Be Granted .............................................................................. 9

    E. CBR Has Properly Pleaded Its Claims Against Didier In His Personal Capacity. ............................................................................................................ 10

    F. This Court Has Supplemental Jurisdiction Over CBR's Counterclaims ............ 11

    G. Didier's Argument That The Court Should Decline To Assert Jurisdiction Is Meritless. .......................................................................................................... 14

III. CONCLUSION. ............................................................................................................... 14

Table of Authorities

Page

Cases

*Amba Marketing Systems, Inc. v. Jobar International, Inc.*,
    551 F. 2d 784 (9th Cir. 1977)..................................................................................1

*American Family Ass'n, Inc. v. City and County of San Francisco*,
    277 F. 3d 1114 (9th Cir. 2002)..........................................................................11, 16

*Armstrong World Industries, Inc. v. Adams*,
    961 F. 2d 405 (3rd Cir. 1992)..................................................................................10

*AT & T v. Compagnie Bruxelles Lambert*,
    94 F. 3d 586 (9th Cir. 1996)....................................................................................1

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
    223 F. 3d 1082 (9th Cir. 2000)..........................................................................2, 4, 5

*Blue Ridge Bank v. Veribanc, Inc.*,
    755 F. 2d 371 (4th Cir. 1985)..................................................................................9

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).....................................3, 8

*Burgert v. Lokelani Bernice Pauahi Bishop Trust*,
    200 F. 3d 661 (9th Cir. 2000)..................................................................................12

*Calder v. Jones*,
    465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).................................3, 7, 10

*California Software Inc. v. Reliability Research, Inc.*,
    631 F. Supp. 1356 (C.D. Cal. 1986)................................................................. passim

*Caruth v. International Psychoanalytical Ass'n.*,
    59 F. 3d 126 (9th Cir. 1995)....................................................................................1

*Conley v. Gibson*,
    355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) .......................................12, 16, 17

*Cubbage v. Merchent*,
    744 F. 2d 665 (9th Cir. 1984), *cert. denied*, 470 U.S. 1005, 105 S. Ct. 1359,
    84 L. Ed. 2d 380 (1985) ........................................................................................10

*Dole Food Co. Inc. v. Watts*,
    303 F. 3d 1104 (9th Cir. 2002)................................................................................4

*Inamed Corp. v. Kuzmak*,
    249 F. 3d 1356 (Fed. Cir. 2001)..............................................................................7

*Insurance Company of North America v. Marina Salina Cruz*,
    649 F. 2d 1266 (9th Cir. 1981)............................................................................9, 10

*Janda v. Madera Community Hosp.*,
    16 F. Supp. 2d 1181 (E.D. Cal. 1998)..................................................................12, 15

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984).........................................3, 9

*Lake v. Lake*,
    817 F. 2d 1416 (9th Cir. 1987).........................................................................................2

*Mattel, Inc. v. MCA Records, Inc.*,
    296 F. 3d 894 (9th Cir. 2002).........................................................................................3

*Pacific Atlantic Trading Co. v. M/V Main Express*,
    758 F. 2d 1325 (9th Cir. 1985).......................................................................................9

*Panavision International, L.P. v. Toeppen*,
    141 F. 3d 1316 (9th Cir. 1998)..........................................................................2, 5, 6, 8

*PMC, Inc. v. Kadisha*
    78 Cal. App. 4th 1368 (2000).......................................................................................13

*Quality Foods v. Latin American Agribusiness Development*,
    711 F. 2d 989 (11th Cir. 1983)....................................................................................12

*Ruger v. Superior Court*,
    118 Cal. App. 3d 427 (Cal. Ct. App. 1981)..................................................................8

*Schwarzenegger v. Fred Martin Motor Company*,
    374 F. 3d 797 (9th Cir. 2004).................................................................................3

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990)....................................................................................1, 2

*Sinatra v. National Enquirer, Inc.*,
    854 F. 2d 1191 (9th Cir. 1988)...................................................................................4, 5

*Speegle v. Board of Fire Underwriters of the Pacific*,
    29 Cal. 2d 34 (1946)....................................................................................................12

*United States Liability Ins. Co. v. Haidinger-Hayes*,
    1 Cal. 3d 586 (1970)....................................................................................................13

*William H. Morris Co. v. Group W, Inc.*
    66 F. 3d 255, 257 (9th Cir. 1995).............................................................................14

