PILLSBURY WINTHROP LLP
William F. Abrams (State Bar No. 88805)
Thomas F. Chaffin (State Bar No. 112368)
Chang H. Kim (State Bar No. 195554)
Peter H. Nohle (State Bar No. 209446)
2475 Hanover Street
Palo Alto, CA 94304-1115
Telephone: (650) 233-4561
Facsimile: (650) 233-4545

Attorneys for Defendants and Counterclaimants
CBR SYSTEMS, INC. and SUTTER HEALTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CORD BLOOD REGISTRY, INC., dba CBR, a California corporation; and SUTTER HEALTH, INC., a California corporation,<br><br>Defendants.<br><br>CBR SYSTEMS, INC., dba CBR, a California corporation; and SUTTER HEALTH, INC., a California corporation,<br><br>Counterclaimants,<br><br>vs.<br><br>PHARMASTEM THERAPEUTICS, INC., a Delaware corporation; STEMBANC, INC., a Ohio corporation; NICHOLAS DIDIER; and ARCHIBALD A. GRABINSKI,<br><br>Counterdefendants. | No. C 04 3072 JSW<br><br>**CBR SYSTEMS, INC.'S OPPOSITION TO PHARMASTEM THERAPEUTICS, INC.'S MOTION TO DISMISS CBR SYSTEMS, INC.'S FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date: January 7, 2005<br>Time: 9:00 a.m.<br>Room: Courtroom 2<br>Judge: Hon. Jeffrey S. White |

Table of Contents

Page

I. STATEMENT OF FACTS ............................................................................................. 1

II. ARGUMENT. ............................................................................................................... 5

    A. Standard For A Rule 12(b)(6) Motion ................................................................ 5

    B. CBR Has Sufficiently Pleaded Its Claims Under California Law. ..................... 6

        1. CBR has adequately pleaded a claim for intentional interference with contractual or other economic relationships ............................................. 6

        2. CBR has adequately pleaded a claim for negligent interference with contractual or other economic relationships ............................................. 8

        3. CBR has sufficiently pleaded that PharmaStem interfered with its prospective economic relationships. ......................................................... 9

    C. CBR Has Sufficiently Pleaded Its Federal Unfair Competition Claim. ........... 10

        1. CBR has properly pleaded that PharmaStem acted in bad faith and that the contested statements were false and misleading. ................................ 10

        2. CBR has properly alleged that PharmaStem's statements constitute commercial speech within the meaning of Section 43(a). ................... 12

    D. CBR's Claims Are Not Barred By The Doctrine of *Res Judicata*. ............ 13

III. CONCLUSION. ........................................................................................................ 15

Case 1:05-cv-00153-GMS   Document 114-21   Filed 03/31/2005   Page 3 of 19

Table of Authorities

Page

Cases

American Family Ass'n., Inc. v. City and County of San Francisco,
    277 F. 3d 1114 (9th Cir. 2002)..................................................................5, 8, 10

Blonder-Tongue Laboratories v. University of Ill. Foundation,
    402 U.S. 313, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971) ...........................................13

Burgert v. Lokelani Bernice Pauahi Bishop Trust,
    200 F. 3d 661 (9th Cir. 2000)......................................................................5

Central Delta Water v. U.S.,
    306 F. 3d 938 (9th Cir. 2002)....................................................................13

Coastal Abstract Service, Inc. v. First American Title Ins. Co.,
    173 F. 3d 725 (9th Cir. 1999)....................................................................13

Conley v. Gibson,
    355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ..........................................5, 8, 10, 11

Della Penna v. Toyota Motor Sales, U.S.A., Inc.,
    11 Cal. 4th 376 (1995)............................................................................6

Halicki v. United Artists Communications, Inc.,
    812 F. 2d 1213 (9th Cir. 1987)..................................................................13

In re Quality Laser Works,
    211 B.R. 936 (9th Cir. 1997)....................................................................14

J'Aire Corp. v. Gregory,
    24 Cal. 3d 799 (1979).............................................................................8

Janda v. Madera Community Hosp.,
    16 F. Supp. 2d 1181 (E.D. Cal. 1998)..........................................................5, 7

Kournikova v. General Media Communications Inc.,
    278 F. Supp. 2d 1111 (C.D. Cal. 2003)........................................................13

PPX Enters., Inc. v. Audiofidelity, Inc.,
    746 F. 2d 120 (2nd Cir. 1984)...................................................................13

Quality Foods v. Latin American Agribusiness Development,
    711 F. 2d 989 (11th Cir. 1983)...................................................................5

Robi v. Five Platters, Inc.,
    838 F. 2d 318 (9th Cir. 1988)....................................................................14

Silicon Knights, Inc. v. Crystal Dynamics, Inc.,
    983 F. Supp. 1303 (N.D. Cal. 1997) .............................................................9

- ii -

CBR SYSTEMS, INC.'S OPPOSITION TO
PHARMASTEM'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

*Speegle v. Board of Fire Underwriters of the Pacific,*
    29 Cal. 2d 34 (1946)..................................................................................................5

*William H. Morris Co. v. Group W, Inc.,*
    66 F. 3d 255 (9th Cir. 1995)........................................................................................11

*Williamson v. General Dynamics Corp.,*
    208 F. 3d 1144 (9th Cir. 2000), *cert. denied,* 531 U.S. 929, 121 S. Ct. 309,
    148 L. Ed. 2d 247 (2000) ............................................................................................5

### Statutes and Codes

Business & Professions Code
    Section 17500.............................................................................................................8

United States Code
    Title 28, section 1651 ...............................................................................................14

### Rules and Regulations

Federal Rules of Civil Procedure
    Rule 12(b)(6) ............................................................................................................12

### Other Authorities

Lanham Act
    Section 43(a) .........................................................................................10, 11, 12, 13

Defendant and Counterclaimant CBR Systems, Inc. ("CBR") respectfully requests that this Court deny Plaintiff and Counterdefendant PharmaStem Therapeutics, Inc.'s ("PharmaStem") Motion to Dismiss CBR's First, Second, Third, Fourth, Fifth, Sixth and Seventh Counterclaims Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion to Dismiss").

## I.  STATEMENT OF FACTS.

CBR preserves and stores umbilical cord blood that is collected at the birth of an infant. *See* CBR's Answer and Counterclaims, p. 13 at ¶ 9 (the "Counterclaims"). Umbilical cord blood provides a rich source of stem cells, a potentially life-saving asset that may have future therapeutic value. *Id.* An obstetrician or other health care provider collects the umbilical cord blood at the patient's request in a kit that the patient has obtained from CBR. The umbilical cord blood is then sent to CBR for preservation and storage. CBR markets its services to expectant parents who wish to "bank" the umbilical cord blood for future use. *Id.* Doctors and hospitals collect the umbilical cord blood only at their patient's request.

PharmaStem is the assignee/owner of U.S. Patent Nos. 5,004,681 ("the '681 Patent"), 5,192,553 ("the '553 Patent"), 6,461,645 ("the '645 Patent"), 6,569,427 ("the '427 Patent") and 6,605,275 ("the '275 Patent"). *Id.* at ¶ 10. On February 2002, PharmaStem filed suit in the United States District Court for the District of Delaware against CBR and several other companies, alleging infringement of the '681 and '553 patents. ("the Delaware Action"). *Id.* at ¶ 11.

After a jury trial in the Delaware Action in October 2003, a verdict was entered in favor of PharmaStem and against CBR and the other companies, finding the patents valid and infringed, and awarding damages to PharmaStem. *Id.* at ¶ 12. Post-trial motions were timely filed, including a motion by CBR and the other defendants for judgment as a matter of law or for a new trial. *Id.* at ¶ 13. On September 15, 2004, a Memorandum Opinion and related Order were issued in the Delaware Action overturning the verdict by finding as a matter of law that CBR and the other defendants did not infringe the '553 Patent, and granting a new trial on the issue of infringement and damages on the '681 Patent (the "September 15 Order"). *See* CBR System's, Inc.'s Request for Judicial Notice in Support of Opposition to Motion to Dismiss ("Request for Judicial Notice"), Ex. 1 and 2.

On or about June 1, 2004, Counterdefendant Nicholas Didier ("Didier"), CEO and President of PharmaStem, sent letters to approximately 25,000 obstetricians and hospitals that contained false and misleading statements including, but not limited to, the following:

> Patent infringement occurs when a person or institution practices all or part of a patented process. In the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party.

Counterclaims at ¶¶ 14-15; see also, Declaration of Peter H. Nohle in Support of CBR Systems, Inc.'s Opposition to Motion to Dismiss ("Nohle Decl."), Ex. 1 at 21:7-22:2. The June 1, 2004 letter was sent to many individuals and entities residing in California and, more particularly, within this judicial district. See Nohle Decl., Ex. 2. The Honorable Gregory M. Sleet of the District of Delaware, the Judge in the Delaware Action, in response to a motion filed by CBR and the other defendants, issued an Order for Injunctive Relief on July 2, 2004 (the "July 2 Order") finding that "PharmaStem's June 1, 2004 letter to Obstetricians ("the PharmaStem Letter") contains false and misleading statements concerning the Court's rulings to date." Counterclaims at ¶¶ 17-20. Judge Sleet, in particular, found that:

> 1. PharmaStem's June 1, 2004 letter to Obstetricians (the "PharmaStem Letter") contains false and misleading statements concerning this Court's rulings to date. In particular, the Court finds the following statements in this PharmaStem Letter false and misleading:
>
> > A. "Patent infringement occurs when a person or institute practices all or part of a patented process." The Court finds this statement is misleading because it is black letter law that in order to prove contributory infringement of a method patent, the entire patented process must be performed. By suggesting that infringement would occur when only part of a process in performed, the letter is misleading.
> >
> > B. "In the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party." The Court finds this statement misleading for at least the following reasons. First, the sentence states that "the Court ruled" with respect to the "case" of "umbilical cord blood collection by an Obstetrician." This Court never made any rulings regarding conduct by obstetricians. There were no such allegations advanced in the trial of this matter. Second, the sentence leaves out several important elements that must be proved to show contributory infringement. The missing elements include:

(1) that there must be a <u>sale</u> or <u>offer to sell</u> by the party that is accused of contributory infringement,

(2) that the party accused of contributory infringement must be "acting in concert or working together" with the other parties whose combined conduct performed each and every element of the patented process, and

(3) that, under §271(c), a sale of a service, as opposed to a sale of a tangible physical object, is not sufficient to satisfy the requirements of the contributory infringement statute.

The Court finds that without these elements, the statement is misleading. *Id.* at ¶ 19.

Judge Sleet granted an injunction against PharmaStem issuing further false or misleading communications directed to obstetricians. *Id.* at ¶ 20. The injunction was granted, in part, because the PharmaStem Letter did not mention: (i) the sale or offer to sell requirement of 35 U.S.C. Section 271(c) ("Section 271(c)"); (ii) the "acting in concert or working together" requirement; or (iii) that the sale of a service cannot satisfy Section 271(c). Counterclaims, Ex. B.

Despite Judge Sleet's July 2 Order, PharmaStem and Didier published a press release (the "Press Release") on August 2, 2004, that contained similar false and misleading statements to those found to be false and misleading by Judge Sleet. *Id.* at ¶ 21. Again, PharmaStem and Didier caused copies of the press release to be mailed to thousands of obstetricians, many of whom reside in California. *Id.*; *see also*, Nohle Decl., Ex. 1 at 22:9-14 and Ex. 2.

PharmaStem then filed a second wave of five separate suits, including this action. In each case, PharmaStem sued a private cord blood bank and one or more health care providers, *i.e.*, either individual physicians, group medical practices, or a hospital. *See* CBR's L.R. 3-13 Notice of Related Cases. In each of these cases, PharmaStem made a boilerplate allegation of infringement of the '427 patent against both a cord blood bank and at least one health care provider. *Id.* Shortly after filing suit in the Central District of California against CureSource, Inc. and twelve physicians, Didier sent a letter to the defendant physicians (who were represented by counsel), offering to "settle" with them by agreeing not to enforce PharmaStem's patents against them if the doctors agreed not to collect cord blood or provide any service for or "in connection with" CBR or other

1  private cord blood banks not licensed by PharmaStem, and not to market or offer any service of
2  CBR and the other cord blood banking companies. See Nohle Decl., Ex. 1 at 39:16-40:1; 41:8-12.

3  On August 20, 2004, PharmaStem and Didier sent another letter and a self-styled "amnesty
4  agreement" to thousands of obstetricians (the "Amnesty Agreement") that contained similar false
5  and misleading statements. See Nohle Decl., Ex. 1 at 22:3-8. As with the prior communications,
6  the recipients of the Amnesty Agreement included numerous individuals and entities in California,
7  some of whom reside within this judicial district. Id.; see also, Nohle Decl., Ex. 2. PharmaStem
8  and Didier demanded that the obstetricians sign the Amnesty Agreement to avoid legal action by
9  PharmaStem, and that the obstetricians only work with PharmaStem's licensees. In disregard of
10 the findings and orders of the Delaware District Court, the letter of August 20, 2004, states the
11 following: "It is PharmaStem's position, as asserted in the recent lawsuits, that obstetricians are
12 liable for patent infringement if they collect cord blood or market services for unlicensed cord
13 blood banks." Nohle Decl., Ex. 1 at 42:10-20. The Press Release and the letters of August 2004
14 failed to correct the earlier misrepresentations, failed to disclose the inaccuracy of the earlier
15 misrepresentations, and failed to disclose the rulings of the Delaware District Court.

16 PharmaStem and Didier issued these statements in bad faith for the clear purpose of
17 damaging CBR's business and creating false impressions with the consuming public and
18 obstetricians. Counterclaims at ¶ 23.

19 Even after Judge Sleet's September 15 Order, PharmaStem and Didier continued to make
20 false and misleading statements. In particular, on September 20, 2004, PharmaStem and Didier
21 issued a press release that mischaracterizes both the Delaware Court's ruling and the positions of
22 the defendants in that case. PharmaStem and Didier stated that the Court "agreed with the
23 defendants" based upon an argument that families who bank with the defendants could be liable for
24 infringement; in fact, the basis for the Court's decision was that the defendants did not sell or offer
25 to sell cord blood. Request for Judicial Notice, Ex. 1 and 2; Nohle Decl., Ex. 3. Defendants did
26 not argue that families are liable for infringing PharmaStem's patents; parents do not sell or offer to
27 sell cord blood, and therefore cannot be liable. Similarly, on the "licensing" page of its website,
28 PharmaStem and Didier continued to represent the validity of the defunct verdict in the Delaware

Action without any reference to the September 15 Order. Nohle Decl., Ex. 4. These are but the latest false implications designed to deter patients from seeking medical services without regard to the narrow limitations of PharmaStem's patents.

As a result of the actions of PharmaStem, Didier and the other counterdefendants, some physicians have declined to collect cord blood for customers of CBR and have ceased to recommend CBR's services. Counterclaims at ¶¶ 24, 37 and 38. Customers of CBR were prevented from fulfilling their contracts with CBR, and others were dissuaded from contracting with CBR at all, because of the actions of PharmaStem, Didier and the other counterdefendants. *Id.* Of course, such a response was exactly what PharmaStem, Didier and the other counterdefendants wanted to achieve. *Id.*

## II. ARGUMENT.

### A. Standard For A Rule 12(b)(6) Motion.

In considering a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *American Family Ass'n., Inc. v. City and County of San Francisco*, 277 F. 3d 1114 (9th Cir. 2002), *citing Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F. 3d 661, 663 (9th Cir. 2000). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id., citing Williamson v. General Dynamics Corp.*, 208 F. 3d 1144, 1149 (9th Cir. 2000), *cert. denied*, 531 U.S. 929, 121 S. Ct. 309, 148 L. Ed. 2d 247 (2000). The showing required of a party seeking to avoid dismissal is "exceedingly low." *Quality Foods v. Latin American Agribusiness Development*, 711 F. 2d 989, 995 (11th Cir. 1983); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Furthermore, "[p]leadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears." *Janda v. Madera Community Hosp.*, 16 F. Supp. 2d 1181, 1189 (E.D. Cal. 1998) (citing *Speegle v. Board of Fire Underwriters of the Pacific*, 29 Cal. 2d 34, 42 (1946)). Each of CBR's Counterclaims clearly meets and surpasses this "exceedingly low" threshold.

**B.    CBR Has Sufficiently Pleaded Its Claims Under California Law.**

PharmaStem asserts a variety of theories why CBR has failed to properly plead its claims under California law. As demonstrated below, such assertions are without merit.

    **1.    CBR has adequately pleaded a claim for intentional interference with contractual or other economic relationships.**

PharmaStem argues that CBR's first counterclaim, for intentional interference with contractual or other economic relationships, fails because CBR has not pleaded that: (a) there was an actual breach or disruption of a valid contract between it and a third party; (b) PharmaStem's actions cause such actual breach or disruption of such contract; (c) PharmaStem knew of such contract; (d) PharmaStem intentionally attempted to induce a breach or disruption of such contract; and (e) CBR was injured as a result of PharmaStem's behavior. PharmaStem erroneously focuses on existing contracts; CBR properly claims interference with prospective economic relationships.

PharmaStem states the essential elements of a claim for intentional interference with an existing contract, but fails to state the elements of a claim for intentional interference with prospective economic advantage: (a) an economic relationship between the claimant and a third party, containing a probable future economic benefit or advantage to the claimant; (b) the offending party's knowledge of the existence of the relationship; (c) the offending party's intentionally wrongful conduct designed to interfere with that relationship; (d) actual disruption; and (e) damages to the claimant. *See, e.g., Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1995). CBR alleges each of these required elements.

CBR alleges that PharmaStem's conduct interfered with "CBR's *contractual or other economic relationships with persons who desire, or who may desire, to purchase their services* for cryopreservation and storage of umbilical cord blood," thereby satisfying the first element of its claim.[1] Counterclaims at ¶ 37 [emphasis supplied]; *see also, id.* at ¶ 38 [emphasis supplied] (CBR

---

[1] The conduct alleged in the Counterclaims was, *inter alia*, as follows: (i) PharmaStem sent a letter to approximately 25,000 obstetricians and hospitals containing false and misleading statements regarding the findings of the court and verdict in the Delaware Action and the purported patent infringement liability faced by obstetricians and hospitals for collecting cord blood on behalf of CBR's clients; (ii) PharmaStem disseminated false and misleading press releases containing
(continued…)

alleged that "but for" PharmaStem's actions, *it would have performed additional services for its actual or potential clients*). As to the second of the above elements, CBR alleged that PharmaStem undertook its action with the "specific intent" of disrupting CBR's economic relationships with such third parties. *Id.* at ¶ 37. Because PharmaStem could not possibly have specifically intended to disrupt such economic relationships without knowledge thereof, CBR has sufficiently pleaded the second element of its claim. As to the third element, CBR has sufficiently pleaded that PharmaStem's conduct was both wrongful and intentional, by alleging that PharmaStem used "wrongful means"[2] to interfere with CBR's economic relationships with third parties, and that PharmaStem "acted with the purpose of injuring CBR," was acting with "specific intent," and acted in a "willful, wanton, unprivileged, and unjustified" manner. Counterclaims at ¶¶ 25, 37 and 38. CBR has likewise alleged that PharmaStem's actions actually disrupted its prospective economic relationships and caused it damages. *Id.* at ¶¶ 37 and 38 [emphasis supplied] (PharmaStem's actions had their "intended damaging effect on CBR" and "*[a]s a result* . . . CBR has suffered damages . . . in the form of lost profits on services they would have performed *but for* [PharmaStem's] interference.")

In light of the above, PharmaStem's argument that CBR's pleading is insufficient is unavailing. Additionally, PharmaStem's method of analyzing CBR's allegations one-at-a-time, in isolation and out of context is improper. *See, e.g., Janda, supra*, 16 F. Supp. at 1189 ("[p]leadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears.") CBR's claim should not be dismissed for failure to state a claim unless it appears beyond doubt that it can prove no set of facts

---

(. . . continued)
misleading statements similar to those found in the letter; (iii) PharmaStem issued further false and misleading statements directed at the consuming public regarding the nature of its services, the findings and verdict in the Delaware Action and the purported patent infringement liability faced by obstetricians and hospitals for collecting cord blood on behalf of CBR's clients; and (iv) the specific conduct alleged in the Counterclaims were merely representative of PharmaStem's conduct and not exclusive. Counterclaims at ¶¶ 14-23

[2] In addition to the allegation that PharmaStem used "wrongful means," CBR has also specifically pleaded, *inter alia*, that PharmaStem's conduct violated both the common law of State of California and California Business and Professions Code Section 17500.

in support of its claim. *Conley v. Gibson*, 355 U.S. at 45-46; *American Family Association*, 277 F. 3d at 1120. Clearly, CBR has met this standard and sufficiently alleged a claim for intentional interference with contractual or other economic relationships. Accordingly, PharmaStem's Motion to Dismiss should be denied. Alternatively, if the Court should view CBR's pleading as deficient, CBR should be granted leave to amend.

### 2. CBR has adequately pleaded a claim for negligent interference with contractual or other economic relationships.

PharmaStem argues that CBR failed to adequately plead a claim for negligent interference with contractual or other economic relationships because such claim requires that the offending party owe the claimant a "duty of care." PharmaStem's conclusion that no duty of care between the parties is pleaded is incorrect.

As held by the California Supreme Court in *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979) [emphasis supplied, citations omitted]:

> A duty of care may arise through statute or by contract. Alternatively, a duty may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society. *Whether a duty is owed is simply a shorthand way of phrasing what is "'the essential question - whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'"*

The *J'Aire* court also asserted that "[r]ather than traditional notions of duty, this court has focused on foreseeability as the key component necessary to establish liability." *Id.* at 806. *J'Aire* provided a six-factor test for determining duty: (1) the extent to which defendant's conduct was intended to harm plaintiff; (2) the foreseeability of the harm; (3) the certainty that plaintiff actually suffered harm; (4) the closeness of the connection between the conduct and the harm; (5) the moral blame attached to defendant's conduct; and (6) the policy of preventing future harm. *Id.* at 804.

CBR has clearly pleaded facts that, read as a whole and viewed in a light most favorable to CBR, warrant a finding of duty under the *J'Aire* factors. CBR pleaded that PharmaStem's conduct violated both the common law of California and Section 17500, allegations that undeniably demonstrate that CBR's interests are "entitled to legal protection against the defendant's conduct." *Id.* at 804. In addition, Section 17500 specifically imposes a duty upon entities engaged in

commercial speech to exercise "reasonable care" in making statements in furtherance of their interests.

The remainder of PharmaStem's argument regarding CBR's claim for negligent interference with contractual or other economic relationships restates its prior argument regarding CBR's claim for intentional interference with contractual or other economic relationships. As demonstrated in Section II.B.2., *supra*, CBR adequately pleaded all of the required elements for a negligent interference claim.

Accordingly, PharmaStem's Motion to Dismiss should be denied. Alternatively, if the Court should view CBR's pleading as deficient, CBR should be granted leave to amend.

### 3. CBR has sufficiently pleaded that PharmaStem interfered with its prospective economic relationships.

The sole case cited by PharmaStem in support of its argument that CBR has failed to properly plead a claim of negligent or intentional interference with economic advantage based on the "speculative nature" of the economic relationships and injuries it alleged is *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303 (N.D. Cal. 1997). The court in *Silicon Knights*, however, held that a claim of tortious interference with economic relations can be properly pleaded where a party has alleged acts of interference with potential customers that have resulted in decreased sales of a specifically identified product. *Id.* at 1312 [emphasis supplied] ("[e]ven if interference with potential customers is a legitimate basis for tortious interference with economic relations, the complaint alleges only conclusory statements and no facts in support of its contention that it lost potential customers . . . [f]or example, there is no allegation that sales of a particular software product identified with [plaintiff] decreased after these alleged statements were made by [defendant].")

Here, CBR alleged, *inter alia*, that: (i) PharmaStem sent a letter to approximately 25,000 obstetricians and hospitals that contains false and misleading statements regarding the findings and verdict in the Delaware Action and the purported patent infringement liability faced by obstetricians and hospitals for collecting cord blood on behalf of CBR's actual or potential clients; (ii) such conduct interfered with CBR's contractual or other economic relationships with persons

1  who desired to purchase their services for cryopreservation and storage of umbilical cord blood;
2  and (iii) CBR suffered damages in the form of lost profits on services they would have performed
3  but for PharmaStem's interference. Such allegations are sufficient. They identify a group of actual
4  or potential customers (*i.e.*, customers who employ the services of the obstetricians and hospitals
5  who received such correspondence) from whom CBR's sales of a specific service
6  (cryopreservation and storage of umbilical cord blood) have decreased as a result of PharmaStem's
7  statements. Any doubt as to CBR's ability to proceed with its claim is eliminated by the
8  declaration of Terra Zarm that was submitted in the Delaware Action. *See* Nohle Decl., Ex. 5 at ¶¶
9  2-3 ("During my recent pregnancy, I enrolled with CBR for collection and storage of cord blood . .
10 . [o]n August 23, 2004, when I was eight months pregnant and in labor, I was apprised by my
11 obstetrician . . . that she would not collect cord blood from my baby due to concerns she had over
12 liability for patent infringement as represented in a letter from Nicholas Didier  . . . and
13 PharmaStem Therapeutics, Inc. . . .")

14      CBR, having properly pleaded its claim, has a right to pursue its claims and obtain
15 discovery regarding the economic relationships that were subject to PharmaStem's interference.
16 Accordingly, PharmaStem's Motion to Dismiss should be denied. Alternatively, if the Court
17 should view CBR's pleading as deficient, CBR should be granted leave to amend.

18      **C.  CBR Has Sufficiently Pleaded Its Federal Unfair Competition Claim.**

19          1.  CBR has properly pleaded that PharmaStem acted in bad faith and that the
20              contested statements were false and misleading.

21      PharmaStem argues that CBR's claim under Section 43(a) of the Lanham Act ("Section
22 43(a)") fails because CBR failed to allege that PharmaStem acted in bad faith, and the statements at
23 issue are true. PharmaStem's argument, however, is misplaced. The issue for this Court to decide
24 is whether it appears beyond doubt that the CBR can prove no set of facts in support of its claim
25 that would entitle it to relief, not whether CBR will ultimately prevail on its claim that
26 PharmaStem's statements are false and misleading and were made in bad faith. *Conley*, 355 U.S.
27 at 45-46, *American Family Association*, 277 F. 3d at 1120. That ultimate determination is an issue
28 to be decided after the parties have had the opportunity to engage in discovery. *Conley*, 355 U.S. at

1  47-48.  As detailed below, CBR has demonstrated that its counterclaim meets the standard of
2  sufficient pleading.

3  PharmaStem's argument that CBR failed to allege that PharmaStem acted in bad faith is
4  meritless.  CBR alleged that PharmaStem's actions were designed to have a "damaging effect" on
5  CBR, and that PharmaStem acted "with the purpose of injuring CBR and its business and
6  property."  Counterclaims at ¶¶ 24 and 25.  More specifically, CBR alleged that PharmaStem acted
7  "with specific intent to harm CBR," and that its conduct was "willful," "wanton," and
8  "unprivileged."  *Id.* at ¶¶ 37 and 38.  Furthermore, CBR alleged that PharmaStem's conduct was
9  "extreme and outrageous," and that its statements were unsupportable by an proper interpretation
10 of the PharmaStem patents.  *Id.* at ¶¶ 22 and 58.  Such pleading clearly constitutes an allegation
11 that PharmaStem acted in bad faith.  Thus, CBR has properly pleaded that PharmaStem's actions
12 were undertaken in bad faith.

13 CBR also alleged that PharmaStem made false or misleading statements regarding the
14 findings made by the court in the Delaware Action concerning the patent infringement liability of
15 physicians who work with CBR's actual or potential customers.  Counterclaims at ¶¶ 14-15.  Thus,
16 CBR pleaded that PharmaStem made false and misleading statements that, at the very least, tend to
17 deceive a substantial portion of the intended audience, *i.e.*, obstetricians and consumers.
18 PharmaStem, knowing the Delaware Court's findings and rulings, did not merely state an opinion
19 concerning an unsettled legal question, but rather made false statements regarding the decisions of
20 the Delaware Court.  CBR also pleaded that the deception is material, in that it is likely to, and has,
21 influenced purchasing decisions.  *Id.* at ¶¶ 37-38.  Such allegations are all that is required of CBR
22 to avoid dismissal, as the facts as pleaded demonstrate that PharmaStem's false statements of fact
23 were meant to dissuade third parties from using the services of CBR in violation of Section 43(a).
24 *William H. Morris Co. v. Group W, Inc.*, 66 F. 3d 255, 257 (9th Cir. 1995) (to prevail on a claim
25 under Section 43(a), a plaintiff must show that: (1) the defendant made false or deceptive
26 advertisements and representations; (2) those advertisements and representations actually deceived
27 a significant portion of the consuming public; and (3) the plaintiff was injured by the defendant's
28 conduct).

In addition, to the extent CBR's claims are premised on PharmaStem's publications regarding the purported patent infringement liability faced by obstetricians and other health care workers who collect cord blood on behalf of CBR's customers, the Delaware Court issued a clear and unambiguous ruling that obstetricians could not be liable for contributory infringement of all or part of certain PharmaStem patents based on their collecting cord blood for their patients because, *inter alia*, contributory infringement requires that there be a sale or offer to sell by the party that is accused of contributory infringement. Counterclaims at ¶ 19. That same principle applies without any need for interpretation of the potential liability of an obstetricians for contributory infringement under all of PharmaStem's patents. *Id.* at ¶ 22. PharmaStem's material omission of the outright lack of patent infringement liability faced by obstetricians and other health care workers or, at the very least, the significant limitations on such liability, can constitute material misrepresentations in violation of Section 43(a).

PharmaStem erroneously attempts to isolate each of its statements, and then argue that the isolated statements, reviewed alone, are not actionable. This, of course, is not the way in which this Court is to evaluate CBR's Counterclaims. The Court must evaluate the statements made by PharmaStem and the allegations made by CBR regarding those statements as a whole, and determine whether CBR sufficiently pleaded its claim. The allegations made by CBR, taken as a whole, and evaluated in accordance with the standard required by a Rule 12(b)(6) motion, demonstrate that CBR has sufficiently pleaded a claim under Section 43(a).

Accordingly, PharmaStem's Motion to Dismiss should be denied. Alternatively, if the Court should view CBR's allegations as deficient, leave to amend should be granted.

    2.    <u>CBR has properly alleged that PharmaStem's statements constitute commercial speech within the meaning of Section 43(a).</u>

Equally unmeritorious is PharmaStem's argument that the contested language is not "commercial speech" because PharmaStem and CBR are not direct competitors, and therefore relief under Section 43(a) is unavailable. "Rather than engaging in simplistic labeling, the Court must determine whether or not the two parties vie for the same dollars from the same consumer group, and whether the conduct of the defendant, if true, could be said to create 'competitive

injury.'"  *Kournikova v. General Media Communications Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003). Here, there no question that CBR and PharmaStem compete for the same dollars from the same consumer group, and that PharmaStem's actions cause CBR competitive injury. PharmaStem obtains a royalty from its licensees for the sale of cord blood-related services nearly identical in nature to the services provided by CBR. Nohle Decl., Ex. 1 at 17:22-18:12. Some portion of every dollar that is taken away from CBR by its direct competitors, PharmaStem's licensees, goes on to benefit PharmaStem. *Id.* Thus, CBR has standing to maintain its action under Section 43(a). *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F. 2d 120, 124-25 (2nd Cir. 1984) (royalty interest in product competing with defendant's product creates standing for false advertising claim). All that is required is that the conduct alleged be competitive in "some discernable way." *Halicki v. United Artists Communications, Inc.*, 812 F. 2d 1213, 1214 (9th Cir. 1987); *See also, Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F. 3d 725 (9th Cir. 1999) (plaintiff need not be a competitor of defendant in order to have standing under Section 43(a); the plaintiff need only have suffered a competitive injury). CBR has alleged that PharmaStem engaged in conduct that is competitive in "some discernable way," and, accordingly, this Court should not dismiss CBR's Counterclaims. Alternatively, if the Court should view CBR's pleading as deficient, CBR should be granted leave to amend.

### D.  CBR's Claims Are Not Barred By The Doctrine of *Res Judicata.*

PharmaStem's argument that CBR's claims are barred by the doctrine of *res judicata* is without merit because: (i) there has been no "final judgment" and (ii) CBR could not have sought the relief sought herein in the Delaware Action. *Res judicata* applies where the prior litigation: (i) involved the same parties, or their privies, (ii) involved the same claim or cause of action as the later suit, and (iii) was terminated by a final judgment on the merits. *Central Delta Water v. U.S.*, 306 F. 3d 938, 952 (9th Cir. 2002) (*citing Blonder-Tongue Laboratories v. University of Ill. Foundation*, 402 U.S. 313, 323-24, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971)).

Here, there is no "final judgment on the merits" as required to invoke the doctrine of *res judicata*. Indeed, there can be no such final judgment based on the nature of the contested actions identified by PharmaStem. CBR's activities in the Delaware Action were unrelated to an

1  independent claim against PharmaStem. Rather, CBR filed a motion for preliminary injunctive
2  relief to prevent PharmaStem from usurping the power of the court in the Delaware Action while
3  post-trial motions were pending. "The granting (or denial) of a preliminary injunction does not
4  constitute a final adjudication of the ultimate rights in a controversy." *In re Quality Laser Works*,
5  211 B.R. 936 (9th Cir. 1997) (holding that the "Rooker-Feldman" doctrine, which "has the same
6  effect as the preclusion doctrines of res judicata and collateral estoppel, and is concerned with the
7  finality of state court judgments," could not be invoked based upon a prior suit in which a
8  preliminary injunction was obtained). The subsequent motion complained of by PharmaStem, in
9  which CBR brought the press release to the attention of the court, was merely a motion for
10  contempt based on PharmaStem's violation of the court's prior restraining order. Such motion,
11  which PharmaStem admits is "still pending," likewise does not bar CBR's current claims.

12  Furthermore, as recognized by PharmaStem, "[c]laim preclusion 'prevents litigation of all
13  grounds for . . . recovery that were previously available to the parties . . . .'" *Robi v. Five Platters,
14  Inc.*, 838 F. 2d 318, 322 (9th Cir. 1988). CBR's motion for preliminary injunctive relief in the
15  Delaware Action did not seek "recovery that [was] previously available to the parties." CBR's
16  motion for preliminary injunctive relief was brought pursuant to the All Writs Act, 28 U.S.C. §
17  1651, and was expressly directed at preventing PharmaStem from undermining or mooting the
18  court's post-trial process by misrepresenting the outcome of the court's proceedings. The
19  procedural context and timing of CBR's motion were <u>not</u> such that CBR could have asserted
20  counterclaims against PharmaStem based on its post-trial conduct. Accordingly, the claims at
21  issue herein are not precluded by CBR's activity in the Delaware Action.
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

## III. CONCLUSION.

For all the foregoing reasons, Defendant and Counterclaimant CBR respectfully requests that the Court deny PharmaStem's Motion to Dismiss.

Dated: November 19, 2004.

PILLSBURY WINTHROP LLP

By _____/s/_____

Attorneys for Defendants and Counterclaimants
CBR SYSTEMS, INC. and SUTTER HEALTH, INC.