1   PILLSBURY WINTHROP LLP
    William F. Abrams (State Bar No. 88805)
2   Thomas F. Chaffin (State Bar No. 112368)
    Chang H. Kim (State Bar No. 195554)
3   Peter H. Nohle (State Bar No. 209446)
    2475 Hanover Street
4   Palo Alto, CA 94304-1115
    Telephone: (650) 233-4561
5   Facsimile:  (650) 233-4545

6   Attorneys for Defendants and Counterclaimants
    CBR SYSTEMS, INC. and SUTTER HEALTH, INC.
7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11  _____
                                          )
12  PHARMASTEM THERAPEUTICS, INC., a      )   No. C 04 3072 JSW
    Delaware corporation,                 )
13                                        )   **CBR SYSTEMS, INC.'S OPPOSITION TO**
                   Plaintiff,             )   **ARCHIBALD A. GRABINSKI'S MOTION**
14                                        )   **TO DISMISS CBR SYSTEMS, INC.'S**
          vs.                             )   **FIRST, SECOND, THIRD, FOURTH,**
15                                        )   **FIFTH, AND SIXTH COUNTERCLAIMS**
    CORD BLOOD REGISTRY, INC., dba        )   **PURSUANT TO FED. R. CIV. P. 12(b)(2) &**
16  CBR, a California corporation; and SUTTER )  **(b)(6)**
    HEALTH, INC., a California corporation, )
17                                        )   **Date:      January 7, 2005**
                   Defendants.            )   **Time:      9:00 a.m.**
18                                        )   **Room:      Courtroom 2**
                                          )   **Judge:     Hon. Jeffrey S. White**
19                                        )
                                          )
20                                        )
    _____)
21                                        )
    CBR SYSTEMS, INC., dba CBR, a         )
22  California corporation; and SUTTER    )
    HEALTH, INC., a California corporation, )
23                                        )
                   Counterclaimants,      )
24                                        )
          vs.                             )
25                                        )
    PHARMASTEM THERAPEUTICS, INC.,        )
26  a Delaware corporation; STEMBANC, INC., )
    a Ohio corporation; NICHOLAS DIDIER;  )
27  and ARCHIBALD A. GRABINSKI,           )
                                          )
28                 Counterdefendants.     )
    _____)

1

Table of Contents

2

Page

3     I.          STATEMENT OF FACTS. .............................................................................. 1

4     II.         ARGUMENT. .................................................................................... 5

5     II.         ARGUMENT ...................................................................................... 5

6       A.     Standard On Motion To Dismiss For Lack Of Personal Jurisdiction .......... 5

7       B.     This Forum Has Specific Personal Jurisdiction Over Grabinski ................. 5

8            1.     Grabinski purposefully directed his activities toward this forum ................. 6

9            2.     CBR's first through sixth counterclaims arise out of Grabinski's conduct directed toward this forum ........................................................................ 10

10

11            3.     Grabinski has not, and will not, be able to meet his burden of demonstrating that this Court's exercise of jurisdiction over him is unreasonable ............. 11

12       C.     CBR Has Sufficiently Pleaded Claims Against Grabinski ........................... 12

13     III.       CONCLUSION. ................................................................................ 12

14    _Toc88643122

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Table of Authorities

2

Page

3                                                          Cases

4     *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F. 2d 784, 787 (9th
        Cir. 1977) ............................................................................................................................. 5

5     *AT & T v. Compagnie Bruxelles Lambert*, 94 F. 3d 586, 588 (9th Cir. 1996)                5

6     *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F. 3d 1082, 1087 (9th Cir.
7       2000)                                                                                    5, 7

8     *Blue Ridge Bank v. Veribanc, Inc.*, 755 F. 2d 371, 374 (4th Cir. 1985) ......................... 11

      *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105 S. Ct. 2174, 85 L. Ed.
9       2d 528 (1985) ................................................................................................................ 6, 11

10    *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)                 7

11    *California Software Inc. v. Reliability Research, Inc.*, 631 F. Supp. 1356 (C.D. Cal.
        1986)                                                                                    7, 8
12
      *Caruth v. International Psychoanalytical Ass'n*, 59 F. 3d 126, 128 (9th Cir. 1995)       5
13
      *Cubbage v. Merchent*, 744 F. 2d 665, 671-72 (9th Cir. 1984)......................................... 12
14
      *Doe v. Unocal*, 248 F. 3d 915 (9th Cir. 2001)................................................................. 10
15
      *Dole Food Co., Inc. v. Watts*, 303 F. 3d 1104, 1111 (9th Cir. 2002)                      7
16
      *Insurance Company of North America v. Marina Salina Cruz*, 649 F. 2d 1266, 1270
17      (9th Cir. 1981)................................................................................................................ 11

18    *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75, 104 S. Ct. 1473, 79 L. Ed.
        2d 790 (1984)                                                                            6
19
      *Lake v. Lake*, 817 F. 2d 1416, 1421 (9th Cir. 1987)                                      6, 10
20
      *Mattel, Inc. v. MCA Records, Inc.*, 296 F. 3d 894, 899 (9th Cir. 2002)                   6
21
      *Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F. 2d 1325, 1329-1331 (9th
22      Cir. 1985) ...................................................................................................................... 11

23    *Panavision International, L.P. v. Toeppen*, 141 F. 3d 1316, 1318 (9th Cir. 1998) ............... 6, 8, 10

24    *Schwarzenegger v. Fred Martin Motor Company*, 374 F. 3d 797, 803 (9th Cir. 2004)       7, 10

25    *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)                                    5, 6

26    *Sinatra v. National Enquirer, Inc.*, 854 F. 2d 1191 (9th Cir. 1988)                      7

27    *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567,
        62 L. Ed. 2d 490 (1980)                                                                 8
28

1

Statutes and Codes

2

Fed. R. Civ. P. 4(k)(1)(A) ............................................................................................................6

3

Fed. R. Civ. P. 12(b)(2) & (b)(6) ................................................................................................1

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendant and Counterclaimant CBR Systems, Inc. ("CBR") respectfully requests that this

2  Court deny Counterdefendant Archibald A. Grabinski's ("Grabinski") Motion to Dismiss CBR's

3  First, Second, Third, Fourth, Fifth, and Sixth Counterclaims Pursuant to Rules 12(b)(2) & (b)(6) of

4  the Federal Rules of Civil Procedure ("Motion to Dismiss").    As detailed below, CBR has

5  established that this forum has specific personal jurisdiction over Grabinski. Further, as detailed in

6  CBR's Opposition to Stembanc, Inc.'s ("Stembanc") Motion to Dismiss CBR's First, Second,

7  Third, Fourth, Fifth, and Sixth Counterclaims Pursuant to Rule 12(b)(b)(6) of the Federal Rules of

8  Civil Procedure, served and filed herewith and incorporated herein by reference, each of CBR's

9  first through sixth counterclaims are fully supported by the pleadings and sufficiently put Grabinski

10  on notice of the claims against him and the material facts supporting those claims.

11  **I.    STATEMENT OF FACTS.**

12    CBR preserves and stores umbilical cord blood that is collected at the birth of an infant.

13  *See* CBR's Answer and Counterclaims, p. 13 at ¶ 9 (the "Counterclaims"). Umbilical cord blood

14  provides a rich source of stem cells, a potentially life-saving asset that may have future therapeutic

15  value. *Id.* An obstetrician or other health care provider collects the umbilical cord blood at the

16  patient's request in a kit that the patient has obtained from CBR. The umbilical cord blood is then

17  sent to CBR for preservation and storage. CBR markets its services to expectant parents who wish

18  to "bank" the umbilical cord blood for future use. *Id.* Doctors and hospitals collect the umbilical

19  cord blood only at their patient's request.

20    PharmaStem Therapeutics, Inc. ("PharmaStem") is the assignee/owner of U.S. Patent Nos.

21  5,004,681 ("the '681 Patent"), 5,192,553 ("the '553 Patent"), 6,461,645 ("the '645 Patent"),

22  6,569,427 ("the '427 Patent") and 6,605,275 ("the '275 Patent"). *Id.* at ¶ 10.  On February 2002,

23  PharmaStem filed suit in the United States District Court for the District of Delaware against CBR

24  and several other companies, alleging infringement of the '681 and '553 patents. ("the Delaware

25  Action"). *Id.* at ¶ 11.

26    After a jury trial in the Delaware Action in October 2003, a verdict was entered in favor of

27  PharmaStem and against CBR and the other companies, finding the patents valid and infringed, and

28  awarding damages to PharmaStem. *Id.* at ¶ 12.  Post-trial motions were timely filed, including a

1

motion by CBR and the other defendants for judgment as a matter of law or for a new trial. *Id.* at ¶ 13. On September 15, 2004, a Memorandum Opinion and related Order were issued in the Delaware Action overturning the verdict by finding as a matter of law that CBR and the other defendants did not infringe the '553 Patent, and granting a new trial on the issue of infringement and damages on the '681 Patent (the "September 15 Order"). *See* CBR System's, Inc.'s Request for Judicial Notice in Support of Opposition to Motion to Dismiss ("Request for Judicial Notice"), Ex. 1 and 2.

On or about June 1, 2004, Counterdefendant Nicholas Didier ("Didier"), CEO and President of PharmaStem, sent letters to approximately 25,000 obstetricians and hospitals that contained false and misleading statements including, but not limited to, the following:

> Patent infringement occurs when a person or institution practices all or part of a patented process. In the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party.

Counterclaims at ¶¶ 14-15; *see also,* Declaration of Peter H. Nohle in Support of CBR Systems, Inc.'s Opposition to Motion to Dismiss ("Nohle Decl."), Ex. 1 at 21:7-22:2. The June 1, 2004 letter was sent to many individuals and entities residing in California and, more particularly, within this judicial district. *See* Nohle Decl., Ex. 2. The Honorable Gregory M. Sleet of the District of Delaware, the Judge in the Delaware Action, in response to a motion filed by CBR and the other defendants, issued an Order for Injunctive Relief on July 2, 2004 (the "July 2 Order") finding that "PharmaStem's June 1, 2004 letter to Obstetricians ("the PharmaStem Letter") contains false and misleading statements concerning the Court's rulings to date." Counterclaims at ¶¶ 17-20. Judge Sleet, in particular, found that:

> 1. PharmaStem's June 1, 2004 letter to Obstetricians (the "PharmaStem Letter") contains false and misleading statements concerning this Court's rulings to date. In particular, the Court finds the following statements in this PharmaStem Letter false and misleading:
>
> > A. "Patent infringement occurs when a person or institute practices all or part of a patented process." The Court finds this statement is misleading because it is black letter law that in order to prove contributory infringement of a method patent, the entire patented process must be performed. By

CBR SYSTEMS, INC.'S OPPOSITION TO
ARCHIBALD A. GRABINSKI'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

1  suggesting that infringement would occur when only part of a process in performed, the letter is misleading.

2

3  B.  "In the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party." The Court finds this statement misleading for

4  at least the following reasons.  First, the sentence states that "the Court ruled" with respect to the "case" of "umbilical cord blood collection by an

5  Obstetrician."  This Court never made any rulings regarding conduct by obstetricians.  There were no such allegations advanced in the trial of this

6  matter.  Second, the sentence leaves out several important elements that must be proved to show contributory infringement.  The missing elements

7  include:

8       (1) that there must be a sale or offer to sell by the party that is accused of contributory infringement,

9

10      (2) that the party accused of contributory infringement must be "acting in concert or working together" with the other parties whose combined conduct performed each and every element of the patented

11      process, and

12      (3) that, under §271(c), a sale of a service, as opposed to a sale of a tangible physical object, is not sufficient to satisfy the requirements

13      of the contributory infringement statute.

14      The Court finds that without these elements, the statement is misleading.

15  *Id.* at ¶ 19.

16      Judge Sleet granted an injunction against PharmaStem issuing further false or misleading

17  communications directed to obstetricians.  *Id.* at ¶ 20.  The injunction was granted, in part, because

18  the PharmaStem Letter did not mention: (i) the sale or offer to sell requirement of 35 U.S.C.

19  Section 271(c) ("Section 271(c)"); (ii) the "acting in concert or working together" requirement; or

20  (iii) that the sale of a service cannot satisfy Section 271(c).  Counterclaims, Ex. B.

21      Despite Judge Sleet's July 2 Order, PharmaStem and Didier continued to publish false and

22  misleading statements similar to those found to be false and misleading by Judge Sleet.  *See, e.g.,*

23  *id.* at ¶ 21.

24      Stembanc, a licensee of PharmaStem in which PharmaStem has an ownership interest, has

25  joined PharmaStem's and Didier's ongoing campaign of disparagement and misinformation.  *See*

26  Nohle Decl., Ex. 1 at 62:3-63:1; Counterclaims at ¶¶ 26-34.  Stembanc's actions, in turn, are

27  spearheaded by its President and CEO, Grabinski.  *Id.*  In advertisements placed in *Pregnancy*

28  magazine, in press releases and other website postings, and through direct contact, Stembanc and

1  Grabinski have disseminated false and misleading statements to obstetricians, hospitals and the

2  public concerning CBR and other cord blood banks. *Id.* at ¶¶ 26-34.

3       For example, advertisements placed in *Pregnancy* magazine state "[w]e feel it important for

4  you to know that this court verdict . . . establishes that Physicians who knowingly work in concert

5  with [CBR and other cord blood banks] may also be implicated in the process of patent

6  infringement." *See* September 27, 2004 Declaration of Archibald A. Grabinski in Support of

7  Motion to Dismiss, Docket No. 33 ("Grabinski Decl."), Ex. A and B. These statements, similar to

8  those that the Delaware Court found to be false and misleading, suggest to the public that the jury

9  in the Delaware Action found that obstetricians would be liable for infringement if they

10  recommended the services of CBR or other cord blood banks not licensed by PharmaStem, or if

11  they collected cord blood for patients who chose to store cord blood with CBR or one of the other

12  banks.

13       Stembanc and Grabinski also published false statements that "[i]ncreasing numbers" of

14  CBR's customers are claiming that they were misled by CBR and are demanding refunds.

15  Grabinski Decl., Ex. E. Stembanc and Grabinski published additional false statements alleging that

16  CBR was facing a cessation of business. Counterclaims at ¶ 32.

17       Stembanc and Grabinski have made further statements implying that CBR, and other

18  companies not licensed by PharmaStem, are unethical or lacking in "technical integrity and legal

19  legitimacy." *Id.* at ¶ 29. Stembanc and Grabinski have declined, after demand, to withdraw their

20  false and misleading statements. *Id.* at ¶ 30. Upon information and belief, Stembanc and

21  Grabinski and their agents have made additional false and misleading communications with the

22  intent of causing customers and prospective customers of CBR not to deal with CBR. *Id.* at ¶¶ 34

23  and 35.

24       As a result of the actions of Stembanc, Grabinski and the other counterdefendants, some

25  physicians have declined to collect cord blood for customers of CBR and have ceased to

26  recommend CBR's services. *Id.* at ¶¶ 37-38. Customers of CBR were prevented from fulfilling

27  their contracts with CBR, and others were dissuaded from contracting with CBR at all, because of

28  the actions of Stembanc, Grabinski and the other counterdefendants. *Id.* Of course, such a

1  response was exactly what Stembanc, Grabinski and the other counterdefendants intended. *Id.* at

2  ¶¶ 35, 37 and 38.

3  **II.    ARGUMENT.**

4      **A.    Standard On Motion To Dismiss For Lack Of Personal Jurisdiction.**

5          To successfully oppose a motion for dismissal based on an alleged lack of personal

6  jurisdiction, a party "need only make a *prima facie* showing of jurisdictional facts." *Sher v.*

7  *Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  Although the party opposing dismissal cannot

8  "simply rest on the bare allegations of its complaint," *Amba Marketing Systems, Inc. v. Jobar*

9  *International, Inc.*, 551 F. 2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint

10  must be taken as true, *AT & T v. Compagnie Bruxelles Lambert*, 94 F. 3d 586, 588 (9th Cir. 1996),

11  and the court will "only inquire into whether [the party's] pleadings and affidavits make a *prima*

12  *facie* showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F. 3d

13  126, 128 (9th Cir. 1995); *see also, Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F. 3d 1082,

14  1087 (9th Cir. 2000) ("Because the *prima facie* jurisdictional analysis requires us to accept the

15  plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes of this

16  appeal.").

17          As explained in detail below, CBR has made a *prima facie* showing of personal jurisdiction

18  because its pleadings establish that Grabinski published false and misleading statements that

19  specifically targeted CBR, a California corporation with its principal place of business in

20  California.  Notably, Grabinski has not controverted any of the allegations contained in CBR's

21  Counterclaims.  Grabinski merely argues that CBR's allegations regarding his conduct are "vague,"

22  in that they are often pleaded in terms of the actions of both "Stembanc and Grabinski," and that he

23  "do[es] not recall" directly contacting obstetricians, gynecologists or CBR's actual or potential

24  customers in California.  Grabinski's self-serving declaration notwithstanding, the counterclaim

25  more than adequately alleges Grabinski's personal conduct that confers specific personal

26  jurisdiction over him.

27      **B.    This Forum Has Specific Personal Jurisdiction Over Grabinski.**

28          Unless otherwise provided by statute, a district court applies the law of the state in which it

1    sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F. 3d 1316, 1320 (9th

2    Cir. 1998). California applies a three-prong test to evaluate the nature and quality of a party's

3    contacts for specific personal jurisdiction: (1) the non-resident defendant must purposefully direct

4    his activities toward the forum or a resident thereof; (2) the claim must arise out of or relate to the

5    defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair

6    play and substantial justice, *i.e.*, it must be reasonable. *Lake v. Lake*, 817 F. 2d 1416, 1421 (9th

7    Cir. 1987).

8        The party opposing dismissal bears the burden of satisfying the first two prongs of the

9    above test. *Sher*, 911 F. 2d at 1361. If the first two prongs are satisfied, the burden shifts, and the

10   party challenging personal jurisdiction must "present a compelling case" that the exercise of

11   jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105

12   S. Ct. 2174, 85 L. Ed. 2d 528 (1985). CBR satisfies the first two prongs of the above test, and

13   Grabinski cannot demonstrate that this Court's exercise of jurisdiction over him is unreasonable.

14        1. Grabinski purposefully directed his activities toward this forum.

15        A showing that a party purposefully directed his conduct toward a forum state usually

16   consists of evidence of the party's actions outside the forum state that are "directed" at the forum,

17   such as the distribution in the forum state of goods originating elsewhere. *Keeton v. Hustler*

18   *Magazine, Inc.*, 465 U.S. 770, 774-75, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) (finding

19   purposeful direction where defendant published magazines in Ohio and circulated them in the

20   forum state); *accord Mattel, Inc. v. MCA Records, Inc.*, 296 F. 3d 894, 899 (9th Cir. 2002) (finding

21   purposeful direction where defendant distributed its music albums from Europe in the forum state).

22   The Supreme Court has held that due process permits the exercise of personal jurisdiction over a

23   defendant who "purposefully direct[s]" his activities at residents of a forum, even in the "absence

24   of physical contacts" with the forum. *Burger King*, 471 U.S. at 476, 105 S. Ct. 2174 (citing

25   *Keeton*, 465 U.S. at 774-75, 104 S. Ct. 1473).

26        Where, as here, the claims involve torts, purposeful direction analysis is conducted under

27   the three-part "effects" test under the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783,

28   104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). *See, e.g., Schwarzenegger v. Fred Martin Motor*

- 6 -

1  *Company*, 374 F. 3d 797, 803 (9ᵗʰ Cir. 2004).    Under *Calder*, the "effects" test requires an

2  allegation that the defendant has: (1) committed an intentional act, (2) expressly aimed at the forum

3  state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.  *Id.*

4  (citing *Dole Food Co., Inc. v. Watts*, 303 F. 3d 1104, 1111 (9ᵗʰ Cir. 2002)).

5      The Ninth Circuit has held that *Calder* requires "something more" than mere foreseeability

6  to justify personal jurisdiction in California.  *See, e.g., Bancroft & Masters*, 223 F. 3d at 1087.

7  This "something more" can consist of an intentional act committed outside of the state that targets

8  an entity in California.  *Id.* at 1088; *California Software Inc. v. Reliability Research, Inc.*, 631 F.

9  Supp. 1356, 1361 (C.D. Cal. 1986).  CBR's allegations regarding Grabinski's conduct satisfy

10  *Calder*'s three-part "effects" test, and jurisdiction is proper.

11      In *Sinatra v. National Enquirer, Inc.*, 854 F. 2d 1191 (9th Cir. 1988), the defendant

12  magazine published false stories about visits by the plaintiff to a Swiss clinic for "youth

13  regeneration treatments."  *Id.* at 1192.  The Swiss clinic and the magazine publisher made a deal

14  whereby the clinic would supply false information about the plaintiff to the magazine publisher's

15  reporters during interviews conducted in Switzerland in return for publicity in the resulting

16  nationally-distributed magazine articles.  The plaintiff sued the Swiss clinic, and the clinic moved

17  to dismiss for lack of personal jurisdiction.  The Ninth Circuit found personal jurisdiction over the

18  Swiss clinic:

19      [T]he Clinic has directed its activities at California by using Sinatra's name in an
20      effort to promote its business.  The Swiss acts or directions that had a California
        effect consist of:  (1) the misappropriation of the value of Sinatra's name through
21      interviews conducted in Switzerland between Clinic employees and Enquirer
        reporters, in which the Clinic supplied false information about Sinatra's treatment at
22      the Clinic;  (2) the Clinic's California advertising efforts to attract patients;  and (3)
        the Clinic's knowledge of Sinatra's residence in California.

23

24  *Id.* at 1195.    The *Sinatra* court held that the Swiss clinic's intentional acts--publishing false

25  statements about the plaintiff in Switzerland--were expressly aimed at California because making

26  the statements was "an event within a sequence of activities designed to use California markets for

27  the defendant's benefit."  *Id.* at 1197.

28      Similarly, in *Bancroft & Masters*, the Ninth Circuit held that a California forum could

1    properly assert jurisdiction over a Georgia entity based on its act of sending a letter to Virginia.

2    *Bancroft & Masters,* 223 F. 3d 1082.  The court held that jurisdiction was proper because the

3    Georgia entity's letter "was expressly aimed at California because it individually targeted . . . a

4    California corporation doing business almost exclusively in California." *Id.*  at 1088.  Likewise, in

5    *Panavision International, L.P. v. Toeppen,* 141 F. 3d 1316, 1318 (9th Cir. 1998), defendant, a

6    resident of Illinois, registered the California plaintiff's registered trademark as an Internet domain

7    name in Virginia to obtain money from the plaintiff in exchange for the rights to the domain name.

8    *Id.*  The *Panavision* court held that personal jurisdiction existed because the defendant's acts were

9    aimed at a California plaintiff, and caused it to suffer injury there.  *Id.* at 1321. ("[defendant's]

10   deliberate choice of the plaintiff's trademark, and his subsequent attempts to extort compensation

11   for [the] domain name, targeted that individual plaintiff").

12            In *California Software Inc. v. Reliability Research, Inc.,* 631 F. Supp. 1356 (C.D. Cal.

13   1986), the court held that it had jurisdiction over the defendants as a result of communications

14   made through an Internet bulletin board which, though directed at third persons outside California,

15   were expressly calculated to cause injury in California.  *Id.* at 1361-62. ("As in *Calder,* the

16   defendants knew that plaintiffs would feel the brunt of the injury, *i.e.,* the lost income, in California

17   . . . [¶] defendants allegedly intentionally manipulated third persons to interrupt their plans to

18   purchase plaintiffs' product.").  The court explained how its decision was wholly in accord with

19   *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d

20   490 (1980), and its progeny:

21            Although the unilateral activity of the plaintiff or a third person cannot subject a
         non-resident defendant to the forum state's jurisdiction . . . the recipients of
22       [defendant's Internet bulletin board] message did not act unforeseeably or
         unilaterally.  As a consequence of [defendant's] influence, they acted as conduits for
23       defendants' express intention to injure California residents by diminishing
         plaintiffs' business. . . . As such, they subject themselves to the laws of the State of
24       California . . . .

25

26   *Id.* [citations omitted].

27            CBR, a California corporation with its principal place of business in California, has

28   sufficiently alleged that Grabinski purposefully directed his activities toward California.  *See*

- 8 -

1    Counterclaims at ¶ 8 (". . . a substantial part of the false and misleading advertising, unfair

2    competition, trade libel, and interference with contractual or other economic relationships . . . has

3    occurred and is occurring in this judicial district . . . CBR . . . continue[s] to suffer injury in this

4    judicial district as a result of the matters complain of herein.")  As pleaded in the Counterclaims,

5    the activities complained of involving Grabinski include, *inter alia*, the posting of false and

6    misleading statements about CBR on the Stembanc website; the placement of false and misleading

7    advertisements in the nationally circulated magazine *Pregnancy*; and direct contact with CBR's

8    prospective customers and/or obstetricians and gynecologists who may provide services to such

9    customers.  *Id.* at ¶¶ 27-34.

10       Accordingly, Grabinski's actions relating to the contested publications were purposefully

11   directed to California, where CBR resides, within the meaning of the above-cited cases.  Grabinski

12   intentionally caused false and misleading information to be placed in an advertisement that he

13   knew would be widely distributed in California, and that he knew would injure CBR, a California

14   corporation with its principal place of business in California.  This conduct subjects him to the

15   jurisdiction of this Court.  *See, e.g., Calder*, 465 U.S. at 788-90, 104 S. Ct. 1482 (the Supreme

16   Court found that the intentional acts of a reporter and editor, though taking place in Florida, were

17   expressly aimed at California because the acts impugned the professionalism of an entertainer

18   whose television career was centered in California, and because the defendants knew that the

19   publication had a large circulation in California).  The same principle applies with equal force to

20   Grabinski's Internet postings.  *See, e.g., California Software*, 631 F. Supp. at 1361-62; *Panavision*,

21   *supra*, 141 F. 3d 1321.  Likewise, CBR's allegations of Grabinski's direct communications with

22   obstetricians, gynecologists, and CBR's actual or potential customers, regardless of where such

23   communications take place, allege conduct that specifically targets CBR, and are calculated to

24   injure CBR in California, where CBR is headquartered.  Accordingly, this Court's exercise of

25   jurisdiction is proper.  *Id.*

26       Grabinski's reliance on *Schwarzenegger v. Fred Martin Motor Company*, 374 F. 3d 797

27   (9th Cir. 2004) is misplaced.  In *Schwarzenegger*, the acts complained of, defendant's creation and

28   publication of an advertisement, were expressly aimed at Ohio rather than California.  *Id.*  at 807.

CBR SYSTEMS, INC.'S OPPOSITION TO
ARCHIBALD A. GRABINSKI'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

1  The purpose of the advertisement was to entice Ohioans to buy or lease cars from defendant, the

2  advertisement was never circulated in California, and defendant had no reason to believe that any

3  Californians would see it and pay a visit to the dealership. *Id.*

4          2. <u>CBR's first through sixth counterclaims arise out of Grabinski's conduct directed</u>

5             <u>toward this forum.</u>

6          All of CBR's claims against Grabinski arise directly out of the above-described actions,

7  which, as explained herein, constitute acts  purposefully directed toward this forum. Accordingly,

8  Grabinski is subject to the jurisdiction of this Court. *See, e.g., Panavision*, 141 F. 3d at 1318; *Lake*

9  *v. Lake*, 817 F. 2d at 1421. Grabinski's argument to the contrary is without merit.

10         Grabinski's reliance on *Doe v. Unocal*, 248 F. 3d 915 (9th Cir. 2001) is misplaced, as both

11 the law and facts at issue therein are different from the present case.  In *Unocal*, the court had to

12 determine if Total S.A. ("Total"), a French corporation, was subject to suit in California based on

13 its alleged human rights violations in Burma (now known also as Myanmar).  *Id.*   Total's sole

14 contacts with California consisted of contractual relations with a California corporation relating to

15 a pipeline in Burma having "nothing to do with California." *Id.* at 924. The *Unocal* court held that

16 the plaintiff's claims did not arise out of Total's contractual relations with the California entity

17 because it found that the alleged human rights violations would have occurred irrespective of such

18 relations. *Id.*  at 925. These facts stand in stark contrast to the present case, as the acts upon which

19 CBR's claim of jurisdiction is premised are the same acts for which redress is sought in the

20 Counterclaims.

21         Furthermore, the *Unocal* court applied the "purposeful availment" test for specific

22 jurisdiction, as opposed to the "purposeful direction" test at issue herein.  As asserted by Grabinski

23 in his Motion to Dismiss, the  "purposeful availment" test applies to cases where a claim of specific

24 jurisdiction is premised on contractual relations, while the "purposeful direction" test is applied in

25 cases where a claim of specific jurisdiction is premised on tortious conduct.  Motion to Dismiss at

26 6:15-18.

27 /-/-/

28 /-/-/

CBR SYSTEMS, INC.'S OPPOSITION TO
ARCHIBALD A. GRABINSKI'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

1         3.  Grabinski has not, and will not, be able to meet his burden of demonstrating that this

2             Court's exercise of jurisdiction over him is unreasonable.

3       Grabinski bears the burden of proving that this Court's exercise of jurisdiction would be

4   unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (party claiming lack of

5   personal jurisdiction must "present a compelling case" that the exercise of jurisdiction would not

6   be reasonable). Grabinski has not met, and cannot meet, this burden.

7       The Ninth Circuit considers the following seven factors that might, in a particular case,

8   assist in assessing the reasonableness of asserting jurisdiction: (1) the extent of the purposeful

9   interjection into the forum state; (2) the burden on the defendant of defending in the forum; (3) the

10  extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in

11  adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the

12  importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the

13  existence of an alternative forum. *See, e.g., Insurance Company of North America v. Marina*

14  *Salina Cruz*, 649 F. 2d 1266, 1270 (9th Cir. 1981); *Pacific Atlantic Trading Co. v. M/V Main*

15  *Express*, 758 F. 2d 1325, 1329-1331 (9th Cir. 1985).    The relevant factors bearing on

16  reasonableness here dictate that this Court should find specific personal jurisdiction.

17      California has a strong interest in protecting the rights of its injured citizens. *See, e.g.,*

18  *California Software*, 631 F. Supp. at 1363-64. CBR is a California corporation that has felt the

19  harm from Grabinski's out-of-state acts in California.  In *Keeton*, the Supreme Court recognized

20  the interest of New Hampshire in protecting non-resident claimants from the effects of defamatory

21  statements. *Keeton*, 465 U.S. 770.  That interest is even stronger in a case like the present

22  involving resident claimants. *See, e.g., California Software*, 631 F. Supp. at 1364 (citing *Blue*

23  *Ridge Bank v. Veribanc, Inc.*, 755 F. 2d 371, 374 (4th Cir. 1985) and *Calder*, 465 U.S. 783).

24      As stated in *California Software*, "[i]t would be both unfair, in light of the forum-related

25  activity, and inefficient to require plaintiffs who have suffered an economic injury as a result of

26  defendants' intentional conduct to sue in defendants' home states . . . or in the . . . jurisdictions in

27  which the known recipients of the . . . message reside." *Id. See also Calder*, 465 U.S. at 789-791;

28  *Cubbage v. Merchent*, 744 F. 2d 665, 671-72 (9th Cir. 1984), *cert. denied*, 470 U.S. 1005, 105 S.

1  Ct. 1359, 84 L. Ed. 2d 380 (1985) ("[t]he court sitting in the place the injury occurred is ordinarily

2  the most efficient forum").

3      Furthermore, this Court's assertion of jurisdiction does not unduly burden Grabinski.

4  "Modern means of communication and transportation have tended to diminish the burden of

5  defense of a lawsuit in a distant forum." *Insurance Company of North America*, 649 F. 2d at 1271.

6  Grabinski *purposefully* injected himself into California through his extensive acts of publishing

7  false and misleading statements that targeted a corporation in this state. Therefore, jurisdiction in

8  this case reasonable. *California Software*, 631 F. Supp. at 1364.

9      **C.    CBR Has Sufficiently Pleaded Claims Against Grabinski.**

10     The entirety of Grabinski's argument under Rule 12(b)(6) of the Federal Rules of Civil

11 Procedure consists of his incorporating by reference Stembanc's Motion to Dismiss CBR's First,

12 Second, Third, Fourth, Fifth, and Sixth Counterclaims. Accordingly, CBR, having demonstrated

13 the lack of merit to Stembanc's motion in its Opposition thereto, hereby incorporates by reference

14 its Opposition to Stembanc's Motion to Dismiss CBR's First, Second, Third, Fourth, Fifth, and

15 Sixth Counterclaims, served and filed herewith.

16 **III.    CONCLUSION.**

17     For all the foregoing reasons, Defendant and Counterclaimant CBR respectfully requests

18 that the Court deny Grabinski's Motion to Dismiss.

19     Dated: November 19, 2004.

20                    PILLSBURY WINTHROP LLP

23     By _____/s/_____

       Attorneys for Defendants and Counterclaimants
24     CBR SYSTEMS, INC. and SUTTER HEALTH, INC.

- 12 -

CBR SYSTEMS, INC.'S OPPOSITION TO
ARCHIBALD A. GRABINSKI'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW