PILLSBURY WINTHROP LLP
William F. Abrams (State Bar No. 88805)
Thomas F. Chaffin (State Bar No. 112368)
Chang H. Kim (State Bar No. 195554)
Peter H. Nohle (State Bar No. 209446)
2475 Hanover Street
Palo Alto, CA 94304-1115
Telephone: (650) 233-4561
Facsimile:  (650) 233-4545

Attorneys for Defendants and Counterclaimants
CBR SYSTEMS, INC. and SUTTER HEALTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CORD BLOOD REGISTRY, INC., dba CBR, a California corporation; and SUTTER HEALTH, INC., a California corporation,<br><br>Defendants.<br><br>_____<br><br>CBR SYSTEMS, INC., dba CBR, a California corporation; and SUTTER HEALTH, INC., a California corporation,<br><br>Counterclaimants,<br><br>vs.<br><br>PHARMASTEM THERAPEUTICS, INC., a Delaware corporation; STEMBANC, INC., a Ohio corporation; NICHOLAS DIDIER; and ARCHIBALD A. GRABINSKI,<br><br>Counterdefendants. | No. C 04 3072 JSW<br><br>**CBR SYSTEMS, INC.'S OPPOSITION TO STEMBANC, INC.'S MOTION TO DISMISS CBR SYSTEMS, INC.'S FIRST, SECOND, THIRD, FOURTH, FIFTH, AND SIXTH COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**Date:      January 7, 2005**<br>**Time:      9:00 a.m.**<br>**Room:    Courtroom 2**<br>**Judge:    Hon. Jeffrey S. White** |

Table of Contents

Page

I.        STATEMENT OF FACTS..................................................................................... 1

II.       ARGUMENT. ..................................................................................................... 5

   A.    Standard For A Rule 12(b)(6) Motion................................................................ 5

   B.    Stembanc's Statements Are Not Privileged Pursuant To California Civil Code
         Section 47........................................................................................................ 5

         1.    The statements at issue are not privileged pursuant to California Civil Code
               Section 47(c). ......................................................................................... 5

         2.    The statements at issue are not privileged pursuant to California Civil Code
               Section 47(d). ......................................................................................... 6

   C.    CBR Has Sufficiently Pleaded Its Claims Under California Law. ..................... 9

         1.    CBR properly pleaded a claim for common law unfair competition, which
               claim is not limited to "passing off."....................................................... 9

         2.    CBR properly pleaded a claim under Business & Professions Code Section
               17500. .................................................................................................. 10

         3.    CBR has adequately pleaded a claim of trade libel....................................... 11

         4.    CBR has properly pleaded a claim for intentional interference with
               contractual or other economic relationships.................................................. 12

         5.    CBR has adequately pleaded a claim for negligent interference with
               contractual or other economic relationships.................................................. 12

   D.    CBR Has Sufficiently Pleaded Its Federal Unfair Competition Claim.............. 13

III.      CONCLUSION. ................................................................................................ 15

1

Table of Authorities

2

Page

3

Cases

4

*A-Mark Financial Corp. v. CIGNA Property & Casualty Companies* (1995)
    34 Cal. App. 4th 1179 ...................................................................................................................11

5

*American Cyanamid Co. v. American Home Assurance Co.,*
    30 Cal. App. 4th 969 (1994)..........................................................................................................11

6

7

*American Family Ass'n, Inc. v. City and County of San Francisco,*
    277 F. 3d 1114 (9th Cir. 2002).......................................................................................................5

8

*Bank of the West v. Superior Court,*
    2 Cal. 4th 1254 (1992)..............................................................................................................10, 11

9

10

*Barquis v. Merchants Collection Assn.,*
    7 Cal. 3d 94 (1972)........................................................................................................................10

11

*Brewer v. Second Baptist Church,*
    32 Cal. 2d 791 (1984).......................................................................................................................7

12

13

*Brocklesby v. United States,*
    767 F. 2d 1288 (9th Cir. 1985)........................................................................................................9

14

*Brown v. Kelly Broadcasting Co.,*
    48 Cal. 3d 711 (1989).......................................................................................................................7

15

16

*Burgert v. Lokelani Bernice Pauahi Bishop Trust,*
    200 F. 3d 661 (9th Cir. 2000)..........................................................................................................5

17

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.,*
    173 F. 3d 725 (9th Cir. 1999)...................................................................................................13, 16

18

19

*Colt v. Freedom Communications, Inc.,*
    109 Cal. App. 4th 1551 (2003)........................................................................................................9

20

*Conley v. Gibson,*
    355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) .......................................................................5, 12

21

22

*Cox Broadcasting Corp. v. Cohn,*
    420 U.S. 469 (1975).........................................................................................................................9

23

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
    11 Cal. 4th 376 (1995)....................................................................................................................14

24

25

*Dial-A-Car, Inc. v. Transportation, Inc.,*
    82 F. 3d 484 (DC Cir. 1996) ...................................................................................................16, 17

26

*Golan v. Pingel Enterprise, Inc.,*
    310 F. 3d 1360 (Fed. Cir. 2002)....................................................................................................17

27

28

CBR SYSTEMS, INC.'S OPPOSITION TO
STEMBANC, INC.'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

*J'Aire Corp. v. Gregory,*
    24 Cal. 3d 799 (1979)..........................................................................................14, 15

*Janda v. Madera Community Hosp.,*
    16 F. Supp. 2d 1181 (E.D. Cal. 1998).......................................................................5, 17

*Kilgore v. Younger,*
    30 Cal. 3d 770 (1982)....................................................................................................8

*Korean Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003).................................................................................................14

*McClatchy Newspapers, Inc. v. Superior Court,*
    189 Cal. App. 3d 961 (1987).........................................................................................9

*Peoples v. Tautfes,*
    274 Cal. App. 2d 630 (1969).........................................................................................6

*Quality Foods v. Latin American Agribusiness Development,*
    711 F. 2d 989 (11th Cir. 1983)......................................................................................5

*Rodriguez v. Panayiotou,*
    314 F. 3d 979 (9th Cir. 2002)......................................................................................17

*Speegle v. Board of Fire Underwriters of the Pacific,*
    29 Cal. 2d 34 (1946)......................................................................................................6

*Stockton Newspapers, Inc. v. Superior Court,*
    206 Cal. App. 3d 966 (1988).................................................................................6, 7, 9

*Stolz v. Wong Communication Limited Partnership,*
    25 Cal. App. 4th 1811 (Cal. Ct. App. 1994) ...............................................................14

*William H. Morris Co. v. Group W, Inc.,*
    66 F. 3d 255 (9th Cir. 1995).........................................................................................16

*Williamson v. General Dynamics Corp.,*
    208 F. 3d 1144 (9th Cir. 2000), *cert. denied*, 531 U.S. 929, 121 S. Ct. 309,
    148 L. Ed. 2d 247 (2000) ..............................................................................................5

<u>Statutes and Codes</u>

Business & Professions Code
    Section 17500........................................................................................10, 12, 13

California Civil Code
    Section 47(c)..............................................................................................5, 6
    Section 47(d) ........................................................................................ passim

Lanham Act
    Section 43(a) ...............................................................................13, 14, 15

1

Rules and Regulations

2    Federal Rules of Civil Procedure

Rule 12(b)(6) ...................................................................................................................................15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendant and Counterclaimant CBR Systems, Inc. ("CBR") respectfully requests that this

2  Court deny Counterdefendant Stembanc, Inc.'s ("Stembanc") Motion to Dismiss CBR's First,

3  Second, Third, Fourth, Fifth, and Sixth Counterclaims Pursuant to Rule 12(b)(6) of the Federal

4  Rules of Civil Procedure ("Motion to Dismiss").

5  **I.     STATEMENT OF FACTS.**

6    CBR preserves and stores umbilical cord blood that is collected at the birth of an infant.

7  *See* CBR's Answer and Counterclaims, p. 13 at ¶ 9 (the "Counterclaims"). Umbilical cord blood

8  provides a rich source of stem cells, a potentially life-saving asset that may have future therapeutic

9  value. *Id.* An obstetrician or other health care provider collects the umbilical cord blood at the

10  patient's request in a kit that the patient has obtained from CBR. The umbilical cord blood is then

11  sent to CBR for preservation and storage. CBR markets its services to expectant parents who wish

12  to "bank" the umbilical cord blood for future use. *Id.* Doctors and hospitals collect the umbilical

13  cord blood only at their patient's request.

14    PharmaStem Therapeutics, Inc. ("PharmaStem") is the assignee/owner of U.S. Patent Nos.

15  5,004,681 ("the '681 Patent"), 5,192,553 ("the '553 Patent"), 6,461,645 ("the '645 Patent"),

16  6,569,427 ("the '427 Patent") and 6,605,275 ("the '275 Patent"). *Id.* at ¶ 10. On February 2002,

17  PharmaStem filed suit in the United States District Court for the District of Delaware against CBR

18  and several other companies, alleging infringement of the '681 and '553 patents. ("the Delaware

19  Action"). *Id.* at ¶ 11.

20    After a jury trial in the Delaware Action in October 2003, a verdict was entered in favor of

21  PharmaStem and against CBR and the other companies, finding the patents valid and infringed, and

22  awarding damages to PharmaStem. *Id.* at ¶ 12. Post-trial motions were timely filed, including a

23  motion by CBR and the other defendants for judgment as a matter of law or for a new trial. *Id.* at ¶

24  13. On September 15, 2004, a Memorandum Opinion and related Order were issued in the

25  Delaware Action overturning the verdict by finding as a matter of law that CBR and the other

26  defendants did not infringe the '553 Patent, and granting a new trial on the issue of infringement

27  and damages on the '681 Patent (the "September 15 Order"). *See* CBR System's, Inc.'s Request

28

CBR SYSTEMS, INC.'S OPPOSITION TO
STEMBANC, INC.'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

1  for Judicial Notice in Support of Opposition to Motion to Dismiss ("Request for Judicial Notice"),

2  Ex. 1 and 2.

3      On or about June 1, 2004, Counterdefendant Nicholas Didier ("Didier"), CEO and

4  President of PharmaStem, sent letters to approximately 25,000 obstetricians and hospitals that

5  contained false and misleading statements including, but not limited to, the following:

6      Patent infringement occurs when a person or institution practices all or part of a
7      patented process.    In the case of umbilical cord blood collection by an
       obstetrician, the Court ruled that infringement occurs even if the cryopreservation
8      and storage is performed by a third party.

9  Counterclaims at ¶¶ 14-15; *see also*, Declaration of Peter H. Nohle in Support of CBR Systems,

10 Inc.'s Opposition to Motion to Dismiss ("Nohle Decl."), Ex. 1 at 21:7-22:2.  The June 1, 2004

11 letter was sent to many individuals and entities residing in California and, more particularly, within

12 this judicial district. *See* Nohle Decl., Ex. 2.  The Honorable Gregory M. Sleet of the District of

13 Delaware, the Judge in the Delaware Action, in response to a motion filed by CBR and the other

14 defendants, issued an Order for Injunctive Relief on July 2, 2004 (the "July 2 Order") finding that

15 "PharmaStem's June 1, 2004 letter to Obstetricians ("the PharmaStem Letter") contains false and

16 misleading statements concerning the Court's rulings to date." Counterclaims at ¶¶ 17-20.  Judge

17 Sleet, in particular, found that:

18      1. PharmaStem's June 1, 2004 letter to Obstetricians (the "PharmaStem Letter")
        contains false and misleading statements concerning this Court's rulings to date.  In
19      particular, the Court finds the following statements in this PharmaStem Letter false
        and misleading:
20
21      A.  "Patent infringement occurs when a person or institute practices all or
        part of a patented process."  The Court finds this statement is misleading
22      because it is black letter law that in order to prove contributory infringement
        of a method patent, the entire patented process must be performed.  By
        suggesting that infringement would occur when only part of a process in
23      performed, the letter is misleading.

24      B.  "In the case of umbilical cord blood collection by an obstetrician, the
        Court ruled that infringement occurs even if the cryopreservation and storage
25      is performed by a third party."  The Court finds this statement misleading for
        at least the following reasons.  First, the sentence states that "the Court
26      ruled" with respect to the "case" of "umbilical cord blood collection by an
        Obstetrician."  This Court never made any rulings regarding conduct by
27      obstetricians.  There were no such allegations advanced in the trial of this
        matter.  Second, the sentence leaves out several important elements that
28

1
must be proved to show contributory infringement. The missing elements
include:

2

3
(1) that there must be a <u>sale</u> or <u>offer to sell</u> by the party that is
accused of contributory infringement,

4
(2) that the party accused of contributory infringement must be
"acting in concert or working together" with the other parties whose
combined conduct performed each and every element of the patented
process, and

5

6

7
(3) that, under §271(c), a sale of a service, as opposed to a sale of a
tangible physical object, is not sufficient to satisfy the requirements
of the contributory infringement statute.

8

9
The Court finds that without these elements, the statement is misleading.

10
*Id.* at ¶ 19.

11
    Judge Sleet granted an injunction against PharmaStem issuing further false or misleading

12
communications directed to obstetricians. *Id.* at ¶ 20. The injunction was granted, in part, because

13
the PharmaStem Letter did not mention: (i) the sale or offer to sell requirement of 35 U.S.C.

14
Section 271(c) ("Section 271(c)"); (ii) the "acting in concert or working together" requirement; or

15
(iii) that the sale of a service cannot satisfy Section 271(c). Counterclaims, Ex. B.

16
    Despite Judge Sleet's July 2 Order, PharmaStem and Didier continued to publish false and

17
misleading statements similar to those found to be false and misleading by Judge Sleet. *See, e.g.,*

18
*id.* at ¶ 21.

19
    Stembanc, a licensee of PharmaStem in which PharmaStem has an ownership interest, has

20
joined PharmaStem's and Didier's ongoing campaign of disparagement and misinformation. *See*

21
Nohle Decl., Ex. 1 at 62:3-63:1; Counterclaims at ¶¶ 26-34. Stembanc's actions, in turn, are

22
spearheaded by its President and CEO, Archibald A. Grabinski ("Grabinski"). *Id.* In

23
advertisements placed in *Pregnancy* magazine, in press releases and other website postings, and

24
through direct contact, Stembanc and Grabinski have disseminated false and misleading statements

25
to obstetricians, hospitals and the public concerning CBR and other cord blood banks. *Id.* at ¶¶ 26-

26
34.

27
    For example, advertisements placed in *Pregnancy* magazine state "[w]e feel it important for

28
you to know that this court verdict . . . establishes that Physicians who knowingly work in concert

- 3 -

with [CBR and other cord blood banks] may also be implicated in the process of patent infringement." *See* September 27, 2004 Declaration of Archibald A. Grabinski in Support of Motion to Dismiss, Docket No. 33 ("Grabinski Decl."), Ex. A and B. These statements, similar to those that the Delaware Court found to be false and misleading, suggest to the public that the jury in the Delaware Action found that obstetricians would be liable for infringement if they recommended the services of CBR or other cord blood banks not licensed by PharmaStem, or if they collected cord blood for patients who chose to store cord blood with CBR or one of the other banks.

Stembanc and Grabinski also published false statements that "[i]ncreasing numbers" of CBR's customers are claiming that they were misled by CBR and are demanding refunds. Grabinski Decl., Ex. E. Stembanc and Grabinski published additional false statements alleging that CBR was facing a cessation of business. Counterclaims at ¶ 32.

Stembanc and Grabinski have made further statements implying that CBR, and other companies not licensed by PharmaStem, are unethical or lacking in "technical integrity and legal legitimacy." *Id.* at ¶ 29. Stembanc and Grabinski have declined, after demand, to withdraw their false and misleading statements. *Id.* at ¶ 30. Upon information and belief, Stembanc and Grabinski and their agents have made additional false and misleading communications with the intent of causing customers and prospective customers of CBR not to deal with CBR. *Id.* at ¶¶ 34 and 35.

As a result of the actions of Stembanc, Grabinski and the other counterdefendants, some physicians have declined to collect cord blood for customers of CBR and have ceased to recommend CBR's services. *Id.* at ¶¶ 37-38. Customers of CBR were prevented from fulfilling their contracts with CBR, and others were dissuaded from contracting with CBR at all, because of the actions of Stembanc, Grabinski and the other counterdefendants. *Id.* Of course, such a response was exactly what Stembanc, Grabinski and the other counterdefendants intended. *Id.* at ¶¶ 35, 37 and 38.

## II.    ARGUMENT.

### A.    Standard For A Rule 12(b)(6) Motion.

In considering a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F. 3d 1114 (9th Cir. 2002), *citing Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F. 3d 661, 663 (9th Cir. 2000). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id., citing Williamson v. General Dynamics Corp.*, 208 F. 3d 1144, 1149 (9th Cir. 2000), *cert. denied*, 531 U.S. 929, 121 S. Ct. 309, 148 L. Ed. 2d 247 (2000). The showing required of a party seeking to avoid dismissal is "exceedingly low." *Quality Foods v. Latin American Agribusiness Development*, 711 F. 2d 989, 995 (11th Cir. 1983); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Furthermore, "[p]leadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears." *Janda v. Madera Community Hosp.*, 16 F. Supp. 2d 1181, 1189 (E.D. Cal. 1998) (citing *Speegle v. Board of Fire Underwriters of the Pacific*, 29 Cal. 2d 34, 42 (1946)). Each of CBR's Counterclaims clearly meets and surpasses this "exceedingly low" threshold.

### B.    Stembanc's Statements Are Not Privileged Pursuant To California Civil Code Section 47.

Stembanc asserts that each of the statements identified by CBR as actionable are privileged under California Civil Code Section 47(c) or (d). Stembanc bears the burden of establishing that the actions complained of fall within the scope of the privileges asserted. *See, e.g., Peoples v. Tautfes*, 274 Cal. App. 2d 630, 635 (1969). As described below, for each of the privileges asserted, Stembanc fails to carry its burden.

#### 1.    The statements at issue are not privileged pursuant to California Civil Code Section 47(c).

Stembanc asserts that the statements it made directly to obstetricians, gynecologists and CBR's actual or potential customers regarding their purported liability for patent infringement are

1   privileged pursuant to California Civil Code Section 47(c) ("Section 47(c)").  CBR has properly

2   alleged that the communications at issue were made with malice and/or were not undertaken in

3   furtherance of the interests protected by the privilege, and, thus, Stembanc's request that the

4   Counterclaims be dismissed pursuant to Section 47(c) should be denied.

5        Section 47(c) provides, in pertinent part, that a privileged publication or broadcast is one

6   made "[i]n a communication, *without malice*, to a person interested therein . . . by one who is also

7   interested."  Cal. Civ. Code § 47(c) [emphasis supplied].  Thus, the applicability of Section 47(c)

8   depends upon a finding that the statement was made without malice, *i.e.* not motivated by animus

9   or ill will toward the target of the statement.  *Id.; see also, Stockton Newspapers, Inc. v. Superior*

10  *Court,* 206 Cal. App. 3d 966, 978-979 (1988), disapproved on other grounds in *Brown v. Kelly*

11  *Broadcasting Co.,* 48 Cal. 3d 711, 732-733, fn. 18 (1989).  Similarly, because the privilege is given

12  for a particular purpose, the privilege is lost when the publication is attributable to "any cause other

13  than the desire to protect the interest for the protection of which the privilege is given."  *Stockton*

14  *Newspapers,* 206 Cal. App. 3d at 979-980, citing *Brewer v. Second Baptist Church,* 32 Cal. 2d 791,

15  797 (1984).  In other words, the privilege is inapplicable "when the purpose of informing the

16  interested party does not account for the behavior of the publisher."  *Id.* at 980.

17       CBR has properly alleged that Stembanc's actions were designed to have a "damaging

18  effect" on CBR, and that Stembanc acted "with the purpose of injuring CBR and its business and

19  property."  Counterclaims at ¶ 35.  CBR specifically alleged that Stembanc acted "with specific

20  intent to harm CBR," and that its conduct was "willful," "wanton," and "unprivileged."

21  Counterclaims at ¶¶ 36 and 37.  Thus, CBR properly pleaded that Stembanc's actions were a

22  product of malice and/or were undertaken for purposes other than those protected by the privilege.

23  Accordingly, Stembanc's Motion to Dismiss should be denied.  Alternatively, if the Court should

24  view CBR's allegations of malice as deficient, leave to amend should be granted.

25              2.    The statements at issue are not privileged pursuant to California Civil Code

26                    Section 47(d).

27       Stembanc asserts that the following publications are privileged pursuant to California Civil

28  Code Section 47(d) ("Section 47(d)"): (a) Stembanc's advertisements in *Pregnancy* magazine,

- 6 -

1   which state that the now-defunct verdict in the Delaware Action establish the patent infringement

2   liability of physicians who work with CBR's actual or potential customers; (b) the August 2, 2004

3   press release on Stembanc's website that states that CBR's customers are claiming that they were

4   misled by CBR and demanding refunds; and (c) the chart on Stembanc's website describing CBR

5   as "guilty of patent infringement" and not "licensed."  Stembanc's request that the Counterclaims

6   be dismissed pursuant to Section 47(d) should be denied because, *inter alia*, the publications at

7   issue are neither "fair and true," nor made in or to a "public journal."

8          Section 47(d) provides that a privileged publication or broadcast is one made "[b]y a *fair*

9   *and true* report in, or a communication to, a *public journal*, of . . . a *judicial . . . proceeding*."  Cal.

10  Civ. Code § 47(d) [emphasis supplied].  Accordingly, to be privileged, a publication must be: (a)

11  "fair and true," (b) reported in or communicated to a "public journal," and (c) a report of a "judicial

12  proceeding."  *Id.*

13         A publication is "fair and true" if it captures the substance of the judicial proceedings being

14  reported.  *Kilgore v. Younger*, 30 Cal. 3d 770, 777 (1982).  CBR has alleged that Stembanc's

15  statements are false and misleading, *i.e.*, neither fair nor true.  Counterclaims at ¶ 26.  CBR alleged

16  that Stembanc's statement that CBR is "guilty of patent infringement" is purposefully deceptive

17  and creates a false impression that CBR has engaged in criminal conduct.  Counterclaims at ¶ 29.

18  Similarly, CBR alleged that the statement that it is not "licensed" is designed to imply that CBR

19  lacks the regulatory authority to conduct its business lawfully.  *Id.*  As to the August 2, 2004 press

20  release, CBR alleged that the statements contained therein are false, and create the impression that

21  CBR's customers are claiming that they were misled by CBR and demanding refunds.

22  Counterclaims at ¶ 33.  Stembanc's August 2, 2004 press release also states that the June 1, 2004

23  letter that PharmaStem and Didier sent to over 25,000 physicians was a "clarification . . .

24  confirming the fact that obstetricians risk legal liability by collecting cord blood for infringing

25  companies."[1]  Thus, the parties dispute whether Stembanc's statements are "fair and true," and the

26

27  ___

[1] As explained above, a month before the August 2, 2004 press release, Judge Sleet had already declared that this same letter "contains false and misleading statements concerning the Court's rulings to date."

28

1  matter may not be resolved on Stembanc's motion to dismiss. *See, e.g., Stockton Newspapers,* 206
2  Cal. App. 3d at 977.

3        Furthermore, the statements published on Stembanc's website are not reports in or
4  communications to "a public journal" within the meaning of Section 47(d). Section 47(d) provides
5  an absolute privilege to fair and true reports of judicial and other official proceedings published in
6  the media. This privilege stems from the public's need for information "'to fulfill its supervisory
7  role over government.'" *McClatchy Newspapers, Inc. v. Superior Court,* 189 Cal. App. 3d 961,
8  975 (1987), quoting *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469 (1975).  The court in
9  *McClatchy* made clear that such privilege was to be afforded to the press and other public media
10 outlets, not to publications like those at issue here. *Id.* [emphasis supplied] ("'[g]reat responsibility
11 is accordingly placed on the *news media* to report fully and accurately the proceedings of
12 government . . . [w]ith respect to judicial proceedings in particular, the function of the *press* serves
13 to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon
14 the administration of justice.'")

15        Stembanc's website does not constitute a report in a "public journal." *See, e.g., Brocklesby
16 v. United States,* 767 F. 2d 1288, 1298 (9th Cir. 1985) (holding that publication of graphic charts
17 illustrating federal flight regulations for use by pilots were not statements in a "public journal").
18 Stembanc's reliance on *Colt v. Freedom Communications, Inc.,* 109 Cal. App. 4th 1551, 1555-56
19 (2003), is misplaced.  The holding in *Colt* does not even remotely support Stembanc's assertion
20 that all statements published on a website are reports in a "public journal." *Id.*  Unlike the
21 statements at issue here, the statements in *Colt* were published both in a hardcopy newspaper (the
22 *Colorado Springs Gazette*) and on the newspaper's Internet message board. *Id.*

23        Finally, the statements in the August 2, 2004 press release, stating that CBR's customers
24 are claiming that they were misled by CBR and demanding refunds, are not reports of a judicial
25 proceeding.  Such statements concern the alleged actions of CBR's customers, not any action
26 occurring within a court proceeding, and are thus outside of the scope of Section 47(d).

27        Accordingly, the statements at issue are not protected under Section 47(d), and Stembanc's
28 Motion to Dismiss should be denied.

C.    **CBR Has Sufficiently Pleaded Its Claims Under California Law.**

Stembanc asserts a variety of theories why CBR fails to properly plead its claims under California law. As demonstrated below, such assertions are without merit.

1.    CBR properly pleaded a claim for common law unfair competition, which claim is not limited to "passing off."

Stembanc cites *Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992), and a sole federal case citing thereto, for the proposition that a common law unfair competition claim only includes the tort of "passing off." The authority cited by Stembanc is inapposite. As shown by the court in *Bank of the West*, and as described by subsequent courts, the statement cited by Stembanc was merely meant to illustrate the difference between claims of statutory, as opposed to common law, unfair competition—namely, that the former includes claims of injury inflicted upon the consuming public, while the latter is limited to claims with an element of competitive injury. *Id.* at 1263, citing *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 109 (1972) (stating that the primary purpose of California's unfair competition statutes was to "extend[] to the entire consuming public the protection once afforded only to business competitors").

In *Bank of the West*, the California Supreme Court held that an insurance policy providing coverage for advertising injury due to unfair competition applied only to claims of common law unfair competition, and thus did not apply to claims brought by consumers who were alleging advertising injuries. *Id.* In so ruling, the court noted: "[t]he common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another," and that "[a]ccording to some authorities, the tort also includes acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market." *Id.* at 1263 [citations omitted]. As subsequent case law has made clear, however, and contrary to Stembanc's assertion, the *Bank of the West* court did <u>not</u> limit claims for common law unfair competition to the tort of "passing off," but rather limited such claims to those involving allegations of competitive injury. *See, e.g., American Cyanamid Co. v. American Home Assurance Co.*, 30 Cal. App. 4th 969, 976-977 (1994) (holding that insurance coverage for a claim of common law unfair competition is available where there is an allegation of competitive injury,

and stating, "[i]n the present case the underlying lawsuit against [insured] was brought by a competitor . . . not a member of the consuming public . . . [t]hus, there is no dispute that the element of competitive injury exists."); *A-Mark Financial Corp. v. CIGNA Property & Casualty Companies* (1995) 34 Cal. App. 4th 1179, 1188-1190.

CBR's claim of common law unfair competition is not based on allegations of injury to the consuming public. CBR has properly asserted a claim involving competitive injury, *i.e.*, that the actions of its competitor, Stembanc, in misrepresenting the characteristics of CBR's services, has injured CBR's business. These allegations clearly constitute a claim of common law unfair competition. Accordingly, Stembanc's Motion to Dismiss should be denied. Alternatively, if the Court should view CBR's pleading as deficient, CBR should be granted leave to amend.

2. <u>CBR properly pleaded a claim under Business & Professions Code Section 17500.</u>

Stembanc's arguments that the Counterclaims should be dismissed because the contested statements are true and non-misleading and/or non-actionable statements of opinion are without merit. The threshold question for the court to decide is whether CBR has alleged facts sufficient to put Stembanc on notice of its claim under Business & Professions Code Section 17500 ("Section 17500"), not whether CBR will ultimately prevail on its claim that Stembanc's statements are false and misleading. *Conley*, 355 U.S. at 47-48. This ultimate determination is to be decided after the parties have had the opportunity to engage in discovery. *Id.* At this stage, CBR need only demonstrate that its counterclaim meets the standard of sufficient pleading of a claim under Section 17500, a showing that CBR has unquestionably made.

CBR alleged, *inter alia*, that Stembanc made false or misleading statements: (a) regarding the findings made by the court and/or the jury in the Delaware Action concerning the patent infringement liability of physicians who work with CBR's actual or potential customers; (b) that CBR's customers are claiming that they were misled by CBR and demanding refunds; (c) describing CBR as "guilty of patent infringement," thereby implying that CBR was engaged in criminal activity; and (d) describing CBR as not "licensed," thereby implying that CBR lacks the necessary regulatory authority to lawfully conduct its business. Counterclaims at ¶¶ 26-34. Thus,

1  CBR has pleaded that Stembanc made false or misleading statement that, at the very least, tend to

2  deceive a substantial portion of the intended audience, *i.e.*, obstetricians and consumers. CBR also

3  pleaded that the deception is material, in that it is likely to, and has, influenced purchasing

4  decisions. *Id.* at ¶¶ 37-38. Such allegations are all that is required of CBR to avoid dismissal.

5     Contrary to Stembanc's suggestions, this is not a case involving non-actionable expressions

6  of opinion about the meaning of a statute or regulation, as in *Coastal Abstract Service, Inc. v. First*

7  *American Title Ins. Co.,* 173 F. 3d 725, 731 (9th Cir. 1999). The statements in the August 2, 2004

8  press release, asserting that CBR's customers are claiming that they were misled by CBR and

9  demanding refunds, are not statements of opinion regarding an unsettled area of law, but are

10  representations of fact.  The statements that CBR is "guilty of patent infringement" and not

11  "licensed" are also statements of fact, not opinion. Likewise, Stembanc's statements regarding the

12  verdict and rulings of the court in the Delaware Action are representations of fact, not opinions

13  regarding an unsettled area of law.[2] Therefore, Stembanc's Motion to Dismiss should be denied.

14          3.    CBR has adequately pleaded a claim of trade libel.

15     Stembanc's argument that CBR has failed to adequately plead a claim for trade libel merely

16  incorporates by reference its earlier arguments that CBR failed to allege that Stembanc acted with

17  malice and that the contested statements are true and/or non-actionable statements of opinion. As

18  discussed above in Section II.B.1., *supra*, CBR has adequately pleaded that Stembanc acted with

19  malice in making the statements at issue and, as discussed in Section II.C.2., *supra*, the statements

20  at issue are actionable representations of fact regarding the quality of CBR's services.

21  Accordingly, CBR's cause of action for trade libel should not be dismissed.

22  /-/-/

23  /-/-/

24  /-/-/

25

26  [2] Even if these statements were somehow found to be statements concerning the law, and therefore
*potentially* capable of being characterized as statements of opinion, at least some of the contested
27  publications were made after Judge Sleet ruled that the such representations were "false and
misleading statements concerning the Court's rulings to date."
28

- 11 -

1

           4.    CBR has properly pleaded a claim for intentional interference with

2

                    contractual or other economic relationships.

3        Stembanc argues that CBR's first counterclaim for intentional interference with contractual

4  or other economic relationships fails because no independent wrongful act can be proven. Again,

5  Stembanc seeks to place the cart before the horse. To avoid dismissal, all that is required is that

6  CBR plead that Stembanc engaged in conduct that was "wrongful by some legal measure other

7  than the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392

8  (1995). An act is wrongful if it is "proscribed by some constitutional, statutory, regulatory,

9  common law or other determinable legal standard." *Korean Supply Co. v. Lockheed Martin Corp.*,

10  29 Cal. 4th 1134, 1159 (2003). As described above, CBR properly alleged that Stembanc's conduct

11  violated both the common law of State of California and California Business and Professions Code

12  Section 17500. Accordingly, Stembanc's argument is without merit, and its request for dismissal

13  should be denied.

14

           5.    CBR has adequately pleaded a claim for negligent interference with

15

                    contractual or other economic relationships.

16        Stembanc argues that CBR has failed to adequately plead a claim for negligent interference

17  with contractual or other economic relationships because such claim requires that the defendant

18  owe the plaintiff a "duty of care." Stembanc's conclusion that no duty of care between the parties

19  is pleaded is incorrect. Stembanc cites *Stolz v. Wong Communication Limited Partnership*, 25 Cal.

20  App. 4th 1811 (Cal. Ct. App. 1994), in support of its conclusion. *Stolz*, however, contains no

21  analysis on this point, and instead merely cites to *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979).

22        As stated by the California Supreme Court in *J'Aire*:

23

> A duty of care may arise through statute or by contract. Alternatively, a duty may be

24

> premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human

25

> society. *Whether a duty is owed is simply a shorthand way of phrasing what is "'the essential question - whether the plaintiff's interests are entitled to legal*

26

> *protection against the defendant's conduct.'"*

27  *Id.* at 803 [emphasis supplied, citations omitted].

28

1    The *J'Aire* court also asserted that "[r]ather than traditional notions of duty, this court has

2    focused on foreseeability as the key component necessary to establish liability." *Id.* at 806. *J'Aire*

3    provided a six-factor test for determining duty: (1) the extent to which defendant's conduct was

4    intended to harm plaintiff; (2) the foreseeability of the harm; (3) the certainty that plaintiff actually

5    suffered harm; (4) the closeness of the connection between the conduct and the harm; (5) the moral

6    blame attached to defendant's conduct; and (6) the policy of preventing future harm. *Id.* at 804.

7    CBR has clearly pleaded facts that, read as a whole and viewed in a light most favorable to

8    CBR, warrant a finding of duty under the *J'Aire* factors. CBR pleaded that Stembanc's conduct

9    violated both the common law of California and Section 17500, allegations that undeniably

10   demonstrate that CBR's interests are "entitled to legal protection against the defendant's conduct."

11   *Id.* at 803. In addition, Section 17500 specifically imposes a duty upon entities engaged in

12   commercial speech to exercise "reasonable care" in making statements in furtherance of their

13   interests. Accordingly, Stembanc's Motion to Dismiss should be denied. Alternatively, if the

14   Court views CBR's pleading as deficient, CBR should be granted leave to amend.

15       **D.    CBR Has Sufficiently Pleaded Its Federal Unfair Competition Claim.**

16   Stembanc's argument regarding CBR's claim of a violation of Section 43(a) of the Lanham

17   Act ("Section 43(a)") merely restates its earlier argument that the publications at issue are non-

18   actionable statements of opinion and/or are true and not misleading. As demonstrated above, these

19   arguments are without merit. *See* Sections II.B.2. and II.C.2., *supra.* The contested statements are

20   not expressions of opinion about the meaning of a statute or regulation, as in *Coastal Abstract*

21   *Service, Inc. v. First American Title Ins. Co.,* 173 F. 3d 725, 731 (9th Cir. 1999), nor do they require

22   the parties to anticipate a subsequent interpretation of the law, as in *Dial-A-Car, Inc. v.*

23   *Transportation, Inc.,* 82 F. 3d 484, 489 (DC Cir. 1996). To the contrary, the statements concern

24   issues of existing fact, not opinion.

25       In addition, to the extent CBR's claims are premised on Stembanc's publications regarding

26   the purported patent infringement liability faced by obstetricians and other health care workers who

27   collect cord blood on behalf of CBR's customers, the Delaware Court issued a clear and

28   unambiguous ruling that obstetricians could not be liable for contributory infringement of all or

- 13 -

CBR SYSTEMS, INC.'S OPPOSITION TO
STEMBANC, INC.'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

part of certain PharmaStem patents based on their collecting cord blood for their patients because, *inter alia*, contributory infringement requires that there be a sale or offer to sell by the party that is accused of contributory infringement. Counterclaims at ¶ 19. That same principle applies without any need for interpretation of the potential liability of an obstetrician under all of PharmaStem's patents.

Stembanc essentially argues that because the cases involving CBR and the physicians who allegedly collect cord blood on behalf of its customers have not been resolved by final judgment, its statements cannot be false. To the contrary, where Stembanc could not possibly have a good faith belief in the position it articulates, its statements cannot be protected and can be the subject of Lanham Act liability. Stembanc, knowing the Delaware Court's findings, has not merely stated an opinion concerning an unsettled legal question, but has made false statements on the present state of legal liability. Such allegations are all that is required of CBR to avoid dismissal, as the facts as pleaded demonstrate that Stembanc's statements were meant to dissuade third parties from using the services of CBR in violation of Section 43(a). *William H. Morris Co. v. Group W, Inc.*, 66 F. 3d 255, 257 (9th Cir. 1995) (to prevail on a claim under Section 43(a), a plaintiff must show that: (1) the defendant made false or deceptive advertisements and representations; (2) those advertisements and representations actually deceived a significant portion of the consuming public; and (3) the plaintiff was injured by the defendant's conduct).

The cases relied upon by Stembanc involve statements of opinion regarding the interpretation of a statute or ordinance by a lay person, *e.g.*, *Rodriguez v. Panayiotou*, 314 F. 3d 979 (9th Cir. 2002) and *Dial A Car, Inc. v. Transportation, Inc.*, 82 F. 3d 484 (D.C. Cir 1996), not cases involving statements similar to those a court has already determined to be false and misleading. Furthermore, as demonstrated above, CBR has pleaded that Stembanc made the statements at issue with malice. *See* Section II.B.1., *supra*. Therefore, Stembanc's reliance on *Golan v. Pingel Enterprise, Inc.*, 310 F. 3d 1360 (Fed. Cir. 2002), is misplaced.

Finally, on a more fundamental level, Stembanc erroneously attempts to isolate each of its statements, and then argue that the isolated statements, reviewed alone and out of context, are not actionable. This, of course, is not the way in which the court is to evaluate CBR's Counterclaims.

1  *Janda*, 16 F. Supp. at 1189.  The court must evaluate the statements made by Stembanc and the

2  allegations made by CBR regarding those statements as a whole, and determine whether CBR has

3  sufficiently pleaded its claim.  Stembanc does not argue that the allegations by CBR as a whole do

4  not state a claim.  It only argues that the individual statements alone are not actionable.  The

5  allegations made by CBR, taken as a whole, and evaluated in accordance with the standard

6  required by a Rule 12(b)(6) motion, demonstrate that CBR has sufficiently pleaded a claim under

7  Section 43(a).

8  **III.    CONCLUSION.**

9       For all the foregoing reasons, Defendant and Counterclaimant CBR respectfully requests

10  that the Court deny Stembanc's Motion to Dismiss.

11       Dated: November 19, 2004.

12                              PILLSBURY WINTHROP LLP

14
15       By _____/s/_____

16       Attorneys for Defendants and Counterclaimants
         CBR SYSTEMS, INC. and SUTTER HEALTH, INC.