**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re: PharmaStem Therapeutics Patent Litigation,

MDL Docket No.: 1660

**MEMORANDUM IN SUPPORT OF PHARMASTEM THERAPEUTICS, INC.'S AND NICHOLAS DIDIER'S RESPONSE TO MOTION TO TRANSFER FOR CONSOLIDATION AND COORDINATION OF PRETRIAL PROCEEDINGS IN A SINGLE FORUM**

PharmaStem Therapeutics, Inc. and Nicholas Didier, the President and Chief Executive Officer of PharmaStem, (collectively, "PharmaStem") hereby respond to and respectfully requests that Judicial Panel on Multidistrict Litigation ("Panel") deny the motion of the Movants in this matter requesting the transfer of various actions to the United States District Court for the District of Delaware for consolidation and coordination of pretrial proceedings.[1]

---

[1] The Movants are: Bruce Zafran, M.D., Molly McBride, M.D., Carlo M. Croce, M.D., Sutter Health ("Sutter"), Obstetrical and Gynecological Associates, P.A., ("OGA"), FemPartners, Inc., ("FemPartners"), Cryo-Cell International, Inc. ("Cryo-Cell"), CorCell, Inc. ("CorCell"), ViaCell, Inc. ("ViaCell"), CBR Systems Inc., ("CBR"), Caritas St. Elizabeth's Medical Center of Boston, Inc. ("St. Elizabeth's"), Monica Aszlerbaum, Andrew Cassidenti, Eunice U. Lee, Carla Wells, Anita York, Bruce A. Hagadorn, Rahasree T. Seshadri, Arthur Goldstein.

I.    PRELIMINARY STATEMENT

These cases should not be transferred and consolidated in any single District Court for pretrial proceedings because transfer would not serve the purposes of 28 U.S.C. § 1407, and because other procedural mechanisms available to and already initiated by the parties will more effectively serve the purpose of efficient administration of justice. There is only the superficial appearance of similarity of issues in these cases, as each case depends on significantly different facts, witnesses, discovery, and even theories of infringement. Contrary to the intent of 28 U.S.C. § 1407, transfer to a single district would actually work against the convenience of the parties and witnesses in each of the designated cases, where all of the parties, relevant fact witnesses, and documents are already located in the District in which each case has been filed. Additionally, transfer of these matters would not promote the just and efficient conduct of these actions, as these matters encompass a wide range of factual issues, and range in status from matters in which discovery has not even commenced, to matters pending for nearly three years that are awaiting final entry of judgment pending decision on post-trial motions.

While transfer to any single District Court is unnecessary and inappropriate in this case, transfer to the Honorable Judge Gregory M. Sleet ("Judge Sleet") in the District of Delaware is particularly inappropriate. Transfer to the District of Delaware, indeed, to any district on the East Coast, would be far less convenient than not transferring the cases or transferring to a West Coast District Court such as the Northern District of California for the majority of the parties to this action, as ten of the nineteen Movants are located in California. In addition, there are insufficient common questions of fact with any action pending in Delaware to justify transfer to the District of Delaware because the two patents in question, U.S. Patent Nos. 6,461,645 B1 ("'645 Patent") and 6,569,427 B1 ("'427 Patent"), are before every District Court in question *except* the District Court for the District of Delaware. Two other PharmaStem patents referred to by Movants have already been through trial. These patents, U.S. Patent Nos. 5,004,681 B1 ("'681 Patent") and 5,192,553 ("'553 Patent"), are at issue in and *only* in the action initiated in the District Court for the District of Delaware on February 22, 2002 ("2002 Delaware Action").

The fact that the Judge Sleet in the District of Delaware has been exposed to some of these issues in an earlier action between the parties is a factor *against* transfer to the District of Delaware rather than for it. While Judge Sleet is familiar with some of the subject matter of the grandparent and parent patent applications, Judge Sleet still has before him a number of post-trial motions from the October 2003 trial, which PharmaStem has a very real interest in having decided in a reasonable time. In the 2002 Delaware Action, a unanimous jury returned a verdict of willful infringement in PharmaStem's favor on the '681 and '553 Patents. Judge Sleet overturned the verdict regarding one patent and ordered retrial on infringement of the other.[2] In addition, Judge Sleet has yet to schedule a case management or initial pretrial conference for the new retrial he ordered on September 15, 2004. PharmaStem will appeal Judge Sleet's decisions to the Federal Circuit when he enters final judgments in that case. PharmaStem has a compelling interest in seeing these matters quickly resolved because both the '681 Patent and the '553 Patent are rapidly approaching expiration and they both lose value every day.[3] Unfortunately, Judge Sleet has indicated to the parties that he has "limited resources" to devote to these matters, and as such, PharmaStem has serious reservations about the dramatic increase in Judge Sleet's docket (and inevitable decrease in time Judge Sleet has available to devote to the still-pending post-trial motions in the 2002 Delaware Action) that would be caused by transfer of these five actions and consolidation with an antitrust action recently filed in Delaware.

---

[2] PharmaStem is sensitive to the scope of the Judicial Panel on Multidistrict Litigation's jurisdiction, and is not asking the Panel to act as a Court of Appeals regarding Judge Sleet's rulings. Indeed, PharmaStem will appeal these rulings to the Federal Circuit as soon as Judge Sleet enters a final judgment. To that end, PharmaStem has filed motions for entry of final judgment which are still pending. PharmaStem suggests, however, that the Panel consider that Judge Sleet has before him more than enough work regarding these issues, and that PharmaStem has a very real and reasonable interest in not further burdening Judge Sleet with these actions, which would inevitably slow Judge Sleet's progress toward ruling on the remaining post-trial motions and allowing PharmaStem to move forward with its appeal.

[3] This matter has been in litigation for three years already. One patent will expire on April 1, 2008, in approximately three years and four months. Thus, each month that goes by reduces the life of that patent by approximately 2.5%.

For these reasons, PharmaStem opposes the instant motion for transfer and consolidation of these matters in any single District Court. If any of these matters are to be transferred, they would be more fairly and appropriately transferred to (in order of preference) the (1) Northern District of California, (2) the Central District of California, (3) any other District in this litigation (the Middle District of Florida, the Eastern District of Pennsylvania, or the District of Massachusetts) or (4) to any judge in the District of Delaware other than Judge Sleet. Notwithstanding Judge Sleet's familiarity with certain aspects of this dispute, because of the inconvenience the District poses for the majority of the parties and the compelling interest PharmaStem has in the expeditious resolution of its earlier action in Delaware, transferring these actions to the docket of Judge Sleet in the District of Delaware would work a significant disservice to the convenience of the parties and witnesses, and the interests of justice.

## II. PROCEDURAL BACKGROUND

Movants have asked the Panel to transfer and consolidate five recently filed patent infringement cases, one nearly three-year old patent infringement case that is in the post-trial phase, and one newly filed antitrust and tort action, all to the docket of Judge Sleet in the District of Delaware. The history of these various pieces of litigation illustrates several key differences between them.

### A.  THE 2002 DELAWARE PATENT INFRINGEMENT ACTION - POST-TRIAL/APPELLATE STAGE

The oldest of these cases (the 2002 Delaware Action), was filed by PharmaStem in the District of Delaware on February 22, 2002, for infringement of the '681 and '553 Patents. Judge Sleet presided over the 2002 Delaware Action, and PharmaStem went to trial against ViaCell, Cryo-Cell, CorCell, and CBR, four umbilical cord blood banks that refused to license PharmaStem's intellectual property. A three-week jury trial was held in October, 2003, and the jury unanimously found that all four defendant cord blood banks had willfully infringed PharmaStem's '681 and '553 Patents. See Affidavit of James Rogers in support of motion to

transfer for consolidation and coordination of pretrial proceedings in a single forum ("Rodgers Aff."), Exhs. A, B, F.

However, on September 15, 2004, nearly a year later, Judge Sleet reversed the jury's unanimous verdict of willful infringement regarding the '553 Patent, and ordered a retrial regarding the '681 Patent on different grounds. Rodgers Aff., Exh. R. PharmaStem intends to appeal Judge Sleet's decision to set aside the jury's verdict to the Federal Circuit. Judge Sleet is still considering several motions for entry of final judgment, among other motions filed after the trial. For example, PharmaStem's motion for a preliminary injunction for infringement of the '681 Patent is still pending. Judge Sleet also has yet to schedule a case management or initial pretrial conference for the new trial he ordered September 15, 2004. Thus, PharmaStem has so far been unable to secure a final ruling on any matter in this case so it can file its appeal. Affidavit of Paul J. Andre ("Andre Aff."), Exh. 3 (Docket of the 2002 Delaware Action).

Additionally, Judge Sleet recently asked the parties to negotiate a voluntary "standstill" so that the Court could "free up [Judge Sleet] and [his] limited resources to concentrate right now" on the post-trial motions which are still pending, more than a year after trial. Andre Aff., Exh. 2 at 14 (Transcript of November 15, 2004 Hearing). Meanwhile, the patents that PharmaStem asserted in the 2002 Delaware action are losing value each day. The '681 Patent expires April 1, 2008, in just three years and four months. Rodgers Aff., Exh. A. The '553 patent expires in 2010, two years later. *Id.*, Exh. B.

B.  **THE 2004 FLORIDA, PENNSYLVANIA, NORTHERN CALIFORNIA, CENTRAL CALIFORNIA, AND MASSACHUSETTS PATENT INFRINGEMENT ACTIONS - PRE-DISCOVERY STAGE**

The United States Patent and Trademark Office ("USPTO") recently issued several new patents to PharmaStem covering different aspects related to the collection, cryopreservation, and therapeutic use of hematopoietic stem cells found in umbilical cord blood. Rodgers Aff., Exh. C-E. While these patents share a grandparent application and, largely, a specification with the patents asserted in the 2002 Delaware Action, the new patents have entirely different claims, and thus protect different intellectual property.

In July and August of 2004, PharmaStem filed five new cases alleging infringement of the '645 and '427 Patents by various medical providers, as well as by the original four defendant blood banks from the 2002 Delaware Action, in the District of Massachusetts, the Northern District of California, the Central District of California, the Eastern District of Pennsylvania, and the Middle District of Florida (collectively, "2004 Provider Actions") Rodgers Aff., Exh. G, I, K, M, O.

The 2004 Provider Actions differ significantly from the 2002 Delaware Action, both in terms of content and procedural status. These five 2004 Provider Actions were all filed within the last four months, between July 28, 2004 and August 5, 2004. None of these cases have proceeded to the discovery stage. These new suits involve, variously, the four unlicensed cord blood banks from the 2002 Delaware Action, individual physicians, hospitals, and medical practice groups. In some, but not all of these cases, certain Movants brought counterclaims against PharmaStem's President and Chief Executive Officer, Nicholas Didier ("Mr. Didier"). Also in some but not all of these cases, certain Movants counterclaimed against PharmaStem licensee Stembanc, Inc. ("Stembanc") and its President and Chief Executive Officer, Archibald Grabinski ("Mr. Grabinski"). *Id.* The defendants in the 2004 Provider Actions filed answers in all but one of these cases, and in each answer, the defendants pled some form of state tort and unfair competition counterclaims. *See* Rodgers Affidavit, Exhs. H, J, L and N. In the District of Massachusetts action against ViaCell, however, instead of answering PharmaStem's complaint, ViaCell requested from PharmaStem and was granted, a 60 day extension of time to answer the complaint.

## C. THE 2004 DELAWARE ANTITRUST/TORT ACTION - PRE-DISCOVERY STAGE

On October 5, 2004, still having not answered PharmaStem's complaint in the Massachusetts action, ViaCell filed a new, *separate* suit in Delaware ("2004 Delaware Action"). CorCell and Cryo-Cell (defendants in the original 2002 Delaware Action and defendants and counterclaimants in the 2004 Pennsylvania and Florida Provider Actions) joined the suit on

October 15, 2004. Rodgers Aff., Exh. P. The suit alleges antitrust and state-law tort claims relating to PharmaStem's attempts to enforce its patents, most of which had already been raised as counterclaims by CorCell, Cryo-Cell and CBR in the 2004 Provider Actions. Before ViaCell initiated the 2004 Delaware Action, there was no action pending in the pretrial stage in Delaware. PharmaStem has moved to dismiss the 2004 Delaware Action, because, *inter alia*, it raises only claims which should be compulsory counterclaims to the various 2004 Provider Actions and because Plaintiffs in the 2004 Delaware Action are impermissibly seeking a constitutionally prohibited advisory opinion regarding provider infringement of PharmaStem's new patents.

### D. THE MULTIDISTRICT LITIGATION PETITION

On October 29, 2004, just two weeks after filing the new 2004 Delaware Action, Movants served and filed the instant motion before the Panel, seeking to have all of these actions consolidated before Judge Sleet in the District of Delaware. For all of the reasons set forth below, these cases need not and should not be transferred to any single district court.

If the Panel does elect to transfer the cases, the interests of justice demand that the cases not be transferred to Judge Sleet in the District of Delaware and instead, should be transferred to the Northern District of California. As set forth in greater detail below, the Northern District of California has Local Rules explicitly dedicated to addressing patent cases. In fact, The Honorable Jeffery S. White ("Judge White") of the Northern District of California has the 2004 Provider Action filed there, and has a Standing Order specifically addressing the relevant stages of patent cases. Thus, the Northern District of California offers a Court which will be able to quickly process all of these matters without further delaying final judgment and appeal in the original 2002 Delaware Action.

III. ARGUMENT

A. THERE SHOULD BE NO TRANSFER TO ANY SINGLE DISTRICT BECAUSE TRANSFER WOULD WORK AGAINST THE CONVENIENCE OF THE PARTIES, WOULD NOT PROMOTE THE JUST AND EFFICIENT CONDUCT OF THESE ACTIONS, AND IS NOT SUPPORTED BY A SUFFICIENT CONFLUENCE OF FACTS BETWEEN THE ACTIONS.

1. Transfer Of The 2004 Provider Actions Would Work Against The Convenience Of The Parties And Witnesses, All Of Whom Are Currently Located In The District Where Each Case Has Been Brought.

Regarding the 2004 Provider Actions, transfer would work against the convenience of the parties, because each of the parties to the 2004 Provider Actions is located in the district where each case has been brought. *See* Rodgers Affidavit, Exh. F, G, I, and K. PharmaStem sued each of the four unlicensed cord blood banks in their own backyard. *Id.* PharmaStem's suit against ViaCell, CorCell, Cryo-Cell, and CBR and each unlicensed blood bank's associated providers are in, respectively, the District of Massachusetts, the Eastern District of Pennsylvania, the Middle District of Florida, and the Northern District of California, where each provider is located. *Id.* PharmaStem's suits against Monica Aszlerbaum, Andrew Cassidenti, Eunice U. Lee, Carla Wells, Anita York, Bruce A. Hagadorn, Rahasree T. Seshadri, and Arthur Goldstein is in the Central District of California, where all of those defendants are located. *Id.*, Exh. M. PharmaStem's suit against Bruce Zafran is in the Middle District of Florida, where he is located. *Id.*, Exh. K. PharmaStem's suit against Molly McBride and Carlo Croce are in the Eastern District of Pennsylvania, where those providers are located. Finally, PharmaStem's suit against St. Elizabeth's, FemPartners, and OGA are in the District of Massachusetts, where the defendants are either located, or where they reached agreement with ViaCell for an exclusive contract for cord blood banking. *Id.*, Exh. O.

PharmaStem brought suit against each party in the forum most convenient to that party. Indeed, the choice of forum for each of the obstetrician actions was dictated by personal jurisdiction of the defendants and the convenience of the parties and witnesses. Each of the 2004 Provider Action defendants was sued in their "home" forum and/or where the infringement actually occurred. Importantly, individual defendants and third party percipient witnesses, such

as patients of the defendant obstetricians, will be terribly inconvenienced by any transfer to a distant forum, and may well be beyond the transferee forum's subpoena power. All relevant documents, witnesses, and parties are already located within the District, as each unlicensed cord blood bank is headquartered in the district, and as the providers against whom suit has been brought are also located in the districts, or the infringing action took place there.

### 2. There Are Insufficient Common Facts To These Actions To Justify Transfer To A Single District For Pretrial Purposes.

Movants rely entirely upon the fact that the patents at issue in the various actions before this Panel are progeny of USPTO Application No. 07/119,746 ("'746 Application") and largely share a specification. The '645 and '427 Patents, however, cover significantly different aspects of the cord blood banking process. Cord blood banking generally involves three steps: (1) the collection of blood rich in hematopoietic stem cells from the umbilical cord or placental blood of a newborn, which is performed by obstetricians; (2) the processing, testing, cryopreservation, and storage of cord blood, which is performed by cord blood banks; and, (3) the transplantation of cord blood for hematopoietic reconstitution into needy patients, which is performed by transplant physicians. The '645 and '427 Patents in the 2004 Provider Actions cover different aspects of this process. Rodgers Aff., Exh. A-D.

#### a. The Two Patents Asserted In The 2002 Delaware Action Are Not Asserted In Any Of The 2004 Provider Actions.

The 2002 Delaware Action, currently in the post-trial phase of the case, involves the '681 and '533 Patents, which are not asserted in any other action. The '645 and '427 Patents asserted in the 2004 Provider Actions are not before the Delaware Court.[4] As such, although the patents share a specification, different claims will necessarily be asserted in the 2004 Provider Actions, undermining Movants claim of "overlap" between these actions and the much more mature 2002 Delaware Action, involving different patents and claims.

---

[4] The '681 Patent was originally asserted in the Central District of California Provider Action as well, but the party against whom it was asserted has settled, so the patent is no longer at issue in that action.

> b. **Each Of The 2004 Provider Actions Presents Different Claims Regarding Different Aspects Of The Cord Blood Banking Process, Different Parties, And Different Questions Of Fact.**

The actions which the Movants seek to consolidate are in vastly different phases of litigation, involve different parties, different patents, different theories of liability, different claims, defenses, and counterclaims, and different subject matter. At the very least, the 2002 Delaware Action and the 2004 Delaware Action are substantially dissimilar from, and non-overlapping with, either each other or the 2004 Provider Actions.

In further contrast to the 2002 Delaware Action, in which only cord blood banks were sued, the 2004 Provider Actions involve individual obstetricians or obstetrician group defendants. Whereas the 2002 Delaware Action only involved infringement by cord blood banks, the 2004 Provider Actions largely concern infringement by obstetricians. While twelve of twenty remaining defendants in these actions are obstetricians, and four more defendants are medical provider entities, there were no medical provider or obstetrician defendants in the 2002 Delaware Action. Amongst these Provider Actions, the issues of fact and questions of law are as varied as the unique relationships each accused obstetrician or obstetrician group has with each private cord blood bank (operating without a license to PharmaStem's patents) for whom they collect cord blood. In addition, with respect to the 2004 Provider Actions, there is absolutely no overlap amongst any of the defendant obstetricians or obstetrician groups or cord blood banks sued by PharmaStem in the various jurisdictions. Accordingly, no 2004 Provider Action defendant can claim that it, he, or she is also being sued by PharmaStem in another related action.

Further, Mr. Didier has been named as a counterclaim-defendant in the Northern District of California action, the Pennsylvania action, and the Florida action, but not in the Central District of California Action. Rodgers Aff., Exh. H, J, L. Stembanc has been named as counterclaim-defendant in the Pennsylvania and Northern District of California actions, but not in any other action. *Id.*, Exh. H, J. Mr. Grabinski has been named as a counterclaim-defendant in the Northern District of California action, but in no other action. *Id.*, Exh. J. Factual issues

related to these counterclaims, such as any injury allegedly resulting from each defendant's alleged conduct, present no common questions of fact that would suggest transfer to a single district Court. Thus, considering the varied counterclaim-defendants, neither the parties nor the issues raised by their inclusion presents common questions of fact or law.

In terms of the progress of the cases, the 2002 Delaware Action is in the post-trial phase and PharmaStem is awaiting its opportunity to appeal. Judge Sleet, in that case, overturned a unanimous jury verdict of willful infringement, and ordered retrial with respect to the '681 Patent on infringement and damages. The 2004 Provider Actions are in the pre-discovery phase, as is the 2004 Delaware Antitrust Action. Where the actions in question are in significantly different stages of litigation, transfer is not justified. *In re Deering Milliken Patent Litigation*, 476 F.Supp. 461, 464 (J.P.M.L. 1979) (denying motion to transfer where cases at different stages).

Further difference between the cases are abundant. The 2002 Delaware Action addressed the liability of cord blood banks for storing infringing compositions and providing them for use by transplant physicians. The Massachusetts, Pennsylvania, Florida, Northern and Central Districts of California 2004 Provider Actions involve different Patents and concern the liability of obstetricians and in some cases, blood banks, for the collection of cord blood for storage by cord blood banks and, in some but not all cases, the exclusive promotion of a single private cord blood bank to their patients to the exclusion of PharmaStem's licensees. Additionally, with respect to issues related to the fact-intensive inquiry into willful infringement in each of the 2004 Provider Actions, all such issues are necessarily peculiar to each defendant, individually.

        **c.**    **According To Movants, Questions Of Patent Infringement Are Irrelevant To The 2004 Delaware Antitrust Action.**

The 2004 Delaware Antitrust Action does not have any patents before it whatsoever. Moreover, according to some of the Movants, the 2004 Delaware Action is not dependant on the outcome of any of the 2004 Provider Actions. The three Movants who are plaintiffs in the 2004 Delaware Action have affirmatively represented that whether or not PharmaStem succeeds in proving patent infringement in its 2004 Provider Actions is "irrelevant" to the claims pled in the

2002 Delaware Action. *See* Andre Aff., Exhibit 1 (Transcript of November 3, 2004 hearing) at 136:9-11. As such, these Movants acknowledge that these cases are not similar, even if they refer to patents that stem from a single grandparent patent application to justify their allegations in the 2004 Delaware Antitrust Action.

> 3. **Transfer Would Not Promote The Just And Efficient Conduct Of These Actions Because Mechanisms Other Than §1407 Will Streamline Discovery And Prevent Inconsistent Pretrial Rulings.**

In some cases, PharmaStem will probably assert similar claims of the '645 and '427 Patents in each of the 2004 Provider Actions. However, as each case involves different entities, the facts of each case may well cause PharmaStem to assert different claims against different individuals after PharmaStem obtains some discovery. In addition, adjudication of claim construction issues (or other patent issues) in any one of the District Courts in the 2004 Provider Actions will be dispositive of the same issues in the other District Courts in the 2004 Provider Actions, via the doctrine of collateral estoppel. Thus, transfer for consolidation and coordination of all pretrial proceedings in a single forum is unnecessary to resolve issues of claim construction or other patent issues. *In re Society of Lloyds Judgment Enforcement Litigation,* 312 F.Supp.2d 1381 at 1381 (J.P.M.L. 2004) (motion to transfer denied where alternatives to transfer exist that can minimize possibility of inconsistent pretrial rulings); *In re Eli Lilly and Company (Cephalexin Monohydrate) Patent Litigation,* 445 F.Supp. 242 at 244 (J.P.M.L. 1978) (cooperation and consultation between District Courts sufficient to minimize possibility of conflicting pretrial rulings).

Additionally, if the potential for conflicting claim constructions is genuinely at issue, the parties and/or the Courts involved in the 2004 Provider Actions can easily agree that only one district court will construe the claims. If the movants are serious about judicial economy, it is their option to bind PharmaStem to one claim construction by application of the collateral estoppel doctrine. PharmaStem certainly does not contemplate arguing different claim constructions in different jurisdictions and it will address the specific issues of claim construction raised by each of the various defendants. Thus, consolidation and coordination of

all pretrial proceedings in a single forum will not significantly advance judicial economy and will likely be of detriment to the convenience of the parties and witnesses.

**B.    THE NORTHERN DISTRICT OF CALIFORNIA IS A MORE APPROPRIATE TRANSFEREE DISTRICT THAN THE DISTRICT OF DELAWARE.**

While PharmaStem sees no reason that these cases should be transferred to a single District Court in the first place, if the Panel *does* elect to transfer these cases for the purposes of pretrial proceedings, transfer to the District Court for the Northern District of California would better serve the purposes of 28 U.S.C. § 1407 than would transfer to the District Court for the District of Delaware. Two of the five 2004 Provider Actions are filed in California. The 2004 Provider Action that is furthest along is the action in the Northern District of California. In that case, there have been various motions to dismiss defendants' counterclaims which will be heard on January 7, 2004, and the initial case management conference will also be held on January 7, 2004.

**1.    The Northern District Of California Is Better Equipped To Handle This Case Than The District Of Delaware.**

**a.    The Northern District Has A Fast Pre-Trial Docket, A Well Developed Set Of Patent Rules, A Standing Orders Regarding Patent Cases, And Model Jury Instructions For Patent Cases.**

Movants inaccurately characterize the docket of the Northern District of California. The Northern District of California has developed an extensive set of local patent rules and Standing Orders for patent cases which will significantly expedite the resolution of these cases. Thus, notwithstanding the Delaware Court's familiarity with two related patents, the Northern District of California is far better equipped to handle a transferred and consolidated patent case than the District of Delaware.

The Northern District of California is widely regarded as an ideal forum for patent cases due to its encompassing of the high-tech industries of "Silicon Valley." As a result of the sheer number of patent cases filed in the Northern District of California, the District has developed extensive local rules devoted entirely to patent actions. *See* Andre Aff., Exh. 7 (Northern District of California Local Patent Rules). These rules describe in detail mechanisms to

streamline and organize discovery, handle patent-specific motion practice, and deal with the thorny issues of claim construction. In addition, Judge White, who is presiding over the 2004 Provider Action filed in the Northern District of California, has a Standing Order for Patent Cases which deals at length with claim construction issues, and provides a tested mechanism for streamlining cases. *See* Andre Aff., Exh. 8 (Judge White's Standing Order for Patent Cases).

Movants also mischaracterize the docket speed of the Northern District of California. The docket of the Northern District of California is actually *faster* than that of the District of Delaware in terms of taking median cases to disposition (average 11.2 months from filing to disposition in civil cases in Delaware versus average 10.6 months from filing to disposition in the Northern District of California). *See* Rogers Affidavit, Exh. S. The statistics which Movants cite for the proposition that Delaware is faster count the period of time from filing to trial. Because these actions would only be transferred for pretrial matters, the median time through disposition is a more accurate measure of the respective speeds of the Court's dockets. As such, the Northern District, with its patent-specific rules and rapid docket, is better positioned to efficiently administer justice.

        **b.**    **The Northern District Of California Provides A More Convenient Forum For Parties And Witnesses Than The District Of Delaware.**

The Northern District of California is a far more convenient forum than the District of Delaware for parties, fact witnesses, and expert witnesses. The majority of the parties in these various actions (ten of the nineteen Movants) are California residents and/or entities while *none* of the parties are residents of Delaware.[5] The Northern District of California is equally accessible to all parties, and is served by several major airports including San Francisco, Oakland, and San Jose. To the extent that this litigation would benefit from centralization in a major metropolitan center that is well served by major airlines, San Francisco, California is a vastly superior venue to Wilmington, Delaware. The ease, variety, quality, and cost of

---

[5] While some of the parties have incorporated in Delaware, none reside or have corporate headquarters there.

transportation in and out of the Northern District of California by way of the San Francisco International Airport, San Jose International Airport, or Oakland International Airport, far outstrip the offerings in Delaware.

For the majority of the movants, the Courts of the Northern District of California are but a short drive, or a one-hour flight. Ten of the movants–the majority–are in California, including six in Northern California, as opposed to four in Massachusetts, three in Pennsylvania, and two in Florida. Three of the six law firms representing all parties are also located in Northern California, including lead trial counsel for PharmaStem, Mr. Didier, Stembanc, Mr. Grabinski, CBR, Sutter Health, Inc., Monica Aszlerbaum, Andrew Cassidenti, Eunice U. Lee, Carla Wells, Anita York, Bruce A. Hagadorn, Rajasree T. Seshadri, and Arthur Goldstein. As such, the Northern District of California is overwhelmingly the most convenient forum for parties and witnesses to this action.

    **2.**    **There Are No Concerns Regarding Forum Shopping Or Conflict Of Judicial Purpose In The Northern District Of California, While Transfer To Judge Sleet In The District Of Delaware Rewards Movants' Forum Shopping And Creates The Potential For A Conflict Of Judicial Purpose.**

PharmaStem is sensitive to the limits of the jurisdiction of the Panel, and is explicitly *not* asking the Panel to stand as an appellate court to review or evaluate Judge Sleet's decisions, *infra,* which were decided contrary to PharmaStem's interests. At least as important, PharmaStem is not alleging bias on the part of Judge Sleet, and is not asking the Panel to take the adverse decisions of Judge Sleet *themselves* into account when reaching its decision. As discussed in greater detail below, however, these decisions can and should be considered by the panel as likely sources of motivation for the Movants' request to put these matters before Judge Sleet, especially in light of the filing of the 2004 Delaware Action just two weeks before Movants filed the instant motion, in an apparent attempt to give the motion a sheen of legitimacy. Judge Sleet's decisions can also be considered in the context of PharmaStem's and Mr. Didier's perception of the difficulties they may face in the District of Delaware. Cognizant of the Panel's jurisdiction, PharmaStem will thus limit its discussion here to two actions by Judge Sleet which impact this analysis.

First, on June 30, 2004, the defendants in the 2002 Delaware Action moved to enjoin PharmaStem's marketplace activities in support of its various patents. *See* Andre Aff., Exhibit 3, (2002 Delaware Docket) at D.I. 516. The 2002 Delaware Action Defendants simultaneously moved for an expedited briefing schedule, requesting that PharmaStem's answering brief be due by July 14, 2004. *Id.* at 526 and 527. For reasons unknown to PharmaStem, Judge Sleet granted and entered the 2002 Delaware Defendants' TRO and preliminary injunction on July 2, 2004, without modification, only two days after the motions were filed, and before PharmaStem had any opportunity to be heard, raising due process concerns. *Id.* at 554 and 555; *compare* Andre Aff. Exhibit 3, *to* Rodgers Aff., Exh. Q.

Second, on September 15, 2004 (nearly a year after trial concluded) Judge Sleet issued a ruling reversing the unanimous decision of the 2002 Delaware Action jury in favor of PharmaStem finding willful infringement by all four defendants regarding the '553 Patent, and also ordered a retrial regarding the '681 Patent on different grounds. PharmaStem has also expressed to Judge Sleet that it intends to appeal both of his rulings to the Federal Circuit as soon as Judge Sleet issues final judgments in the 2002 Delaware Action. *See* Andre Aff., Exh. 3 at 6 (Transcript of November 15, 2004 Hearing).

      a.     **There Are No Concerns Regarding Forum Shopping In The Northern District Of California**

Forum shopping by defendants is prohibited by Rule 13(a) of the Federal Rules of Civil Procedure, which is set forth as follows: "A pleading *shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[...]*" Fed. R. Civ. P. 13(a) (emphasis added). Three of the Movants, ViaCell, CorCell, and Cryo-Cell brought the 2004 Delaware Antitrust Action before Judge Sleet in spite of the fact that the claims raised in that suit were largely identical to claims already raised as counterclaims in the Florida and Pennsylvania Provider Actions, incorporating claims of unfair competition and state tort liability. *See* Rodgers Affidavit, Exhs. F-L, N. Further, any claims which are not identical to

previously raised counterclaims, should have been brought as compulsory counterclaims to the 2004 Provider Actions. Given the timing of Movants' filing of the 2004 Delaware Antitrust Action just two weeks before Movants brought this petition before the Panel, PharmaStem and Mr. Didier are forced to question whether the intent of that action was largely to create a *current* action before Judge Sleet in order to provide support for this transfer request.

While PharmaStem is cognizant of the fact that this Panel will not evaluate the merits of PharmaStem and Mr. Didier's concerns that movants are forum shopping, it is worth noting that the combination of the dramatically adverse rulings already issued by Judge Sleet both in the form of the reversal of a unanimous jury verdict and in granting an injunction without providing PharmaStem the right to be heard along with the filing of a set of claims in Delaware at least raises the *implication* of forum shopping in the District of Delaware. In contrast, there is no implication, or even possibility, of forum shopping in the Northern District of California.

This Panel has previously held that when parties and counsel harbor a reasonable perception that they would be unfairly affected by selection of a particular forum, the Panel can take that into account in deciding whether and where to transfer the case. *In Re Silicone Gel Breast Implants Products Liability Litigation,* 793 F.Supp. 1098, 1101 (J.P.M.L. 1992) (declining to transfer to requested forum where perception of unfairness "could become a dark cloud over [the] proceedings"). PharmaStem and Mr. Didier reasonably harbor such a perception, and although PharmaStem and Mr. Didier do not allege bias on the part of Judge Sleet, PharmaStem and Mr. Didier suggest that the fact that they would prefer *any* judge in *any* District over the judge in the district requested by Movants should give the Panel pause regarding Movants' motivation in seeking to consolidate such diverse and disparate actions there, especially in light of the suspicious timing of the filing of the 2004 Delaware Antitrust Action. PharmaStem, Mr. Didier, and indeed, the various defendant providers in the 2004 Provider Actions have the right to proceed through this litigation without the "dark cloud" over the proceedings that could be created by transfer to Judge Sleet. *See Silicone Gel Breast Implants,* 793 F.Supp. at 1101. As such, especially given the desirability of the Northern District of

California for *all parties'* purposes, the Northern District of California is a better forum for transfer. In the Northern District of California, there is no chance of either the reality or the perception that the Movants were able to have PharmaStem's claims brought before a particular judge whom Movants may believe will continue to issue favorable rulings.

### b.  There Are No Concerns Regarding Conflict of Judicial Purpose In The Northern District Of California

The above-noted concerns aside, PharmaStem and Mr. Didier are deeply troubled by the prospect of putting five additional actions on Judge Sleet's docket given the difficulties Judge Sleet has expressed in even concluding the 2002 Delaware action. While Movants discuss the speed of the *Delaware* docket at length, they do not address the speed of *Judge Sleet's* docket, in spite of the fact that they have particularly requested that this Panel put all of these actions before Judge Sleet. Where interjection of a later-filed action into an separate, extremely advanced action "could delay the completion of those proceedings," the Panel has declined to transfer to the forum with the advanced proceedings. *Deering*, 476 F.Supp. at 464 (denying motion to transfer later filed case to district with similar, but more advanced case).

Here, transfer of these matters to Judge Sleet would be a recipe for a conflict of judicial purpose. The Manual for Complex Litigation, Fourth, sets forth the proposition that a transferee judge should take an active role in cases transferred onto his or her docket in an attempt to settle them. *See* Manual for Complex Litigation ("MCL"), Fourth, § 11.443. Transferee judges are expected to "make the most of this opportunity and facilitate the settlement of the federal and any related state cases." As such, at least one goal of the transferee judge (taking advantage of this "unique opportunity for global settlement" by giving the parties every opportunity to settle before remand for trial) will necessarily be at odds with the goal of Judge Sleet in the 2002 Delaware Action (speedy resolution of the remaining issues in that case, and retrial on infringement). *See* MCL, Fourth, § 11.443.

As recently as November 15, Judge Sleet directed the parties to the 2002 Delaware Action and the 2004 Delaware Action to voluntarily stipulate to a "standstill agreement" with respect to the 2004 Delaware Action, while he directed what he noted were his "limited

resources" towards the 2002 Delaware action. *See* Andre Aff., Exhibit 2 (Transcript of November 15, 2004 hearing), *passim*. The clear implication of this action is that Judge Sleet already has a substantial workload attributable to the 2002 Delaware Action, which involves as-yet unresolved post-trial issues and which is headed into an entirely new trial on infringement of the '681 Patent. Tellingly, Judge Sleet has yet to decide the 2002 Delaware Action parties' various post-trial and post-order motions, or schedule a case management or initial pretrial conferences for the new trial. *See id.*, Exh. 3. The 2002 Delaware Action has already been in litigation for almost three years. As such, further adding to Judge Sleet's docket would not be in the interests of expeditious justice, and could constitute unfair delay of the conclusion of the 2002 Delaware Action. *See Deering,* 476 F.Supp. at 464.

PharmaStem will appeal Judge Sleet's decisions overturning the unanimous jury verdict in its favor as soon as Judge Sleet enters final judgments. Unfortunately, final judgments have not yet been entered, in spite of the fact that trial concluded well over a year ago. Because patents confer temporally limited monopolies, each day that goes by, PharmaStem's patents lose value. PharmaStem's '681 Patent, one of the two patents in the 2002 Delaware Action, will expire April 1, 2008, in just three years and four months. Each month which passes reduces the value of the patent by approximately 2.5%.

Plainly, any further delay will seriously prejudice PharmaStem's ability to derive the full enjoyment of its patent rights. Equally plain, any transfer of other actions to Judge Sleet will only also delay final judgment in the 2002 Delaware Action, thereby irreparably harming PharmaStem. By way of contrast, the action currently pending in the Northern District of California before Judge White is, while more advanced than the other 2004 Provider Actions, at the very beginning of discovery. Because PharmaStem has a reasonable and real need to have final judgment entered in the 2002 Delaware Action as expeditiously as possible, PharmaStem proposes that transfer to the Northern District of California of the actions identified by Movants *other* than the 2002 Delaware Action would allow for a more fair resolution of *all* pending actions, including the 2002 Delaware Action.

Because the 2002 Delaware Action is nearly complete and a substantial record has been generated, to the extent that Judge White, as a potential transferee judge in the Northern District desires to avail himself of the knowledge Movants argue is possessed by Judge Sleet, communication between the Courts can easily allow Judge White to "step into the shoes" of Judge Sleet. *Deering,* 476 F.Supp. at 465 (because an extensive record of earlier action existed, transfer not necessary because judge in later matter was "close to the shoes" of judge in the earlier matter).

## VI.  CONCLUSION

PharmaStem respectfully requests that Panel deny the motion of the Movants in this matter requesting the transfer of various actions to the United States District Court for the District of Delaware for consolidation and coordination of pretrial proceedings, or, in the alternate, requests that the Panel transfer and consolidate only the five 2004 Provider Actions and the 2004 Delaware Action to the Honorable Judge Jeffrey S. White in the Northern District of California for pretrial matters.

November 20, 2004                              Respectfully Submitted,


_____
Paul J. Andre
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, CA  94025-1114
(650) 838-4300

Attorneys for
PharmaStem Therapeutics, Inc.
Nicholas Didier