### Page 1

```
                IN THE UNITED STATES DISTRICT COURT

                IN AND FOR THE DISTRICT OF DELAWARE

                              - - -

PHARMASTEM THERAPEUTICS,      :    Civil Action
INC.,                         :
                              :
          Plaintiff,          :
                              :
     v.                       :
                              :
VIACELL, INC., CRYO-CELL      :
INTERNATIONAL, INC., CORCELL, :
INC., STEMCYTE, INC., CBR     :
SYSTEMS, INC., f/k/a CORD BLOOD :
REGISTRY, INC., BIRTHCELLS    :
TECHNOLOGY, INC., NUSTEM      :
TECHNOLOGIES, INC., and       :
BIO-CELL, INC.,               :
                              :
          Defendants.         :    No. 02-148-GMS

                              - - -

VIACELL, INC., CRYO-CELL      :    Civil Action
INTERNATIONAL, INC. and       :
CORCELL, INC.,                :
                              :
          Plaintiffs,         :
                              :
     v.                       :
                              :
PHARMASTEM THERAPEUTICS,      :
INC.,                         :
                              :
          Defendants.         :    No. 04-1335-GMS

                              - - -

                    Wilmington, Delaware
                   Monday, November 15, 2004
                           11:30 a.m.
                     Telephone Conference

                              - - -

BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
```

### Page 2

```
APPEARANCES:

     PHILIP A. ROVNER, ESQ.
     Potter Anderson & Corroon LLP
              -and-
     PAUL J. ANDRE, ESQ.
     Perkins Coie LLP
     (Menlo Park, California)

              Counsel for Plaintiff

     JEFFREY L. MOYER, ESQ.
     Richards, Layton & Finger
              -and-
     PAUL F. WARE, ESQ.,
     JOHN ENGLANDER, ESQ., and
     ELAINE BLAIS, ESQ.
     Goodwin Procter LLP
     (Boston, MA)

              Counsel for ViaCell

     RICHARD D. KIRK, ESQ.
     Morris, James, Hitchens & Williams LLP
              -and-
     WILLIAM F. ABRAMS, ESQ., and
     THOMAS CHAFFIN, ESQ.
     Pillsbury Winthrop LLP
     (Palo Alto, California)

              Counsel for CBR Systems, Inc.
              f/k/a Cord Blood Registry, Inc.

     JAMES J. RODGERS, ESQ., and
     EVELYN H. McCONATHY, ESQ.
     Dilworth Paxson LLP
     (Philadelphia, PA)

              Counsel for Defendant CorCell, Inc.

                              - - -
```

### Page 3

THE COURT: Good morning, counsel. I know we probably have a number of counsel on the line. Why don't we start with PharmaStem.

MR. ROVNER: Your Honor, this is Phil Rovner. With me is Paul Andre.

Paul, are you there?

MR. ANDRE: I am here. Good morning, Your Honor.

THE COURT: Good morning.

MR. MOYER: Your Honor, Jeff Moyer for ViaCell. With me I have Paul Ware, John Englander and Elaine Blais.

MR. KIRK: Your Honor, Dick Kirk from Morris James for CBR. With me on the line is Tom Chaffin. He will be joined by Bill Abrams.

MR. RODGERS: Jim Rodgers and Evelyn McConathy for Cryo-Cell and CorCell from Dilworth Paxson.

THE COURT: Good morning.

Counsel, I believe I wrote to you on the 8th, seeking to confer with you as to your views on how the Court should spend the coming days with regard to the motions that I have recently heard, in light of the matters that are pending before the MDL, also in light of -- are you aware of Judge Moody's order down in Florida?

UNIDENTIFIED SPEAKER: Yes. Staying that matter for 120 days.

THE COURT: Yes.

### Page 4

UNIDENTIFIED SPEAKER: Yes, Your Honor.

THE COURT: Whoever wants to chime in first is free to do so. We will just have a little mayhem here.

MR. ANDRE: Your Honor, I will go first, since we are the plaintiff.

THE COURT: That is fair.

MR. ANDRE: I think we obviously would have no problem staying what I will refer to as the second Delaware case, the Viacell v. PharmaStem case, because that is directly relevant to the MDL proceedings.

What I am concerned about I guess at this point is in the PharmaStem One case, where we have had the trial and the posttrial motions, there are several motions pending regarding 54(b) and 1292, to get these matters to the appellate court, I am a little concerned that any kind of stay would affect that aspect of the case, just because, the case is going on now I think for three years. And we would like to seek resolution of that case through the appellate process sooner rather than later.

So my biggest issue, not necessarily for the preliminary injunction in that case, but all the other matters that are currently pending, we would like to seek final resolution to them as soon as possible.

THE COURT: Let me suggest, also, that the Court has, in the front of its mind, one of the motions that it

Page 5

1 strikes me is probably preliminary is the motion for
2 reconsideration. Let me, Mr. Andre, give you an opportunity,
3 since you spoke up first, to address that specifically. Not
4 the merits. I didn't notify counsel that I wanted to talk
5 about the merits. But whether, in addition to the motions
6 you have mentioned, you think the Court -- what is your view
7 as to whether the Court should go forward with its resolution
8 of that motion?
9        MR. ANDRE: I would think it would make sense,
10 Your Honor. The way I am looking at this is there are two
11 very separate cases. The PharmaStem v. ViaCell case or the
12 first Delaware case is not really related to the MDL
13 proceedings whatsoever. That involves two different patents
14 and obviously the antitrust claims brought by ViaCell.
15        So I think what would make sense is for the Court
16 to clean up what needs to be cleaned up on the posttrial
17 motions regarding the motions for reconsideration, then let
18 us get to the Federal Circuit with the various issues. I
19 know we have final judgment with respect to the '553 patent
20 and the contributory infringement issue. I know that the
21 defendants want to bring in the issue of validity as well. I
22 think that with the '681 patent, the defendants have
23 originally moved under 1292 to appeal the validity of that
24 case. We opposed that, in the alternative, moved to appeal
25 the issue regarding our expert witness, Dr. Hendrix.

Page 6

1        So I think at this point, if we could get all
2 this posttrial motion practice cleaned up so we could get to
3 the Federal Circuit as soon as possible, I think that would
4 also include the motion for reconsideration.
5        I thought I heard someone else talking.
6        I think that would make sense.
7        THE COURT: Defendants.
8        MR. WARE: Your Honor, Paul Ware for ViaCell.
9        I think, you know, a preliminary question in our
10 minds is what the Court's overriding concern is. If that
11 concern is certain things are before other jurisdictions and
12 that needs to get consolidated in order to rationalize this
13 process, that is a factor. If, on the other hand, a concern
14 is the Court's workload and other demands, that is also an
15 important factor. And we would work toward either of those
16 goals.
17        But it seems to me that PharmaStem could help
18 itself here by doing what we did on October 5th and agreeing
19 that until such rulings as the Court is going to make are in
20 place, we should have no more of the publications or the
21 letter-writing or the disputed conduct that involves the
22 OB/GYN community. If we can have that, I think that frees
23 the parties and particularly the defendants to come to some
24 agreement here that may assist the Court considerably. I
25 don't know if that is possible. I think we should push to

Page 7

1 have such an agreement. I have certainly brought that to the
2 attention of PharmaStem since the day of the hearing. I
3 don't think we have a definitive response yea or nay on that.
4        So I think we ought to deal with that.
5        Secondly, from our point of view, if we had such
6 an agreement from PharmaStem, we could certainly live with a
7 stay in the antitrust case, meaning on our affirmative motion
8 for preliminary injunction. We could live with a stay for
9 the time being on any motion for contempt. And we agree that
10 there should be some focus on the patent case, I think on two
11 fronts.
12        It seems to me the Court is absolutely right that
13 the motion for reconsideration should be dealt with, since it
14 could obviate a good deal of the case, and secondly, we as a
15 company need to get the preliminary injunction filed by
16 PharmaStem dealt with, because that really hangs over the
17 company as a serious business issue. And we are just not in
18 a position to agree that that should be put off.
19        So we agree, particularly if they are willing to
20 enter into some kind of standstill as we did on October 5th,
21 that the Court could concentrate just on the patent case, the
22 original Delaware case. In that regard, we think the Court
23 is right that the motion for reconsideration is appropriate
24 to think about. In any event, we need to deal with this
25 motion for a preliminary injunction which would, in effect,

Page 8

1 shut down the defendants' businesses or seriously undermine
2 those businesses. We can't live with that hanging out there.
3        THE COURT: Okay. Other defendants' views?
4        MR. RODGERS: Your Honor, for CorCell and
5 Cryo-Cell.
6        I agree with what Mr. Ware was saying.
7 Certainly, the reconsideration motion in a lot of ways is a
8 threshold question before you would get to any of the pending
9 motions with regard to appeal and certification, because if
10 you grant that motion, that would obviate those other
11 motions.
12        I certainly agree with what Mr. Ware said about
13 proceeding on both the new case and on the existing case on
14 PharmaStem's motion for a preliminary injunction.
15        THE COURT: Okay. Anyone else on the defense
16 side of the table want to be heard?
17        Mr. Andre, your reaction?
18        MR. ANDRE: My reaction, Your Honor, I think we
19 are pretty much in agreement here. I have no problem with
20 going forward with PharmaStem's current preliminary
21 injunction and basically treating the first Delaware case,
22 the patent case, as separate and distinct from the other
23 issues and having those dealt with at the Court's earliest
24 convenience.
25        With respect to a standstill that Mr. Ware

Page 9

1  suggested, I think, in principle, you know, as long as it is
2  clearly defined what that is, we can't put a gag order on our
3  clients pending this case going forward, with respect to -- I
4  will give you an example. We are in negotiations for another
5  licensee. If we get a licensee and we send out a press
6  release because our licensee would prefer to be known, would
7  that be in violation of the standstill? Could we get clearly
8  defined what is a -- what Mr. Ware is referring to as,
9  earlier we were talking about keeping our (inaudible) dry,
10 then I think we can agree to all that.
11      THE COURT: Mr. Ware.
12      MR. WARE: What I have in mind is what I
13 understood we did last time. That is, number one, no mass
14 mailings to members of the obstetrics and gynecology
15 community, whether the association mailing list or some other
16 list. Number two, no publication of offending ads in these
17 pregnancy leave-behind magazines. And number three, no press
18 releases along those same lines, that would frustrate the
19 other two steps.
20      But to the extent that PharmaStem gets an inquiry
21 from an individual OB/GYN, we would agree that it's
22 appropriate for them to respond to that inquiry. We are
23 really talking about mass efforts to influence this shift in
24 business.
25      THE COURT: Mr. Andre.

Page 10

1      MR. ANDRE: I think that, the problem, like I
2  said, the only uncertainty I would have with this, I would
3  have to check with PharmaStem, but it is the uncertainty
4  regarding the press release. We generally have put press
5  releases out in the past. I believe there are numerous press
6  releases regarding business developments or court
7  developments or whatever. To the extent that the Court in
8  Pennsylvania issues a ruling, we would like to be able to put
9  a press release out in that regard.
10     As far as mass mailings go, et cetera, I don't
11 think that -- I think that is something we could probably
12 agree to and maybe Mr. Ware and I could talk offline there.
13 I would have to talk to my client.
14     MR. WARE: As regards the press release, Your
15 Honor, it would be acceptable to us if we got 72 -- three
16 business days' notice of a press release, such that if we do
17 have a complaint about it we could take it up with the Court
18 if necessary. There may be press releases that would be
19 appropriate. It's hard to say. But I don't think a press
20 release which in effect frustrates the agreement we are
21 making about no mass mailings or no broadsides to the OB/GYN
22 community would be appropriate. There may be other press
23 releases that we wouldn't have a problem with.
24     THE COURT: Mr. Andre, what is your reaction to
25 that preliminary proposal? I am not asking you to sign onto

Page 11

1  it exactly.
2      MR. ANDRE: I will check with my client,
3  obviously. I think they are going to have a problem with
4  giving their licensed banks a 72-hour window, because
5  essentially, that will give them a chance to counter it with
6  a press release before we get ours out.
7      THE COURT: I guess that would certainly violate
8  probably both the letter and the spirit of any agreement you
9  might come up with. I would imagine you could build in some
10 language in an agreement to avoid that kind of circumstance
11 coming to pass.
12     MR. ANDRE: I think Mr. Ware and I can talk
13 offline and probably work something out, and I will talk to
14 my client. My client is obviously not going to be in favor
15 of any type of a gag order.
16     THE COURT: Sure.
17     MR. ANDRE: Their business is licensing their
18 patents. If they get licenses or if they get -- certain
19 things happen in their business. This is how they
20 communicate to the world.
21     THE COURT: I certainly didn't understand Mr.
22 Ware to object to your publication of the fact that you have
23 achieved a license or business result of some type like that.
24     Then, perhaps with an overabundance of hope, the
25 Court is going to concentrate its efforts on the motion for

Page 12

1  reconsideration, PharmaStem's motion for a preliminary
2  injunction, and I will call it the motions Mr. Andre spoke of
3  that will need to be resolved so that the matters related to
4  the underlying patent case can be taken up on appeal.
5      Anybody have anything else it wishes the Court to
6  focus its attention on?
7      MR. ROVNER: Your Honor, just a couple of issues
8  on the parties getting together and trying to work out things
9  before they go out. I think that that is a pretty good
10 idea. I think it does go both ways. There should be no
11 reason why parties to a lawsuit can't agree on what the Court
12 did in a particular setting. For example, if something
13 happened in Florida, the parties in the Florida case should
14 be able to agree on what the Court did. So I think that
15 there should be communications both ways, so before anybody
16 does anything, the same window, whether it is 72 or 48 hours,
17 the parties should be able to agree and work out what gets
18 released if anything.
19     THE COURT: Sure.
20     MR. ROVNER: Hopefully that can be worked out,
21 and if we do get a standstill agreement in place in what we
22 call the second Delaware action, what Mr. Ware referred to as
23 the antitrust action, that the standstill be with respect to
24 everything in the case, including discovery.
25     THE COURT: Well, that is fine. I will, as Mr.

Page 13

1  Andre and Mr. Ware have both suggested, I will leave it to
2  counsel offline to try to work out the details. I guess you
3  would want to put it in the form of a stipulation for my
4  signature. I guess that would probably give the greatest
5  level of comfort to all parties concerned, would it not?
6      MR. ANDRE: I think so, Your Honor.
7      MR. WARE: I think that does make sense.
8      I want to be clear, when we are talking about no
9  attack or communication to the OB/GYN community on a mass
10 basis, we are also talking inherently about these amnesty
11 agreements. I presume that's understood. But I perhaps
12 should say it.
13     THE COURT: Yes.
14     MR. WARE: Since that is part of the
15 communications to them.
16     MR. ANDRE: I am not sure what you are talking
17 about, because obviously those have already been mailed.
18     THE COURT: I think he is talking about the
19 future, from the website.
20     MR. WARE: If we are going to have a standstill,
21 the standstill includes mass efforts to the OB/GYN
22 community. You have 250 agreements or whatever you have.
23 But you shouldn't be continuing to sign those up and/or going
24 back out to that community urging them to sign amnesty
25 agreements. These things should be on hold until the Court

Page 14

1  rules. That's the standstill. We are standing still.
2      MR. ANDRE: We can talk offline. I will have to
3  get my client's acquiescence to that. I think that would be
4  resisted. We can talk and see if we can work something out.
5      THE COURT: Given the Court's statement as to how
6  it intends to direct its resources, does anybody have any
7  difficulty with what I have said?
8      MR. ANDRE: No, Your Honor.
9      MR. WARE: I think that is fine, Your Honor.
10     THE COURT: That is how I will proceed here in
11 chambers, and hope your efforts bear fruit with regard to the
12 standstill. If it is a problem and we need to get on the
13 phone again to try to massage some of the details and work
14 out with the Court's assistance some of those details, the
15 Court would be willing to do that, because I think it would
16 be something that would free up me and my limited resources
17 to concentrate right now where the rubber is meeting the
18 road, as it were. If you need to, you should call chambers
19 for that reason.
20     And certainly, the Court would appreciate being
21 informed as to any developments that you think it needs to
22 know about, hopefully not in the form of a motion.
23     All right, counsel.
24     (Teleconference concluded at 11:50 a.m.)
25 Reporter: Kevin Maurer

| | | | | |
|---|---|---|---|---|
| '553 [1] 5:19 | antitrust [3] 5:14 | chance [1] 11:5 | 13:2  14:23 | efforts [4]  9:23 |
| '681 [1] 5:22 | 7:7  12:23 | check [2] 10:3 | counter [1] 11:5 | 11:25  13:21  14:11 |
| -and [3] 2:3  2:7 | appeal [4] 5:23 | 11:2 | couple [1] 12:7 | either [1]  6:15 |
| 2:13 | 5:24  8:9  12:4 | chime [1] 4:2 | court [42] 3:8 | Elaine [2]  2:9 |
| 02-148-GMS [1] | appellate [2] 4:15 | Circuit [2] 5:18 | 3:16  3:18  3:25 | 3:10 |
| 1:12 | 4:18 | 6:3 | 4:2  4:6  4:15 | Englander [2] 2:8 |
| 04-1335-GMS [1] | appreciate [1] 14:20 | circumstance [1] | 4:24  4:24  5:6 | 3:10 |
| 1:19 | appropriate [4] 7:23 | 11:10 | 5:7  5:15  6:7 | enter [1] 7:20 |
| 11 [2] 1:22  14:24 | 9:22  10:19  10:22 | Civil [2] 1:4  1:14 | 6:19  6:24  7:12 | ESQ [11] 2:2 |
| 120 [1] 3:24 | aspect [1] 4:16 | claims [1] 5:14 | 7:21  7:22  8:3 | 2:3  2:6  2:8 |
| 1292 [2] 4:14  5:23 | assist [1] 6:24 | clean [1] 5:16 | 8:15  9:11  9:25 | 2:8  2:9  2:12 |
| 15 [1] 1:22 | assistance [1] 14:14 | cleaned [2] 5:16 | 10:6  10:7  10:17 | 2:13  2:14  2:17 |
| 2004 [1] 1:22 | association [1] 9:15 | 6:2 | 10:24  11:7  11:16 | 2:18 |
| 250 [1] 13:22 | attack [1] 13:9 | clear [1] 13:8 | 11:21  11:25  12:5 | essentially [1] 11:5 |
| 30 [1] 1:22 | attention [2] 7:2 | clearly [2] 9:2 | 12:11  12:14  12:19 | et [1]  10:10 |
| 48 [1] 12:16 | 12:6 | 9:7 | 12:25  13:13  13:18 | Evelyn [2]  2:18 |
| 50 [1] 14:24 | avoid [1] 11:10 | client [4] 10:13 | 13:25  14:5  14:10 | 3:14 |
| 54 [1] 4:14 | aware [1] 3:21 | 11:2  11:14  11:14 | 14:15  14:20 | event [1]  7:24 |
| 5th [2] 6:18  7:20 | b [1] 4:14 | client's [1] 14:3 | Court's [5] 6:10 | example [2]  9:4 |
| 72 [2] 10:15  12:16 | banks [1] 11:4 | clients [1] 9:3 | 6:14  8:23  14:5 | 12:12 |
| 72-hour [1] 11:4 | basis [1] 13:10 | Coie [1] 2:4 | 14:14 | existing [1]  8:13 |
| 8th [1] 3:17 | bear [1] 14:11 | comfort [1] 13:5 | Cryo-Cell [4] 1:7 | expert [1]  5:25 |
| a.m [2] 1:22  14:24 | biggest [1] 4:20 | coming [2] 3:19 | 1:14  3:15  8:5 | extent [2]  9:20 |
| able [3] 10:8  12:14 | Bill [1] 3:13 | 11:11 | current [1] 8:20 | 10:7 |
| 12:17 | BIO-CELL [1] 1:11 | communicate [1] | D [1]  2:12 | F [2]  2:8  2:13 |
| Abrams [2]  2:13 | BIRTHCELLS [1] | 11:20 | days [2] 3:19  3:24 | f/k/a [2] 1:9  2:16 |
| 3:13 | 1:9 | communication [1] | days' [1] 10:16 | fact [1]  11:22 |
| absolutely [1]  7:12 | Blais [2] 2:9  3:10 | 13:9 | deal [3] 7:4  7:14 | factor [2]  6:13 |
| acceptable [1] 10:15 | Blood [2] 1:9 | communications [2] | 7:24 | 6:15 |
| achieved [1] 11:23 | 2:16 | 12:15  13:15 | dealt [3] 7:13  7:16 | fair [1]  4:6 |
| acquiescence [1] | Boston [1] 2:10 | community [6] 6:22 | 8:23 | far [1]  10:10 |
| 14:3 | bring [1] 5:21 | 9:15  10:22  13:9 | Defendant [1] 2:20 | favor [1]  11:14 |
| action [4] 1:4 | broadsides [1] 10:21 | 13:22  13:24 | defendants [6] 1:12 | Federal [2]  5:18 |
| 1:14  12:22  12:23 | brought [1] 5:14 | company [2] 7:15 | 1:19  5:21  5:22 | 6:3 |
| addition [1] 5:5 | build [1] 11:9 | 7:17 | 6:7  6:23 | filed [1] 7:15 |
| address [1] 5:3 | business [7] 7:17 | complaint [1] 10:17 | defendants' [1] 8:3 | final [2] 4:23  5:19 |
| ads [1]  9:16 | 9:24  10:6  10:16 | concentrate [3] 7:21 | defense [1] 8:15 | fine [2]  12:25  14:9 |
| affect [1]  4:16 | 11:17  11:19  11:23 | 11:25  14:17 | defined [2] 9:2 | Finger [1]  2:7 |
| again [1] 14:13 | businesses [1] 8:2 | concern [3] 6:10 | 9:8 | first [5] 4:2  4:4 |
| agree [11]  7:9 | California [2] 2:4 | 6:11  6:13 | definitive [1] 7:3 | 5:3  5:12  8:21 |
| 7:18  7:19  8:6 | 2:15 | concerned [3] 4:11 | Delaware [7] 1:2 | Florida [3]  3:22 |
| 8:12  9:10  9:21 | case [23] 4:9  4:9 | 4:15  13:5 | 1:21  4:8  5:12 | 12:13  12:13 |
| 10:12  12:11  12:14 | 4:12  4:16  4:17 | concluded [1] 14:24 | 7:22  8:21  12:22 | focus [2]  7:10 |
| 12:17 | 4:18  4:21  5:11 | conduct [1] 6:21 | demands [1] 6:14 | 12:6 |
| agreeing [1]  6:18 | 5:12  5:24  7:7 | confer [1] 3:18 | details [3] 13:2 | form [2] 13:3  14:22 |
| agreement [7]  6:24 | 7:10  7:14  7:21 | Conference [1] 1:23 | 14:13  14:14 | forward [3]  5:7 |
| 7:6  8:19  10:20 | 7:22  8:13  8:13 | considerably [1] | developments [3] | 8:20  9:3 |
| 11:8  11:10  12:21 | 8:21  8:22  9:3 | 6:24 | 10:6  10:7  14:21 | free [2] 4:3  14:16 |
| agreements [3] 13:11 | 12:4  12:13  12:24 | consolidated [1] | Dick [1] 3:11 | frees [1] 6:22 |
| 13:22  13:25 | cases [1] 5:11 | 6:12 | different [1] 5:13 | front [1] 4:25 |
| along [1]  9:18 | CBR [3] 1:8  2:16 | contempt [1] 7:9 | difficulty [1] 14:7 | fronts [1]  7:11 |
| alternative [1] 5:24 | 3:12 | continuing [1] 13:23 | Dilworth [2] 2:18 | fruit [1] 14:11 |
| Alto [1] 2:15 | certain [2] 6:11 | contributory [1] | 3:15 | frustrate [1]  9:18 |
| amnesty [2]  13:10 | 11:18 | 5:20 | direct [1] 14:6 | frustrates [1]  10:20 |
| 13:24 | certainly [6]  7:6 | convenience [1] | directly [1] 4:10 | future [1]  13:19 |
| Anderson [1]  2:2 | 8:7  8:12  11:7 | 8:24 | discovery [1] 12:24 | gag [2] 9:2  11:15 |
| Andre [19]  2:3 | 11:21  14:20 | CorCell [5]  1:8 | disputed [1] 6:21 | generally [1]  10:4 |
| 3:5  3:7  4:4 | certification [1] | 1:15  2:20  3:15 | distinct [1] 8:22 | Given [1]  14:5 |
| 4:7  5:2  5:9 | 8:9 | 8:4 | DISTRICT [1] 1:2 | giving [1]  11:4 |
| 8:17  8:18  9:25 | cetera [1] 10:10 | Cord [2] 1:9  2:16 | down [1] 3:22 | goals [1] 6:16 |
| 10:24  11:2  11:12 | Chaffin [2]  2:14 | Corroon [1] 2:2 | Dr [1]  5:25 | good [5] 3:7  3:8 |
| 11:17  12:2  13:6 | 3:12 | counsel [9] 2:5 | dry [1]  9:9 | 3:16  7:14  12:9 |
| 13:16  14:2  14:8 | chambers [2] 14:11 | 2:11  2:16  2:20 | earliest [1] 8:23 | Goodwin [1]  2:9 |
| | 14:18 | 3:2  3:17  5:4 | effect [2]  7:25 | |
| | | | 10:20 | |

| | | | | |
|---|---|---|---|---|
| grant [1] 8:10 | J [2] 2:3 2:17 | 10:22 | 7:20 | Plaintiffs [1] 1:16 |
| greatest [1] 13:4 | James [3] 2:12 | mayhem [1] 4:3 | off [1] 7:18 | point [2] 4:11 7:5 |
| GREGORY [1] 1:25 | 2:17 3:12 | McConathy [2] 2:18 | offending [1] 9:16 | position [1] 7:18 |
| guess [4] 4:11 | Jeff [1] 3:9 | 3:14 | offline [4] 10:12 | possible [3] 4:23 |
| 11:7 13:2 13:4 | JEFFREY [1] 2:6 | MDL [3] 3:21 | 11:13 13:2 14:2 | 6:3 6:25 |
| gynecology [1] 9:14 | Jim [1] 3:14 | 4:10 5:12 | one [3] 4:12 4:25 | posttrial [3] 4:13 |
| H [1] 2:18 | John [2] 2:8 3:10 | meaning [1] 7:7 | 9:13 | 5:16 6:2 |
| hand [1] 6:13 | joined [1] 3:13 | meeting [1] 14:17 | onto [1] 10:25 | Potter [1] 2:2 |
| hanging [1] 8:2 | Judge [1] 3:22 | members [1] 9:14 | opportunity [1] 5:2 | practice [1] 6:2 |
| hangs [1] 7:16 | judgment [1] 5:19 | Menlo [1] 2:4 | opposed [1] 5:24 | prefer [1] 9:6 |
| hard [1] 10:19 | jurisdictions [1] | mentioned [1] 5:6 | order [4] 3:22 6:12 | pregnancy [1] 9:17 |
| heard [3] 3:20 | 6:11 | merits [2] 5:4 | 9:2 11:15 | preliminary [8] 4:21 |
| 6:5 8:16 | keeping [1] 9:9 | 5:5 | original [1] 7:22 | 6:9 7:8 7:15 |
| hearing [1] 7:2 | Kevin [1] 14:25 | might [1] 11:9 | originally [1] 5:23 | 7:25 8:14 8:20 |
| help [1] 6:17 | kind [3] 4:15 7:20 | mind [2] 4:25 9:12 | ought [1] 7:4 | 10:25 |
| Hendrix [1] 5:25 | 11:10 | minds [1] 6:10 | ours [1] 11:6 | press [12] 9:5 |
| Hitchens [1] 2:12 | Kirk [3] 2:12 3:11 | Monday [1] 1:22 | overabundance [1] | 9:17 10:4 10:4 |
| hold [1] 13:25 | 3:11 | Moody's [1] 3:22 | 11:24 | 10:5 10:9 10:14 |
| Honor [14] 3:4 | known [1] 9:6 | morning [3] 3:7 | overriding [1] 6:10 | 10:16 10:18 10:19 |
| 3:7 3:9 3:11 | L [1] 2:6 | 3:8 3:16 | Palo [1] 2:15 | 10:22 11:6 |
| 4:4 5:10 6:8 | language [1] 11:10 | Morris [2] 2:12 | Park [1] 2:4 | presume [1] 13:11 |
| 8:4 8:18 10:15 | last [1] 9:13 | 3:11 | part [1] 13:14 | pretty [2] 8:19 |
| 12:7 13:6 14:8 | lawsuit [1] 12:11 | motion [13] 5:8 | particular [1] 12:12 | 12:9 |
| 14:9 | Layton [1] 2:7 | 6:2 6:4 7:7 | particularly [2] 6:23 | problem [5] 4:8 |
| HONORABLE [1] | leave-behind [1] | 7:9 7:13 7:23 | 7:19 | 8:19 10:23 11:3 |
| 1:25 | 9:17 | 7:25 8:7 8:10 | parties [6] 6:23 | 14:12 |
| hope [2] 11:24 14:11 | letter [1] 11:8 | 8:14 11:25 14:22 | 12:8 12:11 12:13 | proceed [1] 14:10 |
| hopefully [2] 12:20 | letter-writing [1] | motions [10] 3:19 | 12:17 13:5 | proceeding [1] 8:13 |
| 14:22 | 6:21 | 4:13 4:13 4:25 | pass [1] 11:11 | proceedings [2] 4:10 |
| hours [1] 12:16 | level [1] 13:5 | 5:5 5:17 5:17 | past [1] 10:5 | 5:13 |
| idea [1] 12:10 | license [1] 11:23 | 8:9 8:11 12:2 | patent [6] 5:19 | process [2] 4:19 |
| imagine [1] 11:9 | licensed [1] 11:4 | moved [2] 5:23 | 5:22 7:10 7:21 | 6:13 |
| important [1] 6:15 | licensee [3] 9:5 | 5:24 | 8:22 12:4 | Procter [1] 2:9 |
| inaudible [1] 9:9 | 9:5 9:6 | Moyer [3] 2:6 | patents [2] 5:13 | proposal [1] 10:25 |
| Inc [17] 1:4 1:7 | licenses [1] 11:18 | 3:9 3:9 | 11:18 | publication [2] 9:16 |
| 1:8 1:8 1:8 | licensing [1] 11:17 | nay [1] 7:3 | Paul [6] 2:3 2:8 | 11:22 |
| 1:9 1:9 1:10 | light [2] 3:20 3:21 | necessarily [1] 4:20 | 3:5 3:6 3:10 | publications [1] |
| 1:10 1:11 1:14 | limited [1] 14:16 | necessary [1] 10:18 | 6:8 | 6:20 |
| 1:14 1:15 1:18 | line [2] 3:2 3:12 | need [5] 7:15 7:24 | Paxson [2] 2:18 | push [1] 6:25 |
| 2:16 2:16 2:20 | lines [1] 9:18 | 12:3 14:12 14:18 | 3:15 | put [5] 7:18 9:2 |
| include [1] 6:4 | list [2] 9:15 9:16 | needs [3] 5:16 | pending [5] 3:21 | 10:4 10:8 13:3 |
| includes [1] 13:21 | live [3] 7:6 7:8 | 6:12 14:21 | 4:13 4:22 8:8 | rather [1] 4:19 |
| including [1] 12:24 | 8:2 | negotiations [1] | 9:3 | rationalize [1] 6:12 |
| individual [1] 9:21 | LLP [6] 2:2 2:4 | 9:4 | Pennsylvania [1] | reaction [3] 8:17 |
| influence [1] 9:23 | 2:9 2:12 2:14 | new [1] 8:13 | 10:8 | 8:18 10:24 |
| informed [1] 14:21 | 2:18 | notice [1] 10:16 | perhaps [2] 11:24 | really [3] 5:12 |
| infringement [1] | looking [1] 5:10 | notify [1] 5:4 | 13:11 | 7:16 9:23 |
| 5:20 | M [1] 1:25 | November [1] 1:22 | Perkins [1] 2:4 | reason [2] 12:11 |
| inherently [1] 13:10 | magazines [1] 9:17 | now [2] 4:17 14:17 | PharmaStem [12] | 14:19 |
| injunction [7] 4:21 | mailed [1] 13:17 | number [4] 3:2 | 1:4 1:18 3:3 | recently [1] 3:20 |
| 7:8 7:15 7:25 | mailing [1] 9:15 | 9:13 9:16 9:17 | 4:9 4:12 5:11 | reconsideration [6] |
| 8:14 8:21 12:2 | mailings [3] 9:14 | numerous [1] 10:5 | 6:17 7:2 7:6 | 5:2 5:17 6:4 |
| inquiry [2] 9:20 | 10:10 10:21 | NUSTEM [1] 1:10 | 7:16 9:20 10:3 | 7:13 7:23 8:7 |
| 9:22 | mass [6] 9:13 9:23 | OB/GYN [5] 6:22 | PharmaStem's [2] | refer [1] 4:8 |
| intends [1] 14:6 | 10:10 10:21 13:9 | 9:21 10:21 13:9 | 8:14 8:20 | referred [1] 12:22 |
| INTERNATIONAL | 13:21 | 13:21 | Phil [1] 3:4 | referring [1] 9:8 |
| [2] 1:8 1:14 | massage [1] 14:13 | object [1] 11:22 | Philadelphia [1] | regard [5] 3:19 |
| involves [2] 5:13 | matter [1] 3:23 | obstetrics [1] 9:14 | 2:19 | 7:22 8:9 10:9 |
| 6:21 | matters [4] 3:20 | obviate [2] 7:14 | PHILIP [1] 2:2 | 14:11 |
| issue [5] 4:20 5:20 | 4:14 4:22 12:3 | 8:10 | phone [1] 14:13 | regarding [5] 4:14 |
| 5:21 5:25 7:17 | Maurer [1] 14:25 | obviously [5] 4:7 | Pillsbury [1] 2:14 | 5:17 5:25 10:4 |
| issues [4] 5:18 | may [3] 6:24 10:18 | 5:14 11:3 11:14 | place [2] 6:20 12:21 | 10:6 |
| 8:23 10:8 12:7 | | 13:17 | plaintiff [3] 1:5 | regards [1] 10:14 |
| itself [1] 6:18 | | October [2] 6:18 | 2:5 4:5 | Registry [2] 1:9 2:16 |

| | | | | | | |
|---|---|---|---|---|---|---|
| related [2] | 5:12 | spoke [2] | 5:3 | validity [2] | 5:21 | related – years |
| 12:3 | | 12:2 | | 5:23 | | |
| release [7] | 9:6 | standstill [8] | 7:20 | various [1] | 5:18 | |
| 10:4  10:9 | 10:14 | 8:25  9:7 | 12:21 | Viacell [8] | 1:7 | |
| 10:16  10:20 | 11:6 | 12:23  13:20 | 13:21 | 1:14  2:11 | 3:9 | |
| released [1] | 12:18 | 14:12 | | 4:9  5:11 | 5:14 | |
| releases [5] | 9:18 | start [1]  3:3 | | 6:8 | | |
| 10:5  10:6 | 10:18 | statement [1] | 14:5 | view [2]  5:6 | 7:5 | |
| 10:23 | | stay [3]  4:16 | 7:7 | views [2] | 3:18 | |
| relevant [1] | 4:10 | 7:8 | | 8:3 | | |
| Reporter [1] | 14:25 | staying [2] | 3:23 | violate [1] | 11:7 | |
| resisted [1] | 14:4 | 4:8 | | violation [1] | 9:7 | |
| resolution [3] | 4:18 | STEMCYTE [1] | | wants [1] | 4:2 | |
| 4:23  5:7 | | 1:8 | | Ware [19] | 2:8 | |
| resolved [1] | 12:3 | steps [1] 9:19 | | 3:10  6:8 | 6:8 | |
| resources [2] | 14:6 | stipulation [1] | 13:3 | 8:6  8:12 | 8:25 | |
| 14:16 | | such [3]  6:19 | 7:5 | 9:8  9:11 | 9:12 | |
| respect [4] | 5:19 | 10:16 | | 10:12  10:14 | 11:12 | |
| 8:25  9:3 | 12:23 | suggest [1] | 4:24 | 11:22  12:22 | 13:7 | |
| respond [1] | 9:22 | Systems [2] | 1:9 | 13:14  13:20 | 14:9 | |
| response [1] | 7:3 | 2:16 | | ways [3] 8:7 | 12:10 | |
| result [1] | 11:23 | table [1] 8:16 | | 12:15 | | |
| RICHARD [1] | 2:12 | TECHNOLOGIES [1] | | website [1] | 13:19 | |
| Richards [1] | 2:7 | 1:10 | | whatsoever [1] | 5:13 | |
| right [4] 7:12 | 7:23 | TECHNOLOGY [1] | | WILLIAM [1] | 2:13 | |
| 14:17  14:23 | | 1:10 | | Williams [1] | 2:12 | |
| road [1] 14:18 | | Teleconference [1] | | willing [2] | 7:19 | |
| Rodgers [4] | 2:17 | 14:24 | | 14:15 | | |
| 3:14  3:14 | 8:4 | Telephone [1]  1:23 | | Wilmington [1] 1:21 | | |
| Rovner [5] | 2:2 | THERAPEUTICS [2] | | window [2] | 11:4 | |
| 3:4  3:4 | 12:7 | 1:4  1:18 | | 12:16 | | |
| 12:20 | | THOMAS [1]  2:14 | | Winthrop [1] | 2:14 | |
| rubber [1] | 14:17 | thought [1] | 6:5 | wishes [1] | 12:5 | |
| ruling [1] | 10:8 | three [3] 4:17 | 9:17 | witness [1] | 5:25 | |
| rulings [1] | 6:19 | 10:15 | | worked [1] | 12:20 | |
| second [2] | 4:8 | threshold [1] | 8:8 | workload [1] | 6:14 | |
| 12:22 | | through [1] | 4:18 | world [1] | 11:20 | |
| secondly [2] | 7:5 | together [1] | 12:8 | wrote [1] | 3:17 | |
| 7:14 | | Tom [1]  3:12 | | yea [1]  7:3 | | |
| see [1]  14:4 | | toward [1] | 6:15 | years [1] 4:17 | | |
| seek [2]  4:18 | 4:22 | treating [1] | 8:21 | | | |
| seeking [1] | 3:18 | trial [1]  4:12 | | | | |
| send [1]  9:5 | | try [2]  13:2 | 14:13 | | | |
| sense [4] | 5:9 | trying [1] | 12:8 | | | |
| 5:15  6:6 | 13:7 | two [5]  5:10 | 5:13 | | | |
| separate [2] | 5:11 | 7:10  9:16 | 9:19 | | | |
| 8:22 | | type [2]  11:15 | 11:23 | | | |
| serious [1] | 7:17 | U.S.D.C.J [1] | 1:25 | | | |
| setting [1] | 12:12 | uncertainty [2] | 10:2 | | | |
| several [1] | 4:13 | 10:3 | | | | |
| shift [1] 9:23 | | under [1] | 5:23 | | | |
| side [1]  8:16 | | underlying [1] | 12:4 | | | |
| sign [3]  10:25 | 13:23 | understand [1] | 11:21 | | | |
| 13:24 | | understood [2] | 9:13 | | | |
| signature [1] | 13:4 | 13:11 | | | | |
| SLEET [1] | 1:25 | UNIDENTIFIED [1] | | | | |
| someone [1] | 6:5 | 3:23 | | | | |
| soon [2] 4:23 | 6:3 | up [9]  5:3 | 5:16 | | | |
| sooner [1] | 4:19 | 5:16  6:2 | 10:17 | | | |
| SPEAKER [1] | 3:23 | 11:9  12:4 | 13:23 | | | |
| specifically [1] 5:3 | | 14:16 | | | | |
| spend [1] | 3:19 | urging [1] | 13:24 | | | |
| spirit [1] | 11:8 | v [4]  1:6 | 1:17 | | | |
| | | 4:9  5:11 | | | | |