1  PAUL J. ANDRE, Bar No. 196585
   LISA KOBIALKA, Bar No. 191404
2  AMANDA M. FOX, Bar No. 212939
   PERKINS COIE LLP
3  101 Jefferson Drive
   Menlo Park, CA 94025-1114
4  Ph: (650) 838-4300
   Fx: (650) 838-4350
5
   Attorneys for Counterdefendant
6  Nicholas Didier

7
8                     UNITED STATES DISTRICT COURT
9                   NORTHERN DISTRICT OF CALIFORNIA
10                          SAN FRANCISCO

| | |
|---|---|
| 11  PHARMASTEM THERAPEUTICS, INC., a Delaware corporation, | **CASE NO. 04-3072 JSW** |
| 12 | |
| 13                    Plaintiff, | **COUNTERDEFENDANT NICHOLAS DIDIER'S REPLY IN SUPPORT OF MOTION TO DISMISS CBR SYSTEMS, INC.'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 14            v. | |
| 15  CORD BLOOD REGISTRY, INC., dba CBR, a California corporation, and SUTTER HEALTH, INC., a California corporation. | |
| 16 | |
| 17                    Defendant. | |
| 18 | Date/Time: January 7, 2005 at 9:00 a.m.<br>Courtroom: 2<br>Judge: Hon. Jeffrey S. White |
| 19 | |
| 20  CBR SYSTEMS, INC., dba CBR a California corporation | |
| 21                   Counterclaimant | |
| 22            v. | |
| 23  PHARMASTEM THERAPEUTICS, INC., a Delaware corporation; STEMBANC, INC., a Ohio corporation; NICHOLAS DIDIER; and ARCHIBALD A. GRABINSKI | |
| 24 | |
| 25                   Counterdefendants. | |

26
27
28

DIDIER'S REPLY IN SUPPORT OF                                    [40923-0005/BY043350.014]
MOT. TO DISMISS CBR'S COUNTERCLAIMS
CASE NO. 04-3072 JSW

| | | |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | ARGUMENT | 2 |
| | A. CBR FAILS TO REBUT MR. DIDIER'S COMPELLING SHOWING THAT, UNDER FEDERAL CIRCUIT LAW, THE EXERCISE OF JURISDICTION OVER HIS PERSON WOULD BE UNREASONABLE UNDER THE CIRCUMSTANCES AND WOULD NOT COMPORT WITH THE REQUIREMENTS OF DUE PROCESS. | 2 |
| | 1. CBR concedes that the Court does not have general jurisdiction over Mr. Didier, but mistakenly argues precepts of tort liability, rather than sufficient contacts with this forum, in order to establish personal jurisdiction over Mr. Didier. | 2 |
| | 2. CBR fails to make a *prima facie* showing of specific jurisdiction over Mr. Didier. | 5 |
| | a. The law of the Federal Circuit governs the question of specific personal jurisdiction over Mr. Didier. | 5 |
| | b. Under Federal Circuit law, principles of fair play and substantial justice protect a patentee from subjecting himself to jurisdiction in a foreign forum for activities such as those alleged against Mr. Didier. | 6 |
| | B. CONTROLLING FEDERAL CIRCUIT LAW ALSO RESOLVES THE QUESTION OF WHETHER CBR HAS ALLEGED ANY SET OF FACTS PROOF OF WHICH WOULD ENTITLE IT TO RELIEF AGAINST CBR. | 7 |
| | 1. Without a proper allegation of bad faith, all of CBR's tort causes of action against Mr. Didier in his personal and individual capacity are not legally cognizable. | 7 |
| | 2. CBR fails to allege any set of facts upon which a finding of bad faith could be sustained. | 8 |
| | a. CBR's counterclaims fail to allege the requisite bad faith. | 8 |
| | b. CBR's Opposition fails to show bad faith. | 9 |
| | c. The Delaware Order fails to show bad faith. | 10 |
| III. | CONCLUSION | 12 |

i

**Cases**

*3D Sys., Inc. v. Aarotech Lab., Inc.*,
  160 F.3d 1373 (Fed. Cir. 1998) .................................................................. 5

*Akro Corp. v. Luker*,
  45 F.3d 1541 (Fed. Cir. 1995) .................................................................... 5

*Amana Refrigeration, Inc. v. Quadlux, Inc.*,
  172 F.3d 852 (Fed. Cir. 1999) .................................................................... 6

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994) .................................................................... 5

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
  157 F.3d 1340 (Fed. Cir. 1998) .................................................................. 11

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*,
  142 F.3d 1266 (Fed. Cir. 1998) .................................................................. 6

*Genetic Implant Sys., Inc. v. Core-Vent Corp.*,
  123 F.3d 1455 (Fed. Cir. 1997) .................................................................. 6

*In re Syntex Corp. Securities Litigation*,
  95 F.3d 922 (9th Cir. 1996) ....................................................................... 1

*Inamed Corp. v. Kuzmak*,
  249 F.3d 1356 (Fed. Cir. 2001) .................................................................. 1

*ISCO Int'l, Inc. v. Conductus, Inc.*,
  279 F.Supp.2d 489 n. 8 (D.Del. 2003) ....................................................... 11

*Kaplan v. Helenhart Novelty Corp.*,
  182 F.2d 311 (2d Cir. 1950) .................................................................... 7, 8

*Nat'l Ass'n for the Advancement of Psychoanalysis v. California Bd. of Psychology*,
  228 F.3d 1043 (9th Cir. 2000) ................................................................... 1

*Red Wing Shoe Co. v. Hockerson-Halberdstadt, Inc.*,
  148 F.3d 1355 (Fed. Cir. 1998) .................................................................. 6

*Ruger v. Superior Court*,
  118 Cal.App.3d 427 (1981) ....................................................................... 4

*See Burger King Corp. v. Rudzewics*,
  471 U.S. 462 (1985) ................................................................................. 4

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

*Viam Corp. v. Iowa Export-Import Trading Co.*,
  84 F.3d 424 (Fed. Cir. 1996) .................................................................................. 2

*Virginia Panel Corp. v. MAC Panel Co.*,
  133 F.3d 860 (Fed. Cir. 1997) ............................................................................. 7, 8

*Virtue v. Creamery Package Mfg. Co.*,
  227 U.S. 8 (1913) ................................................................................................ 7, 8

*Zenith Elec. Corp. v. Exzec, Inc.*,
  182 F.3d 1340 (Fed. Cir. 1999) .............................................................................. 2

**Statutes**

35 U.S.C. § 271(b) ...................................................................................................... 12

35 U.S.C. § 271(c) ................................................................................................. 10, 12

35 U.S.C. § 287 ............................................................................................................. 8

Fed. R. Civ. P. 11 ..................................................................................................... 3, 4

- iii -

# REPLY

## I. PRELIMINARY STATEMENT

The subject matter of CBR's alleged tortious counterclaims is solely comprised of PharmaStem's patent notices, such as Exhibit A to CBR's answer and counterclaims (Docket #9)("Answer"), and other publicity in support of its patents, such as Exhibit C to Answer, which CBR affirmatively pleads are "representative" of the accused and allegedly actionable conduct at issue. Answer at ¶ 23. CBR's new and impermissible[1] attempts to bolster its counterclaims by submitting exhibits not originally attached to its Answer, or alleged therein, with its opposition (Docket #66)("Opposition"), add nothing substantively new or different to the alleged tortious subject matter. Even if the Court were to consider these newly-filed documents, they are merely further selections of PharmaStem's publicity in support of its patents. *See* Exhibits 3 and 4 to Peter H. Nohle's Declaration ("Nohle Decl.")(Docket #70). Consequently, CBR cannot dispute the fact that the subject matter of its counterclaims against Mr. Didier is wholly comprised of PharmaStem's marketplace activity in support of its patents.

As a result, CBR's counterclaims against Mr. Didier must fail. Federal Circuit law, rather than regional circuit law, controls legal questions intimately involving the substance of the patent laws and the enforcement of patent rights. There can be no arguable question that the law of the Federal Circuit governs, *inter alia*, both the question or personal jurisdiction over Mr. Didier and the question of whether or not Mr. Didier's alleged conduct is actionable. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)(Federal Circuit law controls jurisdictional questions "intimately involved with the substance of the patent laws"); *Viam Corp. v. Iowa*

---

[1] *See Nat'l Ass'n for the Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000)(the Court may only consider documents attached to the counter-complaint or documents whose contents are alleged in the counter-complaint and whose authenticity no party questions); *In re Syntex Corp. Securities Litigation*, 95 F.3d 922, 926 (9th Cir. 1996)(same).

1

DIDIER'S REPLY IN SUPPORT OF
MOT. TO DISMISS CBR'S COUNTERCLAIMS
CASE NO. 04-3072 JSW

[40923-0005/BY043350.014]

*Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996)(Federal Circuit law applies to both substantive and procedural issues "intimately involved in the substance of enforcement of a patent right"); *Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999)("[F]ederal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith… a patent owner has the right to … enforce its patent, and that includes threatening alleged infringers with suit.")(internal quotations and citations omitted). Under well-settled Federal Circuit precedents, the answer to both questions is a resounding "No." Indeed, the Federal Circuit has made it crystal clear that CBR's counterclaims against Mr. Didier cannot survive a motion to dismiss without unduly burdening a patentees' core rights to publicize and enforce its patents, in contravention to the legislative intent and goals of the patent laws.

## II.  ARGUMENT

**A.  CBR FAILS TO REBUT MR. DIDIER'S COMPELLING SHOWING THAT, UNDER FEDERAL CIRCUIT LAW, THE EXERCISE OF JURISDICTION OVER HIS PERSON WOULD BE UNREASONABLE UNDER THE CIRCUMSTANCES AND WOULD NOT COMPORT WITH THE REQUIREMENTS OF DUE PROCESS.**

   **1.  CBR concedes that the Court does not have general jurisdiction over Mr. Didier, but mistakenly argues precepts of tort liability, rather than sufficient contacts with this forum, in order to establish personal jurisdiction over Mr. Didier.**

CBR concedes that there is no basis for establishing general jurisdiction over Mr. Didier's person. Opposition at 2. Instead, CBR offers only that, being itself a California resident, it allegedly suffers wrongful harm in this forum due to alleged interference by Mr. Didier with *unalleged* relationships that CBR allegedly has with third parties. CBR's arguments are terribly confusing. Among other things, as Mr. Didier has already pointed out, CBR fails to sufficiently or properly allege the existence of any third-party relationships with which Mr. Didier could possibly interfere. Apparently, CBR at least partially concedes this point as well. In its opposition to PharmaStem's motion to dismiss, CBR responds to "PharmaStem's argu[ment] that CBR's first counterclaim, for intentional interference with contractual or other economic relationships, fails

- 2 -

because CBR has not pleaded that: (a) there was an actual breach or disruption of a valid contract between it and a third party..." by arguing that "PharmaStem erroneously focuses on <u>existing</u> contracts; CBR properly claims interference with <u>prospective</u> economic relationships." (Docket #67 at 6.)(Underscoring in original.) If CBR had no basis to plead a counterclaim for intentional interference with *contractual* relationships, then why did it plead a counterclaim for "intentional interference with contractual *or* other economic relationships?"[2] Mr. Didier respectfully submits that CBR's frivolously pleading intentional interference with contractual relationships (now withdrawn) is a Rule 11 violation, not saved by the use of the word "or." *See* Fed. R. Civ. P. 11.

Moreover, CBR fails to show that it has sufficiently pled the existence of prospective relationships with third parties, either. As CBR itself states, "the elements for intentional interference with prospective economic advantage [include]: (a) an economic relationship between the claimant and a third party, containing a *probable* future economic benefit or advantage to the claimant; [and] (b) the offending party's knowledge of the existence of the relationship..." (Docket #67 at 6.)(Emphasis added.)(Citations omitted.) If, as alleged, the complained-of "PharmaStem Letter" patent notice was publicized in a mass market mailing to approximately 25,000 obstetricians around the country, CBR still utterly fails to allege (1) the existence of any actual economic relationship between itself and any of those obstetricians; (2) that it is more probable than not that such obstetricians would have chosen CBR (in a market where there are at least twenty directly competing private cord blood banks, including sixteen licensed by PharmaStem); and, (3) how Mr. Didier could possibly, under any circumstances, have known of the existence of such relationships, if any, with CBR. As a result, it remains entirely unclear which contacts, if any, it believes could justify the establishment of personal jurisdiction over Mr.

---

[2] Equally confounding is that CBR still appears to be asserting that it "has lost, and continues to lose, business from current ...customers," despite its claim that it is not, or no longer, asserting that there is any interference with contractual relationships, but only with purported, but unalleged, prospective economic relationships. Opposition at 8.

- 3 -

DIDIER'S REPLY IN SUPPORT OF
MOT. TO DISMISS CBR'S COUNTERCLAIMS
CASE NO. 04-3072 JSW

[40923-0005/BY043350.014]

Didier.³ Indeed, none of the parties alleged by CBR appear to be actually or sufficiently connected to CBR, or California, in any way that would justify the exercise of personal jurisdiction over Mr. Didier in this forum.⁴

As demonstrated by its own arguments, CBR completely ignores jurisdictional pleading requirements. Instead, CBR continues to improperly "extrapolate precepts of liability into precepts of jurisdiction," by arguing only that it has correctly accused Mr. Didier of certain alleged torts. *See Ruger v. Superior Court*, 118 Cal.App.3d 427, 434 (1981). However, even if CBR can correctly recite what the elements of various torts are, it has still completely failed to make any case that there are sufficient minimum contacts with this jurisdiction to warrant haling Mr. Didier into court in a distant forum. Thus, CBR's so-called "jurisdictional" argument that it is allegedly suffering harm in its place of residence is totally misplaced; and cannot form a substitute for necessary minimum contacts between Mr. Didier and this forum.

---

³ Nor does CBR *specifically identify* any communications, in its counterclaims, that are likely to be found to have been directed at the forum state given a reasonable opportunity for jurisdictional discovery, as required by Rule 11 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 11. The allegations and other factual contentions of CBR's counterclaims must have evidentiary support, "or *if specifically so identified*, [must be] likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* (emphasis added).

⁴ Nor does CBR's belated evidence of Californian obstetricians on PharmaStem's mailing list or the declaration of a Wisconsin woman rehabilitate its jurisdictional pleading deficiencies. (Docket #70, Exhs. 2, 5.) Among other things, despite being in the best position to know, CBR claims no contractual or other economic relationships with any such obstetricians. Thus, specific jurisdiction could not arise from any contacts with such persons. *See Burger King Corp. v. Rudzewics*, 471 U.S. 462, 472-73 (1985)(specific personal jurisdiction must be based on activities that "arise[] out of" or "relate [] to" the cause of action). Furthermore, as discussed below, the type of communications alleged do not subject Mr. Didier to personal jurisdiction, under the patentee's privilege.

- 4 -

DIDIER'S REPLY IN SUPPORT OF
MOT. TO DISMISS CBR'S COUNTERCLAIMS
CASE NO. 04-3072 JSW

[40923-0005/BY043350.014]

2. **CBR fails to make a *prima facie* showing of specific jurisdiction over Mr. Didier.**

   a. **The law of the Federal Circuit governs the question of specific personal jurisdiction over Mr. Didier.**

As a preliminary matter, CBR wrongly argues that regional circuit law, rather than Federal Circuit law, governs the question of whether this Court may exercise specific jurisdiction over an out-of-state patentee (or its employee) for marketplace activity in support of its patents. The proper question is not whether CBR's counterclaims "involve torts" (as opposed to "patents"), *see* Opposition at 3, but whether or not the alleged torts implicate PharmaStem's patent rights; and, thereby, involve the substance of the patent laws. In this regard, it is well-settled that Federal Circuit law controls jurisdictional questions "intimately involved with the substance of the patent laws." *Inamed*, 249 F.3d at 1359 (internal citations omitted); *see also Viam*, 84 F.3d at 428 (Federal Circuit law applies to both substantive and procedural issues "intimately involved in the substance of enforcement of a patent right").

For example, in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, the Federal Circuit applied its own law in determining whether a district court had personal jurisdiction over an out-of-state corporation accused of patent infringement. 21 F.3d 1558, 1564-65 (Fed. Cir. 1994). A year later, in *Akro Corp. v. Luker*, the Federal Circuit stated that "[t]he jurisdictional issue presented by an out-of-state *patentee* is no less intimately involved with the substance of the patent laws than that of an out-of-state accused infringer... [c]onsequently, the instant case, like *Beverly Hills Fan*, presents a question of Federal Circuit law." 45 F.3d 1541, 1543 (Fed. Cir. 1995)(emphasis added). More recently, in *3D Sys., Inc. v. Aarotech Lab., Inc.*, the Federal Circuit applied its own law in determining whether a district court had personal jurisdiction over an out-of-state corporation defending an action involving a patent infringement claim and state law claims of trade libel and unfair competition. 160 F.3d 1373, 1377-78 (Fed. Cir. 1998). Finally, a year after *3D Sys.* was decided, the Federal Circuit bolstered its earlier holding, explaining that "because 'resolution of the patent infringement issue [was] a significant factor' in deciding whether the patentee had libeled the accused infringer, the district court had subject matter jurisdiction over

-5-

1  all of the claims, and it was appropriate to apply Federal Circuit law in resolving the personal
2  jurisdiction issue, even though state law claims were involved." *See Amana Refrigeration, Inc. v.*
3  *Quadlux, Inc.*, 172 F.3d 852, 856-57 (Fed. Cir. 1999)(internal citations omitted).  Analogously, in
4  the instant action, because resolution of the patent infringement issue will be a significant, if not
5  dispositive, factor in deciding whether the patentee libeled the accused infringer, or is guilty of
6  other torts, it is appropriate to apply Federal Circuit law in resolving the personal jurisdiction
7  issue, even though state law claims are involved.  Thus, there can be no arguable question that
8  Federal Circuit law governs the determination of whether or not this Court may exercise personal
9  jurisdiction over Mr. Didier comporting with the requirements of due process.

       **b.     Under Federal Circuit law, principles of fair play and substantial    justice protect a patentee from subjecting himself to jurisdiction in a foreign forum for activities such as those alleged against Mr. Didier.**

13        As already pointed out by Mr. Didier, the Federal Circuit has consistently and repeatedly
14  held that the type of subject matter alleged by CBR as the basis of its tort claims "is insufficient to
15  satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee."
16  *See Inamed*, at 1361, citing *Red Wing Shoe Co. v. Hockerson-Halberdstadt, Inc.*, 148 F.3d 1355,
17  1361 (Fed. Cir. 1998)(cease-and-desist letters, and "hybrid" cease-and-desist letters including
18  offers for a license, do not suffice to justify personal jurisdiction."); *Genetic Implant Sys., Inc. v.*
19  *Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)(infringement letters not sufficient to
20  satisfy the requirements of due process."); *Akro*, 45 F.3d at 1548 (letters from and negotiations for
21  a license with an out-of-state patentee cannot support personal jurisdiction); *Dainippon Screen*
22  *Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1270-71 (Fed. Cir. 1998)(same as *Genetic Implant*).  As
23  stated by the Federal Circuit in *Red Wing*, "Principles of fair play and substantial justice afford a
24  patentee sufficient latitude to inform others of its patent rights without subjecting itself to
25  *jurisdiction* in a foreign forum."  148 F.3d at 1360-61 (emphasis added).
26        Indeed, the above-described jurisdictional protections afforded patentees goes to the very
27  heart of a patentee's rights to announce and enforce its patents under the patent laws.  *See Virginia*

- 6 -

*Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997)("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction."), *cert. denied*, 525 U.S. 815 (1998); *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913)("Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal."); *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314 (2d Cir. 1950)("[I]t is not an actionable wrong for one in good faith to make plain to whomsoever he will that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those rights are."). The activity of which CBR accuses Mr. Didier is precisely the kind of patentee activity meant to be insulated from subjecting him or her to specific jurisdiction (without the existence of general jurisdiction) wherever potential infringers may receive such notice of its patent rights. Thus, the exercise of personal jurisdiction over Mr. Didier by this Court would not comport with the requirements of due process, the principles of fair play and substantial justice, or the substance of the patent laws. For the above reasons alone, CBR's counterclaims against Mr. Didier in his personal and individual capacity should be dismissed, and Mr. Didier should be dismissed for lack of personal jurisdiction.

**B. CONTROLLING FEDERAL CIRCUIT LAW ALSO RESOLVES THE QUESTION OF WHETHER CBR HAS ALLEGED ANY SET OF FACTS PROOF OF WHICH WOULD ENTITLE IT TO RELIEF AGAINST CBR.**

**1. Without a proper allegation of bad faith, all of CBR's tort causes of action against Mr. Didier in his personal and individual capacity are not legally cognizable.**

The Federal Circuit has also made it crystal clear that the above-discussed reasons why the exercise of personal jurisdiction over Mr. Didier would not comport with principles of fair play and substantial justice go hand-in-hand with the reasons why CBR fails to state a claim upon which relief can be granted. Indeed, both sets of reasons are firmly grounded in the same

-7-

1 jurisprudence, which affords patentees a privileged right to notify the public of their patent rights.
2 *See Zenith Elec.*, 182 F.3d at 1353 ("This privileged right of a patentee to notify the public of its
3 patent rights is statutorily rooted in the patent laws at 35 U.S.C. § 287, which authorizes
4 patentholders to 'give notice to the public' of a patent by marking its patented articles and make
5 marking or specific notice to the accused infringer a prerequisite to the recovery of
6 damages.")(citations omitted). Thus, "federal patent law bars the imposition of liability for
7 publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in
8 bad faith… a patent owner has the right to … enforce its patent, and that includes threatening
9 alleged infringers with suit." *Id.* (internal quotations and citations omitted); *see also Virginia*
10 *Panel*, 133 F.3d at 869, *supra*; *Creamery Package*, 227 U.S. at 37-38, *supra*; *Helenhart Novelty*,
11 182 F.2d at 314, *supra*.

In accordance with its established precedents, the Federal Circuit requires that "before a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, the marketplace activity must have been undertaken in bad faith." *Zenith Elec.*, at 1353. Importantly, "[t]his *prerequisite* is a function of the interaction between the Lanham Act and patent law, and is in addition to the elements required by § 43(a) itself, as § 43(a) alone does not require bad faith." *Id.* (Emphasis added.) Similarly, "to avoid patent law preemption of [tortious interference and unfair competition] state law tort claims [based on publicizing a patent in the marketplace], bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Id.* at 1355 (internal citations omitted). Thus, in short, unless CBR alleges (and ultimately proves) bad faith, even if bad faith is not otherwise an element of the tort claim, either PharmaStem's or Mr. Didier's conduct is simply not actionable.

   2.   **CBR fails to allege any set of facts upon which a finding of bad faith could be sustained.**

        a.   **CBR's counterclaims fail to allege the requisite bad faith.**

By all appearances, CBR has carefully avoided using the words, "bad faith," in its allegations against PharmaStem or Mr. Didier. *See* Opposition at 6, n. 1, 13. While the totemic

- 8 -

1  use of the words, "bad faith," may not be mandatory, CBR's vague assertions of "extreme and
2  outrageous" conduct, and the like, make it impossible for Mr. Didier to have adequate notice of the
3  contours of the claims asserted against him. As discussed above, bad faith must be pled, even if it
4  is not otherwise an element of the alleged torts. Similarly, this extra bad faith element, required
5  both for pleading and proving torts implicating patent rights, is necessarily *in addition* to any
6  "false or misleading" element that is already a required element of the claimed torts. *Zenith Elec.*,
7  at 1353.
8        Significantly, CBR does not plead, allege or contend that Mr. Didier lacks a good faith
9  belief in the validity and enforceability of PharmaStem's patents. CBR's allegations of so-called
10 "extreme and outrageous" conduct are, instead, essentially constrained to its pleading that "[u]nder
11 no proper interpretation of the PharmaStem Patents could an obstetrician be liable for patent
12 infringement based on collecting umbilical cord blood at the time of delivery and providing it to
13 the patient for the patient's shipment of the blood to a bank. PharmaStem's threat of such improper
14 enforcement of the patents constitutes misuse of the PharmaStem Patents." Answer at ¶ 22.
15 However, even this "under no proper interpretation" allegation in support of CBR's non-
16 infringement contentions falls far short of meeting the bad faith pleading requirement, because "it
17 is not an actionable wrong for one in good faith to make plain to whomsoever he will that it is his
18 purpose to insist upon what he believes to be his legal rights, *even though he may misconceive*
19 *what those rights are.*" *Helenhart Novelty*, at 314 (emphasis added). Thus, while PharmaStem
20 certainly believes that obstetricians can be found liable for infringing its patents, whether or not
21 this is objectively the case, CBR has still failed to plead the requisite bad faith on the part of Mr.
22 Didier.
23       **b.   CBR's Opposition fails to show bad faith.**
24       Perhaps, recognizing its above pleading failure, CBR only belatedly attempts to
25 rehabilitate its deficient pleadings by asserting that Mr. Didier "*knowingly* mailed false and
26 misleading materials asserting claims of patent infringement to physicians whom he knew
27 engaged in no conduct that would constitute infringement." Opposition at 13 (emphasis added).
28

- 9 -

1    As a threshold matter, CBR still does not allege that Mr. Didier knowingly made false or
2    misleading statements about patent infringement (actionable, if properly and non-speculatively
3    alleged), but only of knowingly sending patent notices to physicians whom he purportedly knew
4    did not infringe (not actionable). Even so, CBR blatantly misrepresents Mr. Didier's testimony.
5    According to CBR's own selection of Mr. Didier's testimony it is clear that all Mr. Didier
6    "knew" was that PharmaStem's mass mailing of patent notices to obstetricians in the medical
7    community may "be received by some number of physicians who weren't practicing medicine
8    anymore or who don't do cord blood collection at all." *Id.*, citing Nohle Decl., Ex. 1 at 29:14-22.
9    Assuming *arguendo* that "physicians who weren't practicing medicine anymore or who don't do
10   cord blood collection at all," upon receiving notice of PharmaStem's patents, "refused" to collect
11   cord blood for CBR, it is inconceivable how this could possibly harm CBR, since such doctors
12   were not practicing medicine or collecting cord blood regardless, or how PharmaStem could
13   possibly be blamed for the fact that some obstetricians simply do not practice medicine anymore
14   and/or collect cord blood at all. CBR's novel and tortured overbreadth/non-infringement
15   contentions simply do not hold up under scrutiny. In short, the receipt of communications by
16   doctors with whom CBR has no existing or prospective relationships, and who categorically have
17   absolutely no interest in or use for CBR's products or services because they no longer practice
18   medicine or collect cord blood at all, cannot possibly form the basis of a legally cognizable claim
19   against PharmaStem or Mr. Didier at any stage of proceedings. Thus, even if this Court were to
20   consider CBR's latest and newest evidence, it remains beyond all doubt that CBR's allegations still
21   do not support its counterclaims or convert inactionable conduct into actionable conduct, in
22   conflict with the patent laws.

23           **c.**      **The Delaware Order fails to show bad faith.**
24   CBR continues to make much ado about the Honorable Judge Sleet's July 2, 2004 Order
25   ("Delaware Order") regarding PharmaStem's patent announcements and the elements of
26   contributory infringement, under 35 U.S.C. § 271(c). Opposition at 12 ("the Delaware Court
27   issued a clear and unambiguous ruling that obstetricians could not be liable for *contributory*

- 10 -

1  *infringement* of all or part of certain PharmaStem patents based on their collecting cord blood for
2  their patients...")(emphasis added). However, CBR's reliance upon the Delaware Order is
3  misplaced for numerous reasons.
4       First, as already pointed out by Mr. Didier, CBR blatantly misrepresents Judge Sleet's
5  thoughts on the propriety PharmaStem's marketplace activity in support of its patents by only
6  putting forward the Delaware Order, scripted by CBR, while omitting Judge Sleet's subsequent
7  rulings at hearing. *See* Motion at 4. Taking into account Judge Sleet's subsequent rulings, it is
8  clear that PharmaStem has never been held in contempt of any court order, for making false or
9  misleading statements about its patents or for any other reason. *See id.* Indeed, Judge Sleet's
10 previously published decisions have affirmed that when federal or state tort claims are asserted
11 against a patent holder for marketplace activity in support of its patent, the claimant is required to
12 establish that the patent holder acted in bad faith. *ISCO Int'l, Inc. v. Conductus, Inc.*, 279
13 F.Supp.2d 489, 504-06, n. 8 (D.Del. 2003)(Sleet, J.)(overturning verdict of unfair competition, in
14 connection with patentholder's marketplace activity in support of its patent, for lack of affirmative
15 evidence that patent holder sought, *in bad faith*, to enforce an unenforceable patent; even though
16 evidence supported the jury's verdict that the patent was unenforceable due to inequitable
17 conduct). Thus, although falsity of the marketplace communication, or disregard for it, is
18 "required" in the bad faith inquiry, such falsity or disregard, without more, is not *sufficient* to
19 sustain a finding of bad faith. *ISCO*, 279 F.Supp.2d at 505 (citations omitted). As demonstrated
20 herein, the Delaware Order does not lend support to CBR's conclusory "falsity or disregard" legal
21 contentions against either PharmaStem or Mr. Didier. To the contrary, even Judge Sleet has
22 previously held that "[t]he law recognizes a presumption that the assertion of a duly granted patent
23 is made in good faith ... [and] this presumption is overcome only by affirmative evidence of bad
24 faith." *ISCO*, at 505, quoting *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir.
25 1998)(internal citations omitted). CBR simply has made no showing to overcome the
26 presumption, or that its allegations could support such a showing.
27
28

- 11 -

DIDIER'S REPLY IN SUPPORT OF
MOT. TO DISMISS CBR'S COUNTERCLAIMS
CASE NO. 04-3072 JSW

[40923-0005/BY043350.014]

Additionally, none of Judge Sleet's rulings are premised on consideration of the question of *obstetrician* liability presented, for the first time, in this litigation. PharmaStem has never before sued obstetricians who collect cord blood for unlicensed banks for patent infringement. Thus, Judge Sleet has never opined on this question. To the extent CBR contends that Judge Sleet went out of his way to issue general pronouncements on the patent laws as to matters not before him, such arguments are frivolous.

Finally, even if Judge Sleet's interpretation of the law of contributory infringement under 35 U.S.C. § 271(c) were binding and correct, which PharmaStem disputes, it still would not preclude a good faith belief in liability for patent infringement on the part of obstetricians who collect cord blood for unlicensed banks, as other species of indirect infringement exist from which liability for patent infringement flows. For example, theories of liability for the inducement of infringement under 35 U.S.C. § 271(b) are readily available to, and have been plead by, PharmaStem. Thus, CBR's arguments, carefully directed in their entirety to the contention that obstetricians cannot be liable for contributory infringement of the patents in suit under 35 U.S.C. § 271(c), are entirely inapposite.

### III. CONCLUSION

CBR's remaining counterarguments are just as wrong and unavailing as those analyzed and addressed herein, and are insufficient to defeat Mr. Didier's Motion to Dismiss. Moreover, for the further reasons adduced herein, CBR's counterclaims should clearly be dismissed, at the very least, for lack of personal jurisdiction over the counterdefendant Mr. Didier and/or for failure to state a claim upon which relief can be granted. *Inter alia*, without bad faith, CBR's counterclaims cannot be sustained. Indeed, not only has CBR failed to allege any wrongful or unprivileged conduct against Mr. Didier, but the only scenario which might make CBR's counterclaims hypothetically colorable against PharmaStem at some time in the future, is if final judgment of non-infringement were entered in favor the obstetrician defendants in this case, sustained on appeal, *and*, then, only if PharmaStem were to continue to send new infringement notices to similarly-situated obstetricians asserting the same patents. At bottom, for the conduct alleged here, CBR's

1 counterclaims are precisely those that add impermissible burdens to a patentee's statutorily-rooted
2 rights to announce and enforce its patents. CBR should not be allowed to add the burden of
3 defending such counterclaims, or the spectre of the personal liability of an employee, to the costs
4 of PharmaStem's exercise of its patent rights. CBR's counterclaims should, therefore, be
5 dismissed. Furthermore, CBR's counterclaims should be dismissed without leave to amend, as
6 CBR has already, by and through its Opposition, proffered new materials in support of its
7 counterclaims, effectively setting forth a set of amendments thereto; and it is clear that such
8 proposed amendments are not enough to resurrect CBR's moribund counterclaims.

10 DATED: December 10, 2004    **PERKINS COIE LLP**

12 By _____/s/_____
   Paul J. Andre, Esq.
   Attorneys for Nicholas Didier