QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
Samuel B. Shepherd (Bar No. 163564)
Matthew W. Meskell (Bar No. 208263)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
(650) 801-5000 (Telephone)
(650) 801-5100 (Facsimile)

Attorneys for Counterclaim Defendant,
ARCHIBALD A. GRABINSKI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> CORD BLOOD REGISTRY, INC., dba CBR, a California corporation, and SUTTER HEALTH, INC., a California corporation, <br><br> Defendants. <br><hr> CBR SYSTEMS, INC., dba CBR, a California corporation, <br><br> Counterclaimant, <br><br> vs. <br><br> PHARMASTEM THERAPEUTICS, INC., a Delaware corporation; STEMBANC, INC., a Ohio corporation; NICHOLAS DIDIER; and ARCHIBALD A. GRABINSKI, <br><br> Counterdefendants. | Case No. C 04-3072 (JSW) <br><br> **REPLY OF ARCHIBALD A. GRABINSKI IN SUPPORT OF MOTION TO DISMISS CBR SYSTEMS, INC.'S FIRST, SECOND, THIRD, FOURTH, FIFTH, AND SIXTH COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(2) & (b)(6)** <br><br> **DATE:**   January 7, 2005 <br> **TIME:**   9:00 a.m. <br> **ROOM:**   Courtroom 2 <br> **JUDGE:**   Hon. Jeffrey S. White |

50494/25701.6

1

# TABLE OF CONTENTS

2

**Page**

3  Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5  I.      THERE IS NO JURISDICTION OVER GRABINSKI IN CALIFORNIA . . . . . . . . . . . 2

6          A.      Grabinski Did Not Purposefully Direct Any Statement At California . . . . . . . . . 2

7                  1.      Grabinski did not make any direct contact with California . . . . . . . . . . . 3

8                  2.      Stembanc's website does not subject Grabinski to suit in California . . . . . 4

9                  3.      The Pregnancy ad does not subject Grabinski to suit in California . . . . . . 7

10         B.      CBR's Claims Arise from National, Not California, Activities . . . . . . . . . . . . . . 10

11         C.      Forcing Grabinski to Litigate in California Would be Unreasonable  . . . . . . . . . 11

12 II.     CBR HAS NOT STATED ANY VALID CLAIM AGAINST GRABINSKI . . . . . . . . . 13

13 Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

Alexander v. Circus Circus Enterprises, Inc.
        972 F.2d 261 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bancroft & Masters, Inc. v. Augusta National Inc.
        223 F.3d 1082 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Calder v. Jones
        465 U.S. 783 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Software, Inc. v. Reliability Research, Inc.
        631 F. Supp. 1356 (C.D. Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Causualty Assurance Risk Insurance Brokerage Co. v. Dillon
        976 F.2d 596 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cor-vent Corp. v. Nobel Industries AB
        11 F.3d 1482 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cybersell, Inc. v. Cybersell, Inc.
        130 F.3d 414 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 12

Doe v. Unocal
        248 F.3d 915 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hammons v. Alcan Aluminum Corp.
        No. SA CV 96-319-LHM, 1996 WL 397455 (C.D. Cal. May 31, 1996) . . . . . . . . . . . 11

Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.
        880 F. Supp. 743 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

International Shoe Co. v. Washington
        326 U.S. 310 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

McDonough v. Fallon McElligott, Inc.
        No. CIV. 95-4037, 1996 WL 753991 (S.D. Cal. Aug. 5, 1996) . . . . . . . . . . . . . . 8, 10

New Tech Stainless Steel Corp. v. Sun Manufacturing Corp.
        2004 WL 1773416 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Panavision International L.P. v. Toeppen
        141 F.3d 1316 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 10

Schwarzenegger v. Fred Martin Motor Co.
        374 F.3d 797 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 9, 11

Sinatra v. National Enquirer, Inc.
        854 F.2d 1191 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

Terracom v. Valley National Bank
        49 F.3d 555 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
## (Continued)

**Page**

1

2

3

### STATUTES

Federal Rule of Civil Procedure 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRABINSKI'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
Case No. C 04-3072 JSW

## Summary of Argument

1    CBR Systems, Inc.'s ("CBR") Opposition to Archibald A. Grabinski's

2    ("Grabinski") motion to dismiss makes tacit concessions and express admissions that require

3    dismissal of CBR's claims against Grabinski.  CBR admits that Grabinski is not subject to suit in

4    California unless CBR can establish specific jurisdiction, but CBR's own pleadings and briefing

5    establish that specific jurisdiction over Grabinski does not, in fact, exist.  In addition, CBR's

6    Opposition fails to demonstrate that it has stated any valid claim against Grabinski.  Accordingly,

7    Grabinski requests that this Court dismiss CBR's First, Second, Third, Fourth, Fifth, and Sixth

8    counterclaims pursuant to <u>Federal Rule of Civil Procedure</u> 12(b)(2) for want of jurisdiction or,

9    alternatively, pursuant to <u>Federal Rule of Civil Procedure</u> 12(b)(6) for failure to state a claim.

10    CBR argues there is specific jurisdiction over Grabinski's person in California

11    based solely on his allegedly publishing "false and misleading statements that specifically

12    targeted CBR. . . ."  Opposition at 5.  This is not the law.  To establish specific jurisdiction, CBR

13    must prove that Grabinski purposefully directed statements at California by "(1) commit[ing] an

14    intentional act, (2) expressly aimed at the forum state, (3) causing harm the defendant knows is

15    likely to be suffered in the forum state."  <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d

16    797, 805 (9th Cir. 2004).  The statements CBR bases its claims on, however, are not in dispute

17    and neither the substance of those statements nor the means by which they were disseminated

18    targeted California or CBR.  Second, even if CBR could show purposeful direction, it would still

19    need to demonstrate that its claims would not have arisen "but for" the California related

20    activities Grabinski allegedly engaged in.  Yet CBR's own allegations establish that it was the

21    national distribution of the statements that gave rise to its claims, not any connection to

22    California.  Finally, the exercise of jurisdiction must be reasonable.  To make this determination,

23    the Ninth Circuit requires balancing of seven factors, no one of which is dispositive.  CBR,

24    however, fails even to address five of the factors and the other two also weigh against

25    jurisdiction.  Accordingly, there is no jurisdiction over Grabinski's person in California.

26    In addition to the lack of jurisdiction over Grabinski, for the reasons stated in

27    Stembanc's motion to dismiss, CBR has failed to state any valid claim against him.

GRABINSKI'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
Case No. C 04-3072 JSW

1

**Argument**

2  **I.    THERE IS NO JURISDICTION OVER GRABINSKI IN CALIFORNIA**

3          CBR's Opposition concedes that there is no general jurisdiction over Grabinski in

4  California and instead argues this Court may exercise specific jurisdiction because Grabinski

5  allegedly "published false and misleading statements that specifically targeted CBR, a California

6  corporation with its principal place of business in California."  Opposition at 5.  Even if this

7  allegation were true -- and the record demonstrates that it is not -- this bare conclusion is not

8  enough to establish jurisdiction over Grabinski's person in California.  To justify the exercise of

9  specific jurisdiction over Grabinski based on statements that he allegedly made outside of

10  California, CBR admits it must establish that he purposefully directed those statements to

11  California and that CBR's claims would not have arisen but for Grabinski's California related

12  activities.  See Opposition at 6; see also Schwarzenegger v. Fred Martin Motor Co., 374 F.3d

13  797, 802 (9th Cir. 2004).  Moreover, even if CBR were able to meet those two requirements, the

14  exercise of jurisdiction over Grabinski in California would still need to be reasonable.  See

15  Opposition at 6; Schwarzenegger, 374 F.3d at 802.  CBR has not meet the first two requirements

16  and, in any event, forcing Grabinski to litigate in California would be unreasonable.

17          **A.    Grabinski Did Not Purposefully Direct Any Statement At California**

18          CBR agrees that to demonstrate purposeful direction it must prove that Grabinski

19  "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that

20  the defendant knows is likely to be suffered in the forum state."  Schwarzennger, 374 F.3d at

21  805; see Opposition at 7.  In addition, CBR concedes that the statements Grabinski and Stembanc

22  identified in their motions to dismiss are, in fact, the statements on which CBR's claims -- and its

23  efforts to establish jurisdiction -- are based.  See Opposition at 9.  Finally, CBR concedes that

24  those statements were disseminated through three forums.  See Opposition at 9.  An examination

25  of the statements and the forums through which they were disseminated shows that Grabinski

26  never "expressly aimed" any statement at California.[1]

27

28          [1]  CBR also fails to offer evidence that Grabinski knew that any of his alleged statements
                                                                                    (continued...)

1

2          1.    Grabinski did not make any direct contact with California

3          First, CBR alleged that "Stembanc contacted obstetricians and gynecologists

4  directly and disseminated false . . . statements that they would be liable for patent infringement if

5  they recommended banking with CBR to their patients."  Answer and Counterclaims

6  ("Counterclaims") at 17 ¶ 32.[2]  CBR also alleged that "Stembanc and Grabinski further

7  disseminated false and misleading statements to prospective customers of CBR that they should

8  not bank with CBR because CBR is 'faced with the prospect of business cessation.'"

9  Counterclaims at 17 ¶ 32.  CBR never identifies, however, by what means these hypothetical

10  contacts were made and never supplies the Court with any evidence that they actually occurred.

11  In fact, the only evidence in the record on the issue of Grabinski's alleged direct contacts is his

12  sworn declaration, which states:

13          4.    I do not recall contacting customers or potential customers in California to
               state that they should not bank with CBR because CBR was faced with the
14             prospect of business cessation.

15          5.    I do not recall contacting any obstetricians or gynecologists in California
               to state that they would be liable for patent infringement if they recommended
16             banking with CBR to their patients.

17  Declaration of Archibald A. Grabinski In Support of Motion to Dismiss ("Grabinski Decl.") at

18  ¶¶ 4, 5.  CBR does not contradict this testimony with witnesses or other tangible evidence and

19  offers no reason why this Court should disregard it.  CBR itself admits that "the party opposing

20  dismissal cannot 'simply rest on the bare allegations of its complaint. . . .'"  Opposition at 5

21  (citation omitted).  Moreover, the Ninth Circuit has held that "for purposes of personal

22  jurisdiction, 'we may not assume the truth of allegations in a pleading which are contradicted by

23  affidavit.'"  Alexander v. Circus Circus Enterprises, Inc., 972 F.2d 261, 262 (9th Cir. 1992)

24

25

26  _____

27      [1] (...continued)
   would cause harm in California.

28      [2] The Counterclaims do not allege that Grabinski made such direct statements, but CBR's
   Opposition tries to sneak in the allegation that he did so.  See Opposition at 9.

GRABINSKI'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
Case No. C 04-3072 JSW                                        3

1  (collecting cases).  Accordingly, the record establishes that Grabinksi's alleged direct contacts do

2  not provide a basis for subjecting him to suit in California.

3                    Despite this uncontested record evidence, CBR insists that Grabinski's

4  hypothetical direct contacts support jurisdiction because "regardless of where such

5  communications take place, [they] allege conduct that specifically targets CBR, and are

6  calculated to injure CBR in California, where CBR is headquartered."  Opposition at 9.  CBR

7  offers no citation to any authority supporting such an extreme position.  In fact, the Ninth Circuit

8  has already roundly rejected CBR's expansive theory:

9        In summary, [plaintiff] is urging this court to extend the "effects" theory from
          Calder to encompass any jurisdiction where the plaintiff is present, regardless of
10        whether any defamation was circulated in that jurisdiction.  The relevant authority
          does not support that extension of the "effects" theory.  Moreover, such an
11        extension would undermine the notions of reasonableness, fair play, and
          substantial justice that are protected by the Due Process Clause.

12

13  Causualty Assurance Risk Insurance Brokerage Co. v. Dillon, 976 F.2d 596, 601 (9th Cir. 1992);

14  accord Schwarzenneger, 374 F.3d at 805 ("The mere fact that [defendants] can 'foresee' that the

15  [allegedly libelous] article will be circulated and have an effect in [the forum state] is not

16  sufficient for an assertion of [specific personal] jurisdiction") (quoting Calder v. Jones, 465 U.S.

17  783, 798 (1984))(alterations in original).  Therefore, assuming Grabinski made a statement

18  outside of California regarding CBR, that a statement would be too attenuated to support specific

19  jurisdiction.

20            2.    Stembanc's website does not subject Grabinski to suit in California

21                    The second set of statements that CBR complained about were those that appeared

22  on Stembanc's website.  Specifically, CBR alleged that Grabinski participated in posting a press

23  release on the website in August 2004 and CBR complained that a graphic that previously

24  appeared on the site was misleading.  See Counterclaims at 16 ¶ 28-30, 33; Opposition at 9.

25  Neither the text of the statements nor their dissemination over Stembanc's website could subject

26  Grabinski to suit in California.  First, it is well-settled that statements contained on a passive

27  website do not subject the owner of the site to suit everywhere that the site can be accessed.  See

28  Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 420 (9th Cir. 1997) ("[T]he essentially passive

1   nature of Cybersell FL's activity in posting a home page on the World Wide Web that allegedly

2   used the service mark of Cybersell AZ does not qualify as purposeful activity invoking the

3   benefits and protections of Arizona"); <u>see also</u> <u>New Tech Stainless Steel Corp. v. Sun</u>

4   <u>Manufacturing Corp.</u>, 2004 WL 1773416, at *3 (C.D. Cal. 2004) ("A resident's ability to access a

5   passive website that does no more than provide information will generally not provide a basis for

6   jurisdiction").  CBR has never alleged that Stembanc's website is interactive or somehow focused

7   on California.  In fact, other than being viewable from California, Stembanc's website lacks a

8   connection to this state because it is actually physically hosted by a company located in Chardon,

9   Ohio.  <u>See</u> Grabinski Decl. ¶ 6.  Second, the statements that CBR complains about on the site do

10  not specifically target California.  The press release that was posted in August 2004 mentions

11  CBR once in the context of discussing PharmaStem's patent infringement suit in Delaware, but

12  the release also highlights:  (1) ViaCell, Inc. -- a Delaware corporation with its principle place of

13  business in Cambridge, Massachusetts; (2) Cryo-Cell International, Inc. -- a Delaware

14  corporation with its principle place of business in Clearwater, Florida; and (3) CorCell, Inc. -- a

15  Delaware corporation with its principal place of business in Philadelphia, Pennsylvania.  <u>See</u>

16  Grabinski Decl., Ex. E; Stembanc, Inc.'s Supplemental Request For Judicial Notice ("Supp. Not.

17  Req."), Ex. B ¶¶ 9, 12-13 (2004 Delaware Action Complaint).  As for the graphical chart that

18  appeared at one point on Stembanc's website, that graphic also listed multiple companies:  (1)

19  Stembanc; (2) ViaCord; and (3) CBR.  <u>See</u> Grabinski Decl., Ex. C.  The record therefore

20  establishes that Stembanc's Ohio-hosted website is not targeted at California and that the

21  statements CBR alleges appeared on the website were not targeted at California.

22          CBR prefers to ignore this record evidence, however, and insists without analysis

23  that the postings on Stembanc's website subject Grabinski to suit in California.  <u>See</u> Opposition

24  at 9.  CBR cites two cases as support for this conclusion without elaboration.  <u>See</u> Opposition at

25  9 (citing <u>Panavision International L.P. v. Toeppen</u>, 141 F.3d 1316 (9th Cir. 1998), and <u>California</u>

26  <u>Software, Inc. v. Reliability Research, Inc.</u>, 631 F. Supp. 1356 (C.D. Cal. 1986)).  Both of those

27  cases, however, involved defendants who interacted with entities in California and singled out

28  one California business in those interactions.  In the <u>Panavision</u> case, for example, the defendant,

1   Toeppen, registered the trademark "Panavision" as an internet domain name as part of a scheme

2   to extort money from Panavision.  See 141 F.3d at 1319.  When Panavision attempted to register

3   its trademark for use on a legitimate website, it discovered that Toeppen had already acquired the

4   name.  See id.  Panavision's attorney then sent a letter to Toeppen demanding that he release the

5   domain name to Panavision.  See id.  In response, Toeppen sent a letter back to Panavision in

6   California directly in which he demanded $13,000 dollars to release the domain name and in

7   which he threatened to register other Panavision trademarks as domain names if Panavision did

8   not pay him.  See id.  Panavision refused to pay the money and, as he had threatened, Toeppen

9   registered another Panavision trademark, "Panflex," as a domain name.  See id.  The Ninth

10  Circuit found that those actions were enough to show that Toeppen had expressly aimed conduct

11  at California.  See id. at 1322.  The Court emphasized that those interactions "had the effect of

12  injuring Panavision in California where Panavision has its principal place of business and where

13  the movie and television industry is centered."  Id. at 1322.

14          Panavision is obviously inapposite.  CBR has not alleged that Grabinski engaged

15  in blackmail by sending letters to and receiving letters from CBR in California.  In fact, CBR has

16  not shown any direct contact between Grabinski and California at all.  Moreover, unlike

17  Panavision, which was engaged in the movie and television industry centered in California, CBR

18  makes no allegation that the cord blood collection industry is centered in California.  In fact,

19  CBR's own website proudly announces that its storage facility and laboratory are located outside

20  of California -- in Tucson, Arizona -- and that it has collected blood "at over 2,500 birthing

21  centers throughout the United States and in more than 50 countries."  See Declaration of

22  Matthew W. Meskell In Support of Motions to Dismiss, Ex. A (CBR website).  Accordingly,

23  Panavision does not support exercising jurisdiction.[3]

24  _____

25      [3]  California Software is equally unavailing.  There, the defendant, White, sent letters and
    made phone calls to three companies located in California to disseminate false statements about
26  one entity -- the plaintiff.  See 631 F. Supp. 1356, 1358.  The district court held that those
    contacts were sufficient to subject White to suit in California.  See id. at 1361.  CBR has offered
27  no evidence that Grabinski sent letters or made phone calls to California.  In dicta, the court also
    stated that a posting White made to a specialized internet bulletin board run by his company
28  would have subjected him to suit in California.  See id.  Even the dicta is inapplicable.  White's
                                                                                    (continued...)

1          3.    The Pregnancy ad does not subject Grabinski to suit in California

2          The final statements that CBR complained about were contained in an advertisement that

3   ran in Pregnancy Magazine.[4] See Counterclaims at 17 ¶ 31; Opposition at 4, 9. Again, CBR's

4   Counterclaims do not allege that Grabinski was individually responsible for the advertisement,

5   although the Opposition tries to assert that allegation. Compare Counterclaims at 17 ¶ 31 with

6   Opposition at 9. Even if CBR had alleged that Grabinski was individually responsible for the

7   Pregnancy magazine advertisement, that advertisement would still not be sufficient to subject

8   him to suit in California. The ad appeared in a nationally-circulated magazine that is in no way

9   focused on California. See Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F.

10  Supp. 743, 747 (C.D. Cal. 1995) ("If [plaintiff] had only alleged the national advertisements as

11  the justification for jurisdiction, the Court would have declined to hear this matter").

12  Furthermore, the advertisement does not focus on CBR, but, again, mentions CBR among several

13  companies in the context of discussing PharmaStem Therapeutics, Inc.'s ("PharmaStem") patent

14  infringement litigation. See Grabinski Decl., Exs. A & B (Pregnancy ads). Nothing about the

15  advertisement was expressly aimed at California.

16          CBR tries to ignore this record evidence. Instead of addressing the facts, the

17  Opposition inaccurately summarizes a number of cases and then, based on those inaccurate

18  summaries, argues that the Pregnancy advertisement falls within the holdings of those cases. See

19  Opposition at 6-9. At the bottom of this circular reasoning, however, CBR states its extreme

20  view of the law clearly:

21  _____

22      [3] (...continued)
    posting discussed only the plaintiff. The press release and the graphic on Stembanc's website did
23  not focus on CBR. White's posting was made directly in response to inquiries and was posted on
    a bulletin board used solely by entities engaged in plaintiff's business. Stembanc's website is
24  passive, is not a specialized bulletin board, is accessible to anyone with an internet connection
    and neither the August 2004 press release nor the graphic were posted in direct response to a
25  question that Stembanc received.

26
        [4] Grabinski argued that the Pregnancy advertisement was privileged against liability
27  under California law in his motion to dismiss. See Grabinski's Motion to Dismiss at 10. CBR
    did not oppose those arguments, and thus has conceded that the Pregnancy ad is privileged
28  against CBR's California law causes of action. See CBR's Opposition to Stembanc's Motion to
    Dismiss at 6-8.

1
2
3

> Grabinski intentionally caused false and misleading information to be placed in an advertisement that he knew would be widely distributed in California, and that he knew would injure CBR, a California corporation with its principal place of business in California. This conduct subjects him to the jurisdiction of this Court.

Opposition at 9. The record does not, of course, support CBR's claim that Grabinski knew the ad would cause harm in California. Assuming the truth of CBR's assertion, however, CBR's statement of the law is incorrect. Circulation of an ad in California where CBR has offices is not sufficient to establish jurisdiction in this state.

For example, in Cybersell, the defendants misappropriated plaintiff's trademark and placed that mark on an internet advertisement that was seen in Arizona. See 130 F.3d 414, 415-16. The plaintiff, an Arizona company, wrote to the defendants and demanded that they stop using the mark, but the defendants continued to use it. See id. at 416. Plaintiff argued that the defendants were subject to suit in Arizona and relied upon the same cases that CBR cites. See id. at 420 (noting plaintiff relied upon, inter alia, Calder v. Jones, 465 U.S. 783 (1984)). The Ninth Circuit acknowledged that the advertisement had been seen in Arizona and that the plaintiff was an Arizona company but held that the defendants were not subject to suit in Arizona. See Cybersell, 130 F.3d 414, 420. In distinguishing Calder and the "effects test" -- the same test CBR relies on -- the Ninth Circuit held that "[n]or does the 'effects' test apply with the same force to Cybersell AZ as it would to an individual, because a corporation 'does not suffer harm in a particular geographic location in the same sense that an individual does.'" Id. (citations omitted).

A similar rejection of CBR's theory occurred in McDonough v. Fallon McElligott, Inc., No. CIV. 95-4037, 1996 WL 753991 (S.D. Cal. Aug. 5, 1996). The plaintiff there alleged that the defendant had misappropriated his copyrighted work, placed it in an advertisement that was circulated nationally and in California, and submitted the work under someone else's name to a national contest that was advertised in Los Angeles. See McDonough, 1996 WL 753991, at *1. Plaintiff contended that under the "effects test" California had specific jurisdiction over the defendant and relied, again, upon the same cases CBR cites. See McDonough, 1996 WL 753991, at *5-6 (noting plaintiff relied upon Calder and Sinatra v. National Enquirer, Inc., 854 F.2d 1191 (9th Cir. 1988)). The court rejected his theory:

1      The Court notes that Plaintiff lives in California. The Court accepts that the brunt
     of the Plaintiff's harm may have been felt in California. However, the Court does
2      not find this similarity between the present case and Calder sufficiently
     compelling to overcome all the dissimilarities. Nor has the Court found any case
3      to hold that in intentional tort cases, personal jurisdiction should automatically lie
     in the state in which a plaintiff lives. To the contrary, case law demonstrates that
4      the Court still most consider the totality of circumstances surrounding the events
     giving rise to the cause of action to determine whether personal jurisdiction exists.

5

6 Id. at *5 n.4; accord Schwarzenneger, 374 F.3d at 807 ("It may be true that Fred Martin's

7 intentional act eventually caused harm to Schwarzenegger in California, and Fred Martin may

8 have known that Schwarzenegger lived in California. But this does not confer jurisdiction. . . .").

9      The cases that CBR relies upon all have peculiar circumstances that are not

10 analogous to Stembanc's placing an advertisement in Pregnancy magazine. For example, CBR

11 cites Calder v. Jones, but the Supreme Court there held it was the uniquely California-centered

12 research, content, and victim that permitted jurisdiction:

13      The allegedly libelous story concerned the California activities of a California
     resident. It impugned the professionalism of an entertainer whose television
14      career was centered in California. The article was drawn from California sources,
     and the brunt of the harm, in terms both of respondent's emotional distress and the
15      injury to her professional reputation, was suffered in California.

16 465 U.S. at 788-89. The Pregnancy ad was not researched in California, does not focus on CBR

17 or CBR's "California activities," and CBR's business is not centered in California. CBR relies

18 upon Bancroft & Masters, Inc. v. Augusta National Inc., 223 F.3d 1080 (9th Cir. 2000), but again

19 the Court in that case permitted jurisdiction because the contact "individually targeted" the

20 plaintiff which was "a California corporation doing business almost exclusively in California."

21 223 F.3d at 1088. Finally, CBR adduces Sinatra v. National Enquirer, Inc., but there again the

22 Court permitted jurisdiction because the article was primarily circulated in California, focused

23 entirely on one California resident, and the harm was suffered uniquely in California:

24      [U]sing Sinatra's name without compensation and potentially diluting the
     commercial value of the name--produces a situs of the injury in California.
25      Sinatra conducts his business from California, he licenses his name in California,
     and the center of his business is in California. The Clinic intentionally tried to
26      benefit from the use of Sinatra's name in order to attract clients. The Clinic,
     through its affirmative and knowing actions, tried to promote its services, which
27      are used by a significant number of California residents, by misappropriating
     Sinatra's name in a publication that received a majority of its sales from
28      California.

1  854 F.2d at 1197.  Stembanc's ad does not center on CBR, there is no evidence that <u>Pregnancy</u>

2  magazine circulates primarily in California, and CBR has offered nothing to explain how it has

3  suffered uniquely in California.  Accordingly, even if CBR had alleged Grabinski were primarily

4  responsible for the <u>Pregnancy</u> ad, that advertisement was not "expressly aimed" at California.

5       Because CBR has not shown that Grabinski purposefully directed any statement

6  toward California, there is no specific jurisdiction over his person in this state.

7      **B.**   **<u>CBR's Claims Arise from National, Not California, Activities</u>**

8       CBR concedes that to establish specific jurisdiction it must also show its claims

9  against Grabinski arise out of a California-related activity.  <u>See</u> Opposition at 6, 10.  Instead of

10  making that showing, however, CBR simply pronounces, without analysis, that "CBR's claims

11  against Grabinski arise directly out of the above-described actions, which as explained herein,

12  constitute acts purposefully directed toward this forum."  <u>Id.</u> at 10.  CBR is wrong.

13       First, as discussed in Part I.A., CBR has not demonstrated that Grabinski himself

14  directed any statement toward California.  Therefore, as a matter of logic and law, it is

15  impossible to conclude that CBR's claims against Grabinski arise from a statement Grabinski

16  directed to California.  Second, to prove claims arise out of California contacts, CBR must show

17  that "'but for the contacts between the defendant and the forum state, the cause of action would

18  not have arisen.'"  <u>McDonough</u>, No. CIV. 95-4037, 1996 WL 753991, at *6 (S.D.Cal. Aug. 5,

19  1996) (citations omitted); <u>see</u> Doe v. Unocal, 248 F.3d 915, 924 (9th Cir. 2001) ("To determine

20  whether a claim arises out of forum-related activities, courts apply a 'but for' test").[5]  As CBR's

21  arguments make evident, however, its claims against Grabinski would have arisen even if no

22  statement had ever reached California.  <u>See</u> Opposition at 9.  For example, CBR contends that if

23  Grabinski had made a statement about CBR outside of California to someone outside of

24  California then its claims still would have arisen.  <u>See</u> <u>id.</u> ("[A]llegations of Grabinski's direct

---

[5] CBR claims that the "but for" test utilized in <u>Unocal</u> does not apply to this case because "the <u>Unocal</u> court applied the 'purposeful availment' test for specific jurisdiction, as opposed to the 'purposeful direction' test at issue herein."  Opposition at 10.  This argument is meritless considering that CBR itself cites cases using the "purposeful direction" test that also apply that "but for" test.  <u>See</u> Opposition at 10 (citing <u>Panavision</u>, 141 F.3d at 1322 (applying 'but for' test)).

1  communications . . . regardless of where such communications take place, allege conduct that

2  specifically targets CBR. . . ."). In addition, CBR's Counterclaims highlight Stembanc's website -

3  - which is hosted outside of California and is viewable outside of California -- and ask that this

4  Court order Grabinski and the other counterclaim defendants to issue a retraction "to all

5  recipients of their promotional materials containing their unlawful statements" and post "such

6  retraction on their internet websites (www.pharmastem.com and www.stembanc.com) for at least

7  six months." Counterclaims at 27-28 (Prayer for relief). CBR's own arguments and allegations

8  thus make clear its claims would have arisen whether or not Grabinski contacted California.

9          A similar situation was adjudicated in Hammons v. Alcan Aluminum Corp., No.

10  SA CV 96-319-LHM, 1996 WL 397455 (C.D. Cal. May 31, 1996). The plaintiffs in that case

11  alleged that the defendant had conspired to engage in price fixing and that the defendant had

12  included California companies in the conspiracy. See Hammons, 1996 WL 397455, at *2.

13  Plaintiffs sued in California, asserting specific jurisdiction was proper, and argued that "'[b]ut for'

14  the Association's contacts with Kaiser and the other Defendants with California offices, the

15  Association and its alleged co-conspirators would not have succeeded in accomplishing the

16  price-fix." Id. (alterations in original). The court rejected the argument:

17          Plaintiff's claims do not arise out of [unrelated California] activities, but from The
          American Association's involvement in the alleged conspiracy re: price fixing
18          while it was acting as an advisor to the United States during intergovernmental
          meetings that were never held in California. Such a conspiracy could have been
19          formed regardless of whether The American Association has any contacts in
          California and regardless of whether the co-defendants had offices in California.
20

21  Id. (citations omitted). Here too CBR admits that its claims would have existed even if

22  Grabinski's alleged statements were made entirely outside of California. See Opposition at 9.

23  Accordingly, CBR has not shown that its claims against Grabinski arise from California contacts.

24      **C.    Forcing Grabinski to Litigate in California Would be Unreasonable**

25          Finally, this Court should decline to exercise jurisdiction because forcing

26  Grabinski to litigate in this state would be unreasonable. See Schwarzenneger, 374 F.3d at 802

27  ("If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the

28  defendant to 'present a compelling case' that the exercise of jurisdiction would not be

1  reasonable"). CBR acknowledges that the Ninth Circuit balances seven factors to determine

2  whether the exercise of jurisdiction would be reasonable but then fails even to address five of

3  those factors. See Opposition at 11. The Ninth Circuit has admonished, however, that "[n]one of

4  the factors is dispositive in itself; instead, we must balance all seven." Cor-vent Corp. v. Nobel

5  Industries AB, 11 F.3d 1482, 1488 (9th Cir.1993). By failing to address five of the factors, CBR

6  has conceded Grabinski's arguments on those points. See Grabinski's Motion to Dismiss at 8-10.

7          CBR's arguments on the two points it does address fail to overcome Grabinski's

8  showing of unreasonableness. First, CBR argues that "California has a strong interest in

9  protecting the rights of its injured citizens." Opposition at 11. As discussed above, however,

10  CBR has shown very little connection between itself and California: CBR's main laboratory and

11  storage facility is located outside of California and CBR does business across the United States

12  and internationally. In addition, CBR's claims are premised on activities that took place outside

13  of California and CBR has shown no special injury in this state. See Cybersell, 130 F.3d 414,

14  420 ("[A] corporation 'does not suffer harm in a particular geographic location in the same sense

15  that an individual does'"). In fact, CBR has actually requested that this case be transferred out of

16  California to Delaware, a fact that severely undermines CBR's claim that California has a

17  significant interest in the litigation. See Notice of Motion to Transfer Action Pursuant to 28

18  U.S.C. § 1407 (Docket Entry No. 40). In any event, California's interest in litigating CBR's

19  grievances is no less than Ohio's interest in litigating Grabinski's grievances.

20          Second, CBR argues that forcing Grabinski to litigate in California would not

21  "unduly burden Grabinski." Opposition at 12. Grabinski is an Ohio resident and has not visited

22  California in the last ten years. See Grabinski Decl. ¶ 2. Although it may be *possible* for

23  Grabinski to litigate here, it is quite obviously burdensome and disruptive to Grabinski's ability

24  to function effectively as Stembanc's CEO. In contrast, CBR is a large corporation that does

25  business throughout the United States. CBR could easily litigate in Ohio and, again, has

26  requested that this case be transferred across the country to Delaware. Moreover, it is the burden

27  on the defendant that is most important to jurisdictional analysis, and the burden on Grabinski of

28  being forced across the country based on statements he allegedly made in Ohio is evident. See

1  <u>Terracom v. Valley National Bank</u>, 49 F.3d 555, 561 (9th Cir. 1995) ("[T]he law of personal

2  jurisdiction is asymmetrical and is primarily concerned with the defendant's burden").

3      CBR has outright conceded five of the seven factors used to determine whether

4  exercising specific jurisdiction would be reasonable.  The remaining two factors also weigh

5  against jurisdiction.  Accordingly, Grabinski respectfully requests that the claims against him be

6  dismissed for want of jurisdiction in California.

7  **II.    CBR HAS NOT STATED ANY VALID CLAIM AGAINST GRABINSKI**

8      Even if CBR could establish jurisdiction over Grabinski's person in California, it

9  has nonetheless failed to state a claim upon which relief can be granted.  For the sake of

10  efficiency, Grabinski hereby incorporates by reference, as though fully set forth herein, the

11  arguments in Parts I and II of the Memorandum of Points and Authorities submitted in support of

12  Stembanc's Motion to Dismiss and in Stembanc's Reply In Support of Motion to Dismiss.

13  <u>**Conclusion**</u>

14      For all of the foregoing reasons, Grabinski respectfully requests that the Court

15  dismiss with prejudice CBR's First, Second, Third, Fourth, Fifth, and Sixth Counterclaims

16  against Grabinski for want of personal jurisdiction pursuant to <u>Federal Rule of Civil Procedure</u>

17  <u>12(b)(2)</u> or, in the alternative, for failure to state a claim upon which relief can be granted

18  pursuant to <u>Federal Rule of Civil Procedure</u> 12(b)(6).

19

20  Dated:  December 15, 2004          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
21

22                          By_____/s/_____
23                              Samuel B. Shepherd (Bar No. 163564)
                                Matthew W. Meskell (Bar No. 208263)
24                              555 Twin Dolphin Drive, Suite 560
                                Redwood Shores, California 94065
25                              Attorneys for Archibald A. Grabinski

26

27

28

13