QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
Samuel B. Shepherd (Bar No. 163564)
Matthew W. Meskell (Bar No. 208263)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
(650) 801-5000 (Telephone)
(650) 801-5100 (Facsimile)

Attorneys for Counterclaim Defendant,
STEMBANC, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CORD BLOOD REGISTRY, INC., dba CBR, a California corporation, and SUTTER HEALTH, INC., a California corporation,<br><br>Defendants.<br>_____<br>CBR SYSTEMS, INC., dba CBR, a California corporation,<br><br>Counterclaimant,<br><br>vs.<br><br>PHARMASTEM THERAPEUTICS, INC., a Delaware corporation; STEMBANC, INC., a Ohio corporation; NICHOLAS DIDIER; and ARCHIBALD A. GRABINSKI,<br><br>Counterdefendants.<br>_____ | Case No. C 04-3072 (JSW)<br><br>**REPLY OF STEMBANC, INC. IN SUPPORT OF MOTION TO DISMISS CBR SYSTEMS, INC.'S FIRST, SECOND, THIRD, FOURTH, FIFTH, AND SIXTH COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**DATE:**     January 7, 2005<br>**TIME:**     9:00 a.m.<br>**ROOM:**     Courtroom 2<br>**JUDGE:**     Hon. Jeffrey S. White |

# TABLE OF CONTENTS

**Page**

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     CBR HAS FAILED TO PLEAD A VALID CLAIM UNDER CALIFORNIA
LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.    California Common Law Unfair Competition is Limited to "Passing Off" . . . . . . 1

     B.    CBR's Interference Claims Fail to Plead the Requisite Elements . . . . . . . . . . . . . 2

          1.    The claims for interference with existing contract fail to allege a
contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          2.    Intentional interference with prospective relations requires a
wrongful act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          3.    Claims for negligent interference do not lie between competitors . . . . . 3

     C.    The Statements On Which CBR Bases Its Trade Libel and 17500 Claims
Are Non-Actionable Truths Or Opinions Or Do Not Identify CBR . . . . . . . . . . 4

          1.    Statements about potential physician liability are truths or opinions . . . . 5

          2.    "Guilty of patent infringement" does not reasonably imply
criminality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          3.    Stating that CBR is not "licensed" was true and non-misleading in
context . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          4.    CBR was and is currently facing the prospect of business cessation . . . . 10

          5.    Stembanc's claim of "technical integrity" is true or opinion puffery . . . . 10

          6.    Statement about customers demanding refunds does not identify
CBR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.    CBR's CALIFORNIA CLAIMS ARE BARRED BY CAL. CIV. CODE § 47 . . . . . . . 12

III.   CBR'S LANHAM ACT CLAIM RESTS ON NON-ACTIONABLE
STATEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

American Cyanamid Co. v. American Home Assurance Co.,
        30 Cal. App. 4th 969 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5

A-Mark Financial Corp. v. CIGNA Property & Casualty Co.,
        34 Cal. App. 4th 1179 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6

Bank of the West v. Superior Court,
        2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) . . . . . . . . . . . . . . . . . 1, 2

7

8

Coastal Abstract Service, Inc. v. First American Title Ins. Co.,
        173 F.3d 725 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 13

9

10

Colt v. Freedom Communications, Inc.,
        109 Cal. App. 4th 1551 (Cal. Ct. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11

Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv.,
        911 F.2d 242 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12

13

Della Penna v. Toyota Motor Sales, U.S.A., Inc.,
        11 Cal. 4th 376 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

14

Dodds v. American Broadcasting Co., Inc.,
        145 F.3d 1053 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 9

15

16

Franchise Realty Interstate Corp. v. S.F. Local Joint Executive Bd. of Culinary Workers,
        542 F.2d 1076 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17

Institute of Athletic Motivation v. University of Illinois,
        114 Cal. App. 3d 1 (Cal. Ct. App. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18

19

J'Aire Corp. v. Gregory
        (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60] . . . . . . . . . . . . . . . . . . 3

20

Korean Supply Co. v. Lockheed Martin Corp.,
        29 Cal. 4th 1134 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

21

22

Microsoft Corp. v. Yokohama Telecom Corp.,
        993 F. Supp. 782 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

23

Nelson v. City of Irvine,
        143 F.3d 1196 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

24

25

Partington v. Bugliosi,
        56 F.3d 1147 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

26

PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.,
        Civil Action No. 02-148-GMS (D. Del.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

27

28

## TABLE OF AUTHORITIES
### (Continued)

**Page**

Protective Closures Co. v. Clover Industries, Inc.,
    394 F.2d 809 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rodriguez v. Panayiotou,
    314 F.3d 979 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Scheiber v. Dolby Laboratories, Inc.,
    293 F.3d 1014 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Southland Sod Farms v. Stover Seed Co.,
    108 F.3d 1134 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Stolz v. Wong Communications Limited Partnership,
    25 Cal. App. 4th 1811 (Cal. Ct. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Tuchscher Development Enterprises v. San Diego Unified Port District,
    106 Cal. App. 4th 1219 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


### STATUTES

Cal. Civ. Code § 47(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-15

California Civil Code § 47 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

50494/26213.5

STEMBANC'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. C 04-3072 JSW

1

## Summary of Argument

2    Cord Blood Registry, Inc.'s ("CBR") Opposition to Stembanc, Inc.'s ("Stembanc")

3 motion to dismiss ignores the arguments CBR dislikes, cites cases for propositions they do not

4 stand for, and, in the end, tacitly concedes that a number of CBR's claims have no merit. Indeed,

5 CorCell, Inc., which sued Stembanc in the Eastern District of Pennsylvania based on many of the

6 same statements, voluntarily dismissed its claims against Stembanc because the claims are

7 baseless.[1]  Because CBR's Opposition fails to show that it has stated any claim on which relief

8 can be granted, Stembanc and Archibald A. Grabinski ("Grabinski") respectfully request

9 dismissal of CBR's claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

10    CBR has failed to state any claim under the statutory or common law of

11 California. CBR's common law unfair competition claim is barred because such causes of action

12 are limited to claims of "passing off" under California law and CBR admits it has not alleged

13 "passing off." CBR's interference with contract claims are barred because CBR concedes it has

14 not alleged any contract with which Stembanc interfered. CBR's interference with prospective

15 economic relations claims are barred because CBR has not alleged an independent wrong.

16 Lastly, CBR's trade libel and 17500 claims are barred because those claims require that CBR

17 plead a false statement of fact concerning CBR, and CBR has not done so. In addition, CBR's

18 California law claims are barred because the statements on which the claims are premised are

19 privileged against suit under Cal. Civ. Code § 47 ("Section 47").

20    Finally, CBR's claim under the Lanham Act fails as a matter of law because CBR

21 has failed to show that Stembanc made any false or misleading statement of fact regarding CBR.

22 CBR's Lanham Act claim rests entirely on the same non-actionable statements as CBR's

23 California law causes of action; therefore, CBR's claim for false advertising under section 43(a)

24 of the Lanham Act should be dismissed with prejudice.

25

26

27

28    [1] See Stembanc, Inc.'s Supplemental Request For Judicial Notice ("Supp. Not. Req."),
Ex. D (Notice of Dismissal).

1           **Argument**

2   **I.**     **CBR HAS FAILED TO PLEAD A VALID CLAIM UNDER CALIFORNIA LAW**

3         Stembanc's motion to dismiss demonstrated that CBR had failed to state any valid

4 claim under the statutory or common law of California, and CBR's Opposition fails to save any

5 of those claims. See Stembanc's Motion to Dismiss ("Motion") at 10-13.

6       **A.**     **California Common Law Unfair Competition is Limited to "Passing Off"**

7         As discussed in Stembanc's Motion, claims for common law unfair competition

8 under California law are limited to claims of "passing off":

9       "The common law tort of unfair competition is generally thought to be
synonymous with the act of 'passing off' one's goods as those of another ... [, or]

10       acts analogous to 'passing off,' such as the sale of confusingly similar products, by
which a person exploits a competitor's reputation in the market." Bank of the

11       West v. Superior Court, 2 Cal.4th 1254, 1263, 10 Cal.Rptr.2d 538, 544, 833 P.2d
545, 551 (1992).   Because Plaintiffs' allegations do not amount to "passing off" or

12       its equivalent, Defendants are correct that Plaintiffs' claim for unfair competition
was properly dismissed.

13

14 Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1147 (9th Cir. 1997) (alterations in

15 original).  CBR admits it has not plead a claim for "passing off" or the equivalent. See Opp. at

16 10.  Nonetheless, CBR contends that "[t]he authority cited by Stembanc is inapposite." Id. at 9.

17 CBR's argument is frivolous.  Both the Ninth Circuit and the California Supreme Court have

18 unambiguously held that common law unfair competition claims are limited to "passing off."

19 See Bank of The West v. Superior Court, 2 Cal. 4th 1254, 1263 (1992).  CBR's

20 mischaracterization of two California Court of Appeals decisions does not change this fact.

21 Although CBR claims that "subsequent case law has made clear, however, and contrary to

22 Stembanc's assertion, [that] the Bank of the West court did not limit claims for common law

23 unfair competition to the tort of 'passing off,' but rather limited such claims to those involving

24 allegations of competitive injury," CBR is wrong.  Opp. at 9-10.  Both cases CBR cites -- which

25 were decided before Southland Sod Farms -- actually reaffirm the holding stated in Bank of the

26 West regarding the limits on common law unfair competition claims.  See A-Mark Financial

27 Corp. v. CIGNA Property & Casualty Co., 34 Cal. App. 4th 1179, 1186 (1995) ("The defendant

28 insurance companies maintained that the term [unfair competiton] referred only to the narrow

1  definition available under common law, essentially injury to a competitor due to passing off of

2  his goods") (citing <u>Bank of the West</u>, 2 Cal. 4th at 1260-61); <u>American Cyanamid Co. v.</u>

3  <u>American Home Assurance Co.</u>, 30 Cal. App. 4th 969, 975 (1994) ("The court [in <u>Bank of the</u>

4  <u>West</u>] drew a distinction between the common law tort of unfair competition and the statutory

5  definition"). Accordingly, CBR's arguments should be rejected.

6        **B.**    <u>**CBR's Interference Claims Fail to Plead the Requisite Elements**</u>

7        Stembanc's motion to dismiss demonstrated that CBR had not stated a valid claim

8  for either interference with existing contracts or interference with prospective economic

9  relations. <u>See</u> Motion at 12-13. CBR's Opposition fails to address Stembanc's arguments

10  regarding the claims of intentional interference with existing contract, and CBR has therefore

11  conceded those claims fail as a matter of law. Moreover, CBR's attempts to save its claims of

12  interference with prospective economic relations fail as well.

13        1.    <u>The claims for interference with existing contract fail to allege a contract</u>

14        CBR's Counterclaims purport to state causes of action for intentional and

15  negligent interference with existing contracts. <u>See</u> Counterclaims at 18-19 ¶¶ 36-45. As

16  Stembanc pointed out in its Motion, those claims both require that CBR allege an existing

17  contract with which Stembanc interfered. <u>See</u> <u>Tuchscher Development Enterprises v. San Diego</u>

18  <u>Unified Port District</u>, 106 Cal. App. 4th 1219, 1242 (2003). CBR, however, has failed to allege

19  an existing contract, instead claiming only that Stembanc or Grabinski interfered "with persons

20  who desire, or who may desire, to purchase [CBR's] services." Counterclaims at 18 ¶ 37 & 19

21  ¶ 42. As a result, CBR's Counterclaims are fatally deficient as a matter of law.

22        2.    <u>Intentional interference with prospective relations requires a wrongful act</u>

23        CBR concedes that it cannot state a claim for intentional interference with

24  prospective economic relations unless it can establish that Stembanc and Grabinski "engaged in

25  conduct that was wrongful by some legal measure other than the fact of the interference itself."

26  <u>Della Penna v. Toyota Motor Sales, U.S.A., Inc.</u>, 11 Cal. 4th 376, 392 (1995); <u>see</u> <u>Korean Supply</u>

27  <u>Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1159 (2003); Opp. at 12. As Stembanc's

28  motion to dismiss demonstrates, CBR has not stated any valid claim against Stembanc or

1    Grabinski and therefore CBR cannot show their conduct was "independently wrongful." See

2    Korean Supply Co., 29 Cal. 4th at 1159 (holding act is wrongful if "proscribed by some

3    constitutional, statutory, regulatory, common law or other determinable standard").[2]

4              3.    Claims for negligent interference do not lie between competitors

5              Stembanc cited precedent in its motion to dismiss holding that a claim for

6    negligent interference with prospective economic relations does not lie between competitors:

> The tort of negligent interference with economic relationship arises only when the
> defendant owes the plaintiff a duty of care. (J'Aire Corp. v. Gregory (1979) 24
> Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60].) The complaint did not allege
> such a duty, nor could it, since it was plain that plaintiff and defendants were
> competitors. On appeal, plaintiff makes no argument on this issue.

10   Stolz v. Wong Communications Limited Partnership, 25 Cal. App. 4th 1811, 1824 (Cal. Ct. App.

11   1994). CBR attempts to dismiss the holding of Stolz, arguing that "Stolz, however, contains no

12   analysis on this point, and instead merely cites to J'Aire Corp. v. Gregory, 24 Cal. 3d 799

13   (1979)." Opp. at 12. CBR then proceeds to announce that under its preferred interpretation of

14   California law competitors should owe each other a duty of care. See Opp. at 12-13. Once

15   again, CBR's argument lacks merit. While CBR may dislike the holding of Stolz, CBR cannot

16   simply wish the holding away. CBR cites no authority overruling or calling into question Stolz,

17   but rather cites the same case Stolz cited, J'Aire, and argues that the holding of Stolz is wrong.

18   See Opp. at 13. Because CBR has provided no "convincing evidence" that the Supreme Court of

19   California would overrule Stolz, this Court is bound by its holding. See Nelson v. City of Irvine,

20   143 F.3d 1196, 1206-07 (9th Cir. 1998) ("[W]here there is no convincing evidence that the state

21   supreme court would decide differently, a federal court is obligated to follow the decisions of the

22   state's intermediate appellate courts"). There is no dispute that CBR and Stembanc are

23

24   _____

25   [2] CBR several times seeks leave to amend its Counterclaims to attempt to state a valid
     claim against Stembanc and Grabinski. See Opp. at 6, 10, 13. As one of CBR's own cases
26   recognizes, however, even if CBR tried to amend to state an independent wrong, CBR would
     also have to specifically identify which prospective economic relationships were supposedly
27   disrupted. See id. at 15 (citing Janda v. Madera Community Hospital, 16 F. Supp. 2d 1181,
     1189-90 (E.D. Cal. 1998) ("Plaintiff must establish an actual economic relationship or a
28   protected expectancy with a third person, not merely a hope of future transactions") (citations and
     internal quotes omitted).

1    competitors.  Therefore, as decided in <u>Stolz</u>, CBR cannot state a claim for negligent interference

2    with prospective economic relations.

3        **C.    The Statements On Which CBR Bases Its Trade Libel and 17500 Claims Are Non-Actionable Truths Or Opinions Or Do Not Identify CBR**

4

5        Stembanc's motion to dismiss argued that CBR had failed to state a claim for trade

6    libel or for false advertising under California Business and Professions Code § 17500 ("Section

7    17500") because both of those actions require that CBR show Stembanc made a false or

8    misleading statement of fact about CBR, and CBR had not done so.[3]  <u>See</u> Motion at 11-12.

9    CBR's Opposition concedes that its trade libel and Section 17500 claims are subject to dismissal

10   absent a showing that Stembanc made a false or misleading statement of fact.  <u>See</u> Opp. at 10-11.

11   CBR contends, however, that it has plead at least four false or misleading statements:

12       CBR alleged, <u>inter alia</u>, that Stembanc made false or misleading statements:  (a) regarding the findings made by the court and/or the jury in the Delaware Action

13       concerning the patent infringement liability of physicians who work with CBR's actual or potential customers; (b) that CBR's customers are claiming that they

14       were misled by CBR and demanding refunds; (c) describing CBR as "guilty of patent infringement," thereby implying that CBR was engaged in criminal activity;

15       and (d) describing CBR as not "licensed," thereby implying that CBR lacks the necessary regulatory authority to lawfully conduct its business.

16

17   Opp. at 10; <u>see id</u>. at 6-8 (identifying same four statements).  By focusing exclusively on these

18   four statements, CBR appears to have abandoned its allegation that Stembanc's purported

19   statement that "CBR was 'faced with the prospect of business cessation'" was false or misleading.

20   <u>See</u> Counterclaims at 17 ¶ 32.  Finally, in addition to the four statements CBR's Opposition

21   addresses in its argument section, the Opposition's statement of facts attempts to amend CBR's

22   Counterclaims to allege an additional false statement, namely that "Stembanc and Grabinski have

23   made further statements implying that CBR, and other companies not licensed by PharmaStem,

24   are unethical or lacking in 'technical integrity and legal legitimacy.'"  Opp. at 4 (citing

25   Counterclaims ¶ 29).  CBR's Counterclaims contain no such allegation and the paragraph CBR

26   

27       [3] Stembanc also argued that CBR's claim for trade libel failed because CBR had not alleged that Stembanc made any statement with malice.  <u>See</u> Motion at 12.  For the reasons stated

28   in Part II below, CBR's allegations are insufficient to state malice and therefore its claim for trade libel fails on that ground as well.

1  cites does not support CBR's suggestion otherwise.  For the convenience of the Court, however,

2  Stembanc will address all six statements and demonstrate that none of them is a false or

3  misleading statement of fact regarding CBR.[4]  Because the parties do not dispute the text of the

4  statements, this Court may decide on a motion to dismiss whether those statements, in context,

5  can be reasonably understood as false or misleading statements of fact.  See Dodds v. American

6  Broadcasting Co., Inc., 145 F.3d 1053, 1065 (9th Cir. 1998) ("After carefully reviewing the

7  claims that were dismissed, and are now appealed, we agree with the district court that the

8  statements upon which they were based are not actionable, either because they are not

9  implications the segment reasonably can be understood to convey or because they are not

10  assertions of fact and thus cannot be proved to be false").

11              1.    Statements about potential physician liability are truths or opinions

12              Stembanc made statements regarding potential physician liability for patent

13  infringement in two places:  (1) the Pregnancy magazine advertisement; and (2) a press release

14  posted briefly on Stembanc's website.  See Declaration of Archibald A. Grabinski In Support of

15  Motion to Dismiss ("Grabinski Decl."), Exs. A, B, E.  Specifically, the Pregnancy magazine ad

16  contained the following statement:

17     Recently our competitors (including Viacord, Cord Blood Registry (CBR), and
       Croycell) were found guilty of wilful patent infringement  Other companies lack
18     the needed technology rights as well.

19

20  _____

21  [4] CBR contends that dismissal is inappropriate because "Stembanc erroneously attempts
    to isolate each of its statements, and then argue that the statements, reviewed alone and out of
22  context, are not actionable." Opp. at 14.  This argument is ironic considering that it was
    Stembanc, not CBR, that presented this Court with the documents containing Stembanc's
    statements in their entirety.  See Grabinski Decl., Exs. A, B, C, E.  Stembanc welcomes a review
23  of its statements as a whole.  Furthermore, neither CBR's Counterclaims nor its Opposition
24  identifies any additional statement as actionable.  Finally, to the extent CBR is attempting to
    escape dismissal by implying that some unidentified, general impact of Stembanc's
25  advertisements or press release is actionable rather than any particular statement, CBR's position
    has been rejected.  See, e.g., Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869,
26  872 (3d Cir. 1992) (dismissing Lanham Act claim because "[p]laintiffs have not alleged in their
27  complaint any particular false statement or misrepresentation on the part of [defendant].  Rather
    they appear to rely upon the general aura of [defendant's] national advertising scheme as
28  portraying an honest, quality real estate service").

1
2
3

> We feel it is important for you to know that this court verdict not only jeopardizes the infringers' ability to continue operations, but also establishes that physicians who knowingly work in concert with these companies may also be implicated in the process of patent infringement.

4  Grabinski Decl., Ex. B.  The press release contained the following statement:

5
6

> In addition, following numerous inquiries by concerned physicians, a clarification was sent in June 2004 to U.S. obstetricians confirming the fact that obstetricians risk legal liability by collecting cord blood for infringing companies.

7  Grabinski Decl., Ex. E.  CBR does not dispute that both of these statements appeared after the

8  jury in the action <u>PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.</u>, Civil Action No. 02-148-

9  GMS (D. Del.) ("Delaware Action") found that the defendants, including CBR, had willfully

10  infringed two of PharmaStem's patents.  <u>See</u> Counterclaims at 13 ¶ 11-13. The jury also found

11  that physicians who work with the infringing companies may be liable for patent infringement:

12
13
14

> <u>Question No. 4: Direct Infringement</u>
> Has PharmaStem proven by a preponderance of the evidence that defendants and the transplant physicians are acting in concert or working together to complete the process of infringement of claims 13, 19, 47, 53, or 57 of the '553 patent by performing each and every one of the steps in any of those claims?

15

> YES __X__    NO _____

16  Stembanc, Inc.'s Request for Judicial Notice ("Not. Req."), Ex. A (Docket Entry No. 29).  In

17  addition, CBR does not dispute that PharmaStem has brought several suits against obstetricians

18  seeking to hold them liable for patent infringement. <u>See</u> Joint Status Report (Docket Entry No.

19  47).  Finally, CBR does not dispute that both of these statements were made <u>prior</u> to the decision

20  issued by Judge Sleet of the District Court for the District of Delaware overturning the jury's

21  verdict.  Therefore, Stembanc's statements regarding potential physician liability are

22  demonstrably true and, in so far as the statements speculate about future potential obstetrician

23  liability, the statements are opinions regarding an undecided legal question -- namely, whether

24  under the Patent Act an obstetrician who collects cord blood may be liable for infringing

25  PharmaStem's patents. <u>See</u> <u>Coastal Abstract Service, Inc. v. First American Title Ins. Co.</u>, 173

26  F.3d 725, 731 (9th Cir. 1999) ("Absent a clear and unambiguous ruling from a court or agency of

27  competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute

28  or regulation are opinion statements, and not statements of fact"); <u>Rodriguez v. Panayiotou</u>, 314

1   F.3d 979, 986 (9th Cir. 2002) (citing <u>Coastal</u> and holding "Thus, as a layperson, Michael's

2   allegations of entrapment cannot constitute defamation under California law").  In response to

3   this record evidence, CBR offers two arguments.

4          First, CBR contends that Stembanc's statement in the press release regarding

5   potential obstetrician liability is not an opinion on an unsettled issue of law because:

6          [T]he Delaware Court issued a clear and unambiguous ruling that obstetricians
          could not be liable for contributory infringement of all or part of certain
7          PharamaStem patents based on their collecting cord blood for their patients
          because, <u>inter alia</u>, contributory infringement requires that there be a sale or offer
8          to sell by the party that is accused of contributory infringement.  That same
          principle applies without any need for interpretation of the potential liability of an
9          obstetrician under all of PharmaStem's patents.

10  Opp. at 13-14 (citing to Judge Sleet's July 2 Order, Counterclaims at 15 ¶ 19 & Ex. B).  To state

11  CBR's argument is to refute it.[5]  To begin with, even if the Judge Sleet's Order were a final ruling

12  on contributory patent infringement as CBR contends, not even CBR asserts that the Order

13  addresses all forms of infringement, such as direct infringement or inducement of infringement

14  under 35 U.S.C. §§ 271(a) & (b).  Therefore, the July 2 Order cannot possibly represent a final

15  ruling on, for example, whether obstetricians might be liable for inducing infringement of

16  PharmaStem's patents.  Second, CBR's own argument concedes that Judge Sleet's July 2 Order

17  did not address all of PharmaStem's patents.  <u>See</u> Opp. at 14.  Therefore, the July 2 Order could

18  not represent a final ruling on whether obstetricians could be liable under patents not at issue in

19  the Delaware Action.  Third, CBR's argument concedes that no court has finally adjudicated the

20  issue of whether an obstetrician involved in collecting cord blood may face liability for

21  infringement of PharmaStem's patents.  <u>See</u> Opp. at 14.  Fourth, CBR has admitted that

22  PharmaStem brought actions against obstetricians for patent infringement after Judge Sleet's July

23  2 Order issued.  <u>See</u> Joint Status Report (Docket Entry No. 47).  If PharmaStem's claims against

24  obstetricians had been finally decided in the July 2 Order, PharmaStem's suits would have been

---

26  [5] CBR attempts to include a new allegation in its Opposition that Stembanc made its
27  statements with bad faith.  <u>See</u> Opp. at 14.  This allegation was not contained in CBR's
    Counterclaims and therefore, even if it were not false, it could not resurrect CBR's claims.  In any
28  event, as discussed below, Stembanc's statements were good faith opinions about unsettled legal
    matters and therefore are protected against liability.

1  dismissed due to issue preclusion.  Therefore, CBR's argument that the issue of obstetrician

2  liability for infringement of PharmaStem's patents has been finally decided is simply incorrect.

3            Second, CBR contends that the cases Stembanc cited for the holding that

4  statements about unsettled legal matters are opinions do not apply because those cases are limited

5  to "statements of opinion regarding the interpretation of a statute or ordinance by a lay person" or

6  statements that "anticipate a subsequent interpretation of the law . . . ."  Opp. at 13.  Again, this

7  argument fails.  To begin, whether a physician may be liable for patent infringement is quite

8  obviously an interpretation of a statute, namely the Patent Act, 35 U.S.C. §§ 101 et seq.  Indeed,

9  CBR's co-defendants in the Delaware Action explicitly stated that statements about potential

10  obstetrician liability were interpretations of the Patent Act.  See Supp. Not. Req., Ex. C at 15

11  ¶ 43 (Complaint) ("Indeed, such improper threats, based upon a clearly erroneous interpretation

12  of the statute, of such enforcement constitute a misuse of the PharmaStem Patents").

13  Furthermore, the cases that Stembanc cited in its motion to dismiss to show that statements

14  concerning unsettled legal matters are non-actionable opinions were not limited to interpretations

15  of a statute or regulation.  For example, in Rodriguez v. Panayiotou, the Ninth Circuit held that

16  the defendant's "comments to the media, which imply the belief that he had been entrapped by

17  Rodriguez, constitute his interpretation of the law" and therefore were non-actionable opinions.

18  See Rodriguez, 314 F.3d at 986.  Finally, Stembanc's statements concerning the potential liability

19  of obstetricians cannot be statements of fact because the courts have held that a fact must be

20  capable of being proven false.  See, e.g., Dodds, 145 F.3d at 1065 ("[T]here can be no liability

21  for defamation if a defendant's direct statement "'cannot reasonably be interpreted as stating

22  actual facts' about an individual" that are provably false") (citations omitted).  CBR concedes that

23  no court has yet adjudicated the issue of whether an obstetrician involved in collecting cord

24  blood may face liability for infringement of PharmaStem's patents.  See Opp. at 14.  Therefore,

25  Stembanc's statements on the issue are not capable of being proven false.  Accordingly, CBR's

26  claims based on these statements fail as a matter of law and should be dismissed with prejudice.

27  See Partington v. Bugliosi, 56 F.3d 1147, 1162 (9th Cir. 1995) ("[T]here is a policy that favors

28

1   allowing parties to amend their pleadings, [but] a district court may properly deny such a motion

2   if it would be futile to do so") (citations omitted).

3               2.    "Guilty of patent infringement" does not reasonably imply criminality

4               A graphical chart that previously appeared on Stembanc's website identified CBR

5   as being "guilty of patent infringement." See Grabinski Decl., Ex. C. CBR does not dispute that

6   the chart appeared only after the jury in the Delaware Action found that CBR had wilfully

7   infringed PharmaStem's patents. CBR nonetheless contends the statement is misleading because

8   it "creates a false impression that CBR has engaged in criminal conduct." Opp. at 7. The

9   argument misses the mark because the phrase "guilty of patent infringement" is commonly used

10  to describe civil liability. Indeed, even courts use the phrase in that manner. See, e.g., Scheiber

11  v. Dolby Laboratories, Inc., 293 F.3d 1014, 1017 (7th Cir. 2002) ("After the patent expires,

12  anyone can make the patented process or product without being guilty of patent infringement");

13  Protective Closures Co. v. Clover Industries, Inc., 394 F.2d 809, 810 (2d Cir. 1968) ("[T]he late

14  Chief Judge John Knight rendered a judgment finding Clover Industries guilty of patent

15  infringement and unfair competition"). To be entitled to dismissal, Stembanc is not required to

16  show that its statements are incapable of being misconstrued by a determined plaintiff's counsel,

17  but rather Stembanc need show only that the statements are not reasonably understood as stating

18  a false fact. See Dodds, ("[Plaintiff] must show that a reasonable juror could conclude that the

19  allegedly defamatory implications constituted provably false assertions of fact"). Stembanc has

20  more than met this standard.

21              3.    Stating that CBR is not "licensed" was true and non-misleading in context

22              A graphical chart on Stembanc's website identifies CBR as not being "licensed"

23  by PharmaStem. See Grabinski Decl., Ex. C. CBR admits that it does not have a license from

24  PharmaStem and therefore, again, admits that Stembanc's graphical chart is literally true. See

25  Counterclaims at 13 ¶¶ 11-13. CBR contends that the graphical chart is misleading, however,

26  because the statement that CBR "is not 'licensed' is designed to imply that CBR lacks the

27  regulatory authority to conduct its business lawfully." Opp. at 7. In context, the chart makes

28  clear that the term "licensed" refers to PharmaStem's patents. For example, the chart lists a

1    separate column, "FDA Registered," and this column clearly indicates that CBR has the

2    "regulatory authority to conduct its business lawfully."  Moreover, the chart places a footnote

3    next to the "licensed" column which directs a viewer to "Refer to Press Releases for More

4    Information" and, when the user clicks on the link, he or she is directed to a press release entitled

5    "PharmaStem Therapeutics, Inc. Announces Patent License Agreement With Stembanc, Inc."

6    Grabinski Decl., Ex. D.  Again, Stembanc need not show that its statements are impossible to

7    misconstrue, it need only show that they are not reasonably understood as stating a false fact.

8    Again, Stembanc has more than met this standard.

9               4.    CBR was and is currently facing the prospect of business cessation

10              Stembanc made two statements concerning unlicensed blood banks facing the

11   prospect of business cessation.  First, the Pregnancy ad contains the statement:  "Obviously,

12   parents choose Stembanc once they understand other companies face the prospect of business

13   cessation."  Grabinski Decl., Ex. B.  Second, the press release contains the following text:

14   "Following [the verdict in the Delaware Action], the patent holder has asked the Court to grant a

15   permanent injunction against these companies.  An injunction would stop the cord blood storage

16   operations of the infringers."  Grabinski Decl., Ex. E.  Although CBR's Counterclaims allege

17   these statements are false, its Opposition abandons the point.  In any event, the statements are

18   opinions about an unsettled legal question -- namely, whether PharmaStem will obtain a

19   permanent injunction against unlicensed blood banks.  CBR cannot dispute that PharmaStem is

20   seeking permanent injunctive relief against it in this action and in the Delaware Action.  See

21   Complaint at 4 ¶ A; Supp. Not. Req., Ex. B at 6 ¶ A (Delaware Action Complaint).  Accordingly,

22   Stembanc's statements are not actionable.

23              5.    Stembanc's claim of "technical integrity" is true or opinion puffery

24              Stembanc's Pregnancy magazine advertisement contains statements that Stembanc

25   has the "technical integrity and legal legitimacy you can count on."  Grabinski Decl., Exs. A & B.

26   Specifically, the advertisement contains the follow text:

27          Stembanc in the only company that has operated from its beginning with a license
            to use the patented technologies developed for umbilical cord and placental blood

28

1

preservation and its therapeutic use -- giving you the assurance of both technical integrity and legal legitimacy you can count on. . . .

2

3

Stembanc has these rights -- the rights to the technologies needed for both technically sound and legally legitimate cord blood stem cell processing and cryopreservation. Recently our competitors (including Viacord, Cord Blood Registry (CBR), and Cryocell) were found guilty of willful patent infringement. Other companies lack the needed technology rights as well.

4

5

6    Grabinski Decl., Ex. B. CBR's Counterclaims do not allege that the statements concerning

7    "technical integrity and legal legitimacy" are false or misleading, but the fact section of CBR's

8    Opposition makes mention of this statement. See Opp. at 4.  The Opposition makes no actual

9    argument that the "technical integrity and legal legitimacy" statements are false or misleading

10   statements of fact.  Nor could it because those statements are either true or opinion puffery.  First,

11   CBR does not dispute that Stembanc has the rights to practice the teachings of PharmaStem's

12   patents and therefore it is literally true to claim that Stembanc has technical and legal legitimacy.

13   Second, even if these statements could be reasonably understood to be making some claim about

14   CBR's lack of rights, CBR cannot possibly deny that it is not licensed by PharmaStem, and the

15   context of the statements makes clear that the statements are referring to being licensed to

16   practice the teachings of PharmaStem's patents.  Finally, the statements that Stembanc has the

17   "technical intergrity and legal legitimacy you can count on" are classic opinion puffery and

18   therefore cannot serve as a false statement of fact sufficient to support CBR's claims. See, e.g.,

19   Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., 911 F.2d 242, 246 (9th Cir.

20   1990) ("The statement that 'we're the low cost commercial collection experts' and any implication

21   that [defendant] has comparable services to attorneys at lower rates are general assertions of

22   superiority rather than factual misrepresentations").

23         6.     Statement about customers demanding refunds does not identify CBR

24              Finally, Stembanc's press release contained a statement regarding customer

25   demands for refunds.  See Grabinski Decl., Ex. E.  The statement does not identify CBR as being

26   the company whose customers are demanding refunds and therefore CBR is not in a position to

27   complain about it.  Even if the statement could be understood to identify CBR, however, the

28   statement is privileged against suit under Cal. Civ. Code § 47(d), as discussed in Part II below.

1    Because CBR's claims rest on non-actionable truths or opinions or statements that

2  do not identify CBR, CBR has failed to state a claim for trade libel or under Section 17500.

3  **II.    CBR's CALIFORNIA CLAIMS ARE BARRED BY CAL. CIV. CODE § 47**

4    Stembanc's motion to dismiss demonstrated that the statements on which CBR

5  bases it its claims are privileged against suit under Cal. Civ. Code § 47 ("Section 47"). <u>See</u>

6  Motion at 5-10.  CBR concedes that the statements at issue occurred in one of three forums:  (1)

7  in an advertisement in <u>Pregnancy</u> magazine; (2) in a press release and graphical chart posted on

8  Stembanc's website; and (3) in alleged direct contacts.  <u>See</u> Motion at 5-10; Opp. at 5-8.  CBR

9  has failed to address Stembanc's points regarding the <u>Pregnancy</u> magazine advertisement and its

10  arguments as to the remaining statements fail to rebut Stembanc's analysis.

11    Stembanc's motion to dismiss argued that the statements in the <u>Pregnancy</u>

12  magazine ad were privileged under Section 47(d) as "fair and true" reports of a judicial

13  proceeding in a public journal.  <u>See</u> Motion at 6-7.  CBR's Opposition does not dispute any of

14  Stembanc's analysis on the <u>Pregnancy</u> magazine ad and therefore CBR has conceded that the

15  statements in the advertisement are privileged under Section 47(d).  CBR's concession was

16  required in any event because, as discussed in Part I.C above, the statements in the <u>Pregnancy</u>

17  magazine ad were "fair and true."  <u>See, e.g.</u>, <u>Dorsey</u>, 973 F.2d at 1436 ("The court held that an

18  article that captures the substance of the proceedings constitutes a 'fair and true' report")

19  (citations omitted); <u>Microsoft Corp. v. Yokohama Telecom Corp.</u>, 993 F. Supp. 782, 784 (C.D.

20  Cal. 1998) ("The publication, however, need not resolve the merits of the charges or even present

21  the defendant's version of the facts to invoke the privilege").  Furthermore, CBR cannot dispute

22  that the privilege under Section 47(d) applies to paid advertisements.  <u>See</u> <u>Microsoft</u>, 993 F.

23  Supp. at 784 ("[U]nder the broad and generalized wording selected by the California legislature,

24  Microsoft's paid publication is privileged").

25    Stembanc's motion to dismiss also demonstrated that the alleged direct contacts

26  regarding potential physician liability and potential cessation of CBR's business from a

27  permanent injunction were privileged under Section 47(c) as communications made between

28  interested parties.  <u>See</u> Motion at 7-8.  CBR's Opposition does not dispute that the alleged

1    contacts qualify as communications between interested parties but argues that CBR has alleged

2    the contacts were made with malice. See Opp. at 6. The Opposition concedes, however, that

3    CBR did not actually plead that the contacts were made with malice; instead, CBR argues that its

4    allegations stated that the contacts "were designed to have a 'damaging effect' on CBR," that

5    "Stembanc acted 'with the purpose of injuring CBR and its business and property,'" and that

6    Stembanc's alleged "conduct was 'willful,' 'wanton,' and 'unprivileged.'" Id. These allegations do

7    not amount to a claim of malice. Malice requires the plaintiff prove "a state of mind arising from

8    hatred or ill will, evidencing a willingness to vex, annoy or injure another person," or that the

9    defendant "lacked reasonable grounds to believe the statement true and therefore acted with

10   reckless disregard for plaintiff's rights." Coastal, 173 F.3d at 736 (citations omitted). As

11   discussed above, Stembanc's statements regarding potential physician liability and the potential

12   for a permanent injunction are fully supported by the proceedings in PharmaStem's patent

13   infringement suits. Even if those statements "damaged CBR's business" as CBR contends, that

14   allegation does not suffice as a claim of malice. Indeed, the very purpose of the Section 47(c)

15   privilege is to protect statements that could damage someone. See, e.g., Institute of Athletic

16   Motivation v. University of Illinois, 114 Cal. App. 3d 1, 5 (Cal. Ct. App. 1981) (finding

17   privileged a "letter [that] was defamatory as a matter of law 'in that it has a tendency to affect the

18   integrity and business reputation of the plaintiff'"). Nor is this issue one of semantics. The Ninth

19   Circuit has held that the First Amendment requires a plaintiff suing based on speech to plead its

20   claims with specificity. See, e.g., Franchise Realty Interstate Corp. v. S.F. Local Joint Executive

21   Bd. of Culinary Workers, 542 F.2d 1076, 1082-83 (9th Cir. 1976) ("[W]here a plaintiff seeks

22   damages . . . for conduct which is prima facie protected by the First Amendment, the danger that

23   the mere pendency of the action will chill the exercise of First Amendment rights requires more

24   specific allegations than would otherwise be required"). CBR has not alleged malice and

25   therefore Stembanc's alleged direct contacts qualify as privileged under Section 47(c).

26          Finally, Stembanc's motion to dismiss demonstrated that the press release and the

27   graphical chart on Stembanc's website were privileged under Section 47(d). See Motion at 8-10.

28   CBR contends neither the press release nor the chart qualifies for the privilege because the

13

1  statements they contain are not "fair and true." See Opp. at 7-8.[6] As discussed above, however,

2  the statements accurately capture the "gist" of PharmaStem's patent litigations and therefore

3  qualify for the privilege. See Dorsey, 973 F.2d at 1436 (holding defendant is not required "to

4  justify every word of the alleged defamatory material that is published," but only to "ensur[e] that

5  the 'gist or sting' of the report -- its very substance -- is accurately conveyed") (citations omitted).

6  CBR also argues that postings on a website cannot qualify as reports in or to a "public journal."

7  See Opp. at 8. CBR acknowledges, however, that the California Court of Appeals has held that

8  statements on a website can and do qualify for privilege under Section 47(d). See Colt v.

9  Freedom Communications, Inc., 109 Cal. App. 4th 1551, 1555-56 (Cal. Ct. App. 2003) (applying

10  privilege to "articles defendants published in the Colorado Springs Gazette and on an associated

11  internet message board").[7] Finally, CBR contends that the statement in the press release

12  regarding customer demands for refunds is not a report of a judicial proceeding. See Opp. at 8.

13  In context, the statement clearly states customers were demanding refunds because unlicensed

14  cord blood banks had been found liable for wilful patent infringement and, as one of CBR's

15  codefendants stated in a public SEC filing, the companies faced the prospect of being

16  permanently enjoined. See Grabinski Decl., Ex. E. Therefore, the statement in context is

17  commenting upon a judicial proceeding within the broad reach of Section 47(d). See Microsoft,

18  993 F. Supp. at 784 ("A publication is 'fair and true' if it captures the substance of the judicial

_____

20  [6] CBR asserts that any dispute regarding whether accused statements are "fair and true" is
sufficient for the court to deny a motion to dismiss. See Opp. at 7-8. CBR is incorrect. The
21  Court determines whether statements are "fair and true" when the parties do not dispute what
occurred in the judicial proceeding reported upon or what was contained in the report. See
22  Dorsey, 973 F.2d at 1435 ("The district court had both the Reply Affidavit and the article before
it; there are no disputed facts; the reasonable inferences therefrom all lead to the same
23  conclusion. Thus, the district court could determine, as a matter of law, whether the article is a
24  'fair and true' report").

25  [7] CBR contends Colt does not apply because the website postings there contained
statements that also appeared in a hardcopy journal. See Opp. at 8. Exactly the same
26  circumstance occurred here: several of the statements in the press release appeared in the
27  Pregnancy magazine advertisement. Moreover, Colt applied the privilege to the website postings
without limitation; the court did not hold that the privilege would not have applied absent the
28  hardcopy circulation. See Colt, 109 Cal. App. 4th at 1559-60.

1    proceedings being reported"). Finally, to the extent CBR contends the privilege is limited to

2    media defendants, its position has already been rejected. See id. at 785 ("The statute's wording

3    [Section 47(d)] does not require that the journal be the author of the report"). Accordingly, the

4    statements in the press release and the chart qualify for privilege under Section 47(d).[8]

5    **III.    CBR'S LANHAM ACT CLAIM RESTS ON NON-ACTIONABLE STATEMENTS**

6            CBR concedes that it cannot state a claim under section 43(a) of the Lanham Act

7    unless it can establish, among other things, a false or misleading statement of fact concerning

8    CBR. See Opp. at 14. For the reasons discussed in Part I.C above, however, CBR has not

9    established any false or misleading statement of fact and therefore its claim under section 43(a)

10   of the Lanham Act is fatally deficient.

11                                **Conclusion**

12           For all of the foregoing reasons, Stembanc and Grabinski respectfully request that

13   the Court dismiss with prejudice CBR's First, Second, Third, Fourth, Fifth, and Sixth

14   Counterclaims against Stembanc and Grabinski pursuant to Federal Rule of Civil Procedure

15   12(b)(6) for failure to state a claim upon which relief can be granted.

16

17   Dated:  December 15, 2004                QUINN EMANUEL URQUHART OLIVER &
                                              HEDGES, LLP
18

19                                           By_____/s/_____
                                                Samuel B. Shepherd (Bar No. 163564)
20                                              Matthew W. Meskell (Bar No. 208263)
                                                555 Twin Dolphin Drive, Suite 560
21                                              Redwood Shores, California 94065
                                                Attorneys for Archibald A. Grabinski
22

23

24   _____

25        [8] CBR also does not address Stembanc's argument that the press release qualifies for
     privilege under Section 47(d) because it is a report to a public journal, as the very words "press
26   release" state. See Motion at 9 (citing Rothman v. Jackson, 49 Cal.App.4th 1134, 1144 n.3 (Cal.
     Ct. App. 1996) ("The privilege in section 47(d) has previously applied only to reports in public
27   journals, not communications to them. The amended statute provides in pertinent part as
     follows: 'A privileged publication or broadcast is one made: . . .¶ (d)(1) By a fair and true report
28   in, or a communication to, a public journal . . .")