# EXHIBIT E

DECLARATION OF CHANG H. KIM IN SUPPORT OF CBR'S REPLY TO PHARMASTEM THERAPEUTICS, INC.'S AND NICOLAS DIDIER'S OPPOSITION TO MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF THE MULTIDISTRICT LITIGATION MOTION TO TRANSFER FOR CONSOLIDATION AND COORDINATION OF PRETRIAL PROCEEDINGS IN A SINGLE FORUM

PILLSBURY WINTHROP LLP
William F. Abrams (State Bar No. 88805)
Thomas F. Chaffin (State Bar No. 112368)
Chang H. Kim (State Bar No. 195554)
2475 Hanover Street
Palo Alto, CA 94304-1114
Telephone: (650) 233-4500
Facsimile: (650) 233-4545

Attorneys for Defendants and Counterclaimants
Monica Aszterbaum, M.D., Andrew Cassidenti, M.D., Eunice U. Lee, M.D., Carla Wells, M.D., Anita York, M.D., Bruce A. Hagadorn, M.D., Rajasree T. Seshadri, M.D., and Arthur Goldstein, M.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

PHARMASTEM THERAPEUTICS, INC., a Delaware corporation,

Plaintiff,

vs.

CURESOURCE, INC., a South Carolina corporation, MONICA ASZTERBAUM, an individual, ANDREW CASSIDENTI, an individual, EUNICE U. LEE, an individual, CARLA WELLS, an individual, ANITA YORK, an individual, ELIOT ROMERO, an individual, KATHY ANDERSON, an individual, NASRIN FARBAKHSH, an individual, BRUCE A. HAGADORN, an individual, RAJASREE T. SESHADRI, an individual, ARTHUR GOLDSTEIN, an individual, and CHARLES W. MONIAK, an individual,

Defendants.

RELATED COUNTERCLAIMS

**Case No. SA-CV-04-921 GLT-(ANx)**

**DEFENDANTS AND COUNTERCLAIMANTS' NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF THE MULTIDISTRICT LITIGATION MOTION TO TRANSFER FOR CONSOLIDATION AND COORDINATION OF PRETRIAL PROCEEDINGS IN A SINGLE FORUM AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: January 24, 2005
Time: 10 a.m.
Location: Courtroom 10D
Judge: Hon. Gary L. Taylor

## I. NOTICE OF MOTION

1. To PharmaStem Therapeutics, Inc. ("PharmaStem") and its attorneys, PLEASE TAKE NOTICE THAT at 10:00 a.m. on January 24, 2005, or earlier as counsel may be heard before the Honorable Gary L. Taylor in the United States District Court at Santa Ana, California, Defendants and Counterclaimants Monica Aszterbaum, Andrew Cassidenti, Eunice U. Lee, Carla Wells, Anita York, Bruce A. Hagadorn, Rajasree T. Seshadri, and Arthur Goldstein (referred to individually and collectively as "Doctor Defendants") will move the Court to stay all proceedings pending the decision from the Judicial Panel on Multidistrict Litigation ("JPML") on Doctor Defendants' Motion to Transfer for Consolidation and Coordination of Pretrial Proceedings in a Single Forum (the "MDL Motion") in the case of *In re PharmaStem Therapeutics, Inc. Patent Litigation*, MDL Docket No. 1660. This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, Declaration of Chang H. Kim, and such other material as may be presented to the Court before or at the hearing. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 8, 2004. Exhs. 1 and 2[1].

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A. INTRODUCTION

In July and August 2004, PharmaStem initiated five separate lawsuits against over twenty (20) defendants in five district courts: (a) *PharmaStem Therapeutics, Inc. v. CureSource, Inc., et al.*, filed on August 4, 2004, in the

---

[1] All exhibits, except as noted, are attached to the Declaration of Chang H. Kim in Support of Defendant Doctors' Motion to Stay Proceedings Pending Resolution of the Multidistrict Litigation Motion to Transfer for Consolidation and Coordination of Pretrial Proceedings in a Single Forum, filed concurrently herewith.

United States District Court for the Central District of California as Civil Action No. SA-CV-04-921 GLT, and assigned to the Honorable Gary L. Taylor (the "Central District Action"); (b) *PharmaStem Therapeutics, Inc. v. CBR Systemts, Inc., et al.*, filed on July 28, 2004 in the United States District Court for the Northern District of California as Civil Action No. C04-3072 JSW, and assigned to the Honorable Jeffrey S. White (the "Northern District Action") (Exh. 3); (c) *PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al.*, filed on July 28, 2004, in the United States District Court for the District of Massachusetts Civil Action No. 04-CV-11673 RWZ (the "Massachusetts Action") (Exh. 4); (d) *PharmaStem Therapeutics, Inc. v. Cyro-Cell International, Inc., et al.*, filed on July 28, 2004, in the United States District Court for the Middle District of Florida Civil Action No. 8:04-CV-1740-T-30TGW, and assigned to the Honorable James S. Moody, Jr. (the "Florida Action") (Exh. 5); and (e) *PharmaStem Therapeutics, Inc. v. Corcell, Inc., et al.*, filed on July 28, 2004, in the United States District Court for the Eastern District of Pennsylvania Civil Action No. 2:04-CV-03561-RK (the "Pennsylvania Action") (Exh. 6).

In all of these lawsuits, PharmaStem asserted U.S. Patent Nos. 6,569,427 ("the "'427 Patent) and 6,461,645 (the "'645 Patent") against physicians, medical groups, health care facilities and/or private umbilical cord blood banks. In the Central District Action, PharmaStem asserted the '427 Patent against twelve (12) physicians and further asserted the '645 Patent and U.S. Patent No. 5,004,681 (the "'681 Patent") against a cord blood bank company, Curesource, Inc.

Almost three years ago in February 2002, PharmaStem filed a lawsuit in the District of Delaware against numerous cord blood bank companies alleging infringement of the '681 Patent and U.S. Patent No. 5,192,553 (the "'553 Patent"), *PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al*, C.A. No.

02-148-GMS, and assigned to the Honorable Gregory M. Sleet (the "Delaware Action"). The '427 Patent and the '645 Patent derive from and are continuation and/or continuation-in-part patents to the '681 Patent and the '553 Patent.

The Delaware Action went to trial before Judge Sleet in October 2003. On September 15, 2004, Judge Sleet entered his ruling on post-trial motions finding, *inter alia*, that defendants, the umbilical cord blood companies, were entitled to judgment as a matter of law on non-infringement of the '553 Patent and a new trial on infringement of the '681 Patent. Exh. 7.

In late October 2004, defendants in these six actions moved the JPML pursuant to 28 U.S.C. §1407 to Transfer for Consolidation and Coordination of Pretrial Proceedings in a Single Forum (the "MDL Motion") to the District Court of Delaware. Exhs. 8 and 9. PharmaStem opposed the MDL Motion, but stated that if transferred was ordered, that these actions should be transferred to (in order of preference): (1) the Northern District of California; (2) the Central District of California; (3) Middle District of Florida, the Eastern District of Pennsylvania, or the District of Massachusetts or (4) any judge in the District of Delaware other than Judge Sleet. Exh. 10, page 4.

This Court has authority to stay all proceedings pending the decision by the Judicial Panel on Multidistrict Litigation. See *Hertz Corp. v. The Gator Corp.*, 250 F.Supp.2d 421, 426 (D.N.J. 2003); see also *Moore v. Wyeth-Ayerst Laboratories*, 236 F. Supp.2d 509, 511 (D.Md 2002) (The MDL Panel has held that a district court has the authority to wait for a transfer order without ruling on a motion). In fact, on November 10, 2004, Judge Moody in the Florida Action entered an order staying proceedings in the Florida Action for 120 days to permit the JPML to consider the pending MDL motion and to avoid a waste of resources of the court and parties. Exh. 11. Judge Moody expressed his view that "all these related cases across the country ought to be

resolved by one court" and " it's not for judicial economy to have five differente courts trying to construe the same patents." Exh. 12, page 19. Moreover, defendants in the Northern District Action and the Pennsylvania Action have filed their motions to stay proceedings pending resolution of the MDL Motion. Exhs. 13 and 14.

There is no justifiable reason why this Court should not granted a stay in this Action as it would clearly promote judicial efficiency, lessen the burden on the parties and the courts imposed by proceeding in the several jurisdictions, and there is no prejudice to PharmaStem caused by the stay.

## B. REQUESTED RELIEF

Doctor Defendants request this Court to stay all proceeding pending the decision of the JPML on the MDL Motion.

## C. STATEMENT OF RELEVANT FACTS

### 1. PHARMASTEM PATENTS

On August 4, 2004, PharmaStem brought the Central District Action against CureSource, Inc. and twelve (12) physicians, alleging infringement of the '427 Patent, the '645 Patent and the '681 Patent. The Doctor Defendants responded to the Complaint and asserted counterclaims of non-infringement, invalidity, and unenforceability on September 30, 2004, after this Court granted Doctor Defendants' *Ex Parte Application For Extension of Time to File a Responsive Pleading*.

Both the '427 Patent and the '645 Patent derived from a single patent application, Serial No. 07/119,746, filed November 12, 1987, which is now the '681 Patent. The '427 patent also derives from the '553 Patent. In general, all four patents relate to compositions and methods involving the preservation of stem cells derived from human umbilical cord blood and

therapeutic uses of such cells. The bulk of the specification of each patent is identical, and there are close parallels among the claims. The '681 Patent and the '553 Patent have been litigated extensively in the Delaware Action during the past three years.

Below is the table identifying PharmaStem's patents that it alleged are infringed by the defendants in the six different actions. The '427 patent and the '553 patent are continuation and/or continuation-in-parts to the '681 patent and the '553 patent.

| | the '681 patent | the '553 patent | the '427 patent | the '645 patent |
|---|---|---|---|---|
| Delaware Action | Asserted | Asserted | Not Asserted | Not Asserted |
| Northern District Action | Not Asserted | Not Asserted | Asserted | Asserted |
| Central District Action | Asserted | Not Asserted | Asserted | Asserted |
| Massachusetts Action | Not Asserted | Not Asserted | Asserted | Asserted |
| Florida Action | Not Asserted | Not Asserted | Asserted | Asserted |
| Pennsylvania Action | Not Asserted | Not Asserted | Asserted | Asserted |

## 2. PROCEDURAL HISTORY OF LAWSUITS

In February 2002, PharmaStem filed a patent infringement suit in Delaware against several companies engaged in the private banking of umbilical cord blood, alleging infringement of the '681 Patent and the '553 Patent. In October 2003, a jury trial was completed. On September 15, 2004, Judge Sleet entered his ruling on post-trial motions finding, *inter alia*, that defendants, the umbilical cord blood companies, were entitled to judgment as

a matter of law on non-infringement of the '553 Patent and a new trial on infringement of the '681 Patent. Exh 7.

Judge Sleet has also considered motions relating to PharmaStem's conduct regarding its threats of enforcement of all of its patents, in which the scope of the claims of those patents is at issue. While the post-trial motions in the Delaware Action were pending, on July 2, 2004, Judge Sleet issued an injunction order against PharmaStem. Exh. 15. Judge Sleet found that certain statements made by PharmaStem, in an effort to dissuade obstetricians and hospitals from collecting umbilical cord blood for their patients who were customers of one of the defendants, were false and misleading, and he enjoined PharmaStem from making any further false and misleading statements directed to obstetricians. Id.

In several of the recently-filed actions, the defendant cord blood banks have asserted counterclaims against PharmaStem. These claims are for unfair trade practices, tortious interference and similar claims arising out of allegations of false and misleading statements made to obstetricians and the general public threatening enforcement of PharmaStem's patents beyond the scope of those patents. In one action, several cord blood banks presented claims of antitrust and Lanham Act violations by PharmaStem arising from PharmaStem's efforts to require obstetricians to agree to refrain from conduct that is beyond the scope of PharmaStem's patents as a condition of avoiding suit for infringement of those patents.

Numerous defendants in these actions have filed motions to stay proceedings in the Northern District of California and the Eastern District of Pennsylvania pending the resolution of the MDL motion. Exhs. 13 and 14. On November 10, 2004, Judge Moody in the Florida Action entered an order staying proceedings in the Florida Action for 120 days to permit the JPML to

consider the pending motion and to avoid a waste of resources of the court and parties. Exh. 11. Judge Moody expressed his view that "all these related cases across the country ought to be resolved by one court" and " it's not for judicial economy to have five different courts trying to construe the same patents." Exh. 12, page 19.

**D. ARGUMENTS**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *Landis v. North American Co.*, 299 U.S. 248, 254-255, 257 S.Ct. 163, 166, 81 L.Ed. 153, 158-159 (1936). To accomplish this, "a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it pending resolution of independent proceedings which bear on the case. This rule applies whether the separate proceedings are judicial, administration, or arbitral in character." *Leyva v. Certified Grocer's of California Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) (citations omitted), quoted in *Mediterranean Enterprises, Inc. v. Ssangyung*, 708 F.2d 1458, 1465 (9th Cir. 1983). Factors to be considered in deciding whether to enter a stay include judicial efficiency, burden on the parties imposed by proceeding with two actions, and any prejudice caused by delay. See *Micron Technology, Inc. v. Mosel Vitelic Corp.*, 1999 U.S. Dist. Lexis 4792, *10 (D.C. Idaho 1999); *Organon Teknika Corp. v. Hoffman-La Roche, Inc.*, 1997 U.S. Dist. Lexis 3798, *7 (M.D. N.C. 1997). With the increased calendar congestion in federal courts and other considerations of judicial efficiency, it is not only appropriate by necessary for courts to avoid parallel actions wherever possible. *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979); *Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier, Inc.*, 60 U.S.P.Q. 2d (BNA) 1541 (C.D. Cal. 2001).

As Judge Sleet recently observed, he is "intimately familiar" with the

issues in the lawsuits.[2] Doctor Defendants, along with the other defendants in the other related lawsuits, filed the MDL Motion to transfer for consolidation and coordination of pretrial proceedings in a single forum, the Delaware District Court. Consolidation and coordination in a single forum of these actions will significantly advance the just and efficient conduct of the litigation as well as the convenience of the parties, because of the great similarity in subject matter of all the cases. Choosing the District of Delaware as that forum makes the most sense because PharmaStem bought the first case there, the judge there has already conducted a trial of issues related to those commonly presented in all of the cases and it is a forum that is convenient for most parties.

PharmaStem opposed consolidation, but has indicated that if consolidation was ordered, all the cases should be transferred to one forum in the following order of preference: (1) the Northern District of California; (2) the Central District of California; (3) Middle District of Florida, the Eastern District of Pennsylvania, or the District of Massachusetts or (4) any judge in the District of Delaware other than Judge Sleet. Exh. 9, page 4. Accordingly, there is a high likelihood that these actions will be consolidated in the District Court of Delaware or in one of the District Courts of California in the coming months.

There is no justifiable reason why this Court should not granted a stay

---

2 As Judge Sleet stated in a telephonic conference with counsel for the parties in the Delaware Action on October 5, 2004, "Well, this Court is intimately familiar. It has had it now, as you point out in the plaintiff's motion for the issuance of a preliminary injunction, is very familiar with the background involved here, with the particular issues that are in dispute. The Court, after all, has had a jury trial and presided over a jury trial on the matter and has had the opportunity to peruse and investigate and consider in-depth post-verdict motions and the record in support of those motions. So to the extent that **these other patents might be placed before this court** ...after all, as I understand it, **they raise, if not identical issues, at least very, very similar issues to the '681 and '553 patents.**" (emphasis added) (Transcript of hearing, October 5, 2004 at pp. 10-11, a copy of which is attached as Exh. 16).

in this Action as it would clearly promote judicial efficiency, lessen the burden on the parties and the courts imposed by proceeding in the several jurisdictions, and there is no prejudice to the PharmaStem caused by the stay. While the MDL Motion is pending, all proceedings[3] should be stayed to avoid wasting this Court's resources and time because if the MDL Motion is granted, there may be inconsistent rulings and duplicative effort by the different courts. See *Moore* at 511 (The MDL Panel noted that "[c]entralization under Section 1407 is…necessary in order to eliminate duplicative discovery, prevent inconsistent or repetitive pretrial rulings,…, and conserve the resources of the parties, their counsel and the judiciary). As noted above, the Delaware Court is intimately familiar with the patents at issue. During the past three years, Judge Sleet has been intimately involved in, *inter alia*, (1) a claim construction hearing on the '681 Patent and '553 Patent, (2) discovery disputes and motions, (3) a two week jury trial, (4) preliminary injunction motions and hearing, and (5) numerous post trial motions.

Absent a stay in this Action, there is a real concern for inconsistent rulings. For example, the parties, particularly PharmaStem, can bring issues before any of the six district courts and argue about which ruling applies. One such obvious concern is that PharmaStem can conduct parallel claim construction hearings at different district courts, and there is a real danger that the claim construction rulings will be inconsistent among the district courts.

Moreover, there will not be any prejudice or injury to PharmaStem during the stay. Discovery has not begun and there are no pending motions in this Action. *Hertz Corp.* at 426 (granting motion to stay pending MDL motion

---

3 "All proceedings" includes, but not limited to, initial disclosures, discovery, and motions. PharmStem and Doctor Defendants have agreed to postpone exchanging disclosure under Fed.R.Civ.P. Rule 26(a)(1) to on or before February 11, 2005. See Case Management Report filed December 6, 2004.

because the party opposing the stay can secure effective relief after the stay is terminated). PharmaStem will not suffer any irreparable injury as a result of this stay. The practical effect of the stay in this Action will ultimately promote judicial efficiency, lessen the burden on the parties, and will not cause any prejudice to the parties involved.

## C. CONCLUSION

Accordingly, Doctor Defendants move this Court to stay all proceedings relating to the instant Action pending the resolution of the MDL Motion.

Dated: December 10, 2004.

PILLSBURY WINTHROP LLP
William F. Abrams
Thomas F. Chaffin
Chang H. Kim
2475 Hanover Street
Palo Alto, CA 94304-1114

By 

Attorneys for Defendants and Counterclaimants
Monica Aszterbaum, M.D., Andrew Cassidenti, M.D., Eunice U. Lee, M.D., Carla Wells, M.D., Anita York, M.D., Bruce A. Hagadorn, M.D., Rajasree T. Seshadri, M.D., and Arthur Goldstein, M.D.