# EXHIBIT G

DECLARATION OF CHANG H. KIM IN SUPPORT OF CBR'S
REPLY TO PHARMASTEM THERAPEUTICS, INC.'S AND
NICOLAS DIDIER'S OPPOSITION TO MOTION TO STAY
PROCEEDINGS PENDING RESOLUTION OF THE
MULTIDISTRICT LITIGATION MOTION TO TRANSFER FOR
CONSOLIDATION AND COORDINATION OF PRETRIAL
PROCEEDINGS IN A SINGLE FORUM

60386119v1

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation, | |
| Plaintiff, | Civil Action No.:2:04-CV-03561-RK |
| v. | |
| CORCELL, INC., a Delaware corporation, MOLLY MCBRIDE, MD, an individual, and CARLO M. CROCE, MD, an individual, | |
| Defendants. | |
| CORCELL, INC., a Delaware corporation, | |
| Counterclaim-Plaintiff, | |
| v. | |
| PHARMASTEM THERAPEUTICS, INC., NICHOLAS DIDIER  and STEMBANC, INC., | |
| Counterclaim-Defendants. | |

## PHARMASTEM THERAPEUTICS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS CORCELL, INC.'S COUNTERCLAIMS

## I.    PRELIMINARY STATEMENT AND SUMMARY OF THE ARGUMENT

PharmaStem Therapeutics, Inc. ("PharmaStem") brought this patent action against defendants CorCell, Inc. ("CorCell"), Molly McBride ("McBride") and Carlo Croce ("Croce") (collectively, "Defendants"). *See* PharmaStem's Complaint for Patent Infringement filed July 28, 2004 ("Complaint"). The Complaint alleges that CorCell infringes two of PharmaStem's patents, U.S. Patents Nos. 6,461,645 B1 (the "'645 Patent") and 6,569,427 B1 (the "'427 Patent") (the "Patents-In-Suit"), and that McBride and Croce infringe the '427 Patent. *Id.* ¶¶ 1-20. On September 20, 2004, CorCell and Croce filed their Answer and CorCell asserted three counterclaims for federal unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), international interference with contractual or other economic relationships, and trade libel/ commercial disparagement.

PharmaStem respectfully requests the Court to dismiss these claims as they lack subject matter jurisdiction and none of them set forth a valid cause of action. CorCell's causes of action are based a number of statements PharmaStem has made about its positions regarding the infringement of its patent portfolio by doctors, statements about a number of patent infringement actions PharmaStem filed against doctors, among others, in different jurisdictions, and the allegation that PharmaStem is disseminating over the Internet the fact that CorCell is an entity that has not obtained a license for PharmaStem's patents. These activities are, among other things, non-actionable opinion, demonstrably true, privileged statements and therefore lawful. Furthermore, CorCell has already sought relief for much of the same conduct that serves as its basis for its counterclaims in this action. For these reasons, PharmaStem seeks to have these counterclaims dismissed with prejudice.

## II.    STATEMENT OF RELEVANT FACTS

PharmaStem is the owner of five patents ("PharmaStem's Patents") that are from the same patent family. *See* CorCell Counterclaims ¶ 8. On July 28, 2004, PharmaStem filed this patent action against Defendants, asserting infringement of two of PharmaStem's Patents, U.S. Patent Nos. 6,461,645 ("the '645 Patent") and 6,569,427 ("the '427 Patent")(collectively "the Patents-In-

Suit"). *See* Complaint. On September 20, 2004, CorCell filed with this Court its Answer and Counterclaims, and asserted three counterclaims against PharmaStem for federal unfair competition pursuant to 15 U.S.C. §1125(a) or Section 43(a) of the Lanham Act, intentional interference with contractual or other economic relationships, and trade libel commercial disparagement. *See* CorCell Counterclaims.

This is not the first patent litigation that PharmaStem has initiated against CorCell. On February 2002, PharmaStem filed a patent case in the United States District Court for the District of Delaware ("the Delaware Action") against CorCell and several other companies who are also private cord blood banks, alleging infringement of two patents from the same family as the Patents-In-Suit. *See* Counterclaims ¶¶ 9-11. In the Delaware Action, a jury found that CorCell willfully infringed its patents, and that the patents were valid and enforceable. Counterclaims ¶ 10. The parties filed their respective post-trial motions. On September 15, 2004, the Court in the Delaware Action issued an opinion, holding that PharmaStem's patents were valid and enforceable, but set aside the jury verdict for infringement for one of the patents, and held that a retrial was necessary for the issue of infringement as to the other patent. Counterclaims ¶¶ 11. The cord blood banks in the Delaware Action, which includes CorCell, are the remaining private cord blood banks who have refused to license PharmaStem's Patents. *See* Counterclaims ¶ 18, Exh. E. In July and August of 2004, PharmaStem filed a number of separate lawsuits in different jurisdictions, asserting patent infringement against certain unlicensed cord blood banks, like CorCell, and one or more health care providers, such as physicians (as in this case), group medical practices and a hospital. Counterclaims ¶ 15.

All of CorCell's counterclaims revolve around the central accusation that PharmaStem made false and misleading statements when discussing the potential liability of obstetricians for infringement of PharmaStem's patents. The allegedly offending statements appeared in:

(1) a June 1, 2004 letter ("Letter") to obstetricians, which informed obstetricians of PharmaStem's position regarding obstetricians' potential liability for patent infringement if they deal with unlicensed cord blood banks, such as CorCell. Counterclaims ¶¶ 12-13 and Exhibit A thereto.

(2) an August 2, 2004 PharmaStem press release ("Press Release") announcing the fact that PharmaStem initiated a number of new lawsuits against unlicensed cord blood

3

banks, including CorCell, as well as obstetricians. Counterclaims ¶¶ 14-16 and Exhibit C thereto.

(3) a letter and agreement to settle lawsuits with doctors who PharmaStem had sued for patent infringement. Counterclaims ¶ 17 and Exh. D thereto.

(4) a letter and Amnesty Agreement sent to doctors, which provided that PharmaStem covenants not to sue the doctor if they agree not to collect cord blood or market or offer the service of cord blood collection in connection with certain unlicensed cord blood banks, such as CorCell. Counterclaims ¶ 18 and Exh. E thereto.

(5) a September 20, 2004 press release which allegedly mischaracterizes the post trial rulings made in the Delaware Action. Counterclaims ¶ 24 and Exhibit F thereto.

Additional conduct that serves as a basis for CorCell's counterclaims is its allegations that PharmaStem has purchased sponsored links on Internet search engines, such as Google and Yahoo in which they identify CorCell as an unlicensed cord blood bank, which is true as CorCell has not obtained a license from PharmaStem. Counterclaims ¶ 22.

As described in CorCell's counterclaims, CorCell, together with other defendants in the Delaware Action, moved for injunctive and remedial relief against PharmaStem for the Letter and Press Release. Counterclaims ¶ 13. An injunction was granted before PharmaStem had an opportunity to be heard. In fact, the Court in the Delaware Action granted the preliminary injunction, which the defendants had drafted, the day after the motion was filed. This was before PharmaStem even had an opportunity to oppose or be heard on the motion. PharmaStem subsequently filed a motion to dissolve the Order, as PharmaStem believes that the injunction was improperly granted. This motion is still pending before the court in Delaware. Further relevant facts are set forth in the paragraphs below.

## III.    ARGUMENT

### A.    A Motion To Dismiss Is Proper Where Subject Matter Jurisdiction Is Lacking And CorCell Has Failed To State A Claim Upon Which Relief Can Be Granted.

Subject matter jurisdiction is properly contested via the filing of a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Nevyas v. Morgan*, 309 F.Supp.2d 673, 676 (E.D.Pa. 2004). For such motions, "the court is not required to accept the

4

allegations of plaintiff's complaint as true; instead the burden is on the plaintiff to prove that jurisdiction exists and the courts are not limited in their review to the allegations of the complaint." *Id.* Contrary to CorCell's allegations, there has been no determination that obstetricians are not liable for infringement of PharmaStem's patents. That is the very question to be decided in the separate cases that PharmaStem has filed in various jurisdictions. *See* Counterclaims ¶¶ 15-18 and Exhs. C, D, E thereto. As a result, there is no subject matter jurisdiction over CorCell's claims, as discussed below.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), PharmaStem is moving to dismiss CorCell's counterclaims for failure to state a claim upon which relief can be granted. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that this Court must dismiss CorCell's counterclaims for failure to state a claim if it appears beyond a doubt that CorCell can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957); *Centennial School District v. Independence Blue Cross*, 885 F.Supp.683, 686 (E.D. Pa. 1994). While a court must accept all reasonable inferences from CorCell's counterclaims and consider all allegations as true, a court may not accept conclusory allegations and unwarranted inferences as true. *IMCS, Inc. v. D.P. Tech. Corp.*, 264 F.Supp.2d 193, 196 (E.D.Pa. 2003). As demonstrated below, CorCell's bald assertions and legal conclusions will not defeat this properly supported motion to dismiss." *IMCS*, 264 F.Supp.2d at 196. Consequently, PharmaStem requests the Court to dismiss CorCell's counterclaims.

### B.    CorCell's Three Counterclaims Fail To Meet The Case Or Controversy Requirement Of Article III, Section Two, Of The United States Constitution.

CorCell's counterclaims are unripe and hypothetical as they essentially concern the truth of matters which will be adjudicated in this very case. "[T]he existence of a case and controversy is a prerequisite to all federal actions." *Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164, 174 (3d. Cir. 2001). The basic rationale behind the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in

abstract disagreements." *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992)(shareholders' claims not ripe for judicial review).

As the predicate for its various claims, CorCell alleges that "[u]nder no proper interpretation of any claim of the PharmaStem Patents would an obstetrician be liable for patent infringement based merely on collecting umbilical cord blood at the time of a delivery and providing it to the patient for the patient's shipment to a private cord blood bank."[1] Counterclaims at ¶ 23. But that is the very question to be decided in those cases. As a result, there is no real and substantial controversy yet, and what CorCell is ultimately seeking is an advisory opinion as to whether obstetricians could be liable for patent infringement, which is impermissible. *Presbytery of New Jersey v. Florio*, 40 F.3d 1454, 1463 (3d. Cir. 1994)("the case must involve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."). Thus, CorCell has failed to fulfill its responsibility "to clearly allege facts that invoke the court's jurisdiction." *Philadelphia Federation*, 150 F.3d at 323.

As set forth in CorCell's Counterclaims, PharmaStem brought suit in the past few months against medical providers, alleging infringement of its patents. Counterclaims ¶¶ 15-18 and Exhs. C, D, E thereto. All of these cases are still at their early stages. Obviously, if obstetrician liability is found or settled, then CorCell's counterclaims will become moot. Only if obstetrician liability is not found, will the question ripen whether PharmaStem's statements were made with the requisite bad faith to sustain a tort claim, as discussed below. Indeed, "where intervening events remove the possibility of harm, the court must not address the now-speculative controversy." *See Presbytery*, 40 F.3d at 1463. Thus, CorCell's counterclaims fail Article III's case or controversy requirement. Art. III, § 2, U.S. Const. To permit CorCell to go forward with its tort claims, which rely—for their legal existence—on the ***assumption*** that obstetricians cannot be liable for infringement of one or more of PharmaStem's patents, at the same time as

---

[1] There is a presumption that "federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Philadelphia Federation of Teachers v. Ridge*, 150 F.3d 319, 323 (3d. Cir. 1998).

the underlying patent infringement case for obstetrician liability, simply serves no legitimate purpose.

Until the underlying patent issues are resolved, claims that PharmaStem acted in bad faith by advertising its patents in the marketplace are unripe and premature. *See Omnipoint Communications Enter., L.P. v. Newtown Township*, 219 F.3d 240, 245 (3d Cir. 2000)(civil rights question not ripe before a determination by the District Court and the Zoning Board if accused violated the Telecommunications Act); *Presbytery*, 40 F.3d at 1473 (whether the New Jersey Law Against Discrimination violated churches' First Amendment rights was dismissed as controversy was not ripe); *Black Horse Lan Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 300, n. 15 (3d Cir. 2000)(counterclaim dismissed for lack of subject matter jurisdiction).

### C.    PharmaStem's Conduct Was Lawful And Does Not Serve As A Basis For Any Counterclaims.

As PharmaStem's conduct was lawful, CorCell has failed to state any claims for which it is entitled to relief. CorCell alleges that purportedly false statements made in a June 1, 2004 Letter, sent to obstetricians and hospitals is false and misleading because the Letter stated that "patent infringement occurs when a person or institute practices all or part of a patented process", and "in the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party." Counterclaims ¶¶ 12-13. CorCell also points to PharmaStem's August 2, 2004 Press Release, letters sent to obstetricians offering to settle the lawsuits instituted against them, and a letter and Amnesty Agreement, alleging that it purportedly contains similar statements as the letter. *Id.* ¶¶17-19, Exhs. C-E thereto.

The Press Release, attached as Exhibit C to CorCell's Answer and Counterclaims, is nothing more than an announcement that PharmaStem initiated new lawsuits against a number of unlicensed cord blood banks, including CorCell, as well as obstetricians. *Id.* ¶ 14 and Exh. C, thereto. The various letters, such as the June 1, 2004 letter, the letters offering to settle the

7

pending litigation,[2] and the letter and Amnesty Agreement set forth PharmaStem's position regarding potential patent liability for obstetricians. *Id.* ¶¶ 14-19, Exhs. C, D, E. CorCell also alleges as a basis for its counterclaims that "sponsored links" indicate that CorCell is an unlicensed bank, which is a truthful statement as CorCell is not a licensee of PharmaStem's patents. *Id.* ¶¶ 21.

CorCell's counterclaims turns on the allegation that PharmaStem is not entitled to make statements about the patent infringement liability that obstetricians and hospitals face when they work with and/or promote the service of unlicensed cord blood banks and the fact that CorCell is an unlicensed bank. PharmaStem, however, has the legal right and obligation to contact the obstetricians and others regarding their potential infringement of PharmaStem's patents, and cannot be held liable for doing so unless CorCell can demonstrate that PharmaStem did so in bad faith. *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, 1370-71 (Fed. Cir. 2002)("federal patent law bars the imposition of liability [under federal or state law] for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith."), *quoting Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999); *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998); *Hunter Douglas, Inc. v. Mone Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998); *Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1538 (Fed. Cir. 1985)("a patent owner has the right to enforce its patent, and that includes threatening alleged infringers with suit.")

PharmaStem has only acted in good faith and cannot be guilty of bad faith for merely setting forth its position regarding obstetricians' potential liability for patent infringement should they deal with unlicensed cord blood banks or seeking to settle its claims with obstetricians. While CorCell may disagree regarding underlying liability, PharmaStem has filed five different lawsuits against a number of defendants, including obstetricians, such as defendant Drs. Croce

---

[2] Notably, these offers for settlement made pursuant to Rule 408 of the Federal Rules of Evidence cannot be used as evidence, as "evidence of conduct or statements made in compromise negotiations" are not admissible and cannot be used as an underlying basis to support CorCell's counterclaims.

and McBride, around the United States. Thus, PharmaStem's conduct also supports the determination that there are no facts under which CorCell can assert PharmaStem has acted in bad faith.

Furthermore, PharmaStem's statements are neither false nor misleading. PharmaStem's position all along has been that obstetricians and other medical professionals face potential patent liability if they continue to work with the unlicensed cord blood banks. PharmaStem's letters and Press Release do not go into detail, dissecting all possible theories of patent infringement as they are not legal treatises. In fact, PharmaStem is not attempting to offer any analysis or legal advice on the various species of dependent infringement.[3] Thus, with respect to PharmaStem's Patents – three of which were not the subject of the Delaware Action – PharmaStem accurately stated that "[p]atent infringement occurs when a person or institution practices all or part of a patented process." Counterclaims, Exh. A.

Similarly, the allegations regarding CorCell being an "unlicensed bank" is true because CorCell does not have a license to PharmaStem's Patents. There is nothing that suggests that CorCell is not licensed by state health departments or by the states of New Jersey and New York. In fact, the alleged sponsored links on the Internet indicate that CorCell is not a PharmaStem licensed bank.

The law recognizes a presumption that the assertion of a duly granted patent is made in good faith, and that this presumption is overcome by affirmative evidence of bad faith. *Golan*, 310 F.3d at 1371, *citing C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340 (Fed. Cir. 1998). Therefore, even if PharmaStem's statements were inaccurate or misconceptions regarding PharmaStem's Patents, the outcome of the Delaware Action, or the infringement of its patents, PharmaStem is not liable unless such inaccuracies were made in bad faith. CorCell has not

---

[3] For example, PharmaStem provided its general business understanding that, after a three week trial which culminated in a finding of willful infringement against CorCell and the subsequent entry of the Delaware Court's judgment (which it issued immediately after the jury returned its verdict), there had been a "ruling" in favor of PharmaStem and that infringement had occurred. *See* Counterclaim ¶ 10. This is a layperson's basic understanding of the effect of the jury's verdict of willful patent infringement and patent infringement.

9

alleged any factual basis that PharmaStem acted in bad faith in making statements about its position about patent liability. Because CorCell has not identified any unlawful conduct, its first, second and third counterclaims should be dismissed as they fail to state a claim for which CorCell would be entitled to some relief.

### D.     CorCell Lacks Standing To Bring A Claim For Violation Of The Lanham Act.

The federal statutory ground for CorCell's first counterclaim is 15 U.S.C. § 1125(a), which according to CorCell "prohibits Counter-Defendants from using false, misleading, or disparaging representations of fact that misrepresent the nature, characteristics, or qualities of CorCell's goods, services, or commercial activities." Counterclaim ¶ 33. This type of claim is often referred to as a false advertising claim or unfair competition claim. As demonstrated below, CorCell's counterclaim fails to satisfy the prudential requirements to maintain standing to sue under the Lanham Act. *See Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.,* 165 F.3d 221, 225 (3d Cir. 1998)(prudential standing considerations can limit a plaintiff's ability to bring suit).

"The Lanham Act is primarily intended to protect commercial interests and provides a private remedy to a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising." *Nevyas*, 309 F.Supp.2d at 678; *Conte*, 165 F.3d at 234 (Lanham Act claim dismissed for lack of competitive harm). While CorCell alleges that it has been harmed (*see e.g.,* Counterclaims at ¶ 22), it does not allege anywhere in the complaint that it is commercial competitors with PharmaStem. *See Nevyas*, 309 F.Supp.2d at 680 (no standing to maintain lawsuit under the Lanham Act where "there is nothing in the complaint to suggest that in creating the website and in disseminating the purportedly defamatory statements over it, the defendant sought to divert the plaintiffs' business to themselves or to personally reap any financial benefit from their actions). While CorCell has alleged injury to its commercial interests, it has not sustained any competitive harm, particularly as PharmaStem is not a competitor. CorCell's loss of sales because of alleged false advertising

does not impact CorCell's ability to compete or detract from CorCell's reputation or good will. *See Conte*, 165 F.3d at 234. Thus, "the alleged harm is not of the 'type that Congress sought to redress' by enacting the Lanham Act" and CorCell cannot satisfy the prudential requirements to maintain standing to sue under the Lanham Act. *Id.*

Furthermore, to qualify as commercial advertising or promotion, "most courts require that the contested representations consist of: (1) commercial speech (2) made by a defendant who is in commercial competition with plaintiff (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) that is sufficient disseminated to the relevant purchasing public to constitute advertising or promotion within the industry." *Nevyas*, 309 F.Supp.2d at 680. PharmaStem's statements were not made in commercial competition with CorCell or with the intention of influencing individuals to buy PharmaStem's goods or services. *See Nevyas*, 309 F.Supp.2d at 680-81 (no Lanham Act claim for contents of defendants' website). Thus, PharmaStem's statements cannot be considered false or deceptive advertising or unfair competition within the meaning of the Lanham Act and should be dismissed.

As the *Conte* court noted, expanding standing to parties such as CorCell "would result in a great increase in marginal litigation in the federal courts and would not serve the underlying purposes of the Lanham Act -- to ferret out unfair competitive methods and protect businesses from the unjust erosion of their good will and reputation." *Conte*, 165 F.3d at 236. PharmaStem's statements about obstetrician liability, its pending lawsuits against obstetricians, or the fact that CorCell has not taken a license to PharmaStem's patents simply does not create Lanham Act liability.

## E.    CorCell Failed To Plead a Cognizable Claim For Federal Unfair Competition.

### 1.    PharmaStem's Statements Are Either Opinions Or True.

To state a claim for Lanham Act violation, one must allege the following elements: (1) that the defendant has made false or misleading statements as to its own or another's product, (2) that there is actual deception or at least a tendency to deceive a substantial portion of the

11

intended audience, (3) that the deception is material in that it is likely to influence purchasing decisions, (4) that the advertised goods traveled in interstate commerce, and (5) that there is a likelihood of injury to the plaintiff in terms of declining loss of good will. *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992)(43(a) claim dismissed for failure to plead that advertisement had a literal falsehood). PharmaStem's statements have not been misleading or false, but rather have either been true or its opinion.

Patent liability, as noted above, is an issue that is in the process of being determined, as PharmaStem has recently brought a number of different lawsuits against obstetricians and medical groups for infringement of its patents. None of these cases have been resolved in a final judgment. Consequently, PharmaStem is providing its position or opinion on the liability these individuals face. Thus, it is not a false or misleading statement of fact. To the extent CorCell argues to the contrary, then it is a true statement regarding PharmaStem's belief regarding what infringes its patents and PharmaStem has filed lawsuits based on its good faith belief. *See IMCS v. D.P. Tech. Corp.*, 264 F.Supp.2d 193, 197 (E.D.Pa. 2003)(plaintiff's advertisement that its software was protected by the patent was true and not misleading as the patent is considered valid and enforceable).

PharmaStem is stating its position on a possible future event, not statements of fact, as required by the Lanham Act. While CorCell's opinion may differ, its speculative legal analysis does not give rise to Lanham Act liability as there has been no determination whatsoever regarding the liability of obstetricians and medical groups of PharmaStem's patents. *See Brunson Communications, Inc. v. Arbitron, Inc.*, 239 F.Supp.2d 550, 574 (E.D.Pa. 2002). Moreover, not disclosing "the limitations on theories of indirect infringement", which CorCell suggests is necessary to avoid deception, has not impacted CorCell's ability to compete or detracted from CorCell's good will, as PharmaStem's positions regarding obstetrician liability are not directed at CorCell and therefore, should not impact CorCell's ability to compete. *See Brunson*, 239 F.Supp.2d at 574 (no Lanham Act violation where there is no impact on plaintiff's ability to compete).

12

Indeed, it was not an issue in the Delaware Action, as the only defendants involved in that case were cord blood banks, like CorCell. Thus, statements regarding whether certain practices are covered by a patent and filing a patent infringement case do not present a claim under Section 43(a) of the Lanham Act. *See IMCS*, 264 F.Supp.2d at 197 (no Lanham Act violation where plaintiff advertised that its software was protected by the patent and by filing the patent infringement lawsuit).

Similarly, for the reasons discussed above, the allegations regarding CorCell being an "unlicensed bank" is true because CorCell does not have a license to PharmaStem's Patents. Thus, CorCell has not alleged a valid cause of action under Section 43(a) because the statements on which CorCell bases its claim are either non-actionable opinions or demonstrably true.

### 2.    PharmaStem Statements Were Not Made In Bad Faith.

As discussed above, PharmaStem's statements regarding CorCell being an unlicensed bank are true and not misleading, thus there is nothing unfair or deceptive about them. Furthermore, PharmaStem had the legal right and obligation to contact the obstetricians and others regarding their potential infringement of PharmaStem's patents, and cannot be held liable for doing so unless CorCell can demonstrate that PharmaStem did so in bad faith.

While the scope of unfair competition claims for the publication of a patent has been the subject of recent debate in the courts, even under the Federal Circuit's recently articulated legal standards, CorCell fails to allege a colorable claim for unfair competition.. *Zenith Electronics Corp. v. Exzec, Inc.* decided, as a matter of first impression, the question "whether recognizing a § 43(a) claim in the context [of marketplace representations of patent infringement] would present an irreconcilable conflict with the patent ... laws." 182 F.3d 1340, 1351 (Fed. Cir. 1999). *Zenith* articulated that "before a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in

13

bad faith."[4] *Id.* at 1353. *Zenith* simultaneously made explicit that its bad faith requirement was "in addition to the elements required by § 43(a) itself, as § 43(a) alone does not require bad faith." *Id.* (citations omitted.) *Golan v. Pingel Enter.*, later clarified that "[i]n general, a ***threshold showing*** of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." 310 F.3d 1360, 1371 (Fed.Cir. 2002)(emphasis added). *Zenith* also reiterated the Federal Circuit's earlier opinion that "to avoid patent law preemption of ... ***state law tort claims***, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Zenith* at 1355, citing *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336-37 (Fed.Cir. 1998)(emphasis added).

In additional, *Golan* clarified that "the party challenging such statements under state or federal law [must] present[] clear and convincing evidence that the infringement allegations are objectively false, and that the patentee made them in bad faith, *viz.,* with knowledge of their incorrectness or falsity, or disregard for either, the statements are actionable and are not protected by the existence of a patent." *Golan*, 310 F.3d at 1371. Ultimately, "[t]o survive summary judgment, the party challenging such statements must present affirmative evidence sufficient for a reasonable jury to conclude that the patentee acted in bad faith, in light of the burden of clear and convincing evidence that will adhere at trial." *Golan* at 1371; *see also Globetrotter Software, Inc. v. Elan Computer Group*, 362 F.3d 1367, 1377 (Fed. Cir. 2004)("A [party] claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless.").

As discussed above, CorCell has failed to allege bad faith necessary to sustain the required "threshold showing" under *Golan*. *Golan* at 1371. In its Counterclaims, CorCell makes

---

[4] Prior to *Zenith*, the law was that " a patentee's allegedly false representation of patent infringement is not actionable under § 43(a), but that a patentee's allegedly false representation that it is the exclusive source of a certain type of product because of its patent is so actionable." *Zenith*, 182 F.3d 1340, 1344 (citations omitted). *Zenith*, itself, involved allegations that the accused patentee made false representations (1) of patent infringement and (2) of accused infringer's inability to design around the patents. *Zenith* at 1347.

the bald allegation that PharmaStem "do[es] not hold a good faith belief that" obstetrician could be liable for infringement of its patents. Counterclaims ¶ 23. This vague accusation does not allege bad faith, nor suffice to put PharmaStem on notice of how, or whether, it knew or should have known that the Patents-In-Suit were in some way noninfringed, invalid, or unenforceable. Of course, CorCell should be hard-pressed to put forward an allegation of bad faith with reasonable particularity -- especially within the confines of Rule 11 -- since a jury verdict was entered in favor of PharmaStem in the Delaware Action after a full jury trial, in which the jury returned a special verdict of direct and contributory infringement, willful infringement, validity, and enforceability of the related patents against the defendants involved in that action, including CorCell.[5] Thus, for these independent reasons, CorCell's first counterclaim also fails to state a claim upon which relief can be granted.

### F. CorCell Fails To State A Cognizable Claim For Interference With Contractual And Business Relationships and Commercial Disparagement.

#### 1. PharmaStem's Conduct Was Lawful And Privileged.

CorCell's second and third counterclaims are for intentional interference with contractual or other economic relationships and commercial disparagement/ trade libel, respectively. As described above, PharmaStem's conduct was justified and lawful as it is nothing more than PharmaStem attempting to enforce what it perceives to be its legal patent rights. In determining the propriety of the actor's conduct, the Court is guided by a number of factors, which include the nature of the actor's conduct, the actor's motive, the interests of the other with which the actor's conduct interferes, the interests sought to be advanced by the actor, the proximity or remoteness of the actor's conduct to the interference and the relations between the parties. *U.S. Healthcare,*

---

[5] On September 15, 2004, the Court in the Delaware Action confirmed the jury's findings regarding the validity and enforceability of PharmaStem's Patents, U.S. Patent Nos. 5,004,681 and 5,192,553. The Court set aside the jury's verdict that CorCell infringed U.S. Patent No. 5,192,553, and ordered a partial retrial with regards to infringement and damages in connection with U.S. Patent No. 5,004,681. *See* Counterclaims ¶ 10-11.

15

*Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 925 (3d Cir. 1990); *see also Gresh v. Potter McCune Co.*, 344 A.2d 540, 543 (1975)(application of privilege to intentional interference and defamation actions).

In this case, PharmaStem was not attempting to interfere in CorCell's business relationships or disparage CorCell. Rather, as evident from PharmaStem's patent actions against physicians, PharmaStem was stating its position regarding its patents, which it has acted upon in lawfully attempting to enforce these patents against physicians and settle any such claims with physicians. Additionally, PharmaStem, who is not competing with CorCell, has not misrepresented the fact that CorCell is an unlicensed bank, as it does not have a license to PharmaStem's patents. Thus, the nature of PharmaStem's conduct, as well as its motives and interests it was seeking to protect, are all legitimate and lawful. PharmaStem was merely seeking to protect the patent rights granted to it. *See Glenn v. Point Park College*, 272 A.2d 895, 900 (1971)(fair inference of privilege can be ascertained from the pleadings).

Furthermore, PharmaStem's conduct is one-step removed from the alleged interference. CorCell generally alleges that physicians have declined to collect cord blood for customers of CorCell and have ceased to recommend CorCell's services, and CorCell customers "have been prevented from fulfilling their contracts with CorCell and others have been dissuaded from contracting with CorCell at all" due to PharmaStem's conduct. Counterclaims ¶ 26. However, these allegations are really about what physicians have decided to do in light of the potential patent liability they are facing. The fact that physicians decline to collect for CorCell customers, such that customers are prevented from fulfilling their contracts with CorCell or dissuaded from contracting with CorCell, is the result of physicians electing not to collect or use CorCell for cord blood banking services. Thus, the actual or prospective contracts with CorCell are not being entered into as a result of physicians' decisions not to deal with CorCell, not as a direct result of PharmaStem's conduct. In light of these facts, PharmaStem's conduct was lawful and proper. *See Crivelli*, 215 F.3d at 395 (while the exercise of its contractual first right of refusal necessarily interfered with the purchase agreement, it did not subject the defendant to liability for interfering with the contract). Thus, even if one were to accept CorCell's allegations as true,

16

PharmaStem's conduct is, at the very least, privileged because it has a legally protected interest, it has acted and threatened to act to protect that interest and the threat, as described above, is to protect it by proper means. *Gresh*, 344 A.2d at 541.

Furthermore, at the very least, PharmaStem's statements regarding its patents and rights resulting from its patents are about "a sufficiently important interest." *Gresh*, 344 A.2d at 543; *Centennial School District v. Independence Blue Cross*, 885 F.Supp. 683, 687 (E.D.Pa. 1994). These statements were made to interested parties, which include physicians and the public, whose interests are implicated to the extent they are interested on information regarding storing or using umbilical cord blood stem cells for some therapeutic use. *Id.* Thus, PharmaStem's conduct is, at the very least, privileged, as it was not motivated to harm CorCell, but rather to protect its patent rights and inform those interested parties of its decision to do so and the potential liability for those who violate PharmaStem's patent rights. *Gresh*, 344 A.2d at 543 (nonsuit entered against defamation action due to conditional privilege).

### 2.    CorCell Has Failed To Plead A Cause Of Action For Interference.

CorCell has failed to plead a cause of action for interference. Under Pennsylvania law, the elements of a cause of action for interference with contractual relations, whether existing or prospective, are: (1) the existence of a contractual or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the accused, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the accused; and (4) the occasioning of actual legal damage as a result of the accused's conduct. *Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000).

CorCell's second counterclaim alleges that PharmaStem's conduct "has had the effect of interfering ...with CorCell's contractual or other economic relationships with persons who desire, or who may desire to purchase their [sic] services." Counterclaims ¶ 37. Merely having "the effect of interfering" falls well short of pleading that PharmaStem's acts have caused an actual breach or disruption of some alleged prospective or actual contractual relationship

17

between CorCell and a third party. Furthermore, "other economic relationships" is hopelessly ambiguous. CorCell has failed to identify a single past, present or prospective customer with whom it had a contract or prospective contract which did not finalize due to PharmaStem. *See Brunson Communications, Inc. v. Arbitron, Inc.*, 239 F.Supp.2d 550, 578 (E.D.Pa. 2002)(dismissal of interference claim with prejudice where plaintiff failed to identify past, present or prospective customer with whom it had a prospective contract that did not finalize due to defendants' actions).

Furthermore, as described above, CorCell is losing out on alleged actual or prospective contracts as a result of physicians' decisions not to deal with CorCell. Thus, CorCell has not pled the occasioning of actual legal damage as a result of PharmaStem's conduct. *See Crivelli*, 215 F.3d at 394. For these reasons, CorCell's second counterclaim fails to state a cause of action.

### 3. CorCell Has Failed To Plead A Cause Of Action For Commercial Disparagement.

CorCell's third counterclaim fails to state a cause of action for commercial disparagement. To maintain an action for disparagement, CorCell must prove (1) that the disparaging statement of fact is untrue or that the disparaging statement of opinion is incorrect; (2) that no privilege attaches to the statement; and (3) that it suffered a direct pecuniary loss as the result of the disparagement. *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 924 (3d Cir. 1990). "An action for commercial disparagement is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of his goods have reduced their marketability." *Centennial*, 885 F.Supp. at 687-688.

As described above, PharmaStem's statements constitute its opinion or position regarding obstetrician patent liability, which are either truthful statements or statements of opinion which no Court has ruled upon to date. Furthermore, the only statements regarding CorCell relate to the fact that it is not a PharmaStem licensed cord blood bank, which is also a true statement. CorCell has not identified anywhere in its counterclaims any statements "attacking the quality" of its services. *See Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404, 408 (E.D.Pa. 1983)(disparagement protects economic interests "by providing a remedy to one who suffers

18

pecuniary loss from slurs affecting the marketability of his goods"). The statements about CorCell are limited to the fact that it is not licensed under PharmaStem's patents. Finally, as described above, PharmaStem's statements are privileged. Thus, CorCell has failed to state a cause of action for commercial disparagement.

### G.    The Court Should Decline To Assert Jurisdiction Over The Duplicative Claims.

As part of its general power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)("As between federal district courts, ... though no precise rule has evolved, the general principle is to avoid duplicative litigation."). The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion. *See Colorado River*, 424 U.S. at 817. The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952).

Thus, CorCell should be precluded or estopped from bringing its three counterclaims to this action because, of its own volition, it sought and achieved the Delaware district court's jurisdiction over the much of the same subject matter.[6] "Claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court." *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1567 (Fed.Cir. 1988). Here, the operative facts are exactly the same as those at issue in the other

---

[6] Indeed, to the extent the issues regarding PharmaStem's statements have already been litigated in the Delaware Action by the parties, CorCell is attempting to seek relief on the same cause of action arising out of the same transaction or series of transactions from two different courts. To the extent CorCell would argue that the Order, attached as Exhibit B to its Counterclaims, is final, then its counterclaims are also barred by the doctrine of *res judicata. See generally Lui v. Commission on Adult Entertainment Establishments Of The State Of Delaware*, 369 F.3d 319, 328, n. 11 (3d Cir. 2004)("res judicata bars suit where there was (1) an earlier decision on the issue, (2) a final judgment on the merits, and (3) the involvement of the same parties, or parties in privity with the original parties").

19

court. The relevant parties are also the same. There was nothing preventing CorCell from

seeking the relief sought in this case in the Delaware Action. Thus, for this independent reason

alone, CorCell should be precluded from being permitted to bring the duplicative claims before

this Court.

## IV.    CONCLUSION

For the above reasons, PharmaStem respectfully requests the Court to dismiss with

prejudice CorCell's counterclaims against PharmaStem.

DATED: October ____, 2004                 By: _____
                                                Michael D. LiPuma, Atty. I.D. #74790
                                                Law Office of Michael LiPuma
                                                Two Penn Center, Suite 200
                                                Philadelphia, PA 19102
                                                Attorneys for Plaintiff
                                                PharmaStem Therapeutics, Inc.

OF COUNSEL:
PAUL J. ANDRE, Bar No. 196585
LISA KOBIALKA, Bar No. 191404
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350

PHARMASTEM THERAPEUTICS, INC.'S MOTION TO DISMISS CORCELL'S COUNTERCLAIMS

## CERTIFICATE OF SERVICE

I hereby certify that on _____, I served a copy of the foregoing

document and all supporting papers by Federal Express upon:

James J. Rodgers, Esq.
Dilworth Paxson LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA  19103

_____
Michael D. LiPuma

21

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a<br>Delaware corporation,<br><br>       Plaintiff,<br><br>    v.<br><br>CORCELL, INC., a Delaware corporation,<br>MOLLY MCBRIDE, MD, an individual, and<br>CARLO M. CROCE, MD, an individual,<br><br>       Defendants.<br><br>CORCELL, INC., a Delaware corporation,<br><br>       Counterclaim-Plaintiff,<br><br>    v.<br><br>PHARMASTEM THERAPEUTICS, INC.,<br>NICHOLAS DIDIER and STEMBANC, INC.,<br><br>       Counterclaim-Defendants. | Civil Action No.:2:04-CV-03561-RK |

## NICHOLAS DIDIER'S MOTION TO DISMISS CORCELL, INC.'S COUNTERCLAIMS

Counterclaim-Defendant Nicholas Didier hereby moves the Court to dismiss CorCell, Inc.'s counterclaims against Mr. Didier for lack of personal jurisdiction, subject matter jurisdiction, and for failure to state a cause of action. The grounds for this Motion are set forth in the accompanying Memorandum of Law and Request for Judicial Notice, which are incorporated by reference herein. Further grounds for this Motion are set forth in Plaintiff PharmaStem Therapeutics, Inc.'s Motion to Dismiss CorCell, Inc.'s Counterclaims for lack of subject matter jurisdiction and for failure to state a cause of action, filed October 13, 2004 (Docket Entry #16), which is also incorporated by reference herein.

DATED: October 28, 2004

By: _____
Michael D. LiPuma, Atty. I.D. #74790
Law Office of Michael LiPuma
Two Penn Center, Suite 200
Philadelphia, PA 19102
Attorneys for Plaintiff
PharmaStem Therapeutics, Inc.

OF COUNSEL:
PAUL J. ANDRE, Bar No. 196585
LISA KOBIALKA, Bar No. 191404
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350