# EXHIBIT I

DECLARATION OF CHANG H. KIM IN SUPPORT OF CBR'S REPLY TO PHARMASTEM THERAPEUTICS, INC.'S AND NICOLAS DIDIER'S OPPOSITION TO MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF THE MULTIDISTRICT LITIGATION MOTION TO TRANSFER FOR CONSOLIDATION AND COORDINATION OF PRETRIAL PROCEEDINGS IN A SINGLE FORUM

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PHARMASTEM THERAPEUTICS, INC.,
a Delaware corporation,

Plaintiff, CASE NO. 8:04-CV-1740-T-30TGW

v.

CRYO-CELL INTERNATIONAL, INC., a Delaware corporation, BRUCE ZAFRAN, MD, an individual,

Defendants.

_______________________________________/

CRYO-CELL INTERNATIONAL, INC., a Delaware corporation, and BRUCE ZAFRAN, M.D., an individual,

Counter-Claimants

vs.

PHARMASTEM THERAPEUTICS, INC., a Delaware corporation, and NICHOLAS DIDIER, an individual,

Counter-Defendants.

_______________________________________/

**MOTION TO DISMISS AND MEMORANDUM OF LAW**

PharmaStem Therapeutics, Inc. ("PharmaStem"), pursuant to F.R.C.P. 12(b)(6), hereby moves to dismiss Cryo-Cell International, Inc.'s First, Second, Third and Fourth Counterclaims for failure to state a claim upon which relief can be granted, and in compliance with Local Rule 3.01, submits the following memorandum of law.

## MEMORANDUM OF LAW

## INTRODUCTION

Plaintiff PharmaStem Therapeutics, Inc. ("PharmaStem") respectfully requests the Court to grant this motion to dismiss with prejudice Cryo-Cell International, Inc.'s ("Cryo-Cell's") first through fourth counterclaims because Cryo-Cell has failed to state a claim upon which relief can be granted. Cryo-Cell's counterclaim is based upon a number of statements PharmaStem is alleged to have made about its positions regarding the infringement of its patent portfolio, statements about a number of patent infringement actions PharmaStem filed in a different jurisdictions in an effort to prevent further infringement of its patents and the allegation that PharmaStem is disseminating over the Internet the fact that Cryo-Cell is an entity that has not obtained a license for PharmaStem's patents. PharmaStem's statements and actions as alleged in Cryo-Cell's counterclaim amount to nothing more that statements of non-actionable opinion, that are demonstrably true, privileged, and otherwise lawful. Furthermore, Cryo-Cell the essential facts alleged as the basis for its counterclaims in this action have been advanced in a sister court as a basis for similar relief. For all of these reasons, the counterclaims should be dismissed with prejudice.

## STATEMENT OF FACTS ALLEGED IN THE COUNTERCLAIMS

PharmaStem is the owner of five patents ("PharmaStem's Patents") that are from the same patent family. Counterclaims ¶ 7. On July 28, 2004, PharmaStem filed a patent action against Cryo-Cell and Bruce Zafran, M.D., asserting infringement of two PharmaStem's Patents, U.S. Patent Nos. 6,461,645 and 6,569,427 (the "Patents-In-Suit"). PharmaStem brought this patent action against Cryo-Cell, who refuses to license PharmaStem's Patents-In-Suit. On September 17, 2004, Cryo-Cell and Zafran filed their Answer and Cryo-Cell brought four counterclaims against PharmaStem and its CEO and President, Nicholas Didier, who has not yet been served.

This is not the first patent litigation that PharmaStem has initiated against Cryo-Cell. In February 2002, PharmaStem filed the Delaware Action against Cryo-Cell and several other companies, alleging infringement of two patents from the same family as the Patents-In-Suit. *See*

Counterclaims ¶¶ 8-10. In the Delaware Action, "a jury verdict was entered in favor of PharmaStem and against Cryo-Cell ... finding [PharmaStem's patents] valid and infringed." Counterclaims ¶ 9. On the same day the Complaint in this case was filed, PharmaStem filed a Notice of Pendency of Other Action in compliance with the local rules regarding the Delaware Action and the jury verdict form which was entered by the Court, in which the jury found that Cryo-Cell willfully infringed PharmaStem's patents. *See* July 28, 2004 Notice of Pendency, Docket No. 2.

In its counterclaims, Cryo-Cell has asserted a claim for interference with contractual and business relationships, violation of Section 43(a) of the Lanham Act, patent misuse, and deceptive and unfair trade practices. All of Cryo-Cell's counterclaims revolve around the central accusation that PharmaStem made false and misleading statements when discussing the potential liability of obstetricians for infringement of PharmaStem's patents. The allegedly offending statements appeared in:

(1) a June 1, 2004 letter ("Letter") to obstetricians, which informed obstetricians of PharmaStem's position regarding obstetricians' potential liability for patent infringement if they deal with unlicensed cord blood banks, such as Cryo-Cell. Counterclaims ¶¶ 11-16 and Exhibit A thereto.

(2) an August 2, 2004 PharmaStem press release ("Press Release") announcing the fact that PharmaStem initiated a number of new lawsuits against unlicensed cord blood banks, including Cryo-Cell, as well as obstetricians.[1] *Id.* ¶ 18 and Exhibit C thereto.

(3) in another letter and amnesty agreement ("Amnesty Agreement"), which included the statement that: "It is PharmaStem's position, as asserted in the recent lawsuits, that obstetricians are liable for patent infringement if they collect cord blood or market services for unlicensed cord blood banks." *See* Counterclaims ¶ 19.

As described in Cryo-Cell's counterclaims, Cryo-Cell, together with other defendants in the Delaware Action moved for injunctive and remedial relief against PharmaStem for the Letter and Press Release. Counterclaims ¶¶ 13-17. An injunction was granted before PharmaStem had an opportunity to be heard. Other conduct that serves as a basis for Cryo-Cell's counterclaims is

---

[1] On September 16, 2004, PharmaStem filed another Notice of Pendency of Other Actions, identifying these other lawsuits that were filed on July 28, 2004 and August 4, 2004. *See* September 16, 2004 Notice of Pendency, Docket No. 14.

its allegations that PharmaStem has links on the Internet, informing the public that Cryo-Cell is an unlicensed bank. Counterclaims ¶ 22. Further relevant facts alleged are set forth in the paragraphs below.

## ARGUMENT

### A. A Motion To Dismiss Is Proper Where Cryo-Cell Has Failed To State A Claim Upon Which Relief Can Be Granted.

Federal Rule of Civil Procedure 12(b)(6) provides that this Court must dismiss Cryo-Cell's counterclaims for failure to state a claim if it appears beyond a doubt that Cryo-Cell can prove no set of facts in support of its claim which would entitle it to relief. *Hodges v. Buzzeo*, 193 F.Supp.2d 1279, 1280-81 (M.D.Fla. 2002)(citations omitted)(motion to dismiss granted). While a court must accept all reasonable inferences from Cryo-Cell's allegations as true, a court should not accept conclusory allegations and unwarranted factual deductions. *Huan v. Don Mealy Imports, Inc.*, 285 F.Supp.2d 1297, 1301 (M.D. Fl. 2003). In this case, as demonstrated below, Cryo-Cell's "bald assertions and conclusions of law will not defeat a properly supported motion to dismiss." *Huan*, 285 F.Supp. at 1301. Consequently, Cryo-Cell's counterclaims should be dismissed.

### B. Cryo-Cell's First Through Fourth Counterclaims Fail To Meet The Case Or Controversy Requirement Of Article III, Section Two, Of The United States Constitution.

As a preliminary matter, Cryo-Cell's counterclaims are unripe and hypothetical as they essentially concern the truth of matters which will be adjudicated in this very case. For example, as the predicate for its various commercial tort claims, Cryo-Cell alleges that "[u]nder no proper interpretation of the PharmaStem Patents could an obstetrician be liable for patent infringement based on collecting umbilical cord blood at the time of delivery and providing it to the patient for the patient's shipment of the blood to a bank." Counterclaims at ¶ 21. But that is the very question to be decided. As set forth in PharmaStem's September 16, 2004 Notice of Pendency (Docket No. 14), PharmaStem brought suit in the past few months against medical providers and others, alleging infringement of its patents. All of these cases are still at their early stages.

Obviously, if obstetrician liability is found or settled, then Cryo-Cell's counterclaims will become moot. Only if obstetrician liability is not found, will the question ripen whether PharmaStem's statements were made with the requisite bad faith to sustain a tort claim, as discussed below. Thus, Cryo-Cell's counterclaims fail Article III's case or controversy requirement. Art. III, § 2, U.S. Const. To permit Cryo-Cell to go forward with its tort claims, which rely—for their legal existence—on the ***assumption*** that obstetricians cannot be liable for indirect infringement of one or more of PharmaStem's patents, at the same time as the underlying patent infringement case for obstetrician liability, simply serves no legitimate purpose. Until the underlying patent issues are resolved, claims that PharmaStem acted in bad faith by advertising its patent in the marketplace are unripe and premature. *See, Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F. 3d 1301, 1315 (11th Cir. 2000)(ripeness doctrine prevents courts from premature adjudication and entanglement in abstract disputes);*Digital Properties, Inc. v. City of Plantation, 121 F. 3d 586, 589 (11th Cir. 1997)(under ripeness doctrine, when claim not sufficiently mature and issues not sufficiently defined and concrete to permit effective decisionmaking, claim should be dismissed).*

**C. PharmaStem's Conduct Was Lawful And Does Not Serve As A Basis For Any Counterclaims.**

Cryo-Cell alleges that purportedly false statements made in a June 1, 2004 Letter, sent to obstetricians and hospitals is false and misleading because the Letter:

> "made no mention (1) of the sale or offer to sell requirement of 35 U.S.C. § 271(c), (2) of the 'acting in concert or working together' requirement of 35 U.S.C. § 271(c), or (3) that the sale of a service cannot satisfy 35 U.S.C. § 271(c)."

Counterclaims ¶¶ 11-13. Cryo-Cell advances similar allegations regarding PharmaStem's August 2, 2004 Press Release, and a letter and Amnesty Agreement. *Id.* ¶¶18, 19, Exhs. C-D thereto. The Press Release, attached as Exhibit C to Cryo-Cell's Answer and Counterclaims, is nothing more than an announcement that PharmaStem initiated new lawsuits against a number of unlicensed cord blood banks, including Cryo-Cell, as well as obstetricians. *Id.* ¶ 18 and Exh. C, thereto. The letter and Amnesty Agreement, like the June 1, 2004 Letter, merely set forth

PharmaStem's position regarding potential patent liability for obstetricians. Cryo-Cell also alleges that "sponsored links" indicate that Cryo-Cell is an unlicensed bank, which is a truthful statement as Cryo-Cell is undisputably not a licensee of PharmaStem's patents. *Id.* ¶¶ 22-23.

Cryo-Cell's counterclaims turns on the allegation that PharmaStem is not entitled to make statements about the patent infringement liability that obstetricians and hospitals face when they use unlicensed cord blood banks and the fact that Cryo-Cell is an unlicensed bank. PharmaStem, however, has the legal right and obligation to contact the obstetricians and others regarding their potential infringement of PharmaStem's patents, and cannot be held liable for doing so unless Cryo-Cell can demonstrate that PharmaStem did so in bad faith. *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, 1370-71 (Fed. Cir. 2002)("federal patent law bars the imposition of liability [under federal or state law] for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith."), *quoting Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999); *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998); *Hunter Douglas, Inc. v. Mone Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998); *Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1538 (Fed. Cir. 1985)("a patent owner has the right to enforce its patent, and that includes threatening alleged infringers with suit.")

PharmaStem has only acted in good faith and cannot be guilty of bad faith for merely setting forth its position regarding obstetricians' potential liability for patent infringement should they deal with unlicensed cord blood banks. While Cryo-Cell may disagree regarding underlying liability, PharmaStem has filed five different lawsuits against a number of defendants, including obstetricians, such as defendant Dr. Zafran, around the United States. Thus, even taking the allegations of the counterclaim as true, there are no facts alleged to support the conclusory claim that PharmaStem has acted in bad faith.

Furthermore, PharmaStem's statements are neither false nor misleading. PharmaStem's position all along has been that obstetricians and other medical professionals face potential patent liability if they continue to work with the unlicensed cord blood banks. PharmaStem's letters and

Press Release do not go into detail, dissecting all possible theories of patent infringement, as they are not attorney opinions or legal treatises. In fact, PharmaStem is not attempting to offer any analysis or legal advice on the various species of dependent infringement.[2] The letters and press release exhibit nothing more than a patent holder exercising its legal right to protect its patent rights. *See, Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1538 (Fed. Cir. 1985)(patent owner has right to enforce its patent, including by threatening alleged infringers with suit.) Thus, with respect to PharmaStem's Patents – three of which were not the subject of the Delaware Action – PharmaStem accurately stated that "[p]atent infringement occurs when a person or institution practices all or part of a patented process." Counterclaims, Exh. A. Such statements are not actionable.

Similarly, the allegations regarding Cryo-Cell being an "unlicensed bank" is true because Cryo-Cell does not have a license to PharmaStem's Patents. PharmaStem's statements do not reasonably suggest that Cryo-Cell is not licensed by state health departments or by the states of New Jersey and New York. References to the patent litigation between PharmaStem and Cryo-Cell within the subject communications provide context to make abundantly clear to the reader the "licenses" lacked by Cryo-Cell are licenses to use PharmaStem's patent, not state or regulatory licenses. *See*, Counterclaims, Exh. A, C and D. *Levan v. Capital Cities/ABC, Inc.*, 190 F. 3d 1230, 1240 (11th Cir. 1999)(to determine whether "gist" of a statement is actionable, entire context in which statement appears must be considered).

The law recognizes a presumption that the assertion of a duly granted patent is made in good faith, and that this presumption is overcome by affirmative evidence of bad faith. *Golan*, 310 F.3d at 1371, *citing C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340 (Fed. Cir. 1998).

---

[2] For example, PharmaStem provided its general business understanding that, after a three week trial which culminated in a finding of willful infringement against Cryo-Cell and the subsequent entry of the Delaware Court's judgment (which it issued immediately after the jury returned its verdict), there had been a "ruling" in favor of PharmaStem and that infringement had occurred. *See* Counterclaim ¶ 9; July 28, 2004 Notice of Pendency (Docket No. 2). This is a layperson's basic understanding of the effect of the jury's verdict of willful patent infringement and patent infringement.

Therefore, even if PharmaStem's statements were inaccurate or misconceptions regarding PharmaStem's Patents, the outcome of the Delaware Action, or the infringement of its patents, PharmaStem is not liable unless such inaccuracies were made in bad faith. Cryo-Cell has not alleged any factual basis that PharmaStem acted in bad faith in making statements about its position about patent liability. On the contrary, the context of the statements affirmatively indicates a lack of bad faith. Accordingly, Cryo-Cell's first through fourth counterclaims should be dismissed as they fail to state a claim for which Cryo-Cell would be entitled to e relief.

**D. Cryo-Cell Fails To State A Cognizable Claim For Interference With Contractual And Business Relationships.**

"To state a claim for tortious interference with a business relationship, the plaintiff must allege: (1) the existence of a business relationship between the plaintiff and a third person under which the plaintiff has legal rights; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional and unjustified interference with the relationship which induces or cause the third party not to perform; and (4) injury to the plaintiff as a result." *Tucci v. Smoothie King Franchises, Inc.*, 215 F.Supp.2d 1295, 1301 (M.D.Fla. 2002)(motion to dismiss with prejudice granted). Cryo-Cell alleges the existence of a business relationship between itself and expectant parents, obstetricians and medical care providers. Counterclaims ¶¶28-29. Cryo-Cell's relationship with these individuals, however, does not establish "the existence of a business relationship. *See, International Sales & Service, Inc. v. Austrial Insulated Prod., Inc.*, 262 F.3d 1152, 1155 (11th Cir. 2002). Cryo-Cell cannot establish an interference claim based on the hope that some of its past customers, i.e., parents, will use its services again. *See, Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814-15 (Fla. 1994)(no interference claim where relationship at issue was with 89,000 past customers). Furthermore, there is nothing establishing that Cryo-Cell has an identifiable agreement with obstetricians and

medical care providers to establish that there is a business relationship between Cryo-Cell and these parties.

Additionally, Cryo-Cell has failed to allege that PharmaStem knew of the existence of this alleged relationship and there are no facts alleged to support that PharmaStem intentionally and unjustifiably interfered with the relationship. As described above, PharmaStem's conduct was lawful and an attempt to enforce what PharmaStem perceives to be its legal rights regarding its patents. PharmaStem was not attempting to interfere in Cryo-Cell's business relationships. Rather, as evident from the patent actions PharmaStem has filed, PharmaStem was stating its position regarding its patent and is currently seeking to vindicate those patent rights granted to it. *See, Tucci*, 215 F.Supp.2d at 1301 (in attempting to enforce what it perceived to be a legal agreement, defendant was not attempting to interfere in the business relationship, but was trying to vindicate the rights that the agreement created).

**E. There Are No Facts Alleged To Support A Claim For Violation Of The Lanham Act.**

**1. PharmaStem's Statements Are Either Opinion Or True Statements.**

The federal statutory ground for Cryo-Cell's second counterclaim is 15 U.S.C. § 1125(a), which according to Cryo-Cell "prohibits Counter-Defendants from using false, misleading, or disparaging representations of fact that misrepresent the nature, characteristics, or qualities of Cryo-Cell's goods, services, or commercial activities." Counterclaim ¶ 38. This type of claim is often referred to as a false advertising claim or unfair competition claim. The language of 15 U.S.C. § 1125(a) specifies that Lanham Act liability arises from representations of *fact*. *See* 15 U.S.C. § 1125(a). "To be a statement of fact, the statement must be capable of being proven false." *General Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F.Supp.2d 1335, 1357 (S.D. Fla. 2002).

Patent liability, as noted above, is an issue that is in the process of being determined, as PharmaStem has recently brought a number of different lawsuits against obstetricians and medical groups for infringement of its patents. None of these cases have been resolved in a final judgment. Consequently, PharmaStem is providing its position or opinion on the liability these individuals face. These "are opinions based on a possible future event, not statements of fact as required by 15 U.S.C. § 1125(a)." *General Cigar*, 205 F.Supp.2d at 1357 (dismissing Lanham Act claims). While Cryo-Cell's opinion may differ, its speculative legal analysis does not give rise to Lanham Act liability as there has been no determination whatsoever regarding the liability of obstetricians and medical groups of PharmaStem's patents. Indeed, it was not an issue in the Delaware Action, as the only defendants involved in that case were cord blood banks, like Cryo-Cell.

"Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact." *General Cigar*, 205 F.Supp.2d at 1357. There can be no liability under the Lanham Act because whether obstetricians and medical groups are liable for patent infringement "was not knowable to the parties at the time the statements were made." *General Cigar*, 205 F.Supp.2d at 1357, citing *Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

Similarly, for the reasons discussed above, the allegations regarding Cryo-Cell being an "unlicensed bank" are true because Cryo-Cell does not have a license to PharmaStem's Patents. Thus, Cryo-Cell has not alleged a valid cause of action under Section 43(a) because the statements on which Cryo-Cell bases its claim are either non-actionable opinions or demonstrably true.

**2. PharmaStem's Statements Were Not Made In Bad Faith.**

There are no facts alleged to support Cryo-Cell's second counterclaim for violating the Lanham Act. As discussed above, PharmaStem's statements regarding Cryo-Cell being an unlicensed bank are true and not misleading, thus there is nothing unfair or deceptive about them.

Furthermore, PharmaStem had the legal right and obligation to contact the obstetricians and others regarding their potential infringement of PharmaStem's patents, and cannot be held liable for doing so unless Cryo-Cell can demonstrate that PharmaStem did so in bad faith.

While the scope of unfair competition claims for the publication of a patent has been the subject of recent debate in the courts, even under the Federal Circuit's recently articulated legal standards, Cryo-Cell fails to allege a colorable claim for unfair competition.. *Zenith Electronics Corp. v. Exzec, Inc.* decided, as a matter of first impression, the question "whether recognizing a § 43(a) claim in the context [of marketplace representations of patent infringement] would present an irreconcilable conflict with the patent ... laws." 182 F.3d 1340, 1351 (Fed. Cir. 1999). *Zenith* articulated that "before a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith."[3] *Id.* at 1353. *Zenith* simultaneously made explicit that its bad faith requirement was "in addition to the elements required by § 43(a) itself, as § 43(a) alone does not require bad faith." *Id.* (Citations omitted.) *Golan v. Pingel Enter.*, later clarified that "[i]n general, a ***threshold showing*** of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." 310 F.3d 1360, 1371 (Fed.Cir. 2002)(emphasis added). *Zenith* also reiterated the Federal Circuit's earlier opinion that "to avoid patent law preemption of ... ***state law tort claims***, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Zenith* at 1355, citing *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336-37 (Fed.Cir. 1998)(emphasis added).

---

[3] Prior to *Zenith*, the law was that "a patentee's allegedly false representation of patent infringement is not actionable under § 43(a), but that a patentee's allegedly false representation that it is the exclusive source of a certain type of product because of its patent is so actionable." *Zenith*, 182 F.3d 1340, 1344 (citations omitted). *Zenith*, itself, involved allegations that the accused patentee made false representations (1) of patent infringement and (2) of accused infringer's inability to design around the patents. *Zenith* at 1347.

In additional, *Golan* clarified that "the party challenging such statements under state or federal law [must] present[] clear and convincing evidence that the infringement allegations are objectively false, and that the patentee made them in bad faith, *viz.*, with knowledge of their incorrectness or falsity, or disregard for either, the statements are actionable and are not protected by the existence of a patent." *Golan*, 310 F.3d at 1371. Ultimately, "[t]o survive summary judgment, the party challenging such statements must present affirmative evidence sufficient for a reasonable jury to conclude that the patentee acted in bad faith, in light of the burden of clear and convincing evidence that will adhere at trial." *Golan* at 1371; *see also Globetrotter Software, Inc. v. Elan Computer Group*, 362 F.3d 1367, 1377 (Fed. Cir. 2004)("A [party] claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless.").

As discussed above, Cryo-Cell has failed to allege bad faith necessary to sustain the required "threshold showing" under *Golan*. *Golan* at 1371. Nothing has modified the long-standing rule that "[a] plaintiff alleging unfair business practices under the unfair competition statutes must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California*, 14 Cal.App.4th 612, 619 (1993)(citations omitted); *Qarbon.com Inc. v. eHelp Corp.*, 315 F.Supp.2d 1046, 1052-53 (N.D. Cal. 2004)(holding that, under the *Khoury* standard, defendant failed to allege unfair competition counterclaim with "reasonable particularity" where it did not provide a factual basis for its allegation that plaintiff knew or should have known that the patent-at-issue was invalid or not infringed when it made allegedly misleading statements regarding the scope, enforceability, and infringement of the patent-at-issue).

In its Counterclaims, Cryo-Cell alleges only that counterdefendants' conduct was "in bad faith to create a false implication with consuming public." Counterclaims at ¶ 23. This vague, conclusory accusation is insufficient to allege bad faith, and fails to put PharmaStem on notice of how, or whether, it knew or should have known that the Patents-In-Suit were in some way noninfringed, invalid, or unenforceable. Of course, Cryo-Cell should be hard-pressed to put

forward an allegation of bad faith with reasonable particularity -- especially within the confines of Rule 11 -- since a jury verdict was entered in favor of PharmaStem in the Delaware Action after a full jury trial, in which the jury returned a special verdict of direct and contributory infringement, willful infringement, validity, and enforceability of the related patents against the Delaware Defendants, including Cryo-Cell.[4] Thus, for these independent reasons, Cryo-Cell's Second and Fourth Counterclaim also fail to state a claim upon which relief can be granted.

**F. Cryo-Cell Fails To State A Cognizable Claim For Patent Misuse.**

"Patent misuse relates primarily to a patentee's actions that affect competition in unpatented goods or that otherwise extend the economic effect beyond the scope of the patent grant." *C.R. Bard, Inc.v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). The basis for Cryo-Cell's third counterclaim for patent misuse is that that PharmaStem's "enforcement, and attempts to enforce, the '645 Patent, the '427 Patent and '275 Patent against Zafran and other physicians through accusations of infringement and the filing of patent infringement suits upon patent claims that they know are of a scope that does not cover accused products, processes, or activities, and in particular does not cover the collection of umbilical cord blood, constitutes patent misuse." Counterclaims ¶ 41. Additionally, Cryo-Cell asserts that "under no proper interpretation of the PharmaStem Patents could an obstetrician be liable for patent infringement based on collecting umbilical cord blood at the time of a delivery and providing it to the patient for the patient's shipment of the blood to a bank." *Id.* ¶ 21.

"[I]n evaluating a patent-misuse defense, 'the key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect.'" *Monsanto Co. v. McFarling*, 363 F.3d 1336, 1341 (Fed. Cir. 2004), citing *C.R. Bard*, 157 F.3d at 1372. As discussed above,

---

[4] On September 15, 2004, just days before Cryo-Cell filed its Answer and Counterclaims, the Court in the Delaware Action confirmed the jury's findings regarding the validity and enforceability of PharmaStem's Patents, U.S. Patent Nos. 5,004,681 and 5,192,553. The Court set aside the jury's verdict that Cryo-Cell infringed U.S. Patent No. 5,192,553, and ordered a partial retrial with regards to infringement and damages in connection with U.S. Patent No. 5,004,681.

PharmaStem has proceeded in good faith notifying obstetricians of their infringement of its patents and filed multiple lawsuits against obstetricians, seeking to enforce its patent rights against them. Furthermore, PharmaStem's "enforcement and attempts to enforce" its patents are lawful, as a patentee has a right to enforce its patents. As there has never been any court ruling on the liability of obstetricians for PharmaStem's patents, there is nothing that establishes PharmaStem's conduct has been done in bad faith or establishes that PharmaStem is seeking to impermissibly broaden the scope of its patents with anticompetitive effect. Thus, Cryo-Cell has not facts upon which to state a claim for patent misuse.

**G. Cryo-Cell Fails To State A Cognizable Claim For Deceptive And Unfair Trade Practices.**

To plead a sound cause of action for deceptive and unfair trade practices, Cryo-Cell must plead that the conduct complained of was unfair and deceptive, and that it was aggrieved by the unfair and deceptive act. *Haun v. Don Mealy Imports, Inc.*, 285 F.Supp.2d 1297, 1307 (M.D. Fla. 2003). As described above, the face of the counterclaim affirmatively indicates that PharmaStem's conduct was lawful, and therefore Cryo-Cell has failed to allege a claim for unfair or deceptive trade practices. For these reasons, Cryo-Cell's fourth counterclaim should be dismissed.

**H. The Court Should Decline To Assert Jurisdiction Over The Duplicative Claims.**

As part of its general power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)("As between federal district courts, ... though no precise rule has evolved, the general principle is to avoid duplicative litigation."). The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion. *See Colorado River*, 424 U.S. at 817. The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952).

Thus, Cryo-Cell should be precluded or estopped from bringing its first, second and fourth counterclaims to this action because, of its own volition, it sought and achieved the Delaware district court's jurisdiction over the same subject matter.[5] "Claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court." *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1567 (Fed.Cir. 1988). Here, the operative facts are exactly the same as those at issue in the other court. The relevant parties are also the same. There was nothing preventing Cryo-Cell from seeking the relief sought in this case in the Delaware Action. Thus, for this independent reason alone, Cryo-Cell should be precluded from being permitted to bring the duplicative claims before this Court.

**CONCLUSION**

For all of the above reasons, counterdefendant PharmaStem respectfully requests that the Court dismiss Cryo-Cell's First, Second, Third and Fourth Counterclaims with prejudice, and for what other relief the Court may deem proper and just.

---

[5] Indeed, to the extent the issues regarding PharmaStem's statements have already been litigated in the Delaware Action by the parties, Cryo-Cell is attempting to seek relief on the same cause of action arising out of the same transaction or series of transactions from two different courts. To the extent Cryo-Cell would argue that the Order, attached as Exhibit B to its Counterclaims, is final, then its counterclaims are also barred by the doctrine of *res judicata*. *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269 (11th Cir. 2002). "*Res judicata* bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Id.* at 1271 (a series of breaches of the same contract, all occurring before filing suit, should be brought in a single suit).

DATED: October 8, 2004

Respectfully submitted,

BARNETT, BOLT, KIRKWOOD, LONG & MCBRIDE

Charles A. Carlson, Esq.
Florida Bar No. 716286
601 Bayshore Boulevard
Suite 700
Tampa, FL 33606
Telephone (813) 253-2020
Facsimile (813) 251-6711

and

PERKINS COIE LLP
Paul J. Andre, Esq.
Lisa Kobialka, Esq.
101 Jefferson Drive
Menlo Park, CA 94025-1114
Telephone (650) 838-4300
Facsimile (650) 838-4350

Co-Counsel for PharmaStem Therapeutics, Inc.

**Certificate of Service**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Joseph W. Bain, Esq., Akerman Senterfitt, 222 Lakeview Avenue, Suite 400, West Palm Beach, FL 33401-6147 and Charles F. Ketchey, Jr., Esq., Akerman Senterfitt, Post Office Box 3273, Tampa, Florida 33601-3273, via U. S. Mail on this 8th day of October, 2004.

Attorney

BBKLDOCS-#229215-v1-Mot_Dismiss_&_Memo_of_Law.DOC