IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PHARMASTEM THERAPEUTICS, INC., a California corporation,

    Plaintiff,

v.

CORD BLOOD REGISTRY INC., dba CBR a California corporation, and SUTTER HEALTH, INC., a California corporation

    Defendant.

AND RELATED COUNTERCLAIMS
_____/

No. C 04-03072 JSW

**AMENDED NOTICE OF TENTATIVE RULING AND QUESTIONS FOR HEARING**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING **TENTATIVE** RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON JANUARY 7, 2005:

**A.     CBR's and Sutter Health's Motion to Stay**

The Court **tentatively GRANTS IN PART and DENIES IN PART** CBR and Sutter Health's Motion to Stay. Specifically, the Court tentatively GRANTS the motion to stay to the extent it seeks to stay: (1) resolution of the pending motions to dismiss except Mr. Grabinski's and Mr. Didier's motions to dismiss for lack of personal jurisdiction; (2) the motion to sever; and (3) further deadlines relating to motions, claim construction and trial related deadlines, until after a ruling from the Judicial Panel on Multidistrict Litigation ("MDL") on the motion to transfer. The Court **tentatively DENIES** the motion to the extent it seeks to stay discovery.

The parties each shall have ten minutes to address the following questions:

1. Pharmastem and the various counterclaim defendants oppose the motion to stay, yet also claim that this Court should dismiss the instant action because the District Court of Delaware has jurisdiction over the issues raised by CBR's counterclaims. *See, e.g.,* Pharmastem Motion to Dismiss at 13-14. In light of this assertion, why should this Court not stay this action pending a ruling by the MDL on the motion to transfer?

2. What prejudice do Pharmastem and the counterclaim defendants claim they will suffer from the imposition of a short stay, aside from the cost of litigation? Do these parties have any authority to support their argument that the cost of litigation is sufficient prejudice to warrant denying the motion to stay?

3. Assume for the sake of argument on the following questions that the MDL Panel grants the motion to consolidate but transfers all of the actions to this Court. Based on the Court's understanding of the parties' papers, Judge Sleet's claim construction is likely to be informative of the proper construction of the patents at issue in this lawsuit and the other pending lawsuits.

    a. In light of Judge Sleet's Order dated December 2004, is the original action in Delaware now ripe for appeal?

    b. If this Court were to receive all pending cases, why should the Court not stay any further proceedings until the Federal Circuit has ruled on the proper construction of the patents in suit in the original action, as well as any other issue that may impact the case before this Court?

4. Do Pharmastem and Stembanc seriously dispute that determining the scope of the patents at issue will not affect the merits of the counterclaims? *See* Wang Decl. Ex. H at 9.

5. Are there any other issues the parties wish to address?

**B.    Nicholas Didier's ("Mr. Didier") Motion to Dismiss for Lack of Personal Jurisdiction and Archibald Grabinski's ("Mr. Grabinski") Motion to Dismiss for Lack of Jurisdiction.**

The Court **tentatively GRANTS** Mr. Didier's and Mr. Grabinski's motions to dismiss for lack of personal jurisdiction.

The parties each shall have ten minutes to address the following questions:

1. CBR has not alleged in its Counterclaim that Mr. Didier or Mr. Grabinski is the alter ego of Pharmastem or Stembanc, respectively. Does it rely on that theory to establish jurisdiction over Mr. Didier or Mr. Grabinski in this action? If so, what evidence has it submitted to support such a theory?

2. What is CBR's response to Mr. Didier's position that the law of the Federal Circuit applies?

3. Assuming Federal Circuit law applies, what is Mr. Didier's best argument that he, personally, did not purposefully direct activities at residents of California when he sent the allegedly misleading letters to doctors in California? *See, e.g., Inamed*

2

*Corporation v. Kuzmak*, 249 F.3d 1356, 1362 (Fed. Cir. 2001); *Genetic Implant Systems, Inc. v. Core-Vent Corporation*, 123 F.3d 1455, 1460 (Fed. Cir. 1997).

4. CBR relies heavily on *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000), and *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998), in support of its argument that Mr. Grabinski and Mr. Didier purposefully directed their conduct toward California. In those cases, however, a single entity was the "target" of the alleged conduct. *See also Inamed*, 249 F.3d at 1362. The record in this case, however, demonstrates that CBR was not the sole "target" of the press releases and letters from which CBR's counterclaims arise. Does CBR have any authority supporting their theory in which the alleged conduct targeted multiple entities, not all of which were located in the forum state?

5. Are there any other issues the parties wish to address?

Date: January 6, 2005

/s/ Jeffrey S. White
JEFFREY S. WHITE
UNITED STATES DISTRICT COURT JUDGE

**United States District Court**
For the Northern District of California

3