United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PHARMASTEM THERAPEUTICS, INC., a Delaware corporation,

Plaintiff,

v.

CORD BLOOD REGISTRY INC., dba CBR, a California corporation, and SUTTER HEALTH, INC., a California corporation,

Defendants.

_____________________________________/

AND RELATED COUNTERCLAIMS

_____________________________________/

No. C 04-03072 JSW

**(1) ORDER DENYING NICHOLAS DIDIER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION;**

**(2) ORDER GRANTING ARCHIBALD GRABINSKI'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**[Docket Nos. 23 and 32]**

This matter comes before the Court upon consideration of the motions to dismiss for lack of personal jurisdiction filed by Nicholas Didier ("Mr. Didier"), President and Chief Executive Officer ("CEO") of Pharmastem Therapeutics, Inc. ("Pharmastem"), and Archibald Grabinski ("Mr. Grabinski"), Chief Operating Officer of Stembanc, Inc. ("Stembanc"). Having considered the parties' pleadings, relevant legal authority, the pleadings and papers on file in this case, and having had the benefit of oral argument, for the reasons set forth herein, the Court DENIES Mr. Didier's motion and GRANTS Mr. Grabinski's motion.

## I. PROCEDURAL BACKGROUND

On July 28, 2004, Pharmastem filed the above captioned patent infringement suit against CBR Systems, Inc. ("CBR") and Sutter Health, Inc. On August 23, 2004, CBR answered and asserted

counterclaims. Pertinent to this motion are CBR's counterclaims for intentional interference with contractual or other economic relationships, negligent interference with contractual or other economic relationships, unfair competition, trade libel, violations of the Lanham Act, and violations of California Business and Professions Code § 17500. (*See* Counterclaims ¶¶ 3, 5, 14-61).

On September 20, 2004, Mr. Didier filed a motion to dismiss these counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. On September 27, 2004, Mr. Grabinski filed a motion to dismiss these same counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

## II. ANALYSIS

### A. Legal Standards Applicable to Personal Jurisdiction.

"Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1376-1377 (Fed. Cir. 1998). *Cf.*, *Schwarzenegger v. Fred Martin Motor Company*, 374 F.3d 797, 800-801 (9th Cir. 2004).[1] Because California's long arm statute "is co-extensive with federal due process requirements, the jurisdictional analyses under" California law and federal due process are the same. *Schwarzenegger*, 374 F.3d at 801; *3D Systems*, 160 F.3d at 1377. Accordingly, this Court must determine whether Mr. Didier and Mr. Grabinski have such "minimum contacts" with this forum that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

---

[1] CBR and Mr. Didier disagree over what law this Court should apply. Mr. Didier urges the Court to apply the law of the Federal Circuit because the questions of personal jurisdiction are intimately intertwined with substantive patent law, relying *inter alia* on *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) and *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995). CBR asserts that the Court can and should apply Ninth Circuit law, relying in part on *Silent Drive v. Strong*, 326 F.3d 1194 (Fed. Cir. 2003), in which the Federal Circuit applied regional circuit law as to claims that were not intimately intertwined with asserted patent claims and, based on that conclusion, determined it had personal jurisdiction over the parties for purposes of the entire case. The Court need not resolve this question, because under either Federal Circuit or Ninth Circuit precedent, the Court would reach the same conclusions on both Mr. Didier's and Mr. Grabinski's motions.

CBR asserts that specific personal jurisdiction exists as a result of conduct allegedly directed at CBR and to this forum. Specific jurisdiction over a defendant exists where: (1) the defendant has purposefully directed his or her activities at residents of the forum state or the forum state itself; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger,* 374 F.3d at 802; *3D Systems*, 160 F.3d at 1378.

Where, as here, there are tort claims involved, the Court can analyze the first prong of this test, *i.e.* the "purposeful direction" prong, through the "effects" test set forth in *Calder*, *supra*. Under that test, a defendant purposefully directs his or her activity at a forum state where: (1) he or she commits an intentional act; (2) the act is expressly aimed at the forum state; *and* (3) the act causes harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger,* 374 F.3d at 803; *Silent Drive*, 326 F.3d at 1204-1205.

In this Court's view, CBR's argument in favor of jurisdiction rises and falls on whether or not Mr. Didier and Mr. Grabinski purposefully directed their activities at CBR or California.

**B. CBR Has Not Met Its Burden to Show Jurisdiction Exists Over Mr. Grabinski.**

CBR sued Mr. Grabinski in his individual capacity, as well as in his capacity as an officer of Stembanc. Even though CBR may be able to assert jurisdiction over Stembanc, it cannot rely on Mr. Grabinski's officer status to obtain jurisdiction over him. Rather, CBR bears the burden of establishing a prima face showing of general or specific jurisdiction of each and every defendant it has sued. *Calder,* 465 U.S. at 790.[2]

It is undisputed that Mr. Grabinski is a resident of Ohio. In support of its argument that jurisdiction exists as to Mr. Grabinski, CBR alleges that he: (1) posted allegedly false and misleading information on Stembanc's website regarding CBR and refused to remove that information; (2) placed advertisements in *Pregnancy* magazine that contained allegedly false and misleading statements regarding CBR; (3) issued a press release, also posted on Stembanc's website, containing allegedly false statements regarding CBR; and (4) contacted certain doctors and customers of CBR in California and allegedly made certain false and misleading statements regarding CBR. (Counterclaims

[2] CBR does not allege that Mr. Grabinski is the alter-ego of Stembanc.

United States District Court
For the Northern District of California

¶¶27-33.)[3] Accepting all but the fourth allegation as true for purposes of this motion, the Court concludes that CBR has sufficiently alleged that Mr. Grabinski engaged in intentional acts.[4] *See Schwarzenegger*, 374 F.3d at 806; *Silent Drive*, 326 F.3d at 1204.

The more critical question is whether those acts were "expressly aimed" at this forum. In *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000), the court explained that the "express aiming" requirement is met when "the defendant is alleged to have engaged in wrongful conduct *targeted* at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters*, 223 F.3d at 1087 (emphasis added). The Court concludes that CBR's jurisdictional argument as to Mr. Grabinski fails on this point.

In *Calder*, for example, a reporter for and the president and editor of the *National Enquirer*, both of whom resided in Florida, wrote, edited, and published an allegedly defamatory article about the plaintiff, actress Shirley Jones, a resident of California, the forum state. The plaintiff established that although the *National Enquirer* is published nationally, its largest circulation was in California. Thus, in determining that jurisdiction existed, the Supreme Court found that plaintiff was the target of the defendants' alleged tortious activity. The Supreme Court also concluded that defendants knew the plaintiff resided in California, knew that the article "would have a potentially devastating impact on [the plaintiff], .. [a]nd ... knew that the brunt of that injury would be felt by [plaintiff] in the State in which she lives and works and in which the *National Enquirer* has its largest circulation." Accordingly, it determined that the exercise of jurisdiction was warranted. *Calder*, 465 U.S. at 789-790.

Here, in contrast, although CBR is identified in the information posted on Stembanc's website, in the press release, and in the *Pregnancy* magazine advertisements, so are a number of other entities.

---

[3] These allegations are directed primarily at Stembanc, however CBR asserts that Mr. Grabinski engaged in this conduct as well. *See* CBR Opposition to Grabinski Motion to Dismiss, pp. 3-5. CBR also makes the allegation that "Stembanc and Grabinski have issued further statements that create a false implication with the public as alleged herein." (Counterclaim ¶ 34.) The Court, in reaching its conclusion, gives little weight to this allegation, as it does not contain facts suggesting that such statements were targeted at CBR or this forum.

[4] Mr. Grabinski has denied the last allegation in an affidavit, and CBR has provided no evidence to controvert the allegations set forth therein. Thus, although on a motion to dismiss, it would normally accept the allegations of CBR's counterclaim as true, "for purposes of personal jurisdiction, '[this Court] may not assume the truth of allegations in a pleading which are contradicted by affidavit.'" *Alexander v. Circus Circus Enterprises, Inc.*, 972 F.2d 261 (9th Cir. 1992) (quoting *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). *Cf. Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1563 (Fed. Cir. 1994).

(*See* Counterclaims ¶ 28, Grabinski Decl. Exs. A-D.) The fact that Mr. Grabinski may have posted this information on Stembanc's website, which is hosted in Ohio and is visible anywhere, is not sufficient to show that Mr. Grabinski expressly aimed the information on the website at California or CBR. *See, e.g.*, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997). CBR also has not presented any evidence to establish that *Pregnancy* magazine is published most widely in California, such that the Court could infer that Mr. Grabinski was aiming these advertisements at California, CBR's home state. *Cf. Calder*, 465 U.S. at 785. Finally, Mr. Grabinski has submitted a declaration in which he asserted that he has no recollection of contacting any doctor or other entity in California. Grabinski Decl. ¶¶ 4-5. Thus, unlike in the *Calder* case, neither CBR nor California was the focus or target of Mr. Grabinski's alleged activity. Rather, this Court considers the allegations against Mr. Grabinski in this case to be more akin to "untargeted" acts, rather than acts that were engaged in for the purpose of having their consequences felt in California. *Calder,* 465 U.S. at 789.

In addition to *Calder*, CBR relies on *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1988), *Bancroft & Masters, supra*, and *Silent Drive, supra*, to support its argument. As in the *Calder* case, however, in those cases, the plaintiffs, residents of California, were "the focus of the activities of the defendants out of which" those suits arose. *Calder*, 465 U.S. at 782. *See Panavision*, 141 F.3d at 1321, *Bancroft & Masters*, 223 F.3d at 1082, *Silent Drive*, 326 F.3d at 1203-1205.

As stated, CBR is not the sole focus of the Stembanc website posting, press releases, and advertisements at issue in this case, nor is there sufficient evidence to show that the alleged conduct was focused on California, such that the Court could infer an intent to cause harm to CBR here. Accordingly, the Court concludes that, although some intentional conduct may be alleged as to Mr. Grabinski, CBR has not sufficiently alleged that this conduct is "expressly aimed" at CBR or that Mr. Grabinski knew his alleged activities would have "potentially devastating effects" on CBR in California. *Calder*, 465 U.S. at 789-790.

Having failed to meet its burden to show jurisdiction exists, CBR's claims against Mr. Grabinski shall be DISMISSED.

**C. CBR Has Met Its Burden to Show Jurisdiction Exists Over Mr. Didier.**

Mr. Didier's case presents a closer question, and the Court concludes that CBR has made a prima facie showing of specific jurisdiction. It is undisputed that Mr. Didier is a resident of New York. It is also evident from the record, however, that Mr. Didier, in his capacity as President and CEO of Pharmastem, signed a letter dated June 1, 2004, which was sent to doctors residing in California and elsewhere. (Counterclaim ¶ 14 & Ex. A). CBR also alleges that Mr. Didier disseminated a press release containing allegedly false and misleading statements similar to the allegedly misleading statements in the June 1, 2004 letter. (Counterclaim ¶ 21 & Ex. C).[5]

Again, the Court concludes that for purposes of the first prong of the *Calder* effects tests, these allegations qualify as intentional acts for purposes of evaluating jurisdiction. As is the situation with Mr. Grabinski, the letter and the press release do not focus their attention solely on CBR and do refer to other entities. However, reading the letter in the context of CBR's allegations, the allegations sufficiently allege that the letters – many of which were sent to California – were intended to and did cause harm to CBR, a resident of California. Thus, while a close case, the Court views the allegations sufficient to show that Mr. Didier's conduct was aimed at California and was done with the knowledge and intent that CBR would feel harm here as a result. *Calder*, 465 U.S. 789-790. The Court also concludes that CBR's counterclaims against Mr. Didier arise out of the alleged conduct. *Schwarzenegger*, 374 F.3d at 802; *3D Systems*, 160 F.3d at 1378. Finally, the Court concludes that the factors it must consider in evaluating whether it would be reasonable to exercise jurisdiction over Mr. Didier, on balance, favor CBR. *Bancroft & Masters*, 223 F.3d at 1088; *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1363 (Fed. Cir. 2001).

Accordingly, the Court concludes that CBR has established a *prima facie* showing of personal jurisdiction over Mr. Didier. The Court expressly notes that this ruling applies to the question of jurisdiction only. Mr. Didier's ultimate liability for the alleged torts is a question not before the Court and shall be resolved at a later time.

**III. CONCLUSION**

---

[5] As it did with Mr. Grabinski and Stembanc, CBR alleges that "Pharmastem and Didier have issued further statements that create a false implication with the consuming public as alleged herein." (Counterclaim ¶ 23.) Again, the Court gives little weight to this allegation, which alleges no facts that such "further statements" were directed at CBR or this forum, in reaching its decision.

For the reasons set forth herein, Mr. Didier's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED. Mr. Grabinski's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED, and all counterclaims against Mr. Grabinski are DISMISSED.

**IT IS SO ORDERED.**

Dated: January 14, 2005

/s/ Jeffrey S. White
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California