1  PILLSBURY WINTHROP LLP
   William F. Abrams (State Bar No. 88805)
2  Thomas F. Chaffin (State Bar No. 112368)
   Chang H. Kim (State Bar No. 195554)
3  Peter H. Nohle (State Bar No. 209446)
   2475 Hanover Street
4  Palo Alto, CA 94304-1114
   Telephone: (650) 233-4500
5  Facsimile:  (650) 233-4545

6  Attorneys for Defendant and Counterclaimant
   CBR SYSTEMS, INC.

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11 |‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾|
                                  )
12 PHARMASTEM THERAPEUTICS, INC., a )   **No. C 04 3072 PVT**
   Delaware corporation,          )
                                  )   **ANSWER AND COUNTERCLAIMS FOR:**
13         Plaintiff,             )
                                  )   **1. INTENTIONAL INTERFERENCE**
14    vs.                         )      **WITH CONTRACTUAL OR OTHER**
                                  )      **ECONOMIC RELATIONSHIPS**
15 CORD BLOOD REGISTRY, INC., dba )   **2. NEGLIGENT INTERFERENCE WITH**
   CBR, a California corporation, and SUTTER )  **CONTRACTUAL OR OTHER**
16 HEALTH, INC., a California corporation. )   **ECONOMIC RELATIONSHIPS**
                                  )   **3. UNFAIR COMPETITION**
17         Defendants.            )   **4. TRADE LIBEL**
                                  )   **5. VIOLATION OF § 43(a) OF THE**
18                                )      **LANHAM ACT**
                                  )   **6. VIOLATION OF CAL. BUS. & PROF.**
19                                )      **CODE § 17500**
                                  )   **7. NON-INFRINGEMENT OF THE '645**
20 |_____|      **PATENT**
                                  )   **8. NON-INFRINGEMENT OF THE '427**
21 CBR SYSTEMS, INC., dba CBR, a  )      **PATENT**
   California corporation         )   **9. INVALIDITY OF THE '645 PATENT**
22                                )   **10. INVALIDITY OF THE '427 PATENT**
           Counterclaimant,       )   **11. UNENFORCEABILITY OF THE '645**
23                                )      **PATENT**
      vs.                         )   **12. UNENFORCEABILITY OF THE '427**
24                                )      **PATENT**
   PHARMASTEM THERAPEUTICS, INC., )
25 a Delaware corporation; STEMBANC, INC., )  **JURY TRIAL DEMANDED**
   a Ohio corporation; NICHOLAS DIDIER; )
26 and ARCHIBALD A. GRABINSKI.    )
                                  )
27         Counterdefendants.     )
   |_____|
28

Counterclaimant and defendant CBR Systems, Inc. ("CBR"), erroneously identified as "Cord Blood Registry, Inc." in the Complaint, responds to PharmaStem Therapeutics, Inc.'s ("PharmaStem" or "Plaintiff") Complaint as follows:

**THE PARTIES**

1.      CBR admits that PharmaStem purports to be a Delaware corporation with a principal place of business in the State of New York, located at 69 Prospect Avenue, Larchmont, New York, 10538.

2.      CBR denies the allegations contained in Paragraph 2 of the Complaint.

3.      CBR is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3 of the Complaint, and therefore denies them.

**JURISDICTION AND VENUE**

4.      CBR admits that the Complaint purports to be an action arising under the Patent Act, 35 U.S.C. §§ 271 *et seq.* CBR admits that this Court has subject matter jurisdiction. CBR does not dispute that personal jurisdiction and venue may be proper in this district with respect to CBR. CBR is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other party, Sutter Health, Inc. ("Sutter Health"), contained in Paragraph 4, and therefore denies those allegations. Answering further, CBR states that the remainder of PharmaStem's allegations in Paragraph 4 are legal conclusions to which no response is required, and CBR therefore denies the remaining allegations of this Paragraph.

**INTRADISTRICT ASSIGNMENT**

5.      CBR does not dispute that this action is properly assigned to the San Francisco Division. CBR is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Sutter Health contained in Paragraph 5, and therefore denies those allegations. CBR denies the remaining allegations of Paragraph 5.

**PLAINTIFF'S PATENTS**

6.      CBR admits that a copy of a document purporting to be U.S. Patent No. 6,461,645 B1 (the "'645 Patent") was attached to the Complaint as Exhibit A. CBR admits

1  that the document at Exhibit A of the Complaint is entitled ISOLATION AND

2  PRESERVATION OF FETAL AND NEONATAL HEMATOPOIETIC STEM AND

3  PROGENITOR CELLS OF THE BLOOD and purports to have been issued on or about

4  October 8, 2002, and purports to have been filed on or about May 16, 1990.  Answering

5  further, CBR is without knowledge or information sufficient to form a belief as to the truth

6  of the remaining allegations of Paragraph 6 of the Complaint, and therefore denies them.

7      7.     CBR admits that a copy of a document purporting to be U.S. Patent No.

8  6,569,427 B1 (the "'427 Patent") was attached to the Complaint as Exhibit B.  CBR admits

9  that the document at Exhibit B of the Complaint is entitled ISOLATION AND

10  PRESERVATION OF FETAL AND NEONATAL HEMATOPOIETIC STEM AND

11  PROGENITOR CELLS OF THE BLOOD and purports to have been issued on or about

12  October May 27, 2003, and purports to have been filed on or about May 16, 1995.

13  Answering further, CBR is without knowledge or information sufficient to form a belief as

14  to the truth of the remaining allegations of Paragraph 7 of the Complaint, and therefore

15  denies them.

16      8.     To the extent Paragraph 8 of the Complaint constitutes conclusions of law,

17  no response is required.  CBR denies the remaining allegations of Paragraph 8 of the

18  Complaint, which appear to be attempts by PharmaStem to summarize certain aspects of the

19  '645 Patent and the '427 Patent.  The '645 Patent and '427 Patent speak for themselves.

20                    **PATENT INFRINGEMENT**

21      9.     CBR admits that it provides its customers with collection kits to facilitate

22  collection of blood from the umbilical cord or placenta.  CBR also admits that it collects

23  fees from certain of its customers for CBR's services.  At times, CBR does not collect fees

24  from its customers for CBR's services.  CBR denies the remaining allegations of Paragraph

25  9 of the Complaint.

26      10.    CBR admits that it receives blood drawn from the umbilical cord or placenta

27  of the children of its customers at its facility and processes such blood for storage.

28      11.    CBR denies the allegations of Paragraph 11 of the Complaint on the basis

1  that, *inter alia*, the content on CBR's website speaks for itself and is available to the public,

2  and PharmaStem has taken statements out of context in connection with its allegations in

3  Paragraph 11.  Moreover, the term "hematopoietic reconstitution" is a legal and scientific

4  conclusion to which CBR cannot respond and therefore denies as alleged by PharmaStem.

5  CBR is not and has never been involved in performing transplantation of umbilical cord or

6  placenta blood.

7       12.     CBR is without knowledge or information sufficient to form a belief as to

8  the truth of the allegations regarding Sutter Health contained in Paragraph 12 of the

9  Complaint, and therefore denies those allegations.  CBR denies the remaining allegations of

10  Paragraph 12.

11                    **FIRST CAUSE OF ACTION**

12                  **(Infringement of the '645 Patent)**

13      13.     With respect to Paragraph 13 of the Complaint, CBR repeats and

14  incorporates by reference its admissions and denials of the allegations in Paragraphs 1

15  through 12 above.

16      14.     CBR denies the allegations of Paragraph 14 of the Complaint.

17      15.     CBR denies the allegations of Paragraph 15 of the Complaint.

18      16.     CBR denies the allegations of Paragraph 16 of the Complaint.

19                    **SECOND CAUSE OF ACTION**

20                  **(Infringement of the '427 Patent)**

21      17.     With respect to Paragraph 17 of the Complaint, CBR repeats and

22  incorporates by reference its admissions and denials of the allegations in Paragraphs 1

23  through 12 above.

24      18.     CBR is without knowledge or information sufficient to form a belief as to

25  the truth of the allegations regarding Sutter Health contained in Paragraph 18 of the

26  Complaint, and therefore denies those allegations.  CBR denies the remaining allegations of

27  Paragraph 18.

28      19.     CBR is without knowledge or information sufficient to form a belief as to

1  the truth of the allegations regarding Sutter Health contained in Paragraph 19 of the

2  Complaint, and therefore denies those allegations.  CBR denies the remaining allegations of

3  Paragraph 19.

4        20.     CBR is without knowledge or information sufficient to form a belief as to

5  the truth of the allegations regarding Sutter Health contained in Paragraph 20 of the

6  Complaint, and therefore denies those allegations.  CBR denies the remaining allegations of

7  Paragraph 20.

8  **PRAYER FOR RELIEF**

9  CBR denies that PharmaStem is entitled to any of the relief requested in the

10  Complaint, including subparagraphs (A) through (H) thereof, or to any relief against CBR.

11  To the extent any allegations in the Complaint are not addressed, specifically or

12  generally, in the paragraphs above, such allegations are hereby denied.

13  **ADDITIONAL DEFENSES**

14  As for its separate and additional defenses, CBR alleges as follows:

15  **FIRST ADDITIONAL DEFENSE**

16        21.     The Complaint fails to state a claim against CBR upon which relief can be

17  granted.

18  **SECOND ADDITIONAL DEFENSE**

19        22.     The Complaint, and each purported cause of action contained therein, is

20  barred in whole or in part by the doctrines of laches.

21  **THIRD ADDITIONAL DEFENSE**

22        23.     The '645 Patent is invalid because it fails to comply with the requirements

23  and conditions for patentability established by 35 U.S.C. §§ 102, 103 or 112.

24  **FOURTH ADDITIONAL DEFENSE**

25        24.     CBR has not and does not willfully or otherwise infringe, contribute to the

26  infringement, or induce infringement of any valid or enforceable claim of the '645 Patent.

27  /-/-/

28  /-/-/

1

**FIFTH ADDITIONAL DEFENSE**

2      25.    PharmaStem is barred from presenting or seeking an interpretation of the

3    claims necessary to find infringement of the '645 Patent by the manufacture, use, or sale of

4    any CBR product, process, or activity, either literally or under the Doctrine of Equivalents,

5    by virtue of representations and concessions made to the U.S. PTO during the prosecution

6    of the application that matured into the '645 Patent and to the District Court of Delaware.

7

**SIXTH ADDITIONAL DEFENSE**

8      26.    PharmaStem is barred by 35 U.S.C. § 287 from recovering damages for any

9    alleged infringement of the '645 Patent that occurred before the filing of the Complaint and

10    notification to CBR alleging infringement of that patent.

11

**SEVENTH ADDITIONAL DEFENSE**

12      27.    The '427 Patent is invalid because it fails to comply with the requirements

13    and conditions for patentability established by 35 U.S.C. §§ 102, 103 or 112.

14

**EIGHTH ADDITIONAL DEFENSE**

15      28.    CBR has not and does not willfully or otherwise infringe, contribute to the

16    infringement, or induce infringement of any valid or enforceable claim of the '427 Patent.

17

**NINTH ADDITIONAL DEFENSE**

18      29.    PharmaStem is barred from presenting or seeking an interpretation of the

19    claims necessary to find infringement of the '427 Patent by the manufacture, use, or sale of

20    any CBR product, process, or activity, either literally or under the Doctrine of Equivalents,

21    by virtue of representations and concessions made to the U.S. PTO during the prosecution

22    of the application that matured into the '427 Patent and District Court of Delaware.

23

**TENTH ADDITIONAL DEFENSE**

24      30.    PharmaStem is barred by 35 U.S.C. § 287 from recovering damages for any

25    alleged infringement of the '427 Patent that occurred before the filing of the Complaint and

26    notification to CBR alleging infringement of that patent.

27    /-/-/

28    /-/-/

- 5 -

**ELEVENTH ADDITIONAL DEFENSE**

31.    The '645 Patent is unenforceable because PharmaStem failed to name the correct inventor(s) to the '645 Patent with intent to deceive the U.S. PTO to obtain issuance of the '645 Patent.

32.    On information and belief, Pablo Rubinstein ("Rubinstein") made an inventive contribution to the claimed subject matter of the '645 Patent, to the extent the '645 Patent discloses and claims a patentable invention.  Before the filing date of the '645 Patent, Rubinstein collaborated with the named inventors of the '645 Patent and contributed to the conception of the invention(s) disclosed and claimed in the '645 Patent. PharmaStem, the named inventors of the '645 Patent and/or the prosecuting patent attorney(s) knew or had reason to know of Rubinstein's role as an inventor and purposely failed to name him as an inventor or co-inventor to the '645 Patent.

33.    Additionally, on information and belief, Edward A. Boyse ("Boyse"), a named inventor of the '645 Patent, is not an actual inventor of the '645 Patent to the extent the '645 Patent discloses and claims a patentable invention.  Boyse did not make any inventive contribution to the claimed subject matter of the '645 Patent.  Boyse's alleged contribution to the '645 Patent was merely sharing his "idea" with others that stem cells from cord blood may contain some utility.  Such "contribution" does not entitle Boyse to be named as an inventor.  PharmaStem, the other named inventors of the '645 Patent and/or the prosecuting patent attorney(s) knew or had reason to know that Boyse was not an inventor, but nonetheless purposely named him as an inventor to the '645 Patent with intent to deceive the U.S. PTO to obtain issuance of the '645 Patent.

**TWELFTH ADDITIONAL DEFENSE**

34.    CBR realleges and incorporates by reference Paragraphs 31-33 above as though set forth herein.

35.    The '645 Patent is unenforceable for inequitable conduct because the named inventors and/or the prosecuting attorney(s) of the '645 Patent withheld material

1  information from the U.S. PTO with intent to deceive the U.S. PTO to obtain issuance of

2  the '645 Patent.

3        36.    Under 37 C.F.R. § 1.56, PharmaStem was required to disclose all

4  information known to be material to patentability of the '645 Patent during the prosecution

5  of such patent.  Information material to patentability includes any information that refutes,

6  or is inconsistent with, a position PharmaStem takes in asserting an argument of

7  patentability.

8        37.    Concurrent with the '645 Patent prosecution proceeding before the U.S.

9  PTO, PharmaStem's European Patent No. 0343217, the European counterpart of the '645

10  Patent, was under review in an opposition proceeding before the Opposition Division of the

11  European Patent Office ("Opposition Division").  In the European opposition proceeding,

12  the Opposition Division considered issues and patentability arguments substantially similar

13  to those involved in the reexamination of the '645 Patent.

14        38.    A patentability argument considered in both the '645 proceeding and the

15  European opposition proceeding was the reliability of surrogate assays in predicting the

16  presence of stem cells in a sample of umbilical cord blood.

17        39.    On July 21, 1999, the Opposition Division revoked European Patent No.

18  0343217.  The Opposition Division issued a written opinion outlining the issues and

19  arguments of the PharmaStem and the five Opponents, and explaining the reasoning of the

20  Opposition Division in revoking the Patent ("the European revocation decision").

21        40.    In the European revocation decision, explicitly rejecting PharmaStem's

22  argument to the contrary, the Opposition Division noted "the broad consensus in the

23  scientific community as to the reliability of surrogate assays . . . as indirect evidence for the

24  presence of stem cells in a sample."  The European revocation decision also found

25  PharmaStem's argument in contradiction to the opinion of one of the alleged inventors, Dr.

26  Hal E. Broxmeyer, in a 1997 article, "High-Efficiency Recovery of Immature

27  Haematopoietic Progenitor Cells with Extensive Proliferative Capacity from Human Cord

28  Blood Cryopreserved for 10 years," published in *Clinical and Experimental Immunology*

1  ("the Broxmeyer article").  In addition, the European patent was rejected as lacking novelty

2  in view of a prior use by Rubinstein in the mid-1980s, which was described in a declaration

3  that Rubinstein had submitted to the Opposition Division on or about November 10, 1988.

4      41.    At the time of the European revocation decision, the '645 Patent was being

5  prosecuted before the U.S. PTO.  Although the U.S. PTO was currently considering the

6  same issue, PharmaStem failed to disclose to the U.S. PTO the Opposition Division's

7  decision revoking European Patent No. 0343217.

8      42.    Both the European revocation decision and the Broxmeyer article were

9  material to the patentability of the '645 Patent.

10     43.    PharmaStem knew about the existence of both the European revocation

11  decision and the Broxmeyer article, knew that those documents were material to

12  patentability, and intended to deceive the U.S. PTO by failing to disclose them.

13     44.    In addition, the '645 Patent is unenforceable for inequitable conduct because

14  PharmaStem failed to disclose to the U.S. PTO Rubinstein's prior work (which was in

15  public use) relating to cryopreservation of cord blood before the filing date of the '645

16  Patent.  PharmaStem knew of Rubinstein's prior work relating to cryopreservation of cord

17  blood and its materiality to the patentability of the '645 Patent before and during the

18  prosecution of the '645 Patent.  PharmaStem purposefully withheld such material

19  information from the U.S. PTO with intent to deceive the U.S. PTO to obtain the issuance

20  of the '645 Patent.

21              **THIRTEENTH ADDITIONAL DEFENSE**

22     45.    The '427 Patent is unenforceable because PharmaStem failed to name the

23  correct inventor(s) to the '427 Patent with intent to deceive the U.S. PTO to obtain issuance

24  of the '427 Patent.

25     46.    On information and belief, Rubinstein made an inventive contribution to the

26  claimed subject matter of the '427 Patent, to the extent the '427 Patent discloses and claims

27  a patentable invention.  Before the filing date of the '427 Patent, Rubinstein collaborated

28  with the named inventors of the '427 Patent and contributed to the conception of the

1    invention(s) disclosed and claimed in the '427 Patent.  PharmaStem, the named inventors of

2    the '427 Patent and/or the prosecuting patent attorney(s) knew or had reason to know of

3    Rubinstein's role as an inventor and purposely failed to name him as an inventor or co-

4    inventor to the '427 Patent.

5         47.    Additionally, on information and belief, Boyse, a named inventor of the '427

6    Patent, is not an actual inventor of the '427 Patent to the extent the '427 Patent discloses

7    and claims a patentable invention.  Boyse did not make any inventive contribution to the

8    claimed subject matter of the '427 Patent.  Boyse's alleged contribution to the '427 Patent

9    was merely sharing his "idea" with others that stem cells from cord blood may contain

10   some utility.  Such "contribution" does not entitle Boyse to be named as an inventor.

11   PharmaStem, the other named inventors of the '427 Patent and/or the prosecuting patent

12   attorney(s) knew or had reason to know that Boyse was not an inventor, but nonetheless

13   purposely named him as an inventor to the '427 Patent with intent to deceive the U.S. PTO

14   to obtain issuance of the '427 Patent.

15                    **FOURTEENTH ADDITIONAL DEFENSE**

16        48.    CBR realleges and incorporates by reference Paragraphs 45-47 above as

17   though set forth herein.

18        49.    The '427 Patent is unenforceable for inequitable conduct because the named

19   inventors and/or the prosecuting attorney of the '427 Patent withheld material information

20   from the U.S. PTO with intent to deceive the U.S. PTO to obtain issuance of the '427

21   Patent.

22        50.    Under 37 C.F.R. § 1.56, PharmaStem was required to disclose all

23   information known to be material to patentability of the '427 Patent during the prosecution

24   of such patent.  Information material to patentability includes any information that refutes,

25   or is inconsistent with, a position PharmaStem takes in asserting an argument of

26   patentability.  The '427 Patent is unenforceable for inequitable conduct because

27   PharmaStem failed to disclose to the U.S. PTO Rubinstein's prior work (which was in

28   public use) relating to cryopreservation of cord blood before the filing date of the '427

1  Patent.  PharmaStem knew of Rubinstein's prior work relating to cryopreservation of cord

2  blood and its materiality to the patentability of the '427 Patent before and during the

3  prosecution of the '427 Patent.  PharmaStem purposefully withheld such material

4  information from the U.S. PTO with intent to deceive the U.S. PTO to obtain the issuance

5  of the '427 Patent.

6  **FIFTEENTH ADDITIONAL DEFENSE**

7      51.    CBR realleges and incorporates by reference Paragraphs 21-50 above as

8  though set forth herein.

9      52.    On information and belief, PharmaStem has come into this Court with

10  unclean hands and should therefore be estopped from obtaining any relief.

11  **SIXTEENTH ADDITIONAL DEFENSE**

12      53.    The '645 patent is a continuation-in-part of U.S. Patent Application Serial

13  No. 07/269,926, filed November 10, 1988, which issued as U.S. Patent 5,192,553 on March

14  9, 1993, which is a continuation-in-part of U.S. Patent Application Serial No. 07/119,746,

15  filed November 12, 1987, which originally issued as U.S. Patent 5,004,681 (the '681

16  patent) on April 2, 1991, for which a Re-Examination Certificate was issued on April 11,

17  2000.  Moreover, the U.S. PTO issued a Re-Examination Order for the '681 patent on

18  August 19, 2004.

19      54.    The '427 patent is a continuation of U.S. Patent Application Serial No.

20  07/950,356, filed September 24, 1992, now abandoned, which is a continuation of U.S.

21  Patent Application Serial No. 07/269,926, filed November 10, 1988, which issued as U.S.

22  Patent 5,192,553 on March 9, 1993, which is a continuation-in-part of U.S. Patent

23  Application Serial No. 07/119,746, filed November 12, 1987, which originally issued as the

24  '681 patent on April 2, 1991, for which a Re-Examination Certificate was issued on April

25  11, 2000.  Moreover, the U.S. PTO issued a Re-Examination Order for the '681 patent on

26  August 19, 2004.

27      55.    CBR began operations in 1994 and incorporated in February of 1995.  At

28  that time, and since 1993, the '681 patent's original claims stood rejected during

1  reexamination.  CBR made very substantial investments in its business prior to the new

2  issue date of the '681 patent on April 11, 2000, and these investments were never recouped.

3  These losses were incurred to build a laboratory and processing center, build a business that

4  employs more than 100 employees, and to educate the public and medical community as to

5  the existence, use and benefits of cord blood and thereby to create the market for CBR's

6  services.

7        56.    Under the doctrine of intervening rights, the court should protect CBR's

8  investments made before the reissue of the '681 patent (the predecessor to both the '645

9  and '427 patents) and deny PharmaStem's prayer for a Preliminary and Permanent

10  Injunction.

11        Through further investigation and the discovery process CBR may obtain

12  information and knowledge sufficient to raise additional defenses to the claims brought

13  against it, and will raise those additional defenses at that time.

14  /-/-/

15  /-/-/

16  /-/-/

17  /-/-/

18  /-/-/

19  /-/-/

20  /-/-/

21  /-/-/

22  /-/-/

23  /-/-/

24  /-/-/

25  /-/-/

26  /-/-/

27  /-/-/

28  /-/-/

**COUNTERCLAIMS**

Defendant and Counterclaimant CBR asserts the following counterclaims against PharmaStem pursuant to Federal Rule of Civil Procedure 13(a), and against Nicholas Didier, Stembanc, Inc. and Archibald A. Grabinski pursuant to Federal Rule of Civil Procedure 13(h).

**THE PARTIES**

1.     CBR is a California corporation having its principal place of business at 1200 Bayhill Drive, Suite 301, San Bruno, California 94066.

2.     Plaintiff and Counterdefendant PharmaStem purports to be a Delaware corporation with its principal place of business at 69 Prospect Avenue, Larchmont, New York 10538.

3.     Counterdefendant Nicholas Didier ("Didier") is an individual residing at 69 Prospect Avenue, Larchmont, New York 10538.

4.     Counterdefendant Stembanc, Inc. ("Stembanc") purports to be a Ohio corporation with its principal place of business at 100 Seventh Avenue, Chardon, Ohio 44024, which is doing business in the Northern District of California.  Stembanc is a licensee of PharmaStem to all of PharmaStem's patents, including the '645 Patent and 427 Patent.

5.     CBR is informed and believes, and therefore alleges, that counterdefendant Archibald A. Grabinski ("Grabinski") is an individual residing in Ohio.

6.     PharmaStem, Didier, Stembanc, and Grabinski are collectively and individually referred to herein as "Counterdefendants."

**JURISDICTION**

7.     This Court has original jurisdiction of the subject matter for each of the claims pursuant to 28 U.S.C. §§ 1337, 1338, and 1367.  All claims arise out of or are substantially related to, *inter alia*, § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a).

1

**VENUE**

2      8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a

3    substantial part of the false and misleading advertising, unfair competition, trade libel, and

4    interference with contractual or other economic relationships complained of in this

5    Complaint has occurred and is occurring in this judicial district, and because CBR and the

6    public have and continue to suffer injury in this judicial district as a result of the matters

7    complained of herein.

8

**GENERAL ALLEGATIONS**

9      9.      CBR is engaged in the business of storage or banking of umbilical cord

10   blood, collected at the birth of an infant.  Collecting and storing cord blood upon the birth

11   of an infant preserves a potentially life-saving asset.  CBR primarily market its services to

12   expectant parents.

13     10.     PharmaStem is the purported owner of U.S. Patents 5,004,681 ("the '681

14   patent"), 5,192,553 ("the '553 patent"), 6,461,645 ("the '645 patent"), 6,569,427 ("the '427

15   patent") and 6,605,275 ("the '275 patent") (the "PharmaStem Patents").

16     11.     On February 2002, PharmaStem filed suit in the United States District Court

17   for the District of Delaware against CBR and several other companies, alleging

18   infringement of the '681 and '553 patents, *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.,*

19   *et al.,* Civil Action No. 02-148-GMS ("Delaware Action").

20     12.     After a trial in October 2003, a jury verdict was entered in favor of

21   PharmaStem and against CBR and the other companies in the Delaware Action finding the

22   '681 and '553 patents valid and infringed, and awarding damages to PharmaStem in the

23   form of a royalty on revenues from infringing sales in the amount of 6.125%.

24     13.     All parties in the Delaware Action filed timely post-trial motions, including

25   a motion by PharmaStem for entry of a permanent injunction and motions by CBR and the

26   other defendants for judgment as a matter of law or for a new trial.  Those motions have

27   been fully briefed since early February 2004, and await decision by the Delaware District

28   Court.

**PharmaStem and Didier Conduct**

14.     On or about June 1, 2004, Didier, the CEO and President of PharmaStem, on PharmaStem's letterhead, sent letters to obstetricians and hospitals substantially in the form attached hereto as Exhibit A (the "PharmaStem Letter").  The PharmaStem Letter was sent to approximately 25,000 obstetricians and hospitals.

15.     The PharmaStem Letter contains false and misleading statements, particularly, and without limitation, the following:

> Patent infringement occurs when a person or institution practices all or part of a patented process.  In the case of umbilical cord blood collection by an Obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party.

16.     These statements are false because PharmaStem made no mention (1) of the sale or offer to sell requirement of 35 U.S.C. § 271(c), (2) of the "acting in concert or working together" requirement of 35 U.S.C. § 271(c), or (3) that the sale of a service cannot satisfy 35 U.S.C. § 271(c).

17.     The Delaware District Court found that the PharmaStem Letter contained false and misleading statements.  On July 2, 2004, the Honorable Gregory M. Sleet, Judge of the United States District Court for the District of Delaware, entered a Temporary Restraining Order, in response to a motion filed by CBR and the other defendants in the Delaware Action, finding that "PharmaStem's June 1, 2004 letter to Obstetricians (the 'PharmaStem Letter') contains false and misleading statements concerning the Court's rulings to date."  The Order is attached hereto as Exhibit B.

18.     Judge Sleet particularly found that the following statement in the PharmaStem Letter was false and misleading: "Patent infringement occurs when a person or institute practices all or part of a patented process."  The Order further states "[t]he Court finds this statement is misleading because it is black letter law that in order to prove contributory infringement of a method patent, the _entire_ patented process must be performed.  By suggesting that infringement would occur when only part of a process is performed, the letter is misleading."

19.     Judge Sleet also found that the following statement in the PharmaStem Letter was false and misleading: "In the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party."  The Order further states "[]the Court finds this statement misleading for at least the following reasons.  <u>First</u>, the sentence states that 'the Court ruled' with respect to the 'case' of 'umbilical cord blood collection by an Obstetrician.'  This Court never made any rulings regarding conduct by obstetricians.  There were no such allegations advanced in the trial of this matter.  <u>Second</u>, the sentence leaves out several important elements that must be proved to show contributory infringement.  This missing elements include:

> (1) that there must be a <u>sale</u> or <u>offer to sell</u> by the party that is accused of contributory infringement,
>
> (2) that the party accused of contributory infringement must be 'acting in concert or working together' with the other parties whose combined conduct performed each and every element of the patented process, and
>
> (3) that, under [35 U.S.C.] § 271(c), a sale of a service, as opposed to a sale of a tangible physical object, is not sufficient to satisfy the requirements of the contributory infringement statute.

The Court finds that without these elements, the statement is misleading."

20.     Judge Sleet ordered PharmaStem not to make any further false or misleading communications to obstetricians.

21.     PharmaStem, however, did not stop disseminating false and/or misleading statements after the Order.  On August 2, 2004, after PharmaStem filed a second patent infringement lawsuit against CBR, PharmaStem disseminated a press release ("Press Release"), attached hereto as Exhibit C, that contained false and misleading statements like those in the PharmaStem Letter.  The Press Release makes no mention of the sale or offer to sell requirement, the "acting in concert or working together" requirement, or that the sale of a service cannot satisfy 35 U.S.C. § 271(c), which was the basis for granting the Order on July 2.

22.    Under no proper interpretation of the PharmaStem Patents could an obstetrician be liable for patent infringement based on collecting umbilical cord blood at the time of a delivery and providing it to the patient for the patient's shipment of the blood to a bank.  PharmaStem's threat of such improper enforcement of the patents constitutes misuse of the PharmaStem Patents.

23.    PharmaStem and Didier have issued further statements that create a false implication with the consuming public as alleged herein.  The allegations in the counterclaims are, based on information and belief, representative of conduct by PharmaStem and Didier and not exclusive.

24.    The PharmaStem Letter has had its intended damaging effect on CBR.

25.    PharmaStem and Didier have acted with the purpose of injuring CBR in its business and property.

**Stembanc and Grabinski Conduct**

26.    Stembanc has been and is currently engaged in an advertising campaign that contains false and misleading statements about CBR.

27.    In 2004, on at least three separate occasions, Grabinski, the CEO and President of Stembanc, and Stembanc disseminated false and misleading statements to obstetricians, hospitals, and the public about CBR.

28.    Stembanc maintains a website at http://www.stembanc.com/compare.html in which it purports to compare its services to CBR's as follows:

## Compare and Enroll with Stembanc

| | Licensed(1) | Guilty Of Patent Infringement | FDA Registered | Price (2) |
|---|---|---|---|---|
| Stembanc | YES | NEVER | YES | $1395 |
| Cord Blood Registry (CBR) | NO (1) | YES - NOW | YES | $1740 |
| Viacord | NO (1) | YES – NOW | YES | $1700 |

Footnotes   (1) Refer to Press Releases for More Information
(2) Pricing Including Shipping as of 12/03

ANSWER AND COUNTERCLAIMS; JURY DEMAND;
STATEMENT OF INTERESTED PARTIES
CASE NO. C 04 3072 PVT

29.     In Stembanc's website, the statement that CBR is "guilty" of patent infringement is a purposefully deceptive statement that creates a false implication to the public that CBR has engaged in criminal conduct and is unable to conduct business lawfully.  Furthermore, the statement that CBR is not "licensed" is designed to imply to the consuming public that CBR lacks the regulatory authority to conduct the business which CBR lawfully performs.  These statements are false, misleading and deceptive.

30.     CBR has asked Stembanc and Grabinski to remove these false and misleading statements from Stembanc's website.  Stembanc and Grabinski ignored CBR's request, and these statements remain on Stembanc's website.

31.     Stembanc has placed advertisements in <u>Pregnancy Magazine</u> that contain similar false and misleading statements about CBR.

32.     On information and belief, on or before May 28, 2004, Stembanc made additional false and misleading statements about CBR.  This time, Stembanc contacted obstetricians and gynecologists directly and disseminated false and misleading statements that they would be liable for patent infringement if they recommended banking with CBR to their patients.  Stembanc and Grabinski further disseminated false and misleading statements to prospective customers of CBR that they should not bank with CBR because CBR is "faced with the prospect of business cessation."  CBR has had no plans of ceasing as a business, and Stembanc and Grabinski had no factual basis for this statement.  CBR sent Stembanc and Grabinski a letter demanding that Stembanc immediately cease making such false and misleading statements about CBR.  Stembanc did not stop, and continues to make materially false and misleading statements about CBR.

33.     On August 2, 2004, Stembanc and Grabinski issued a press release, posted on Stembanc's website, that contains materially false statements and creates a false implication with the consuming public that CBR's customers are making demands for refunds and claiming that they were misled by CBR.  Such statements are false, misleading, and designed to damage CBR.

34.     Stembanc and Grabinski have issued further statements that create a false

1  implication with the consuming public as alleged herein.  The allegations here are, based on

2  information and belief, representative of conduct by Stembanc and Grabinski and not

3  exclusive.

4       35.    Stembanc's and Grabinski's conduct has had its intended damaging effect on

5  CBR.  Stembanc and Grabinski have acted with the purpose of injuring CBR in its business

6  and property.

7                              **FIRST COUNTERCLAIM**

8         **INTENTIONAL INTERFERENCE WITH CONTRACTUAL OR OTHER**

9                        **ECONOMIC RELATIONSHIPS**

10      36.    The allegations contained in Paragraphs 1 through 35 are incorporated herein

11  as if set forth at length.

12      37.    The aforesaid conduct of Counterdefendants, and each of them, has had the

13  effect of interfering by wrongful means with CBR's contractual or other economic

14  relationships with persons who desire, or who may desire, to purchase their services for

15  cryopreservation and storage of umbilical cord blood.  Counterdefendants', and each of

16  their, conduct was undertaken with specific intent to harm CBR.

17      38.    As a result of Counterdefendants' and each of their, willful, wanton,

18  unprivileged, and unjustified interference with CBR's contractual or other economic

19  relationships, CBR has suffered damages, *inter alia*, in the form of lost profits on services

20  they would have performed but for Counterdefendants' interference.

21      39.    Unless Counterdefendants, and each of them, are enjoined and restrained

22  from continuing their unlawful conduct, CBR will continue to suffer damage in its business

23  or property by reason of such tortious interference.

24      40.    Counterdefendants', and each of their, conduct has been extreme and

25  outrageous, entitling CBR to punitive damages.

26  /-/-/

27  /-/-/

28  /-/-/

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND COUNTERCLAIM**

**NEGLIGENT INTERFERENCE WITH CONTRACTUAL OR OTHER**

**ECONOMIC RELATIONSHIPS**

41.    The allegations contained in Paragraphs 1 through 40 are incorporated herein as if set forth at length.

42.    The aforesaid conduct of Counterdefendants, and each of them, has had the effect of interfering by wrongful means with CBR's contractual or other economic relationships with persons who desire, or who may desire, to purchase their services for cryopreservation and storage of umbilical cord blood.  Counterdefendants', and each of their, negligent conduct was undertaken to harm CBR.

43.    As a result of Counterdefendants', and each of their, negligent, unprivileged, and unjustified interference with CBR's contractual or other economic relationships, CBR has suffered damages, *inter alia*, in the form of lost profits on services they would have performed but for Counterdefendants' interference.

44.    Unless Counterdefendants, and each of them, are enjoined and restrained from continuing their unlawful conduct, CBR will continue to suffer damage in its business or property by reason of such interference.

45.    Counterdefendants', and each of their, conduct has been extreme and outrageous, entitling CBR to punitive damages.

**THIRD COUNTERCLAIM**

**CALIFORNIA UNFAIR COMPETITION**

**[Common Law]**

46.    CBR incorporates the allegations of Paragraphs 1 through 45 above as though fully set forth in this paragraph.

47.    Counterdefendants', and each of their, advertising, as alleged above, constitutes unfair competition under California common law and has caused and/or is likely to cause damage to CBR and to the public in an amount to be determined at trial, and, unless restrained, will further damage CBR and the public.

1  **FOURTH COUNTERCLAIM**

2  **TRADE LIBEL**

3  **[California Common Law]**

4      48.    CBR incorporates the allegations of Paragraphs 1 through 47 above as

5  though fully set forth in this paragraph.

6      49.    The above-described statements contained in Counterdefendants', and each

7  of their, publicly disseminated advertisements and promotional materials disparage and

8  harm CBR in the public's mind by falsely and unfairly casting doubt upon the quality,

9  reliability, authenticity and value of CBR's stem cell services and business in general.

10      50.    Counterdefendants', and each of their, above-described statements were

11  false when made.

12      51.    Counterdefendants', and each of their, statements were made with

13  knowledge of their falsity or with reckless disregard for their truth or falsity.

14  **FIFTH COUNTERCLAIM**

15  **FEDERAL UNFAIR COMPETITION**

16  **[Lanham Act § 43(a), 15 U.S.C. § 1125(a)]**

17      52.    The allegations contained in paragraphs 1 through 51 are incorporated herein

18  as if set forth at length.

19      53.    Counterdefendants, and each of them, have sent advertisements and

20  promotions into interstate commerce via mail and other means in which they make false

21  and misleading statements to the public, physicians, and health care organizations, and

22  actual and potential customers of CBR to take business away from CBR and get those

23  actual or potential customers to do business with PharmaStem's licensees.

24      54.    The deception is material, and has influenced, and will continue to influence,

25  the purchasing decisions of CBR's potential and actual customers, particularly those who

26  plan to purchase CBR's services.

27      55.    The deceptive statements were disseminated to numerous physicians and

28  CBR's actual and potential customers throughout the United States, and was thereby placed

1    into interstate commerce.

2         56.     CBR has been and will continue to be injured as a result of these statements,

3    either by direct diversion of its sales to others or by a lessening of goodwill associated with

4    the CBR's services.

5         57.     The deceptive statements violate § 43(a) of the Lanham Act, codified at 15

6    U.S.C. § 1125(a), which prohibits Counterdefendants from using false, misleading, or

7    disparaging representations of fact that misrepresent the nature, characteristics, or qualities

8    of CBR's goods, services, or commercial activities.

9         58.     Counterdefendants', and each of their, conduct has been extreme and

10    outrageous, entitling CBR to punitive damages.

11         59.     Counterdefendants', and each of their, conduct has caused and/or is likely to

12    cause damage to CBR in an amount to be determined at trial, and unless restrained, will

13    cause further damage CBR.

14    **SIXTH COUNTERCLAIM**

15    **CALIFORNIA FALSE ADVERTISING**

16    **[Cal. Bus. & Prof. Code § 17500]**

17         60.     CBR incorporates the allegations of Paragraphs 1 through 59 above as

18    though fully set forth in this paragraph.

19         61.     Counterdefendants', and each of their, advertising, as alleged above, violates

20    § 17500 of the California Business and Professions Code and has caused and/or is likely to

21    cause damage to CBR and to the public in an amount to be determined at trial, and, unless

22    restrained, will further damage CBR and the public.

23    **SEVENTH COUNTERCLAIM**

24    **INVALIDITY OF THE '645 PATENT**

25         62.     In the Complaint, PharmaStem alleges that CBR infringes the '645 Patent.

26    CBR denies this allegation.  An actual and judiciable controversy exists between

27    PharmaStem and CBR with respect to the '645 Patent.

28         63.     Each claim of the '645 Patent is invalid for failure to meet one or more of

1    the conditions of patentability specified in Title 35 of the United States Code, including,

2    *inter alia*, 35 U.S.C. §§ 101, 102, 103 and 112.

3         64.     CBR is entitled to a declaratory judgment that the '645 Patent is invalid.

4                           **EIGHTH COUNTERCLAIM**

5                        **INVALIDITY OF THE '427 PATENT**

6         65.     In the Complaint, PharmaStem alleges that CBR infringes the '427 Patent.

7    CBR denies this allegation.  An actual and judiciable controversy exists between

8    PharmaStem and CBR with respect to the '427 Patent.

9         66.     Each claim of the '427 Patent is invalid for failure to meet one or more of

10   the conditions of patentability specified in Title 35 of the United States Code, including,

11   *inter alia*, 35 U.S.C. §§ 101, 102, 103 and 112.

12        67.     CBR is entitled to a declaratory judgment that the '427 Patent is invalid.

13                          **NINTH COUNTERCLAIM**

14                   **NON-INFRINGEMENT OF THE '645 PATENT**

15        68.     An actual and judiciable controversy exists between PharmaStem and CBR

16   with respect to the non-infringement of the '645 Patent.  Absent a declaration of non-

17   infringement, PharmaStem will continue to wrongfully assert the '645 Patent against CBR

18   and will thereby cause CBR irreparable injury and damage.

19        69.     CBR has not and does not and has willfully or otherwise infringe, contribute

20   to the infringement, or actively induce infringement of any valid and enforceable claim of

21   the '645 Patent.

22        70.     By this Counterclaim, CBR seeks a declaratory judgment that it has not and

23   does not willfully or otherwise infringe, contribute to the infringement, or actively induce

24   infringement of any valid and enforceable claims of the '645 Patent.

25                          **TENTH COUNTERCLAIM**

26                   **NON-INFRINGEMENT OF THE '427 PATENT**

27        71.     An actual and judiciable controversy exists between PharmaStem and CBR

28   with respect to the non-infringement of the '427 Patent.  Absent a declaration of non-

1  infringement, PharmaStem will continue to wrongfully assert the '427 Patent against CBR

2  and will thereby cause CBR irreparable injury and damage.

3        72.     CBR has not and does not and has willfully or otherwise infringe, contribute

4  to the infringement, or actively induce infringement of any valid and enforceable claim of

5  the '427 Patent.

6        73.     By this Counterclaim, CBR seeks a declaratory judgment that it has not and

7  does not willfully or otherwise infringe, contribute to the infringement, or actively induce

8  infringement of any valid and enforceable claims of the '427 Patent.

9  **ELEVENTH COUNTERCLAIM**

10  **UNENFORCEABILITY OF THE '645 PATENT**

11        74.     The '645 Patent is unenforceable because PharmaStem failed to name the

12  correct inventor(s) to the '645 Patent with intent to deceive the U.S. PTO to obtain issuance

13  of the '645 Patent.

14        75.     On information and belief, Pablo Rubinstein ("Rubinstein") made an

15  inventive contribution to the claimed subject matter of the '645 Patent, to the extent the

16  '645 Patent discloses and claims a patentable invention.  Before the filing date of the '645

17  Patent, Rubinstein collaborated with the named inventors of the '645 Patent and contributed

18  to the conception of the invention(s) disclosed and claimed in the '645 Patent.

19  PharmaStem, the named inventors of the '645 Patent and/or the prosecuting patent

20  attorney(s) knew or had reason to know of Rubinstein's role as an inventor and purposely

21  failed to name him as an inventor or co-inventor to the '645 Patent.

22        76.     Additionally, on information and belief, Edward A. Boyse ("Boyse"), a

23  named inventor of the '645 Patent, is not an actual inventor of the '645 Patent to the extent

24  the '645 Patent discloses and claims a patentable invention.  Boyse did not make any

25  inventive contribution to the claimed subject matter of the '645 Patent.  Boyse's alleged

26  contribution to the '645 Patent was merely sharing his "idea" with others that stem cells

27  from cord blood may contain some utility.  Such "contribution" does not entitle Boyse to be

28  named as an inventor.  PharmaStem, the other named inventors of the '645 Patent and/or

1    the prosecuting patent attorney(s) knew or had reason to know that Boyse was not an

2    inventor, but nonetheless purposely named him as an inventor to the '645 Patent with intent

3    to deceive the U.S. PTO to obtain issuance of the '645 Patent.

4        77.    The '645 Patent is also unenforceable for inequitable conduct because the

5    named inventors and/or the prosecuting attorney(s) of the '645 Patent withheld material

6    information from the U.S. PTO with intent to deceive the U.S. PTO to obtain issuance of

7    the '645 Patent.

8        78.    Under 37 C.F.R. § 1.56, PharmaStem was required to disclose all

9    information known to be material to patentability of the '645 Patent during the prosecution

10   of such patent.  Information material to patentability includes any information that refutes,

11   or is inconsistent with, a position PharmaStem takes in asserting an argument of

12   patentability.

13       79.    Concurrent with the '645 Patent prosecution proceeding before the U.S.

14   PTO, PharmaStem's European Patent No. 0343217, the European counterpart of the '645

15   Patent, was under review in an opposition proceeding before the Opposition Division of the

16   European Patent Office ("Opposition Division").  In the European opposition proceeding,

17   the Opposition Division considered issues and patentability arguments substantially similar

18   to those involved in the reexamination of the '645 Patent.

19       80.    A patentability argument considered in both the '645 proceeding and the

20   European opposition proceeding was the reliability of surrogate assays in predicting the

21   presence of stem cells in a sample of umbilical cord blood.

22       81.    On July 21, 1999, the Opposition Division revoked European Patent No.

23   0343217.  The Opposition Division issued a written opinion outlining the issues and

24   arguments of the PharmaStem and the five Opponents, and explaining the reasoning of the

25   Opposition Division in revoking the Patent ("the European revocation decision").

26       82.    In the European revocation decision, explicitly rejecting PharmaStem's

27   argument to the contrary, the Opposition Division noted "the broad consensus in the

28   scientific community as to the reliability of surrogate assays . . . as indirect evidence for the

1    presence of stem cells in a sample." The European revocation decision also found

2    PharmaStem's argument in contradiction to the opinion of one of the alleged inventors, Dr.

3    Hal E. Broxmeyer, in a 1997 article, "High-Efficiency Recovery of Immature

4    Haematopoietic Progenitor Cells with Extensive Proliferative Capacity from Human Cord

5    Blood Cryopreserved for 10 years," published in *Clinical and Experimental Immunology*

6    ("the Broxmeyer article"). In addition, the European patent was rejected as lacking novelty

7    in view of a prior use by Rubinstein in the mid-1980s, which was described in a declaration

8    that Rubinstein had submitted to the Opposition Division on or about November 10, 1988.

9        83.    At the time of the European revocation decision, the '645 Patent was being

10   prosecuted before the U.S. PTO. Although the U.S. PTO was currently considering the

11   same issue, PharmaStem failed to disclose to the U.S. PTO the Opposition Division's

12   decision revoking European Patent No. 0343217.

13       84.    Both the European revocation decision and the Broxmeyer article were

14   material to the patentability of the '645 Patent.

15       85.    PharmaStem knew about the existence of both the European revocation

16   decision and the Broxmeyer article, knew that those documents were material to

17   patentability, and intended to deceive the U.S. PTO by failing to disclose them.

18       86.    In addition, the '645 Patent is unenforceable for inequitable conduct because

19   PharmaStem failed to disclose to the U.S. PTO Rubinstein's prior work (which was in

20   public use) relating to cryopreservation of cord blood before the filing date of the '645

21   Patent. PharmaStem knew of Rubinstein's prior work relating to cryopreservation of cord

22   blood and its materiality to the patentability of the '645 Patent before and during the

23   prosecution of the '645 Patent. PharmaStem purposefully withheld such material

24   information from the U.S. PTO with intent to deceive the U.S. PTO to obtain the issuance

25   of the '645 Patent.

26       87.    By this Counterclaim, CBR seeks a declaratory judgment that the '645

27   Patent is unenforceable.

28

1

**TWELFTH COUNTERCLAIM**

2

**UNENFORCEABILITY OF THE '427 PATENT**

3      88.     The '427 Patent is unenforceable because PharmaStem failed to name the

4    correct inventor(s) to the '427 Patent with intent to deceive the U.S. PTO to obtain issuance

5    of the '427 Patent.

6      89.     On information and belief, Rubinstein made an inventive contribution to the

7    claimed subject matter of the '427 Patent, to the extent the '427 Patent discloses and claims

8    a patentable invention.  Before the filing date of the '427 Patent, Rubinstein collaborated

9    with the named inventors of the '427 Patent and contributed to the conception of the

10   invention(s) disclosed and claimed in the '427 Patent.  PharmaStem, the named inventors of

11   the '427 Patent and/or the prosecuting patent attorney(s) knew or had reason to know of

12   Rubinstein's role as an inventor and purposely failed to name him as an inventor or co-

13   inventor to the '427 Patent.

14     90.     Additionally, on information and belief, Boyse, a named inventor of the '427

15   Patent, is not an actual inventor of the '427 Patent to the extent the '427 Patent discloses

16   and claims a patentable invention.  Boyse did not make any inventive contribution to the

17   claimed subject matter of the '427 Patent.  Boyse's alleged contribution to the '427 Patent

18   was merely sharing his "idea" with others that stem cells from cord blood may contain

19   some utility.  Such "contribution" does not entitle Boyse to be named as an inventor.

20   PharmaStem, the other named inventors of the '427 Patent and/or the prosecuting patent

21   attorney(s) knew or had reason to know that Boyse was not an inventor, but nonetheless

22   purposely named him as an inventor to the '427 Patent with intent to deceive the U.S. PTO

23   to obtain issuance of the '427 Patent.

24     91.     The '427 Patent is also unenforceable for inequitable conduct because the

25   named inventors and/or the prosecuting attorney of the '427 Patent withheld material

26   information from the U.S. PTO with intent to deceive the U.S. PTO to obtain issuance of

27   the '427 Patent.

28

**- 26 -**

92.    Under 37 C.F.R. § 1.56, PharmaStem was required to disclose all information known to be material to patentability of the '427 Patent during the prosecution of such patent. Information material to patentability includes any information that refutes, or is inconsistent with, a position PharmaStem takes in asserting an argument of patentability. The '427 Patent is unenforceable for inequitable conduct because PharmaStem failed to disclose to the U.S. PTO Rubinstein's prior work (which was in public use) relating to cryopreservation of cord blood before the filing date of the '427 Patent. PharmaStem knew of Rubinstein's prior work relating to cryopreservation of cord blood and its materiality to the patentability of the '427 Patent before and during the prosecution of the '427 Patent. PharmaStem purposefully withheld such material information from the U.S. PTO with intent to deceive the U.S. PTO to obtain the issuance of the '427 Patent.

93.    By this Counterclaim, CBR seeks a declaratory judgment that the '427 Patent is unenforceable.

## **PRAYER FOR RELIEF**

WHEREFORE, CBR requests that this Court:

1.    Grant CBR preliminary and permanent injunctions against Counterdefendants:

a.    pursuant to 15 U.S.C. § 1116 and California law, enjoining and restraining Counterdefendants and their officers, directors, affiliates, representatives, agents, servants and employees from publishing and publicly disseminating any statement, either directly or indirectly, concerning the nature, characteristics, qualities, and origins of CBR and its services in any way so as to constitute unfair competition or deceptive, untrue, or misleading advertising;

b.    pursuant to the powers granted to this Court in 15 U.S.C. § 1116 and California law, ordering Counterdefendants to issue a statement retracting their false and/or misleading and deceptive statements concerning

1    CBR and its services by distributing such retraction, in a form approved by

2    CBR, to all recipients of their promotional materials containing their

3    unlawful statements, and by posting such retraction on their Internet

4    websites (www.pharmastem.com and www.stembanc.com) for at least six

5    months;

6        c.    pursuant to 15 U.S.C. § 1118, ordering that all of

7    Counterdefendants' advertisements and promotional materials that contain

8    unlawful statements concerning CBR and its services be recalled and

9    destroyed;

10        d.    pursuant to California Business and Professions Code §

11    17535, *inter alia*, ordering that Counterdefendants immediately cease and

12    desist from making reference, either directly or indirectly, to CBR and its

13    services in any way so as to constitute unfair competition or deceptive,

14    untrue, or misleading advertising;

15    2.    Require Counterdefendants to account to CBR for any and all profits derived

16    by Counterdefendants for all damages sustained by CBR by reason of Counterdefendants'

17    acts of, *inter alia*, false and deceptive advertising, unfair competition, trade libel, and

18    interference complained of in this Complaint.

19    3.    Award CBR:

20        a.    all damages sustained by reason of the wrongful acts

21    complained of herein in an amount to be proven at trial;

22        b.    treble the amount of the actual damages suffered by CBR

23    pursuant to 15 U.S.C. § 1117;

24        c.    punitive damages against Counterdefendants and in favor of

25    CBR, by reason of Counterdefendants' misconduct, in an amount according

26    to proof;

27        d.    costs of this action; and

28        e.    reasonable attorneys' fees, in that this is an exceptional case,

1    within the meaning of 15 U.S.C. § 1117(a).

2        4.    Dismiss PharmaStem's Complaint with prejudice;

3        5.    Deny PharmaStem's request for a judgment that CBR has willfully or

4    otherwise infringed, contributed to the infringement of, or induced infringement of the '645

5    Patent and the '427 Patent;

6        6.    Determine that PharmaStem is entitled to no damages for, or injunctive relief

7    against, any alleged infringement by CBR;

8        7.    Deny PharmaStem's request for injunctive relief;

9        8.    Deny PharmaStem's request for alleged damages;

10       9.    Deny PharmaStem's request for reasonably royalty;

11       10.   Deny PharmaStem's request for trebled or increased damages;

12       11.   Deny PharmaStem's request for prejudgment interest;

13       12.   Deny PharmaStem's request for its attorneys' fees and alleged costs;

14       13.   Determine that PharmaStem take nothing by reason of its Complaint;

15       14.   Determine that this is an extraordinary case and award CBR its attorney's

16   fees and litigation expenses under 28 U.S.C. § 1927, 35 U.S.C. § 285, and any other

17   applicable statute or rule;

18       15.   Declare that the '645 Patent and the '427 Patent are invalid and/or

19   unenforceable;

20       16.   Declare the CBR has not and does not willfully or otherwise infringe,

21   contribute to the infringement, or actively induce infringement of any valid and enforceable

22   claim of the '645 Patent and the '427 Patent; and

23   /-/-/

24   /-/-/

25   /-/-/

26   /-/-/

27   /-/-/

28   /-/-/

ANSWER AND COUNTERCLAIMS; JURY DEMAND;
STATEMENT OF INTERESTED PARTIES
CASE NO. C 04 3072 PVT

1     17.     Award CBR such other and further relief as the Court deems appropriate.

2

3     Dated:  August 23, 2004.

4                                              PILLSBURY WINTHROP LLP
                                               William F. Abrams
5                                              Thomas F. Chaffin
                                               Chang H. Kim
6                                              Peter H. Nohle
                                               2475 Hanover Street
7                                              Palo Alto, CA 94304-1114

8

                                               By _____
9
                                               Attorneys for Defendant and Counterclaimant
10                                             CBR SYSTEMS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2

    Defendant and Counterclaimant CBR demands a jury trial for all claims as provided

3

for in Federal Rule of Civil Procedure 38.

4

5

    Dated:  August 23, 2004.

6
                                    PILLSBURY WINTHROP LLP
                                    William F. Abrams
7                                   Thomas F. Chaffin
                                    Chang H. Kim
8                                   Peter H. Nohle
                                    2475 Hanover Street
9                                   Palo Alto, CA 94304-1114

10

11                                  By _____
                                    Attorneys for Defendant and Counterclaimant
12                                  CBR SYSTEMS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                      **STATEMENT OF INTERESTED PARTIES**

3          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than

4   the named parties, there is no such interest to report in that CBR has no parent corporation.

5   CBR notes that it is a privately held corporation, with hundreds of individual shareholders.

6   If the Court requires a list of all shareholders, CBR will make the list available within seven

7   business days of such a request.

8

9          Dated:  August 23, 2004.

10                                              PILLSBURY WINTHROP LLP
                                                William F. Abrams
11                                              Thomas F. Chaffin
                                                Chang H. Kim
12                                              Peter H. Nohle
                                                2475 Hanover Street
13                                              Palo Alto, CA 94304-1114

14

15                                      By _____

16                                      Attorneys for Defendant and Counterclaimant
                                        CBR SYSTEMS, INC.
17

18

19

20

21

22

23

24

25

26

27

28