1  PAUL J. ANDRE, Bar No. 196585
2  LISA KOBIALKA, Bar No. 191404
   PERKINS COIE LLP
3  101 Jefferson Drive
   Menlo Park, CA  94025-1114
4  Telephone:  (650) 838-4300
   Facsimile:  (650) 838-4350
5
6  Attorneys for PharmaStem Therapeutics, Inc.

7

8              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
9                 SAN FRANCISCO DIVISION

10

11 PHARMASTEM THERAPEUTICS, INC., a          Case No.: 04- 3072 JSW
   Delaware corporation,
12
                      Plaintiff,             PHARMASTEM THERAPEUTICS,
13                                           INC.'S MOTION TO DISMISS
              v.                             DEFENDANT CBR'S FIRST, SECOND,
14                                           THIRD, FOURTH, FIFTH, SIXTH AND
   CORD BLOOD REGISTRY, INC. dba CBR, a      SEVENTH COUNTERCLAIMS
15 Delaware corporation, and SUTTER HEALTH,
   INC., a California corporation,           Judge:   Jeffrey S. White
16                                           Location: Courtroom 2
                      Defendants.            Date:    December 10, 2004 at 9:00 a.m.
17

18

19 AND RELATED COUNTERCLAIMS

20

21

22

23

24

25

26

27

28

1
2

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES...................................................................2

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................................2

II.     SUMMARY OF THE ISSUES TO BE DECIDED .....................................................2

III.    STATEMENT OF THE RELEVANT FACTS.............................................................3

IV.     ARGUMENT.................................................................................................................5

        A.      A Motion To Dismiss Is Proper Where CBR Has Failed To State A l Claim
                Upon Which Relief Can Be Granted.................................................................5

        B.      CBR's Counterclaim Fails To State Cognizable Claims For IIntentional
                And Negligent Interference With Contractual Or Other Economic
                Relationships Against PharmaStem. ................................................................6

                1.      The First Counterclaim For Intentional Interference Fails To Allege
                        The Actual Disruption Of Any Relationship As Result of
                        PharmaStem. ..........................................................................................6

                2.      The Second Counterclaim For Negligent Interference Fails To
                        Allege The Actual Disruption Of Any Relationship As Result of
                        PharmaStem And That PharmaStem Owed CBR Any Duty Of
                        Care. ........................................................................................................7

                3.      The Claims For Intentional And Negligent Interference Cannot
                        Include Speculative Expectancies. ........................................................9

        C.      CBR's Fifth Counterclaim For Violation Of The Lanham Act Fails As A
                Matter Of Law...................................................................................................9

                1.      The Allegedly Offending Language Was Not Made In Bad Faith
                        And Is Not False. .................................................................................10

                2.      The Allegedly Offending Language Is Not Commercial Speech Or
                        An Advertisement Which Is Required For A Violation Of The
                        Lanham Act. .........................................................................................13

        D.      *Res Judicata* Bars CBR's Counterclaims For Interference, Unfair
                Competition, Trade Libel, and False Advertising.............................................14

PHARMASTEM THERAPEUTICS, INC.'S MOTION TO DISMISS DEFENDANT
CBR'S FIRST, SECOND THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH
COUNTERCLAIMS

CASE NO. 04-3072 JSW                                    -i-                    [40923-0005/BY042540.006]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E.    Since PharmaStem's Conduct Has Not Been Unlawful, CBR Does Not Have A Claim For Interference, Unfair Competition, Trade Libel, and False Advertising. ..................................................................................16

V.    CONCLUSION..................................................................................16

1

TABLE OF AUTHORITIES

2

**Cases**

3

4

*Accuimage Diagnostics Corp. v. Terarecon, Inc.,*
260 F.Supp.2d 941 (N.D. Cal. 2003) ...................................................................5

5

*C.R. Bard, inc. v. M3 Sys., Inc.,*
157 F.3d 1340 (Fed. Cir. 1998) .........................................................................11

6

7

*Cellars v. Pacific Coast Packaging, Inc.,*
189 F.R.D. 5751 (N.D.Cal. 1999) .......................................................................9

8

9

*Clark v. Bear Stearns & Co., Inc.,*
966 F.2d 1318 (9th Cir. 1992) ...........................................................................16

10

*Concrete Unlimited, Inc. v. Cementcraft, Inc.,* 776 F.2d 1537 (Fed. Cir. 1985)...................11

11

*E.I. DuPont De Nemours and Co. v. Monsanto Co.,*
903 F.Supp. 680 (D.Del. 1995) .........................................................................12

12

13

*Fuller Brothers, Inc. v. Int'l Marketing, Inc.,* 870 F.Supp. 299 (D. Or. 1994) ......................14

14

*Golan v. Pingel Enterprise, Inc.,*
310 F.3d 1360 (Fed. Cir. 2002) .................................................................11, 13

15

16

*Hsu v. Oz Optics Ltd.,*
211 F.R.D. 615 (N.D. Cal. 2002) ....................................................................7, 12

17

*Hunter Douglas, Inc. v. Mone Design, Inc.,* 153 F.3d 1318 (Fed. Cir. 1998).......................11

18

*Intermedics, Inc. v. Ventritex, Inc.,* 775 F.Supp.
1258 (N.D.Cal. 1991) .......................................................................................5

19

20

*Joy Technologies, Inc. v. Flakt, Inc.,*
6 F.3d 770 (Fed. Cir. 1993) ..............................................................................13

21

22

*Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891 (Fed. Cir. 1998)....................11

23

*Neilson v. Union Bank of Cal., N.A.,*
290 F.Supp.2d 1101 (C.D. Cal. 2003).................................................................5

24

25

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.,*
02-148-GMS ("Delaware Action").....................................................................2

26

27

28

PHARMASTEM THERAPEUTICS, INC.'S MOTION TO DISMISS DEFENDANT
CBR'S FIRST, SECOND THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH
COUNTERCLAIMS

CASE NO. 04-3072 JSW                    -iii-                    [40923-0005/BY042540.006]

*Rice v. Fox Broadcasting Co.*,
  330 F.3d 1170 (9th Cir. 2003).................................................................10, 13

*Robi v. Five Platters, Inc.*,
  838 F.2d 318 (9th Cir. 1988) ...........................................................................15

*Shaw v. State of California Dept. of Alcoholic Beverage Control*,
  788 F.2d 600 n. 2(9th Cir. 1986)......................................................................14

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
  983 F.Supp.1303 (N.D.Cal. 1997) ...................................................................5, 7

*Stewart v. U.S. Bancorp*,
  297 F.3d 953 (9th Cir. 2002)............................................................................14

*Weststeyn Dairy 2 v. Eades Commodities Co.*,
  280 F.Supp.2d 1044 (E.D. Cal. 2003)................................................................7

*Zenith Elecs. Corp. v. Exzec, Inc.*,
  182 F.3d 1340 (Fed. Cir. 1999)........................................................................11

**Statutes**

35 U.S.C. § 271(c) ...............................................................................................9, 10

Lanham Act, 15 U.S.C. § 1125(a) ...........................................................................2, 3

Rule 8(a)(2), F.R.Civ.P.............................................................................................5

**Other Authorities**

California Business & Professions Code § 17500 ......................................................3

PHARMASTEM THERAPEUTICS, INC.'S MOTION TO DISMISS DEFENDANT
CBR'S FIRST, SECOND THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH
COUNTERCLAIMS

CASE NO. 04-3072 JSW                              -iv-                    [40923-0005/BY042540.006]

**NOTICE OF MOTION AND MOTION**

On December 10, 2004 at 9:00 a.m., or as soon thereafter as the matter may be heard by Judge Jeffrey S. White in Courtroom 2 of the United States District Court, 450 Golden Gate, Ave., San Francisco, CA 94102, Plaintiff PharmaStem Therapeutics, Inc. ("PharmaStem") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) will move to dismiss Cord Blood Registry, Inc.'s ("CBR's") First, Second, Third, Fourth, Fifth, Sixth and Seventh Counterclaim for failure to state a cause of action and request judicial notice. This motion is based on the accompanying memorandum of points and authorities and any arguments presented at the hearing on this motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff PharmaStem Therapeutics, Inc. ("PharmaStem") respectfully requests the Court to grant this motion to dismiss with prejudice Cord Blood Registry, Inc.'s ("CBR's") first through seventh counterclaims because CBR has failed to state a cause of action.  The basis for CBR's counterclaims are statements PharmaStem made in a letter to obstetricians and hospitals and a press release to the public about a number of patent infringement actions PharmaStem filed against obstetricians and unlicensed cord blood banks.  CBR's allegations in support of its first and second counterclaims for intentional and negligent interference are deficient, missing key elements of both causes of action.  Additionally, the statements PharmaStem has made are lawful. It therefore does not create a basis for the first through seventh counterclaims, much less violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Finally, CBR's counterclaims are barred by the doctrine of *res judicata*.  In a case pending before the United States District Court for the District of Delaware in the action entitle *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, Case No. 02-148-GMS ("Delaware Action"), CBR already sought relief based on the same conduct that it alleges is the basis for its first through seventh counterclaims.[1]  CBR should not be permitted to take a second bite at the apple.  For these reasons, PharmaStem seeks to have these counterclaims dismissed with prejudice.

## II.    SUMMARY OF THE ISSUES TO BE DECIDED

A.    Has CBR failed to plead a claim for intentional interference with contractual and other economic relations?

---

[1]  To the extent necessary, PharmaStem requests judicial notice of the Delaware Action and has provided the Court with copies of the relevant papers filed in the pending Delaware Action.

PHARMASTEM THERAPEUTICS, INC.'S MOTION TO DISMISS DEFENDANT CBR'S FIRST, SECOND THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH COUNTERCLAIMS

CASE NO. 04-3072 JSW                    -2-                    [40923-0005/BY042540.006]

B.  Has CBR failed to plead a claim for negligent interference with contractual and other economic relations?

C.  Has CBR failed to plead a cause of action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)?

D.  Is CBR's first through seventh counterclaims barred by the doctrine of *res judicata*?

E.  Does CBR's first through seventh counterclaims fail to state a cause of action because PharmaStem did not engage in any unlawful conduct?

## III.    STATEMENT OF THE RELEVANT FACTS

PharmaStem is the owner of five patents ("PharmaStem's Patents) that are from the same patent family. Counterclaims ¶ 10. On July 28, 2004, PharmaStem filed a patent action against CBR and Sutter Health, Inc., asserting infringement of two PharmaStem's Patents, U.S. Patent Nos. 6,461,645 and 6,569,427 (the "Patents-In-Suit"). On August 23, 2004, CBR filed its Answer and Counterclaims against PharmaStem, among others. This is not the first patent litigation that PharmaStem has initiated against CBR. On February 2002, PharmaStem filed the Delaware Action against CBR and several other companies, alleging infringement of two patents from the same family as the Patents-In-Suit. *See* Counterclaims ¶¶ 11-13. In the Delaware Action, "a jury verdict was entered in favor of PharmaStem and against CBR ... finding [PharmaStem's patents] valid and infringed." Counterclaims ¶ 12. On the same day the Complaint in this case was filed, PharmaStem filed a Notice of Pendency of Other Action Pursuant to Local Rule 3-13 regarding the Delaware Action and the jury verdict form which was entered by the Court, in which the jury found that CBR willfully infringed PharmaStem's patents. *See* July 28, 2004 Notice of Pendency, Docket No. 2.

In its counterclaims, CBR has asserted claims against PharmaStem for intentional and negligent interference with contractual or other economic relationships, unfair competition, trade libel, violation of § 43(a) of the Lanham Act ("Section 43(a)"), and violation of California

1    Business & Professions Code § 17500.[2]  To support these counterclaims, CBR alleges that

2    PharmaStem made a number of allegedly offending statements in a June 1, 2004 letter ("Letter")

3    to obstetricians, which informed obstetricians of PharmaStem's position regarding obstetricians'

4    potential liability for patent infringement if they deal with unlicensed cord blood banks, such as

5    CBR.  Counterclaims ¶¶ 14-20 and Exhibit A thereto.  CBR also points to an August 2, 2004

6    PharmaStem press release ("Press Release") announcing the fact that PharmaStem initiated a

7    number of new lawsuits against unlicensed cord blood banks, including CBR, as well as

8    obstetricians.  *Id.* ¶ 21 and Exhibit C thereto.  On September 8, 2004, PharmaStem filed a Notice

9    of Pendency of Other Actions Pursuant to Civil Local Rule 3-13, identifying these other lawsuits.

10   *See* September. 8, 2004 Notice of Pendency, Docket No. 13.

11        As described in its counterclaims, CBR brought its claims regarding PharmaStem's Letter

12   to the attention of the Honorable Gregory M. Sleet, the judge in the Delaware Action.

13   Counterclaims ¶¶ 17-20.  CBR, along with the other defendants in the Delaware Action, moved

14   for a temporary restraining order and injunctive relief, which was granted.  Exh. A to Declaration

15   of Lisa Kobialka ("Kobialka Decl."), filed herewith; Counterclaims, Exh. B.  PharmaStem filed its

16   response to the motion.  Kobialka Decl., Exh. B.  On August 4, 2004, CBR, along with the other

17   defendants in the Delaware Action, filed another motion in connection with PharmaStem's Press

18   Release, which to date is still pending.  Kobialka Decl., Exh. C.  The parties subsequently held a

19   telephone conference with the judge on August 6, 2004 regarding the Press Release.  *See*

20   Kobialka Decl., Exh. D (Delaware Action Court Docket).

21

22

23

24

25

26        [2] CBR is also seeking a declaratory judgment regarding infringement, validity and enforceability

27   of the Patents-In-Suit.

28   PHARMASTEM THERAPEUTICS, INC.'S MOTION TO DISMISS DEFENDANT
     CBR'S FIRST, SECOND THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH
     COUNTERCLAIMS
     CASE NO. 04-3072 JSW                    -4-                    [40923-0005/BY042540.006]

1

## IV.    ARGUMENT

2

### A.    A Motion To Dismiss Is Proper Where CBR Has Failed To State A l

3

Claim Upon Which Relief Can Be Granted.

4

Pursuant to Federal Rule of Civil Procedure 12(b)(6), PharmaStem is moving to dismiss

5

CBR's counterclaim against it for failure to state a claim upon which relief can be granted.  *Silicon*

6

*Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp.1303, 1307 (N.D.Cal. 1997).  "All material

7

allegations in the complaint will be taken as true and construed in light most favorable to the

8

[counterclaimant]."  *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F.Supp.2d 941, 947

9

(N.D. Cal. 2003).  The Court, however, "need not accept as true conclusory allegations or legal

10

characterizations cast in the form of factual allegations."  *Silicon Knights*, 983 F.Supp. at 1307.

11

"Pursuant to Rule 8(a)(2), F.R.Civ.P., a complaint must contain a 'short and plain statement of the

12

claim showing that the pleader is entitled to relief ...'  To assert claims against individual

13

defendants, a complaint must contain allegations indicating how the defendant violated the law or

14

injured the plaintiff to survive a motion to dismiss."  *Id.* at 1318.  CBR, however, has failed to

15

provide a plain statement of a claim that would entitled it to relief.

16

In this case, to the extent necessary, PharmaStem requests that the Court take judicial

17

notice of the filings in the Delaware Action.  *See* Kobialka Decl., Exhs. A-D.  The Court "may

18

take judicial notice of facts outside the pleadings without converting the motion into one for

19

summary judgment only when the facts are properly the object of 'strict notice.'"  *Intermedics,*

20

*Inc. v. Ventritex, Inc.*, 775 F.Supp. 1258, 1261 (N.D.Cal. 1991) (citations omitted).  Facts

21

properly held the object of judicial notice in the context of a motion to dismiss can include items

22

in the record of the case or matters of general public records.  *Id.*; *see also Neilson v. Union Bank*

23

*of Cal., N.A.*, 290 F.Supp.2d 1101, 1113 (C.D. Cal. 2003)(judicial notice of court orders and

24

filings).

25

26

27

28

**B.    CBR's Counterclaim Fails To State Cognizable Claims For Intentional And Negligent Interference With Contractual Or Other Economic Relationships Against PharmaStem.**

      **1.    The First Counterclaim For Intentional Interference Fails To Allege The Actual Disruption Of Any Relationship As Result of PharmaStem.**

CBR's first counterclaim for intentional interference with contractual or other economic relationships fails to sufficiently allege facts necessary to establish such a claim. The following five elements are necessary for a claim of intentional interference with contractual relations: (1) a valid contract between CBR and a third party; (2) PharmaStem's knowledge of this contract; (3) PharmaStem's intentional acts were designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Silicon Knights*, 983 F.Supp. at 1309. Nowhere in CBR's counterclaim is there an allegation that: (a) there was an actual breach or disruption of a valid contract between it and a third party due to PharmaStem's conduct, (b) that PharmaStem knew of such a contract, (c) that PharmaStem intentionally attempted to induce breach or disruption of the unnamed contractual relationship, and (d) that CBR was injured as a result of PharmaStem's intentional behavior.

The only allegation in CBR's counterclaims directed at pleading "interference" with CBR's relationships is the statement that PharmaStem's conduct "has had the effect of interfering …with CBR's contractual or other economic relationships with persons who desire, or who may desire to purchase their [sic] services." Counterclaims ¶ 37. Merely having "the effect of interfering" falls well short of pleading that PharmaStem's acts have caused an actual breach or disruption of some alleged contractual relationship between CBR and a third party. Furthermore, while "other economic relationships" used in CBR's first and second counterclaims is hopelessly ambiguous as CBR has not identified what this means in its counterclaims, CBR has not alleged that PharmaStem's acts caused an actual breach or disruption of any "other economic relationships."

Case 1:05-cv-00153-GMS    Document 119    Filed 03/31/2005    Page 12 of 21

1   Likely because there is no predicate allegation of an "actual breach or disruption" of

2   CBR's relationship with a third party, CBR's counterclaim also does not allege that PharmaStem

3   had knowledge of CBR's alleged relationship, that PharmaStem acted in a manner such that it

4   intentionally sought to disrupt that relationship, and that CBR was actually injured as a result of

5   the "actual breach or disruption" of that relationship.  While CBR attempts to allege that

6   PharmaStem's conduct was willful and that CBR has suffered damages in the form of lost profits

7   due to some alleged interference, CBR, at no time, actually alleges that PharmaStem's acts

8   intentionally caused an actual breach or disruption of a relationship with any third party that

9   damaged CBR.  Counterclaims ¶¶37-38.  Without these allegations, CBR's first counterclaim fails

10  to state a cause of action as a matter of law.  CBR's first counterclaim does not satisfy Rule 8(a)'s

11  requirements since there are no facts from which the Court or PharmaStem can infer that some

12  contract was actually disrupted or impeded, that PharmaStem knew of such a contract and

13  intentionally sought to disrupt it through wrongful means, and that CBR suffered any damages as

14  a result of some actual breach of a contractual relationship.  *See Silicon Knights*, 983 F.Supp. at

15  1310 (dismissal of intentional interference with contractual relations dismissed).

16

17          **2.      The Second Counterclaim For Negligent Interference Fails To
                      Allege The Actual Disruption Of Any Relationship As Result of
18                    PharmaStem And That PharmaStem Owed CBR Any Duty Of
                      Care.**
19
20          CBR's second counterclaim for negligent interference with contractual or other economic

21  relationships also fails to sufficiently allege facts necessary to establish such a claim.  This

22  counterclaim, a virtual copy of the first counterclaim for intentional interference with a few minor

23  changes regarding negligence, misses key elements for presenting such a claim.  As a preliminary

24  matter, negligent interference only arises when the accused owes the claimant a duty of care.

25  *Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F.Supp.2d 1044, 1090 (E.D. Cal. 2003); *see

26  also Silicon Knights*, 983 F.Supp. at 1313; *Hsu v. Oz Optics Ltd.*, 211 F.R.D. 615, 621 (N.D.

27

PHARMASTEM THERAPEUTICS, INC.'S MOTION TO DISMISS DEFENDANT
CBR'S FIRST, SECOND THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH
COUNTERCLAIMS
CASE NO. 04-3072 JSW                    -7-                    [40923-0005/BY042540.006]

Cal. 2002).[3]  "This duty may arise from a contractual, statutory or 'special relationship' between

[the parties]."  *Silicon Knights*, 983 F.Supp. at 1313.  There is nothing in CBR's counterclaims

that pleads, much less suggests, that PharmaStem somehow owed CBR a special duty of care and

breached that duty.  PharmaStem and CBR are not competitors, and they do not have any

contractual, statutory or otherwise special relationship.  Merely claiming that a wrongful act has

been committed without more does not satisfy this element of a negligent interference claim.  *Id.*

at 1313 (if no special relationship or duty required, then a negligent interference claim "would

necessarily be subsumed within the tort of intentional interference with economic relations").

This alone makes CBR's claim for negligent interference implausible.

     Moreover, CBR did not plead a number of the basic elements of negligent interference.

The five elements of this claim are: (1) an economic relationship between CBR and a third party

or parties; (2) PharmaStem's knowledge of that relationship; (3) negligent acts to disrupt that

relationship; (4) wrongfulness of the interference by some legal measure other than the fact of the

interference itself; (5) actual disruption of the relationship; and (6) economic harm proximately

caused by the acts of PharmaStem.  *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575,

581 (N.D.Cal. 1999).  Like CBR's faulty counterclaim for intentional interference, CBR's second

counterclaim does not identify (a) any actual disruption of an economic relationship with a

specific third party, (b) that PharmaStem knew of that relationship, (c) that PharmaStem's

conduct interfered with that relationship and (d) that CBR was harmed as a result of the actual

disruption.

     Once again, CBR's allegation that PharmaStem's conduct "has had the effect of

interfering" with CBR's contractual or economic relationships is a far cry from an actual

disruption of a relationship.  Counterclaim ¶ 42.  Like the intentional interference counterclaim,

---

[3] Ordinarily this tort is raised when a third party is affected by the accused's negligent performance
under a contract, but is unable to sue under the contract because the third party lacks privity.  *Hsu*, 211
F.R.D. at 621.

1  CBR's negligent interference claim does not establish that PharmaStem knew of a relationship,

2  that it actually interfered with the relationship such that CBR was damaged. Without these basic

3  elements, CBR's second counterclaim for negligent interference fails as a matter of law.

### 3.  The Claims For Intentional And Negligent Interference Cannot Include Speculative Expectancies.

6  In addition to the fact that PharmaStem's conduct has not actually interfered with CBR's

7  relationship with any specific relationship, CBR's first and second counterclaims are also incurable

8  because they do not identify the "persons who desire, or who may desire, to purchase [CBR's]

9  services." Counterclaims ¶¶ 37, 42. "The law precludes recovery for overly speculative

10 expectancies by initially requiring proof the business relationship contained 'the probability of

11 future economic relationship.'" *Silicon Knights*, 983 F.Supp. at 1311. Hypothetical relationships

12 not developed at the time of the allegedly tortious acts do not support a claim for intentional or

13 negligent interference. *See id*. In this case, CBR's conclusory counterclaims have no facts to

14 support its contention that PharmaStem's conduct "had the effect of interfering" or interfered with

15 individuals "who desire, or who may desire, to purchase" CBR's services. In either case, such

16 hypothetical individuals are merely speculative expectancies as they have not entered into any

17 agreement with CBR or do not have some relationship with CBR. Since "[d]ismissal can be

18 based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged

19 under a cognizable legal theory," which PharmaStem has demonstrated herein, PharmaStem

20 requests the dismissal of CBR's first and second counterclaims. *Silicon Knights*, 983

21 F.Supp.1318.

22

### C.  CBR's Fifth Counterclaim For Violation Of The Lanham Act Fails As A Matter Of Law.

**1. The Allegedly Offending Language Was Not Made In Bad Faith And Is Not False.**

While CBR has entitled its fifth counterclaims as "unfair competition," this claim appears to be a false advertising claim under the Lanham Act.  To prove false advertising under the Lanham Act, CBR must establish:

> "(1) in advertisements, PharmaStem made false statements of fact about its own or another's product; (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; (3) such deception is material, in that it is likely to influence the purchasing decision; (4) PharmaStem caused its falsely advertised goods to enter interstate commerce; and (5) CBR has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to PharmaStem or by lessening of the goodwill which its products enjoy with the buying public."

*Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003)(citations omitted).  CBR alleges that purportedly false statements made in a June 1, 2004 Letter sent to obstetricians and hospitals is false and misleading because the Letter:

> "made no mention (1) of the sale or offer to sell requirement of 35 U.S.C. § 271(c), (2) of the 'acting in concert or working together' requirement of 35 U.S.C. § 271(c), or (3) that the sale of a service cannot satisfy 35 U.S.C. § 271(c)."

Counterclaims ¶¶ 15-16, 19.  CBR additionally claims that the statement regarding "the Court rul[ing] infringement occurs even if the cryopreservation and storage is performed by a third party" is misleading, since the Court never ruled on conduct by obstetricians and because the sentence left out several elements of contributory infringement.  *Id.* ¶ 19.

CBR also points to PharmaStem's August 2, 2004 Press Release, alleging that it purportedly contains similar statements as the letter.  *Id.* ¶ 21.  The Press Release, attached as Exhibit C to CBR's Answer and Counterclaims, is nothing more than an announcement that PharmaStem initiated new lawsuits against a number of unlicensed cord blood banks, including CBR, as well as obstetricians.  *Id.* ¶ 21 and Exh. C, thereto.

CBR's fifth counterclaim (as well as CBR's first through seventh counterclaims) turns on the allegation that PharmaStem is not entitled to make statements about patent infringement

1    liability that CBR and medical professionals who use unlicensed cord blood banks face.

2    PharmaStem, however, has the legal right and obligation to contact the obstetricians and others

3    regarding their potential infringement of PharmaStem's patents, and cannot be held liable for

4    doing so unless CBR can demonstrate that PharmaStem did so in bad faith.  *Golan v. Pingel*

5    *Enterprise, Inc.*, 310 F.3d 1360, 1370-71 (Fed. Cir. 2002)("federal patent law bars the imposition

6    of liability [under federal or state law] for publicizing a patent in the marketplace unless the

7    plaintiff can show that the patent holder acted in bad faith."), *quoting Zenith Elecs. Corp. v.*

8    *Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999); *see also Mikohn Gaming Corp. v. Acres*

9    *Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998); *Hunter Douglas, Inc. v. Mone Design, Inc.*,

10   153 F.3d 1318, 1336 (Fed. Cir. 1998); *Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d

11   1537, 1538 (Fed. Cir. 1985)("a patent owner has the right to enforce its patent, and that includes

12   threatening alleged infringers with suit.")

13        Moreover, the law recognizes a presumption that the assertion of a duly granted patent is

14   made in good faith, and that this presumption is overcome by affirmative evidence of bad faith.

15   *Golan*, 310 F.3d at 1371, *citing C.R. Bard, inc. v. M3 Sys., Inc.*, 157 F.3d 1340 (Fed. Cir. 1998).

16   Therefore, to the extent that the Letter or Press Release contained any inaccuracies or

17   misconceptions regarding PharmaStem's Patents, the outcome of the Delaware Action, or the

18   infringement of the patents, PharmaStem is not liable unless such inaccuracies were made in bad

19   faith.  CBR has not alleged, nor is there any factual basis for any such allegation, that

20   PharmaStem acted in bad faith in sending the letters to obstetricians and hospitals or issuing the

21   Press Release.

22        Furthermore, nothing in the Letter or Press Release is false.  The Letter simply sets forth

23   PharmaStem's position regarding obstetricians' potential liability to PharmaStem for patent

24   infringement should they deal with unlicensed cord blood banks.  *See* Counterclaims, Exh. A.

25   PharmaStem's general business understanding that, after a three week trial which culminated in a

26   finding of willful infringement against CBR and the subsequent entry of the Delaware Court's

27

28

1    judgment (which it issued immediately after the jury returned its verdict) was that there had been

2    a "ruling" in favor of PharmaStem and that infringement had occurred.  *See* Counterclaim ¶ 12;

3    July 28, 2004 Notice of Pendency, Docket No. 2.  The Letter does not go into detail, dissecting

4    all possible theories of patent infringement, because it is a letter, not a legal treatise.  Nowhere

5    does the Letter purport to offer any analysis or legal advice on the various species of dependent

6    infringement.  Moreover, while a method or process claim is directly infringed by practicing the

7    patented method, "a party cannot avoid liability for infringement by having someone else perform

8    one or more steps of a patented process for them." *E.I. DuPont De Nemours and Co. v.*

9    *Monsanto Co.*, 903 F.Supp. 680 (D.Del. 1995), *aff'd* 92 F.3d 1208 (Fed. Cir. 1996)(table); *Joy*

10    *Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993).  Thus, with respect to

11    PharmaStem's Patents – three of which were not the subject of the Delaware Action –

12    PharmaStem accurately stated that "[p]atent infringement occurs when a person or institution

13    practices all or part of a patented process."  Counterclaims, Exh. A.

14        Thus, PharmaStem's Letter does not contain any knowingly false or misleading statements

15    regarding the Delaware Action or PharmaStem's position, but a layperson's basic understanding of

16    the effect of the jury's verdict of willful patent infringement and patent infringement.  Moreover,

17    there can be no bad faith on the part of PharmaStem.  While CBR may disagree regarding

18    underlying liability, PharmaStem has filed a number of patent lawsuits against various defendants,

19    including obstetricians and medical groups, such as defendant Sutter Health , Inc., around the

20    United States.

21        The Press Release also does not contain any false or misleading statements.  It merely is

22    an announcement regarding the multiple lawsuits for patent infringement that PharmaStem filed to

23    protect its intellectual property rights.  As noted in the headline of the Press Release, PharmaStem

24    brought an action against a number of obstetricians who collect umbilical cord blood for

25    unlicensed cord blood banks.  PharmaStem's position all along has been that obstetricians and

26    other medical professionals face potential liability if they continue to work with the unlicensed

27

28

cord blood banks.  Like the Letter, the Press Release is not a treatise, expounding an exhaustive list of PharmaStem's legal theories of patent liability.  Thus, the Press Release is not false or misleading because it failed to present every theory of liability.

### 2. The Allegedly Offending Language Is Not Commercial Speech Or An Advertisement Which Is Required For A Violation Of The Lanham Act.

Noticeably absent from CBR's allegations is something regarding the relative competition between PharmaStem and CBR.  As a preliminary matter, PharmaStem's statements do not make a statement about the quality of CBR's services; they are directed at PharmaStem's position regarding patent infringement and liability.  Furthermore, since PharmaStem is a patent owner and not a competitor in the same business as CBR, CBR is hard pressed to explain how these statements constitute an advertisement, are competitive or would deceive CBR's potential and actual customers.  Counterclaims ¶¶ 9-10; *see Fuller Brothers, Inc. v. Int'l Marketing, Inc.*, 870 F.Supp. 299, 303 (D. Or. 1994)(the alleged conduct "must in some discernible way be competitive").  If there is no commercial speech, then there can be no injury compensable under the Lanham Act.  *Fuller Bros.*, 870 F.Supp. at 303 ("recovery under section 43(a) in a false advertising case is 'confined to injury to a competitor'").

For a representation to constitute commercial advertising or promotion, it must be:

> (1) commercial speech (2) by the accused who is in commercial competition with CBR (3) for the purpose of influencing consumers to buy the accused's goods or services.  *Rice*, 330 F.3d at 1181.  "While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."

*Rice*, 330 F.3d at 1181 (citations omitted)(representation was not commercial speech).  "The core notion of commercial speech is speech which does no more than propose a commercial transaction."  *Rice*, 330 at 1181.

1    Taking CBR's allegations as true for purposes of this motion, these alleged false

2    statements do not meet this test because they are not advertising, and therefore do not fall within

3    the purview of the Lanham Act.  These statements are not for promotional purposes about CBR's

4    products and services, and CBR does not allege that they are.  They express PharmaStem's

5    position regarding its patent rights and its belief regarding patent liability, which PharmaStem has

6    the right to make.

7    While the information contained in PharmaStem's Letter and Press Release may be

8    informative for CBR's actual and potential customers, who are expectant parents seeking to have

9    their newborn's umbilical cord blood collected and preserved, they were not directed toward

10   CBR's actual and potential customers in the form of promotional materials.  *See* Counterclaims ¶

11   9.  They are not statements in a commercial advertisement or promotion about CBR's product.

12   Consequently, PharmaStem's statements are not ones that have actually deceived or have the

13   tendency to deceive a substantial segment of CBR's potential and actual customers.  Indeed, CBR

14   does not plead as much, only alleging that the statements have "influenced, and will continue to

15   influence the purchasing decisions of CBR's potential and actual customers."  Counterclaims ¶ 54.

16   For these reasons, PharmaStem's Letter and Press Release do not constitute commercial speech

17   and fail to state a claim for false advertising under the Lanham Act.

18

19       **D.    *Res Judicata* Bars CBR's Counterclaims For Interference, Unfair**

20            **Competition, Trade Libel, and False Advertising.**

21    The doctrine of res judicata prohibits lawsuits on any claims that were raised or could

22   have been raised in a prior action.  *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir.

23   2002)(dismissal granted due to claim preclusion).[4]  In this case, CBR elected to raise in the

24

25       [4] "The term 'res judicata' can be used not only to refer to claim preclusion but also in a broader
26   sense to include both issue and claim preclusion."  *Shaw v. State of California Dept. of Alcoholic
     Beverage Control*, 788 F.2d 600, 606 n. 2(9th Cir. 1986).

27

28

1   Delaware Action the very conduct that is the subject of its first through seventh counterclaims for
2   intentional and negligent interference, unfair competition under state and federal law, trade libel
3   and false advertising.  In the Delaware Action, CBR brought a motion regarding the allegedly
4   false statements contained in PharmaStem's Letter to the attention of Judge Sleet.  Judge Sleet
5   issued an Order granting the relief CBR was seeking in connection with the Letter and the same
6   type of statements CBR complains of in its counterclaims.  Counterclaims ¶¶ 17-20, Exhibit B
7   thereto; Kobialka Decl., Exh. A.  Similarly, CBR brought anther motion regarding PharmaStem's
8   Press Release to the attention of the Delaware Court, which is still pending.  Kobialka Decl.,
9   Exhs. C, D.  Thus, CBR elected the Delaware Action as the appropriate forum to seek relief on
10  the same claims it is now trying to assert against PharmaStem in this case with its first through
11  seventh counterclaims.  CBR should not be permitted to take a second bite at the apple,
12  particularly since it already received the relief it sought with respect to its first motion in the
13  Delaware Action.
14          "Claim preclusion 'prevents litigation of all grounds for, or defenses to, recovery that were
15  previously available to the parties, regardless of whether they were asserted or determined in the
16  prior proceeding." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).  Issue
17  preclusion bars the relitigation of all issues that were litigated in a prior proceeding, even if the
18  second proceeding is an action on a claim different from the one asserted in the first action."
19  *Shaw*, 788 F.2d at 605.  These doctrines bar CBR from now attempting to seek the same or
20  additional relief from this Court based on the same claims it has already presented or could have
21  presented to the Delaware Court.  There is an identity of the issues presented in the Delaware
22  Action, an order issued granting CBR the relief it requested in the Delaware Action, and the
23  parties are identical in both cases. *See Stewart*, 297 F.3d at 956.  Apparent from CBR's
24  counterclaims themselves, which quote from the Court's order, whether PharmaStem's statements
25  were false and misleading were a critical and necessary part of the order in the Delaware Action.
26
27

1    *See generally, Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992).  For these

2    reasons, CBR's first through seventh counterclaims should be dismissed with prejudice.

3

4    **E.    Since PharmaStem's Conduct Has Not Been Unlawful, CBR Does Not**

5          **Have A Claim For Interference, Unfair Competition, Trade Libel, and**
          **False Advertising.**

6          As noted above in Section C1, PharmaStem's statements were not false or misleading.

7    Additionally, PharmaStem has the legal right and obligation to contact those parties regarding

8    their potential infringement of PharmaStem's Patents.  Therefore, CBR does not have any facts to

9    support a violation of any common, state or federal law because PharmaStem has not engaged in

10   any unlawful conduct.  Consequently, CBR's first through seventh counterclaims should be

11   dismissed with prejudice for failing to state a cause of action.

12

13

14                              **V.    CONCLUSION**

15         For the foregoing reasons, PharmaStem requests the Court to dismiss CBR's first, second,

16   third, fourth, fifth, sixth and seventh counterclaims with prejudice.

17

18   DATED: September 13, 2004                    **PERKINS COIE LLP**

19

20                                    By: _____/s/_____
                                          Paul J. Andre
21                                        Attorneys for Plaintiff PharmaStem
                                          Therapeutics, Inc

22

23

24

25

26

27

28