1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   Samuel B. Shepherd (Bar No. 163564)
2  Matthew W. Meskell (Bar No. 208263)
   555 Twin Dolphin Drive, Suite 560
3  Redwood Shores, CA  94065
   (650) 801-5000 (Telephone)
4  (650) 801-5100 (Facsimile)

5  Attorneys for Counterclaim Defendant,
   STEMBANC, INC.

6

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9                      SAN FRANCISCO DIVISION

10

11
   PHARMASTEM THERAPEUTICS, INC., a        )  Case No. C 04-3072 (JSW)
12 Delaware corporation,                   )
                                           )  **STEMBANC, INC.'S NOTICE OF**
13            Plaintiff,                    )  **MOTION AND MOTION TO DISMISS**
                                           )  **CBR SYSTEMS, INC.'S FIRST, SECOND,**
14       vs.                               )  **THIRD, FOURTH, FIFTH, AND SIXTH**
                                           )  **COUNTERCLAIMS PURSUANT TO FED.**
15 CORD BLOOD REGISTRY, INC., dba CBR,     )  **R. CIV. P. 12(b)(6)**
   a California corporation, and SUTTER    )
16 HEALTH, INC., a California corporation, )  **DATE:**      January 14, 2005
                                           )  **TIME:**      9:00 a.m.
17            Defendants.                   )  **ROOM:**      Courtroom 2
   _____)  **JUDGE:**     Hon. Jeffrey S. White
18 CBR SYSTEMS, INC., dba CBR, a California )
   corporation,                            )
19                                         )
              Counterclaimant,             )
20                                         )
         vs.                               )
21                                         )
   PHARMASTEM THERAPEUTICS, INC., a        )
22 Delaware corporation; STEMBANC, INC., a )
   Ohio corporation; NICHOLAS DIDIER; and  )
23 ARCHIBALD A. GRABINSKI,                 )
                                           )
24            Counterdefendants.           )
   _____)
25

26

27

28

50494/23726.6

1

## <u>TABLE OF CONTENTS</u>

2
                                                                                            <u>Page</u>

3    MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4        Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5        Statement of Issues to be Decided . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6        Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7        Standards for Granting Motions Under Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . 4

8        Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9    I.    CBR'S HAS NOT STATED ANY CLAIM UNDER CALIFORNIA LAW . . . . . . . . . . 4

10        A.    CBR's Claims Are Barred By Cal. Civ. Code §§ 47(c) & (d) . . . . . . . . . . . . . . 5

11        B.    Based on CBR's Own Allegations, Each of Its Claims Fails A Matter of
                 Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12
    II.    CBR HAS NOT STATED A VALID CLAIM UNDER THE LANHAM ACT . . . . . . . 13
13
          Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
14
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2
**Page**

3
**CASES**

4
Aulson v. Blanchard
     83 F.3d 1 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5
Bank of the West v. Superior Court
6
     2 Cal.4th 1254 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

7
Bernardo v. Planned Parenthood Federation of America
     9 Cal.Rptr.3d 197 (Cal. Ct. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
8
Coastal Abstract Service, Inc. v. First American Title Ins. Co.
9
     173 F.3d 725 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 11, 12, 14

10
Colt v. Freedom Communications, Inc.
     109 Cal.App.4th 1551 (Cal. Ct. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
11
Della Penna v. Toyota Motor Sales, U.S.A., Inc.
12
     11 Cal. 4th 376 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

13
Dial A Car, Inc. v. Transportation, Inc.
     82 F.3d 484 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
14
Dorsey v. National Enquirer, Inc.
15
     973 F.2d 1431 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9

16
Durning v. First Boston Corp.
     815 F.2d. 1265 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
17
Fecht v. The Price Co.
18
     70 F.3d 1078 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

19
Good Government Group of Seal Beach, Inc. v. Superior Court
     22 Cal.3d 672 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
20
Groden v. Random House, Inc.
21
     61 F.3d 1045 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

22
Guess, Inc. v. Superior Court
     176 Cal. App. 3d 473 (Cal. Ct. App. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
23
Haskell v. Time, Inc.
24
     857 F. Supp. 1392 (E.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25
In re Stac Electronics Securities Litigation
     89 F.3d 1399 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
26
Institute of Athletic Motivation v. University of Illinois
27
     114 Cal.App.3d 1 (Cal. Ct. App. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

28
J'Aire Corp. v. Gregory
     24 Cal.3d 799 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ii

# TABLE OF AUTHORITIES
## (Continued)

**Page**

Jennings v. Telegram-Tribune Co.
164 Cal.App.3d 119 (Cal. Ct. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Kasky v. Nike, Inc.
27 Cal.4th 939 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Korean Supply Co. v. Lockheed Martin Corp.
29 Cal.4th 1134 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

McGlinchy v. Shell Chemical Co.
845 F.2d 802 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Microsoft Corp. v. Yokohama Telecom Corp.
993 F.Supp. 782 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

National Medical Transportation Network v. Deloitte & Touche
62 Cal.App.4th 412 (Cal. Ct. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Optinrealbig.com, LLC v. Ironport Systems, Inc.
323 F.Supp.2d 1037 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Peper v. Gannett Co., Inc.
No. 2002061753, 2003 WL 22457121 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.
C.A. No. 02-148-GMS (D.Del. filed Feb. 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . 2

Protective Closures Co. v. Clover Industries, Inc.
394 F.2d 809 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ribas v. Clark
38 Cal.3d 355 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rodriguez v. Panayiotou
314 F.3d 979 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rothman v. Jackson
49 Cal.App.4th 1134 (Cal. Ct. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rubin v. Green
4 Cal.4th 1187 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Scheiber v. Dolby Laboratories, Inc.
293 F.3d 1014 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

Southland Sod Farms v. Stover Seed Co.
108 F.3d 1134 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Stolz v. Wong Communications Limited Partnership
25 Cal.App.4th 1811 (Cal. Ct. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(Continued)

**Page**

Transphase Systems, Inc. v. Southern Calif. Edison Co.
    839 F. Supp. 711 (C.D. Cal. 1993) ........................................... 4

Tuchscher Development Enterprises v. San Diego Unified Port District
    106 Cal. App. 4th 1219 (Cal. Ct. App. 2003) .................................. 12

Weisbuch v. County of Los Angeles
    119 F.3d 778 (9th Cir. 1997) ............................................... 4


**STATUTES**

15 U.S.C. § 1125(a) ............................................................ 2

California Business & Professions Code § 17200  ................................. 11

California Business & Professions Code § 17500 ............................. 1, 1, 2, 5

California Civil Code § 47 ................................................ 1, 4-7, 9, 10

Federal Rule of Civil Procedure 12(b)(6)  ................................. 1, 1, 4, 15

California Penal Code § 637.2 ................................................... 5


**OTHER AUTHORITIES**

Section 43(a) of the Lanham Act  ....................................... 1, 1, 2, 13, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

50494/23726.6

STEMBANC'S MOTION TO DISMISS
Case No. C 04-3072 JSW

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2              PLEASE TAKE NOTICE that at 9:00 a.m. on January 14, 2005, or as soon

3    thereafter as counsel may be heard, counterclaim defendant Stembanc, Inc. ("Stembanc") will,

4    and hereby does move, pursuant to <u>Federal Rule of Civil Procedure</u> 12(b)(6), for an order

5    dismissing with prejudice CBR Systems, Inc.'s ("CBR") First, Second, Third, Fourth, Fifth, and

6    Sixth Counterclaims against Stembanc.

7              Stembanc respectfully requests that the Court dismiss with prejudice CBR's First,

8    Second, Third, Fourth, Fifth, and Sixth Counterclaims pursuant to <u>Federal Rule of Civil</u>

9    <u>Procedure</u> 12(b)(6) for failure to state a claim against Stembanc upon which relief can be granted.

10             Stembanc's motion is based on this Notice of Motion and Motion; the

11   accompanying Memorandum of Points and Authorities; the Declaration of Archibald A.

12   Grabinski In Support of Motion To Dismiss; Stembanc, Inc.'s Request for Judicial Notice; all

13   papers and records on file in this action and in <u>PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et</u>

14   <u>al.</u>, C.A. No. 02-148-GMS (D.Del. filed Feb. 22, 2002) ("Delaware Action");[1] any other matters

15   of which this Court may take judicial notice; and such further evidence and argument as may be

16   presented at or before the hearing on this matter.  A proposed order is submitted herewith.

17

18

19

20

21

22

23

24

25

26

27              [1]  This Court may take judicial notice of filings and orders in the Delaware Action.  <u>See In</u>
     <u>re Stac Electronics Securities Litigation</u>, 89 F.3d 1399, 1405 (9th Cir. 1996) ("The district court

28   properly took judicial notice of [a previous patent infringement] judgment in determining that the
     proprietary and patent information provided in the Prospectus was not misleading").

STEMBANC'S MOTION TO DISMISS
Case No. C 04-3072 JSW

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### Summary of Argument

3       CBR Systems, Inc. ("CBR") has asserted six causes of action against Stembanc,

4  Inc. ("Stembanc") and Archibald A. Grabinski ("Grabinski") based on public statements they

5  allegedly made concerning an ongoing patent infringement suit between PharmaStem

6  Therapeutics, Inc. ("PharmaStem") and CBR.  According to CBR's own allegations, the

7  statements made were either non-actionable opinion, were demonstrably true, or they constituted

8  privileged statements under California law.  Because CBR has failed to state any claim upon

9  which relief may be granted, Stembanc respectfully requests that this Court dismiss CBR's First,

10  Second, Third, Fourth, Fifth, and Sixth Counterclaims pursuant to Rule 12(b)(6).

11       Five of CBR's counterclaims rest on California's common law or on California

12  Business & Professions Code § 17500.  These claims fail as a matter of law, however, because

13  they rely for their factual predicates on statements Stembanc or Grabinski made concerning the

14  ongoing patent litigation between PharmaStem and CBR.  Such statements are protected under

15  California Civil Code § 47 and therefore cannot provide the basis for any of CBR's state-law

16  claims.  Furthermore, even if the statements were not privileged, CBR's own allegations establish

17  that it cannot prove the elements of any of its state-law causes of action.

18       CBR's remaining claim is for false advertising under Section 43(a) of the Lanham

19  Act ("Section 43(a)").  Again, this claim rests on the statements Stembanc or Grabinski allegedly

20  made concerning the patent litigation between PharmaStem and CBR.  Some of the statements,

21  such as that a jury found CBR guilty of patent infringement, were demonstrably true, and

22  therefore cannot constitute false statements under Section 43(a).  The remaining statements

23  represent opinions that Stembanc or Grabinski allegedly offered concerning possible

24  consequences of the lawsuit.  Statements made concerning unsettled matters of law are, however,

25  opinions per se and are not actionable under Section 43(a).  Because CBR's claim under the

26  Lanham Act rests on either demonstrably true statements or non-actionable opinion, it too should

27  be dismissed for failure to state a claim on which relief can be granted.

28

**Statement of Issues to be Decided**

1.    Does California Civil Code § 47 bar CBR's counterclaims that are based on California common law or California Business & Professions Code § 17500?

2.    Has CBR failed to plead valid causes of action under California common law, California Business & Professions Code § 17500, or section 43(a) of the Lanham Act?

**Statement of Facts**

This motion arises from the First, Second, Third, Fourth, Fifth, and Sixth Counterclaims asserted by CBR against Stembanc in CBR's Answer and Counterclaims, filed with this Court on August 23, 2004. CBR filed the Answer and Counterclaims in response to a suit for patent infringement filed by PharmaStem against CBR and Sutter Health, Inc. on July 28, 2004 ("Underlying Suit"). CBR purportedly joined Stembanc and Grabinski as new counterclaim defendants in the Underlying Suit without obtaining an Order of this Court permitting joinder.

Stembanc is an Ohio corporation with its principal place of business in Chardon, Ohio. It provides collection, processing, and cryopreservation services for stem cells obtained from the umbilical cord and placental blood of a newborn child for the future potential benefit of the child (autologous banking) or for first-degree relatives, such as a sibling or parent. Archibald A. Grabinski ("Grabinski") is a resident of Ohio and has served as the Chief Operating Officer of Stembanc since the company's inception. See Declaration of Archibald A. Grabinski In Support of Motion to Dismiss ("Grabinski Decl.") ¶ 1. CBR is a California corporation with its principal place of business in San Bruno, California, and describes itself as "engaged in the business of storage or banking of umbilical cord blood, collected at the birth of an infant." Answer and Counterclaims ("Counterclaims") ¶ 9. PharmaStem is a Delaware corporation with its principal place of business in Larchmont, New York, and is the owner of U.S. Patents Nos. 6,461,645 (the "'645 Patent") and 6,569,427 (the "'427 Patent"), among others. The '645 Patent is "directed to cryopreserved compositions of fetal or neonatal hematopoietic stem and progenitor cells obtained from the umbilical cord or placental blood of a newborn human ("Cord Blood")," and the '427 is "directed to methods of using and storing Cord Blood for therapeutic use." Complaint for Patent Infringement ("Underlying Complaint") ¶ 8. In 2003, Stembanc obtained a license to practice the

STEMBANC'S MOTION TO DISMISS
Case No. C 04-3072 JSW

1  teachings contained in the patent portfolio of PharmaStem, including those in the '645 and '427

2  Patents.  PharmaStem's complaint in the Underlying Suit alleges that CBR infringed the '645 and

3  '427 Patents.

4          PharmaStem and CBR are also currently engaged in another patent infringement

5  suit in the United States District Court for the District of Delaware, <u>PharmaStem Therapeutics,</u>

6  <u>Inc. v. ViaCell, Inc. et al.</u>, C.A. No. 02-148-GMS (D.Del. filed Feb. 22, 2002) ("Delaware

7  Action"), in which PharmaStem alleged that CBR and the other defendants infringed U.S. Patents

8  Nos. B1 5,004,681 (the "'681 Patent") and 5,192,553 (the "'553 Patent").  On October 29, 2003,

9  the jury in the Delaware Action returned a unanimous verdict on all claims in favor of

10  PharmaStem.  <u>See</u> Stembanc Inc.'s Request For Judicial Notice ("Not. Req."), Ex. A (Jury

11  verdict).  The jury found that CBR had infringed the '681 and '553 Patents and that CBR's

12  infringement was willful.  <u>See id.</u>; Counterclaims ¶ 12.  Judgment was entered on October 30,

13  2003.  <u>See</u> Not. Req., Ex. B (Judgment).  Subsequently, CBR joined in a motion for judgment as

14  a matter of law and, in the alternative, a motion for a new trial or a remittitur.  <u>See</u> Counterclaims

15  ¶ 13.

16          CBR has asserted six causes of action against Stembanc and Grabinski.  Five of

17  the claims purportedly sound under California's statutory or common law:  (1) intentional

18  interference with contractual or other economic relationships; (2) negligent interference with

19  contractual or other economic relationships; (3) unfair competition; (4) trade libel; and (5) false

20  advertising under Cal. Bus. & Prof. Code § 17500.  <u>See</u> Counterclaims ¶¶ 36-61.  In addition,

21  CBR alleges that Stembanc and Grabinski have violated section 43(a) of the Lanham Act, 15

22  U.S.C. § 1125(a).  CBR relies on three factual predicates to support these causes of action.

23          First, CBR highlights a graphical chart and a press release that appeared on

24  Stembanc's website.  <u>See</u> Counterclaims ¶¶ 28-30, 33.  The graphical chart appeared as follows:

25

26  

27

28

1  Grabinski Decl., Ex. C (Graphical Chart).  If a user clicked on the word "licensed" or on footnote

2  one, he or she was directed to one or more press releases.  See Grabinski Decl. ¶ 9 & Ex. D

3  (Press release entitled "PharmaStem Therapeutics Announces Patent License Agreement with

4  Stembanc, Inc.").  CBR contends that the word "licensed" and the phrase "guilty of patent

5  infringement" that appeared on the graphical chart were misleading.  See Counterclaims ¶ 29.

6  CBR also alleges that on August 2, 2004, "Stembanc and Grabinski issued a press release, posted

7  on Stembanc's website, that contains materially false statements and creates a false implication

8  with the consuming public that CBR's customers are making demands for refunds and claiming

9  they were misled by CBR."  Id. at ¶ 33; Grabinski Decl. at ¶ 10 & Ex. E.

10        Second, CBR alleges that "Stembanc has placed advertisements in Pregnancy

11  magazine that contain similar false and misleading statements about CBR."  Counterclaims ¶ 31.

12  The relevant portion of the advertisements contained the following language:

13        You now know many of the reasons for preserving your newborn's
        unique birth stem cells for future use. We also know that you want
14        to preserve your child's precious stem cells with a company that
        has rights to operate in the future.
15
        Stembanc has these rights – the rights to the technologies needed
16        for both technically sound and legally legitimate cord blood stem
        cell processing and cryopreservation. Recently our competitors
17        (including Viacord, Cord Blood Registry (CBR), and Cryocell) were
        found guilty of willful patent infringement. Other companies lack the
18        needed technology rights as well.

19        We feel it is important for you to know that this court verdict not only
        jeopardizes the infringers' ability to continue operations, but also establishes
20        that physicians who knowingly work in concert with these companies may
        also be implicated in the process of patent infringement.
21
        Obviously, parents choose Stembanc once they understand other companies
22        face the prospect of business cessation.

23  Grabinski Decl., Ex. B (Pregnancy advertisement).  There were two versions of the

24  advertisement, but they differed only in the mention of a company other than CBR.  Compare

25  Grabinski Decl., Ex. A & B.

26        Finally, CBR contends that Stembanc or Grabinski "contacted obstetricians and

27  gynecologists directly and disseminated false and misleading statements that they would be liable

28  for patent infringement if they recommended banking with CBR to their patients."

1  Counterclaims ¶ 32.  In addition, CBR contends that the potential customers were told that "CBR

2  'is faced with the prospect of business cessation.'"  Id.

3                    **Standards for Granting Motions Under Fed. R. Civ. P. 12(b)(6)**

4            The court should dismiss a complaint when it fails to allege or state a viable claim

5  for relief.  See Fed. R. Civ. P. 12(b)(6); Weisbuch v. County of Los Angeles, 119 F.3d 778 (9th

6  Cir. 1997).  Although facts alleged in the Complaint must be accepted as true for purposes of the

7  motion to dismiss, the Court need not accept as true conclusory allegations or legal

8  characterizations, nor need it accept unreasonable inferences or unwarranted deductions of fact.

9  See Transphase Systems, Inc. v. Southern Calif. Edison Co., 839 F. Supp. 711, 718 (C.D. Cal.

10  1993); McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Aulson v.

11  Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (Courts need not "swallow the plaintiff's invective hook,

12  line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and

13  the like need not be credited").  On a motion to dismiss, the Court may also disregard allegations

14  in the Complaint if contradicted by facts established by reference to documents attached as

15  exhibits to the Complaint.  See Durning v. First Boston Corp., 815 F.2d. 1265, 1267 (9th Cir.

16  1987).  Furthermore, "documents whose contents are alleged in a complaint and whose

17  authenticity no party questions, but which are not physically attached to the pleading, may be

18  considered in ruling on a Rule 12(b)(6) motion to dismiss."  Fecht v. The Price Co., 70 F.3d

19  1078, 1080 n.1 (9th Cir. 1995) (citations omitted).  The court's consideration of such documents

20  "does 'not convert the motion to dismiss into a motion for summary judgment.'"  Id.

21                                        **Argument**

22  **I.    CBR'S HAS NOT STATED ANY CLAIM UNDER CALIFORNIA LAW**

23            CBR has alleged five causes of action against Stembanc based on California law.

24  All five claims rely for their factual predicates on Stembanc's commentary regarding the ongoing

25  patent disputes between PharmaStem and CBR.  Such statements are privileged under California

26  Civil Code § 47 ("Section 47"), however, and therefore cannot form the basis for any of CBR's

27  state-law claims against Stembanc or Grabinski.  Furthermore, even if the statements were not

28  privileged, CBR has failed to plead any valid cause of action under California law.

### A.     CBR's Claims Are Barred By Cal. Civ. Code §§ 47(c) & (d)

Section 47 provides that a "publication or broadcast" is "privileged" if it is made:

(c) In a communication, without malice, to a person interested therein, (1) by one who is also interested . . . . [or]

(d)(1) By a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding, or (D) of anything said in the course thereof, or (E) of a verified charge or complaint made by any person to a public official, upon which complaint a warrant has been issued.

Cal.Civ.Code § 47(c) & (d). A statement privileged under Section 47 cannot form the basis for a cause of action sounding in tort, except for a claim of malicious prosecution. See, e.g., Coastal Abstract Service, Inc. v. First American Title Ins. Co., 173 F.3d 725, 735 & n.8 (9th Cir. 1999) ("California's common interest privilege, Cal. Civ. Code § 47(c), immunizes a person's statement to others on matters of common interest from liability in tort, provided that the person did not act with malice"); Peper v. Gannett Co., Inc., No. 2002061753, 2003 WL 22457121 at *5 (Cal.Superior Apr. 4, 2003) (holding that under Cal.Civ.Code § 47(d) "[t]he privilege defeats not only defamation claims, but any claim arising from a privileged report").

Additionally, in so far as CBR alleges a claim under Cal. Bus. & Prof. Code § 17500 ("Section 17500"), the Supreme Court of California has held that Section 47(b) bars claims under the unfair competition laws. See Rubin v. Green, 4 Cal.4th 1187, 1204 (1993) (barring claim for injunctive relief under Cal. Bus. & Prof. Code § 17204); cf. Ribas v. Clark, 38 Cal.3d 355, 364-65 (1985) (baring a claim under Penal Code § 637.2). Accordingly, statements privileged under Section 47(c) or (d), which the courts have given the same scope as Section 47(b), cannot form the basis for a claim under Section 17500. See, e.g., Coastal, 175 F.3d at 735 (citing cases under Section 47(b) for scope of subsection (c)); Peper, No. 2002061753, 2003 WL 22457121 at *5 (citing Ribas v. Clark, decided under subsection (b), as support for scope of privilege under subsection (d)). Finally, whether a statement is privileged under Section 47 is a matter of law for the court to decide. See Coastal, 173 F.3d at 735; Dorsey v. National Enquirer, Inc., 973 F.2d 1431, 1434 (9th Cir. 1992). Indeed, the Ninth Circuit and the Supreme Court of California have held that cases involving free speech "should be disposed of at the earliest possible stage of the proceedings if the facts as alleged are insufficient as a matter of law to

50494/23726.6

STEMBANC'S MOTION TO DISMISS
Case No. C 04-3072 JSW

1   support a judgment for the plaintiff." Id. at 1435 (citing Good Government Group of Seal Beach,

2   Inc. v. Superior Court, 22 Cal.3d 672 (1978), cert. denied, 441 U.S. 961 (1979)).

3         CBR's Counterclaims against Stembanc are based on three categories of

4   statements: (1) two advertisements that appeared in Pregnancy magazine, see Counterclaims

5   ¶ 31; (2) a graphical chart and press release that appeared on Stembanc's website, see

6   Counterclaims ¶¶ 28-29, 33; and (3) alleged direct contacts with obstetricans, gynecologists, or

7   potential customers. See Counterclaims ¶ 32. All of these statements are privileged under

8   Section 47(c) or (d).

9         1.      The advertisements in Pregnancy are privileged under Section 47(d)

10        The advertisements that Stembanc placed in Pregnancy magazine are privileged

11  under Section 47(d) because they are fair and true reports in a public journal of a judicial

12  proceeding. A report is "fair and true" when it "captures the substance of the proceedings."

13  Dorsey, 973 F.2d at 1436 (citations omitted); see Microsoft Corp. v. Yokohama Telecom Corp.,

14  993 F.Supp. 782, 784-85 (C.D. Cal. 1998). The defendant is not required "to justify every word

15  of the alleged defamatory material that is published," but only to "ensur[e] that the 'gist or sting'

16  of the report--its very substance--is accurately conveyed." Dorsey, 973 F.2d at 1436 (citations

17  omitted). Statements in paid advertisements qualify for the privilege under Section 47(d). See

18  Microsoft Corp., 993 F.Supp. at 784 ("[U]nder the broad and generalized wording selected by the

19  California legislature, Microsoft's paid publication is privileged").

20        As described above, the advertisements that appeared in Pregnancy magazine

21  commented on the jury verdict and other events in the Delaware Action. See Grabinski Decl.,

22  Exs. A & B (Pregnancy magazine advertisements). Specifically, the advertisements stated that

23  "[r]ecently our competitors (including Viacord, Cord Blood Registry (CBR), and Cryocell) were

24  found guilty of willful patent infringement," and that the "verdict not only jeopardizes the

25  infringers' ability to continue operations, but also establishes that physicians who knowingly

26  work in concert with these companies may also be implicated in the process of patent

27  infringement." Id., Ex. B. CBR itself admits that the jury in the Delaware Action found that

28  CBR had wilfully infringed PharmaStem's patents. See Counterclaims ¶ 12. Furthermore, it is a

1   matter of public record that PharmaStem is seeking a permanent injunction against CBR that

2   would, if granted, prevent CBR from practicing the teachings of PharmaStem's patents.  See Not.

3   Req., Ex. C.  Accordingly, the statements in the advertisements regarding events in the Delaware

4   Action were fair and true when made and are consequently privileged under Section 47(d).

5              2.    The alleged direct contacts are privileged under Section 47(c)

6              The direct contacts that CBR alleges Stembanc had with obstetricians,

7   gynecologists, and prospective customers are privileged under Section 47(c) because they were

8   statements made without malice to interested persons.  The definition of "interested persons"

9   under Section 47(c) is broad and "is not capable of precise or categorical definition. . . ."

10  Institute of Athletic Motivation v. University of Illinois, 114 Cal.App.3d 1, 11 (Cal. Ct. App.

11  1981).  Indeed, "[t]he word 'interest' as used in the cases, is not used in any technical sense," but

12  "is used in the broadest popular sense, as when we say that a man is 'interested' in knowing a

13  fact-not interested in it as a matter of gossip or curiosity, but as a matter of substance apart from

14  its mere quality as news."  Id. (quoting and collecting commentators) (internal quotations and

15  citations omitted).  The California courts have, accordingly, applied the privilege under

16  Section 47(c) liberally to immunize, for example, letters disparaging products that were sent by a

17  physical education instructor to athletic institutions, coaches, and sports magazines:

18          [T]he communication was not directed toward the world at large, but mainly
            toward those involved as professionals in the field of athletics. And those to
19          whom it was directed had a potential interest in the subject matter which went
            well beyond general or idle curiosity. The coaches who comprised the various
20          organizational recipients of Martens' letter constituted a group with a special
            concern for the subject matter of the communication: depending upon how they
21          evaluated it, the communication could affect the manner in which they conducted
            their professional activities. If the contents of the communication were true, it was
22          of professional importance for them to know it.

23  Id. at 12.  The privilege under Section 47(c) does not apply to statements made with malice;

24  however, "malice" in the context of Section 47(c) requires that plaintiff prove "a state of mind

25  arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person,"

26  or that the defendant "lacked reasonable grounds to believe the statement true and therefore acted

27  with reckless disregard for plaintiff's rights."  Coastal, 173 F.3d at 736 (citations omitted).

28

1        CBR contends that Stembanc directly contacted gynecologists and obstetricians to

2    inform them that "they would be liable for patent infringement if they recommended banking

3    with CBR to their patients." Counterclaims ¶ 32. Assuming such statements were made, they

4    are privileged because they conveyed information of interest to the physicians, namely that the

5    physicians themselves could face legal liability for their activities. Such statements to physicians

6    involved with newborns could "affect the manner in which they conducted their professional

7    activities" and are therefore within the ambit of 47(c). See Inst. of Athletic Motivation, 114

8    Cal.App.3d at 12. Furthermore, Stembanc is interested in preventing unlawful practices

9    involving cord blood collection and storage because it provides services related to cord blood and

10   is a licensee of PharmaStem's patents. Finally, CBR has not alleged that Stembanc or Grabinski

11   made any statements to gynecologists or obstetricians with malice, and therefore there is no basis

12   for withdrawing the privilege under Section 47(c) with respect to such statements.

13       CBR also alleges that Stembanc contacted prospective customers and told them

14   "they should not bank with CBR because CBR is 'faced with the prospect of business cessation.'"

15   Counterclaims ¶ 32. Again, assuming such a statement was made, it was a matter of interest to

16   the prospective customers because it provided them information about their potential purchases.

17   Indeed, the Ninth Circuit has held that a statement made to a customer about whether a

18   competitive provider was "paying its bills" could qualify for protection under Section 47(c) if

19   made without malice. See Coastal, 173 F.3d at 735-36. CBR has not alleged that Stembanc

20   made any statements to customers with actual malice, and therefore these statements, if made,

21   would also qualify for the privilege under Section 47(c).

22       3.   Statements on Stembanc's website are privileged under Section 47(d)

23       Finally, the press release and graphical chart that CBR alleges appeared on

24   Stembanc's website are privileged communications under Section 47(d) because they are fair and

25   true communications to or reports in a public journal concerning ongoing judicial proceedings.

26   California courts apply the privilege under Section 47(d) to statements commenting on judicial

27   proceedings that appear on an internet site. See, e.g., Colt v. Freedom Communications, Inc.,

28   109 Cal.App.4th 1551, 1555-56, 1560 (Cal. Ct. App. 2003) (applying privilege to articles

50494/23726.6

STEMBANC'S MOTION TO DISMISS
Case No. C 04-3072 JSW

1   appearing on four web pages).  Moreover, Stembanc's press release was, as the words indicate, a

2   "communication to" the press and therefore within the ambit of Section 47(d) on that basis as

3   well.[2]  See Rothman v. Jackson, 49 Cal.App.4th 1134, 1144 n.3 (Cal. Ct. App. 1996) (noting that

4   Section 47(d) was amended specifically to extend the privilege to communications made to

5   public journals).

6          CBR alleges, nonetheless, that a chart on Stembanc's website identifying CBR as

7   "guilty"of patent infringement created "a false implication to the public that CBR has engaged in

8   criminal conduct and is unable to conduct business."  Counterclaims ¶ 29.  CBR's position in this

9   regard is foreclosed:  a statement qualifies for privilege under Section 47(d) so long as it

10  accurately conveys the "gist" of a judicial proceeding and a "report is not to be judged by the

11  standard of accuracy that would be adopted if it were the report of a professional law reporter or

12  a trained lawyer."  Jennings v. Telegram-Tribune Co., 164 Cal.App.3d 119, 127 (Cal. Ct. App.

13  1985) (collecting cases); see Dorsey, 973 F.2d at 1436.  When the statement appeared on

14  Stembanc's website, it was a fair and true description of the jury's finding in the Delaware Action

15  that CBR had willfully infringed two of PharmaStem's patents -- a fact CBR itself admits is true.

16  See Counterclaims ¶ 12.  Moreover, the phrase "guilty of patent infringement" is used even by

17  courts to describe civil liability for patent infringement and is demonstrably not misleading.  See,

18  e.g., Scheiber v. Dolby Laboratories, Inc., 293 F.3d 1014, 1017 (7th Cir. 2002) ("After the patent

19  expires, anyone can make the patented process or product without being guilty of patent

20  infringement"); Protective Closures Co. v. Clover Industries, Inc., 394 F.2d 809, 810 (2d Cir.

21  1968) ("[T]he late Chief Judge John Knight rendered a judgment finding Clover Industries guilty

22  of patent infringement and unfair competition").  Accordingly, the statement that CBR was

23  "guilty of patent infringement" does not withdraw it from privilege under Section 47(d).  See

24  Jennings, 164 Cal.App.3d at 127 (immunizing report describing misdemeanor failure to file tax

25  returns as "tax fraud" and "tax evasion").

26  ─────────────────────

27         [2]  At least one court has questioned whether a "communication to" a public journal must
    be fair and true to be privileged under Section 47(d).  See Microsoft Corp., 993 F.Supp. at 784

28  ("No case has yet held whether the "fair and true" requirement of § 47(d) applies to a
    communication to a public journal as well as a report in a public journal").

STEMBANC'S MOTION TO DISMISS
Case No. C 04-3072 JSW

1  CBR also complains that the graphical chart on Stemabanc's website contained a
2  statement that CBR was not "licensed." Counterclaims ¶ 29. According to CBR's allegations,
3  this statement was "designed to imply to the consuming public that CBR lacks the regulatory
4  authority to conduct the business which CBR lawfully performs." Counterclaims ¶ 29. Again,
5  CBR's position is foreclosed because the graphical chart accurately conveys that CBR did not
6  have a license from PharmaStem. In fact, the word "licensed" on the graphical chart provided a
7  link to a press release entitled "PharmaStem Therapeutics Announces Patent License Agreement
8  with Stembanc, Inc." <u>See</u> Grabinski Decl. Ex. D. This press release dispels any theoretical doubt
9  about what the word "licensed" meant and therefore the statements on the graphical chart qualify
10 as privileged under Section 47(d).

11 Finally, CBR alleges that Stembanc posted a press release on its website on
12 August 2, 2004 that "creates a false implication with the consuming public that CBR's customers
13 are making demands for refunds and claiming that they were misled by CBR." Counterclaims
14 ¶ 33. The press release that Stembanc issued concerning refunds discussed such requests in light
15 of the jury's verdict in the Delaware Action. <u>See</u> Grabinski Decl., Ex. E. Accordingly, the press
16 release constituted privileged commentary on an ongoing judicial proceeding under Section
17 47(d). Moreover, the release does not even identify CBR specifically as being the subject of
18 refund demands. <u>See id</u>. Finally, aside from conclusory allegations that Stembanc's press
19 releases are false, CBR has not denied that customers have demanded refunds in light of the
20 jury's verdict in the Delaware Action. Therefore, even if the press release were not privileged
21 under Section 47(d), it could not serve as the basis for CBR's counterclaims.

22 Because the statements CBR alleges Stembanc and Grabinski made are privileged
23 under Section 47(c) & (d), Stembanc respectfully requests that this Court dismiss CBR's First,
24 Second, Third, Fourth, and Sixth Counterclaims.

25 **B.  <u>Based on CBR's Own Allegations, Each of Its Claims Fails A Matter of Law</u>**
26 Even if the statements alleged made by Stembanc and Grabinski were not
27 privileged, CBR has failed to allege any valid cause of action under California law.
28

1      1.    Common law unfair competition claims lie only for "passing off"

2          A cause of action for unfair competition under the common law of California is

3  "generally thought to be synonymous with the act of 'passing off' one's goods as those of another

4  ... [, or] acts analogous to 'passing off' such as sale of confusingly similar products, by which a

5  person exploits a competitor's reputation in the market." Southland Sod Farms v. Stover Seed

6  Co., 108 F.3d 1134, 1147 (9th Cir. 1997) (quoting Bank of the West v. Superior Court, 2 Cal.4th

7  1254, 1263 (1992)) (alterations in original).  CBR has not alleged that Stembanc or Grabinski

8  "passed off" any goods or services as those of CBR.  Accordingly, CBR has failed to state a

9  claim for common law unfair competition and its Third Counterclaim should be dismissed.

10      2.    Section 17500 requires that CBR prove false and misleading facts

11          A claim under Section 17500 may be dismissed on the pleadings "if the alleged

12  misrepresentation, in context, is such that no reasonable consumer could be misled. . . ." Haskell

13  v. Time, Inc., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).  Furthermore, statements of opinion are

14  not actionable under Section 17500.  See Bernardo v. Planned Parenthood Federation of

15  America, 9 Cal.Rptr.3d 197, 220 (Cal. Ct. App. 2004) ("Because Planned Parenthood's

16  challenged statements about the claimed ABC link were statements of opinion to the general

17  public about matters not within its own personal knowledge, they were not actionable under

18  Business and Professions Code sections 17200 and 17500") (citing Kasky v. Nike, Inc., 27

19  Cal.4th 939 (2002)).  Accordingly, a statement concerning an unsettled legal question is not

20  actionable under Section 17500 because such a statement is per se opinion. See Coastal, 173

21  F.3d at 731 ("Absent a clear and unambiguous ruling from a court or agency of competent

22  jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or

23  regulation are opinion statements, and not statements of fact").

24          CBR's claim under Section 17500 fails as a matter of law because the statements

25  CBR bases the claim on are either demonstrably true and non-misleading or they are non-

26  actionable statements of opinion.  As discussed in Part I.A. above, Stembanc's representations

27  that CBR was not licensed and that it was found guilty of patent infringement were true and not

28  misleading when made.  Moreover, insofar as CBR bases its Section 17500 claim on Stembanc's

50494/23726.6                              11
STEMBANC'S MOTION TO DISMISS
Case No. C 04-3072 JSW

1 opinions regarding whether physicians who collect cord blood for CBR may be liable for

2 contributory patent infringement or whether CBR may be subject to a permanent injunction, its

3 claim fails because these statements concern unsettled matters of law and are, consequently, non-

4 actionable opinions. See Coastal, 173 F.3d at 731; Part II infra. Therefore, because CBR has not

5 alleged that Stembanc or Grabinski made a misleading or false statement of fact, CBR's Sixth

6 Counterclaim fails.

7         3.     Trade libel requires malice and a false or misleading statement of fact

8         To state a cause of action for trade libel, a plaintiff must demonstrate that the

9 defendant "(1) made a statement that disparages the quality of plaintiff's product; (2) that the

10 offending statement was couched as fact, not opinion; (3) that the statement was false; (4) that

11 the statement was made with malice; and (5) that the statement resulted in monetary loss."

12 Optinrealbig.com, LLC v. Ironport Systems, Inc., 323 F.Supp.2d 1037, 1048 (N.D. Cal. 2004)

13 (quoting Guess, Inc. v. Superior Court, 176 Cal. App. 3d 473, 479 (Cal. Ct. App. 1986)). As

14 discussed in Part I.A. above, CBR has not alleged that Stembanc or Grabinski made any

15 statement with malice. Furthermore, as just discussed above, the statements on which CBR's

16 counterclaims rest are all either demonstrably true or are non-actionable opinion. Consequently,

17 CBR's Fourth Counterclaim should be dismissed.

18         4.     CBR's contractual interference claims fail to allege any contract

19         The existence of a valid and binding contract is a necessary element for the tort of

20 interference with contractual relations. See Tuchscher Development Enterprises v. San Diego

21 Unified Port District, 106 Cal. App. 4th 1219, 1242 (Cal. Ct. App. 2003). CBR has not alleged

22 that Stembanc or Grabinski interfered with a valid contract between CBR and any third party.

23 Instead, CBR alleges only that Stembanc or Grabinski interfered "with persons who desire, or

24 who may desire, to purchase [CBR's] services." Counterclaims ¶¶ 37, 42. Accordingly, insofar

25 as CBR's First and Second Counterclaims allege intentional and negligent interference with

26 contractual relations, they fail to state a claim and should be dismissed.

27

28

5.     <u>Interference with economic relations claims require an independent wrong</u>

To state a claim for interference with prospective economic advantage, the plaintiff must show that the defendant "engaged in conduct that was wrongful by some legal measure other than the fact of the interference itself." <u>Della Penna v. Toyota Motor Sales, U.S.A., Inc.</u>, 11 Cal. 4th 376, 392 (1995); <u>National Medical Transportation Network v. Deloitte & Touche</u>, 62 Cal.App.4th 412, 439-440 (Cal. Ct. App. 1998) ("[E]ven before *Della Penna*, appellate courts included the element of independent wrongfulness in analyzing claims for negligent as well as intentional interference with prospective economic advantage"). An act is "independently wrongful" if it is "unlawful, that is, proscribed by some constitutional, statutory, regulatory, common law or other determinable legal standard." <u>Korean Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal.4th 1134 at 1159 (2003). Again, CBR cannot show that Stembanc's or Grabinski's alleged statements were "independently wrongful" and therefore its First and Second Counterclaims should be dismissed.

6.     <u>CBR's negligent interference claim fails against competitors</u>

The tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care, and it is black-letter law that competitors do not owe such a duty to each other. <u>See</u> <u>Stolz v. Wong Communications Limited Partnership</u>, 25 Cal.App.4th 1811, 1824 (Cal. Ct. App. 1994) (citing <u>J'Aire Corp. v. Gregory</u> 24 Cal.3d 799, 803 (1979)). It is undisputed that CBR and Stembanc are competitors, and accordingly, no duty of care exists. Therefore, for this reason as well, CBR's Second Counterclaim should be dismissed.

## II.    <u>CBR HAS NOT STATED A VALID CLAIM UNDER THE LANHAM ACT</u>

To state a claim for false advertising under section 43(a) of the Lanham Act ("Section 43(a)") the plaintiff must allege, among other things, "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision . . . ." <u>Southland Sod Farms</u>, 108 F.3d at 1139 (footnote omitted). Consequently, a claim under Section 43(a) requires a false statement of fact; "[s]tatements of opinion are not generally actionable under the

1    Lanham Act." Coastal, 173 F.3d at 731 (citing Groden v. Random House, Inc., 61 F.3d 1045,

2    1051 (2d Cir. 1995)).  Furthermore, statements concerning unsettled legal questions are not

3    actionable under Section 43(a) because such statements are per se opinions.  See Coastal, 173

4    F.3d at 731 ("Absent a clear and unambiguous ruling from a court or agency of competent

5    jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or

6    regulation are opinion statements, and not statements of fact"); Rodriguez v. Panayiotou, 314

7    F.3d 979, 986 (9th Cir. 2002) (same); Dial A Car, Inc. v. Transportation, Inc., 82 F.3d 484, 489

8    (D.C. Cir. 1996) ("In short, it would be unthinkable for a federal court to suggest that a regulated

9    taxicab company can be held liable under the Lanham Act for failing to anticipate the *court's*

10   subsequent interpretation of a municipal regulation") (emphasis in original).

11              CBR has not alleged a valid cause of action under Section 43(a) because the

12   statements on which CBR bases its claim are either demonstrably true or non-actionable

13   opinions.  Statements that CBR had been found liable for wilful patent infringement and that

14   CBR is not licensed by PharmaStem were true when made, as CBR itself admits in its

15   Counterclaims.  See Counterclaims ¶¶ 11-12; see also Not. Req., Exs. A & B (Jury verdict and

16   Judgment).  Furthermore, as discussed in Part I.A above, these statements Stembanc and

17   Grabinski allegedly made were not deceptive.  Even courts commonly use the phrase "guilty of

18   patent infringement" to describe civil liability.  See Scheiber, 293 F.3d at 1017 ("After the patent

19   expires, anyone can make the patented process or product without being guilty of patent

20   infringement").  Additionally, Stembanc fully explained what the word "licensed" meant as

21   applied to CBR.  See Grabinski Decl. ¶ 9 & Ex. D (Press release explaining licensed meant

22   licensed to use PharmaStem's patents).  Statements that obstetricians or gynecologists who

23   collect cord blood for CBR may be held liable for contributory patent infringement are

24   statements of opinion concerning an unsettled legal question.  While CBR may disagree with that

25   conclusion, CBR is absolutely not permitted to sue Stembanc under Section 43(a) for taking the

26   opposite position.  See Dial A Car, Inc., 82 F.3d at 488 ("Thus, it appears that appellant is simply

27   using the Lanham Act to try to enforce its preferred interpretation of Order No. 4 instead of

28   adjudicating the issue before the Commission").  Finally, statements that CBR was "faced with

1  the prospect of business cessation" are, again, statements of opinion about an unsettled legal

2  question; as CBR is aware, PharmaStem's request for a permanent injunction in the Delaware

3  Action has not yet been finally adjudicated.

4      Because CBR's claim under Section 43(a) is founded on demonstrably true

5  statements or non-actionable opinion, Stembanc respectfully requests that this Court dismiss

6  CBR's Fifth Counterclaim.[3]

7  **Conclusion**

8      For all of the foregoing reasons, Stembanc respectfully requests that the Court

9  dismiss with prejudice CBR's First, Second, Third, Fourth, Fifth, and Sixth Counterclaims with

10  prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

11  which relief can be granted.

12

13  Dated:  September 27, 2004        QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
14

15                                    By_____/s/_____
                                        Samuel B. Shepherd (Bar No. 163564)
16                                      Matthew W. Meskell (Bar No. 208263)
                                        555 Twin Dolphin Drive, Suite 560
17                                      Redwood Shores, California 94065
                                        Attorneys for Stembanc, Inc.
18

19

20

21

22

23

24  [3]  The Federal Circuit has also held that a patentee's threats to potential infringers of its
patents are not actionable under Section 43(a) unless made with malice.  See Golan v. Pingel
25  Enterprise, Inc., 310 F.3d 1360, 1371 (Fed. Cir. 2002) ("Consequently, patentees do not violate
the rules of fair competition by making accurate representations, and are allowed to make
26  representations that turn out to be inaccurate provided they make them in good faith").  CBR has
not asserted that any of the statements allegedly made by Stembanc and Grabinski were made
27  with malice.  Accordingly, as a licensee of PharmaStem's, Stembanc and Grabinski should be
entitled to notify the public about potential infringement of the licensed patents without
28  subjecting themselves to a suit under Section 43(a).

50494/23726.6
STEMBANC'S MOTION TO DISMISS
Case No. C 04-3072 JSW                            15

1

## <u>Certification of Interested Entities or Persons</u>

2           Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other

3    than the named parties, there is no such interest to report.

4

Dated:  September 27, 2004          QUINN EMANUEL URQUHART OLIVER &

5                                                          HEDGES, LLP

6

7          By_____/s/_____

           Samuel B. Shepherd (Bar No. 163564)

8          Matthew W. Meskell (Bar No. 208263)
           555 Twin Dolphin Drive, Suite 560

9          Redwood Shores, California 94065
           Attorneys of Record for

10         Stembanc, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

50494/23726.6

STEMBANC'S MOTION TO DISMISS
Case No. C 04-3072 JSW