*Williamson v. General Dynamics Corp.*,
    208 F. 3d 1144 (9th Cir. 2000), *cert. denied*, 531 U.S. 929, 121 S. Ct. 309,
    148 L. Ed. 2d 247 (2000) ............................................................................................12

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980) .......................................6

Statutes and Codes

Lanham Act
    Section 43(a) .................................................................................................10, 11, 12

United States Code
    Title 28, section 1651 All Writs Act ..............................................................................13

### Rules and Regulations

Federal Rules of Civil Procedure
    Rule 4(k)(1)(A) ................................................................................................................2
    Rule 12(b)(6) .........................................................................................................10, 12

1  Defendant and Counterclaimant CBR Systems, Inc. ("CBR") respectfully requests that this Court deny Counterdefendant Nicholas Didier's ("Didier") Motion to Dismiss CBR's First, Second, Third, Fourth, Fifth and Sixth Counterclaims ("Motion to Dismiss").

## I. STATEMENT OF FACTS.

PharmaStem Therapeutics, Inc. ("PharmaStem") and Didier, its CEO and President, filed companion motions to dismiss, concurrently set for hearing in this Court on January 7, 2005. The factual context for both motions is identical. Therefore, for the convenience of the Court, the "STATEMENT OF FACTS" in CBR's Opposition to PharmaStem's Motion to Dismiss CBR's First, Second, Third, Fourth, Fifth, Sixth and Seventh Counterclaims, filed and served concurrently herewith, is incorporated herein by reference.

## II. ARGUMENT.

### A. Standard on Motion to Dismiss for Lack of Personal Jurisdiction.

To successfully oppose a motion for dismissal based on an alleged lack of personal jurisdiction, a party "need only make a *prima facie* showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Although the party opposing dismissal cannot "simply rest on the bare allegations of its complaint," *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F. 2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint must be taken as true, *AT & T v. Compagnie Bruxelles Lambert*, 94 F. 3d 586, 588 (9th Cir. 1996), and the court will "only inquire into whether [the party's] pleadings and affidavits make a *prima facie* showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n.*, 59 F. 3d 126, 128 (9th Cir. 1995); *see also, Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F. 3d 1082, 1087 (9th Cir. 2000) ("Because the *prima facie* jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes of this appeal.").

As explained in detail below, CBR has made a *prima facie* showing of personal jurisdiction because its pleadings establish that Didier published false and misleading statements that specifically targeted CBR, a California corporation with its principal place of business in California. Didier has not controverted any of the allegations contained in CBR's Counterclaims.

1  Further, as alleged in the Counterclaims, and as demonstrated in the documents submitted
2  herewith, Didier directed many of his communications to individuals and entities in California and
3  within this judicial district.

### B. This Forum has Specific Personal Jurisdiction Over Didier.

Unless otherwise provided by statute, a district court applies the law of the state in which it sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Panavision International, L.P. v. Toeppen*, 141 F. 3d 1316, 1320 (9th Cir. 1998). California applies a three-prong test to evaluate the nature and quality of a party's contacts for specific personal jurisdiction: (1) the non-resident defendant must purposefully direct his activities toward the forum or a resident thereof; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *Lake v. Lake*, 817 F. 2d 1416, 1421 (9th Cir. 1987).

The party opposing dismissal bears the burden of satisfying the first two prongs of the above test. *Sher*, 911 F. 2d at 1361. If the first two prongs are satisfied, the burden shifts, and the party challenging personal jurisdiction must "present a compelling case" that the exercise of jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). CBR satisfies the first two prongs of the above test, and Didier cannot demonstrate that this Court's exercise of jurisdiction over him is unreasonable.

#### 1. Didier purposefully directed his activities toward this forum.

A showing that a party purposefully directed his conduct toward a forum state usually consists of evidence of the party's actions outside the forum state that are "directed" at the forum, such as the distribution in the forum state of goods originating elsewhere. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) (finding purposeful direction where defendant published magazines in Ohio and circulated them in the forum state); *accord Mattel, Inc. v. MCA Records, Inc.*, 296 F. 3d 894, 899 (9th Cir. 2002) (finding purposeful direction where defendant distributed its music albums from Europe in the forum state). The Supreme Court has held that due process permits the exercise of personal jurisdiction over a defendant who "purposefully direct[s]" his activities at residents of a forum, even in the "absence

of physical contacts" with the forum. *Burger King*, 471 U.S. at 476, 105 S. Ct. 2174 (citing *Keeton*, 465 U.S. at 774-75, 104 S. Ct. 1473).

Where, as here, the claims involve torts, purposeful direction analysis is conducted under the three-part "effects" test under the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). *See, e.g., Schwarzenegger v. Fred Martin Motor Company*, 374 F. 3d 797, 803 (9th Cir. 2004). Under *Calder*, the "effects" test requires an allegation that the defendant has: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.* (citing *Dole Food Co., Inc. v. Watts*, 303 F. 3d 1104, 1111 (9th Cir. 2002)).

The Ninth Circuit has held that *Calder* requires "something more" than mere foreseeability to justify personal jurisdiction in California. *See, e.g., Bancroft & Masters*, 223 F. 3d at 1087. This "something more" can consist of an intentional act committed outside of the state that targets an entity in California. *Id.* at 1088; *California Software Inc. v. Reliability Research, Inc.*, 631 F. Supp. 1356, 1361 (C.D. Cal. 1986). CBR's allegations regarding Didier's conduct satisfy *Calder*'s three-part "effects" test, and jurisdiction is proper.

In *Sinatra v. National Enquirer, Inc.*, 854 F. 2d 1191 (9th Cir. 1988), the defendant magazine published false stories about visits by the plaintiff to a Swiss clinic for "youth regeneration treatments." *Id.* at 1192. The Swiss clinic and the magazine publisher made a deal whereby the clinic would supply false information about the plaintiff to the magazine publisher's reporters during interviews conducted in Switzerland in return for publicity in the resulting nationally-distributed magazine articles. The plaintiff sued the Swiss clinic, and the clinic moved to dismiss for lack of personal jurisdiction. The Ninth Circuit found personal jurisdiction over the Swiss clinic:

> [T]he Clinic has directed its activities at California by using Sinatra's name in an effort to promote its business. The Swiss acts or directions that had a California effect consist of: (1) the misappropriation of the value of Sinatra's name through interviews conducted in Switzerland between Clinic employees and Enquirer reporters, in which the Clinic supplied false information about Sinatra's treatment at the Clinic; (2) the Clinic's California advertising efforts to attract patients; and (3) the Clinic's knowledge of Sinatra's residence in California.

*Id.* at 1195. The *Sinatra* court held that the Swiss clinic's intentional acts--publishing false statements about the plaintiff in Switzerland--were expressly aimed at California because making the statements was "an event within a sequence of activities designed to use California markets for the defendant's benefit." *Id.* at 1197.

Similarly, in *Bancroft & Masters*, the Ninth Circuit held that a California forum could properly assert jurisdiction over a Georgia entity based on its act of sending a letter to Virginia. *Bancroft & Masters*, 223 F. 3d 1082. The court held that jurisdiction was proper because the Georgia entity's letter "was expressly aimed at California because it individually targeted . . . a California corporation doing business almost exclusively in California." *Id.* at 1088. Likewise, in *Panavision International, L.P. v. Toeppen*, 141 F. 3d 1316, 1318 (9th Cir. 1998), defendant, a resident of Illinois, registered the California plaintiff's registered trademark as an Internet domain name in Virginia to obtain money from the plaintiff in exchange for the rights to the domain name. *Id.* The *Panavision* court held that personal jurisdiction existed because the defendant's acts were aimed at a California plaintiff, and caused it to suffer injury there. *Id.* at 1321. ("[defendant's] deliberate choice of the plaintiff's trademark, and his subsequent attempts to extort compensation for [the] domain name, targeted that individual plaintiff").

In *California Software Inc. v. Reliability Research, Inc.*, 631 F. Supp. 1356 (C.D. Cal. 1986), the court held that it had jurisdiction over the defendants as a result of communications made through an Internet bulletin board which, though directed at third persons outside California, were expressly calculated to cause injury in California. *Id.* at 1361-62. ("As in *Calder*, the defendants knew that plaintiffs would feel the brunt of the injury, *i.e.*, the lost income, in California . . . [¶] defendants allegedly intentionally manipulated third persons to interrupt their plans to purchase plaintiffs' product."). The court explained how its decision was wholly in accord with *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980), and its progeny:

> Although the unilateral activity of the plaintiff or a third person cannot subject a non-resident defendant to the forum state's jurisdiction . . . the recipients of [defendant's Internet bulletin board] message did not act unforeseeably or unilaterally. As a consequence of [defendant's] influence, they acted as conduits for defendants' express intention to injure California residents by diminishing

plaintiffs' business. . . . As such, they subject themselves to the laws of the State of California . . . .

*Id.* [citations omitted].

CBR, a California corporation with its principal place of business in California, has sufficiently alleged that Didier purposefully directed his activities toward California. *See* Counterclaims at ¶ 8 (". . . a substantial part of the false and misleading advertising, unfair competition, trade libel, and interference with contractual or other economic relationships . . . has occurred and is occurring in this judicial district . . . CBR . . . continue[s] to suffer injury in this judicial district as a result of the matters complain of herein.") As pleaded in the Counterclaims, the activities complained of involving Didier include: (i) the mailing of the June 1, 2004 letter, which contains false and misleading statements regarding the findings and verdict in the Delaware Action and the purported patent infringement liability faced by obstetricians and hospitals for collecting cord blood on behalf of CBR's customers, to some 25,000 obstetricians and hospitals nationwide, including persons in California and this judicial district; and (ii) the publication of false and misleading press releases and Internet postings about CBR. *Id.* at ¶¶ 27-34; *see also,* Declaration of Peter H. Nohle in Support of CBR Systems, Inc.'s Opposition to Motion to Dismiss ("Nohle Decl."), Ex. 1 at 21:7-22:2 and Ex. 2. As further pleaded in the Counterclaims, the specific conduct alleged was merely representative of Didier's actions, and CBR alleged that Didier engaged in further acts that create a false impression with the consuming public. *Id.* at ¶¶ 27-34. These actions include the publication of a false and misleading press release on September 20, 2004, and the posting of false and misleading statements on the PharmaStem website.

Accordingly, Didier's actions relating to the contested publications were purposefully directed at California within the meaning of the above-cited cases. Didier intentionally caused false and misleading information to be published in letters that were distributed nationwide, including to individuals and entities in California, and he knew that such action would injure CBR, a California corporation with its principal place of business in California. This conduct subjects him to the jurisdiction of this Court. *See, e.g., Calder,* 465 U.S. at 788-90, 104 S. Ct. 1482 (the Supreme Court found that the intentional acts of the reporter and editor, though taking place in

1  Florida, were expressly aimed at California because the acts impugned the professionalism of an
2  entertainer whose television career was centered in California and because the defendants knew
3  that the publication had a large circulation in California). The same principle applies with equal
4  force to Didier's press releases and Internet postings. *See, e.g., California Software*, 631 F. Supp.
5  at 1361-62. Likewise, Didier's other direct communications with obstetricians, gynecologists, and
6  CBR's actual or potential customers, regardless of where such communications take place,
7  specifically target CBR, and are calculated to injure CBR in California, where CBR is
8  headquartered. Accordingly, this Court's exercise of jurisdiction is proper. *Id.*

9  Didier's reliance on *Inamed Corp. v. Kuzmak*, 249 F. 3d 1356 (Fed. Cir. 2001) is misplaced.
10  *Inamed* applied the law of the Federal Circuit, rather than that of the regional circuit in which the
11  case arose, because the claims at issue therein sought <u>only</u> a declaration of patent invalidity,
12  unenforceability, and noninfringement. *Id.* at 1359. In the present case, as indicated above,
13  jurisdictional matters relating to the contested Counterclaims are properly analyzed under the law
14  of <u>this</u> Circuit, and not the law of the Federal Circuit. *See, e.g., Panavision*, 141 F. 3d at 1320.
15  Further, as characterized by Didier, *Inamed* stands for the proposition that "a good-faith
16  infringement letter alone will not establish purposeful availment." Motion to Dismiss at 6:8-10.
17  CBR has sufficiently alleged that Didier's actions were taken in bad faith,[1] thus rendering the
18  above proposition inapposite. Additionally, unlike *Inamed*, this is not a declaratory judgment case
19  resulting from Didier's sending of his infringement letters. Rather, this Court's jurisdiction over
20  Didier is based on the purposefulness of his activity, which could reasonably be foreseen to have
21  effects in California which would subject him personally to suit within California for the damages
22  caused by his activity. *See Ruger v. Superior Court*, 118 Cal. App. 3d 427, 434 (Cal. Ct. App.
23  1981).

---

[1] For example, CBR alleged that: (i) Didier's actions were designed to have a "damaging effect" on CBR, and Didier acted "with the purpose of injuring CBR and its business and property"; (ii) Didier acted "with specific intent to harm CBR," and his conduct was "willful," "wanton," and "unprivileged"; and (iii) Didier's conduct was "extreme and outrageous," and his statements were unsupportable by a proper interpretation of the PharmaStem patents. Counterclaims at ¶¶ 22, 24, 25, 37, 38, and 58.

- 6 -

2.  **CBR's first through sixth counterclaims arise out of Didier's conduct directed toward this forum.**

All of CBR's claims against Didier arise directly out of the above-described actions, which, as explained herein, constitute acts purposefully directed toward this forum. Accordingly, Didier is subject to the jurisdiction of this Court. *See, e.g., Panavision*, 141 F. 3d at 1318; *Lake v. Lake*, 817 F. 2d at 1421.

3.  **Didier has not, and will not, be able to meet his burden of demonstrating that this Court's exercise of jurisdiction over him is unreasonable.**

Didier bears the burden of proving that this Court's exercise of jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (party claiming lack of personal jurisdiction must "present a compelling case" that the exercise of jurisdiction would not be reasonable). Didier has not met, and cannot meet, this burden.

The Ninth Circuit considers the following seven factors that might, in a particular case, assist in assessing the reasonableness of asserting jurisdiction: (1) the extent of the purposeful interjection into the forum state; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See, e.g., Insurance Company of North America v. Marina Salina Cruz*, 649 F. 2d 1266, 1270 (9th Cir. 1981); *Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F. 2d 1325, 1329-1331 (9th Cir. 1985). The relevant factors bearing on reasonableness here dictate that this Court should find specific personal jurisdiction.

California has a strong interest in protecting the rights of its injured citizens. *See, e.g., California Software*, 631 F. Supp. at 1363-64. CBR is a California corporation that has felt the harm from Didier's out-of-state acts in California. In *Keeton*, the Supreme Court recognized the interest of New Hampshire in protecting non-resident claimants from the effects of defamatory statements. *Keeton*, 465 U.S. 770. That interest is even stronger in a case like the present involving resident claimants. *See, e.g., California Software*, 631 F. Supp. at 1364 (citing *Blue*

1 | *Ridge Bank v. Veribanc, Inc.*, 755 F. 2d 371, 374 (4th Cir. 1985) and *Calder*, 465 U.S. 783).

As stated in *California Software*, "[i]t would be both unfair, in light of the forum-related activity, and inefficient to require plaintiffs who have suffered an economic injury as a result of defendants' intentional conduct to sue in defendants' home states . . . or in the . . . jurisdictions in which the known recipients of the . . . message reside." *Id. See also Calder*, 465 U.S. at 789-791; *Cubbage v. Merchent*, 744 F. 2d 665, 671-72 (9th Cir. 1984), *cert. denied*, 470 U.S. 1005, 105 S. Ct. 1359, 84 L. Ed. 2d 380 (1985) ("[t]he court sitting in the place the injury occurred is ordinarily the most efficient forum").

Furthermore, this Court's assertion of jurisdiction does not unduly burden Didier. "Modern means of communication and transportation have tended to diminish the burden of defense of a lawsuit in a distant forum." *Insurance Company of North America*, 649 F. 2d at 1271. Didier *purposefully* injected himself into California through his extensive acts of publishing false and misleading statements that targeted a corporation in this state. Didier further injected himself into California by sending letters and press releases to physicians and hospitals residing within this state. Therefore, jurisdiction in this case reasonable. *California Software*, 631 F. Supp. at 1364.

### C. CBR's Counterclaims Are Ripe For Consideration By This Court

"To satisfy Article III's case or controversy requirement, an action must present (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for judicial resolution." *Armstrong World Industries, Inc. v. Adams*, 961 F. 2d 405, 410 (3rd Cir. 1992). CBR's counterclaims meet Article III's requirements.

The sufficiency of CBR's injuries as a result of Didier's actions is clear and uncontroverted by Didier. CBR has lost, and continues to lose, business from current and potential customers due to the false and misleading statements concerning CBR that were made by Didier in the letters he sent to obstetricians, and published in the press releases and postings on PharmaStem's website. Didier, by engaging in such actions and continuing to disregard the specific findings of Judge Sleet regarding the false and misleading nature of his statements, has made the issues regarding CBR's first through sixth Counterclaims ripe for judicial decision.

The counterclaims relate directly to Didier's misrepresentations to obstetricians and customers of CBR--claims related to those heard on a preliminary basis by the District Court in Delaware, which enjoined PharmaStem and Didier from continuing to disseminate false and misleading communications similar to those at issue in this case. In addition, to the extent CBR's claims are premised on PharmaStem's publications regarding the purported patent infringement liability faced by obstetricians and other health care workers who collect cord blood on behalf of CBR's customers, the Delaware Court issued a clear and unambiguous ruling that obstetricians could not be liable for contributory infringement of all or part of certain PharmaStem patents based on their collecting cord blood for their patients. Finally, to the extent the Counterclaims relate to Didier's misrepresentations to obstetricians and customers of CBR on matters of patent law that were not expressly addressed in the Delaware Action, this case provides an appropriate forum for litigating such issues. Accordingly, CBR's Counterclaims are ripe for consideration by this Court and should not be dismissed.

D.  **CBR's First Through Sixth Counterclaims Sufficiently State Claims Upon Which Relief Can Be Granted.**

In considering a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F. 3d 1114 (9th Cir. 2002), citing *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F. 3d 661, 663 (9th Cir. 2000). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id., citing Williamson v. General Dynamics Corp.*, 208 F. 3d 1144, 1149 (9th Cir. 2000), *cert. denied*, 531 U.S. 929, 121 S. Ct. 309, 148 L. Ed. 2d 247 (2000). The showing required of a party seeking to avoid dismissal is "exceedingly low." *Quality Foods v. Latin American Agribusiness Development*, 711 F. 2d 989, 995 (11th Cir. 1983); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Furthermore, "[p]leadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears." *Janda v. Madera Community Hosp.*, 16 F. Supp. 2d 1181, 1189 (E.D. Cal. 1998) (citing *Speegle v. Board of Fire Underwriters of the Pacific*,

- 9 -

CBR SYSTEMS, INC.'S OPPOSITION TO
NICOLAS DIDIER'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

29 Cal. 2d 34, 42 (1946)). Each of CBR's Counterclaims clearly meets and surpasses this "exceedingly low" threshold.

Didier's argument under Rule 12(b)(6) of the Federal Rules of Civil Procedure consists of his incorporating by reference the arguments contained in PharmaStem's Motion to Dismiss CBR's First, Second, Third, Fourth, Fifth, Sixth and Seventh Counterclaims. Accordingly, CBR, having demonstrated the lack of merit to PharmaStem's motion in its Opposition thereto, incorporates by reference as if fully set forth herein its Opposition to PharmaStem's Motion to Dismiss CBR's First, Second, Third, Fourth, Fifth, Sixth and Seventh Counterclaims, served and filed herewith.

### E. CBR Has Properly Pleaded Its Claims Against Didier In His Personal Capacity.

Didier argues that CBR's Counterclaims should be dismissed because CBR failed to plead claims against him in his personal capacity. In support thereof, Didier cites *United States Liability Ins. Co. v. Haidinger-Hayes*, 1 Cal. 3d 586 (1970). As stated in *Haidinger-Hayes*, however, "[d]irectors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, *unless they participate in the wrong or authorize or direct that it be done.*" *Id.* at 586 [emphasis supplied]. Didier's argument that he cannot be personally liable for actions causing only pecuniary harm is incorrect. *See, e.g., PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379-1380 (2000) (expressly rejecting the notion that personal liability is dependant upon non-pecuniary harm). Didier testified that he mailed the June 1, 2004 letter to approximately 25,000 obstetricians. Nohle Decl., Ex. 1 at 21:22-22:2. Didier also testified that he mailed the Amnesty Agreement to approximately 25,000 obstetricians. *Id.* at 22:3-8. And, Didier testified that he mailed the August 2, 2004 release to approximately 25,000 obstetricians. *Id.* at 22:9-11. Additionally, CBR has clearly pleaded that Didier personally participated in the conduct alleged. *See, e.g.,* Counterclaims at ¶¶ 14 and 23. This more than meets the *Haidinger-Hayes* requirements of personal participation in the wrong and direction that it be done, and, these claims should not be dismissed.

### F. This Court Has Supplemental Jurisdiction Over CBR's Counterclaims.

Didier's argument that this Court cannot assert jurisdiction over CBR's Counterclaims is based on his assertion that CBR's claim for federal unfair competition is a "spurious 'throw in'" incapable of serving as a basis for this Court's exercise of jurisdiction. Didier's entire argument is premised on an assertion that CBR failed to adequately plead a claim of unfair competition under Section 43(a) of the Lanham Act ("Section 43(a)"). As explained below, such assertion is meritless and, regardless, this Court has jurisdiction over all of CBR's Counterclaims based on CBR's patent-related counterclaims.

Didier argues that CBR's unfair competition claim fails because, on the facts alleged, it is not cognizable under Section 43(a), since the claim does not concern trademark infringement. Such argument is meritless. CBR alleged, *inter alia*, that Didier made false or misleading statements regarding the findings purportedly made by the court in the Delaware Action concerning the patent infringement liability of physicians who work with CBR's actual or potential customers. Counterclaims at ¶¶ 14-15. Thus, CBR pleaded that Didier made false and misleading statements that, at the very least, tend to deceive a substantial portion of the intended audience, *i.e.*, obstetricians and consumers. Section 43(a) expressly provides a cause of action based on a party's "false or misleading description[s] of fact" that "misrepresent[] the nature, characteristics, [or] qualities" of another's goods or services." On multiple occasions, Didier, knowing the Delaware Court's findings and rulings, did not merely state opinions concerning unsettled legal questions, but rather made statements regarding the decisions of the Delaware Court, and false statements at that. CBR has also plainly pleaded that the deception is material, in that it is likely to, and has, influenced purchasing decisions. *Id.* at ¶¶ 37-38. Such allegations are all that is required of CBR to avoid dismissal, as the facts as pleaded demonstrate that Didier's false statements of fact were meant to dissuade third parties from using the services of CBR in violation of Section 43(a). *William H. Morris Co. v. Group W, Inc.*, 66 F. 3d 255, 257 (9th Cir. 1995) (to prevail on a claim under Section 43(a), a plaintiff must show that: (1) the defendant made false or deceptive advertisements and representations; (2) those advertisements and representations actually deceived

a significant portion of the consuming public; and (3) the plaintiff was injured by the defendant's conduct).

In addition, to the extent CBR's claims are premised on PharmaStem's publications regarding the purported patent infringement liability faced by obstetricians and other health care workers who collect cord blood on behalf of CBR's customers, the Delaware Court issued a clear and unambiguous ruling that obstetricians could not be liable for contributory infringement of all or part of certain PharmaStem patents based on their collecting cord blood for their patients because, *inter alia*, contributory infringement requires that there be a sale or offer to sell by the party that is accused of contributory infringement. Counterclaims at ¶ 19. That same principle applies without any need for interpretation of the potential liability of an obstetrician under all of PharmaStem's patents. *Id.* at ¶ 22. Didier's material omission of the outright lack of patent infringement liability faced by obstetricians and other health care workers, or, at the very least, the significant limitations on such liability, can constitute material misrepresentations in violation of Section 43(a).

On a more fundamental level, Didier erroneously attempts to isolate each of his statements, and then argue that the isolated statements, reviewed alone and out of context, are not actionable. This, of course, is not the way in which the court is to evaluate CBR's Counterclaims. *Janda, supra*, 16 F. Supp. at 1189. The court must evaluate the statements made by Didier and the allegations made by CBR regarding those statements as a whole, and determine whether CBR has sufficiently pleaded its claim. Didier does not argue that the allegations by CBR as a whole do not state a claim. He only argues that the individual statements alone are not actionable. The allegations made by CBR, taken as a whole, and evaluated in accordance with the standard required by a Rule 12(b)(6) motion, demonstrate that CBR has sufficiently pleaded a claim under Section 43(a).

Equally unmeritorious is Didier's argument that the contested language is not actionable because it is not "commercial speech." Didier's argument in this regard consists of his incorporating by reference the arguments contained in PharmaStem's Motion to Dismiss CBR's First, Second, Third, Fourth, Fifth, Sixth and Seventh Counterclaims. Accordingly, CBR incorporates by reference its Opposition to PharmaStem's Motion to Dismiss CBR's First, Second,

1  Third, Fourth, Fifth, Sixth and Seventh Counterclaims, served and filed herewith. As detailed
2  therein, CBR has properly pleaded that the conduct at issue involves "commercial speech."

3       Didier also argues that CBR's claim of a violation of Section 43(a) must fail because CBR
4  has failed to allege that Didier acted in bad faith, and that the statements at issue are true. Didier's
5  argument is misplaced. Didier also argues that he could not possibly be acting in bad faith because
6  PharmaStem won the trial in Delaware. The issue for this Court to decide is whether it appears
7  beyond doubt that the CBR can prove no set of facts in support of its claim that would entitle it to
8  relief, not whether CBR will ultimately prevail on its claim that Didier's statements are false and
9  misleading and were made in bad faith. *Conley*, 355 U.S. at 45-46, *American Family Association*,
10 277 F. 3d at 1120. Moreover, the issue here is Didier's bad faith in making false statements about
11 the results of the Delaware trial, among other things, not the underlying claims in the trial itself.
12 The ultimate determination is an issue to be decided after the parties have had the opportunity to
13 engage in discovery. *Conley*, 355 U.S. at 47-48.

14      CBR has alleged that Didier's actions were designed to have a "damaging effect" on CBR,
15 and that Didier acted "with the purpose of injuring CBR and its business and property."
16 Counterclaims at ¶¶ 24 and 25. More specifically, CBR alleged that Didier acted "with specific
17 intent to harm CBR," and that its conduct was "willful," "wanton," and "unprivileged." *Id.* at ¶¶ 37
18 and 38. Furthermore, CBR alleged that Didier's conduct was "extreme and outrageous," and that
19 his statements were unsupportable by an proper interpretation of the PharmaStem patents. *Id.* at ¶¶
20 22 and 58. Such pleading clearly constitutes an allegation that Didier acted in bad faith. Lest there
21 be any doubt, Didier's recent testimony in the Delaware Action demonstrates that the actions at
22 issue were undertaken in bad faith, as he testified that he knowingly mailed false and misleading
23 materials asserting claims of patent infringement to physicians whom he knew engaged in no
24 conduct that would constitute infringement. Nohle Decl., Ex. 1 at 29:14-22. Accordingly, Didier's
25 Motion to Dismiss should be denied. Alternatively, if the Court should view CBR's allegations as
26 deficient, leave to amend should be granted. *Conley*, 355 U.S. at 45-46.

27
28

1     **G.**     **Didier's Argument That The Court Should Decline To Assert Jurisdiction Is**
2            **Meritless.**

3     Didier argues that this Court should dismiss CBR's Counterclaims because they are duplicative of claims asserted by CBR in the Delaware Action. Such argument is meritless. Unlike the present case, the motions at issue in the Delaware Action were directed at preventing PharmaStem from undermining or mooting the court's post-trial process by misrepresenting the outcome of the court's proceedings, and were unrelated to independent claims against Didier. Rather, CBR filed a motion for preliminary injunctive relief pursuant to the All Writs Act, 28 U.S.C. § 1651, to prevent PharmaStem from usurping the power of the court in the Delaware Action while post-trial motions were pending. The subsequent motion complained of by Didier, in which CBR brought the press release to the attention of the court, was a motion for contempt based on PharmaStem's violation of that court's restraining order. Also, the procedural context and timing of CBR's motions in the Delaware Action make it clear that CBR could *not* have asserted the counterclaims at issue herein against Didier in the Delaware Action. Furthermore, despite Didier's argument to the contrary, CBR has sufficiently pleaded a claim for monetary damages and, therefore, CBR's Counterclaims and the motions at issue in the Delaware Action seek different forms of relief. Accordingly, CBR's Counterclaims are not precluded by CBR's activity in the Delaware Action, and this Court should assert its jurisdiction.

**III.**     **CONCLUSION.**

For all the foregoing reasons, Defendant and Counterclaimant CBR respectfully requests that the Court deny Didier's Motion to Dismiss.

Dated: November 19, 2004.

PILLSBURY WINTHROP LLP


By _____/s/_____

Attorneys for Defendants and Counterclaimants
CBR SYSTEMS, INC. and SUTTER HEALTH, INC.

- 14 -

CBR SYSTEMS, INC.'S OPPOSITION TO
NICOLAS DIDIER'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW