1  PILLSBURY WINTHROP LLP
   William F. Abrams (State Bar No. 88805)
2  Thomas F. Chaffin (State Bar No. 112368)
   Chang H. Kim (State Bar No. 195554)
3  Peter H. Nohle (State Bar No. 209446)
   2475 Hanover Street
4  Palo Alto, CA 94304-1115
   Telephone: (650) 233-4561
5  Facsimile:  (650) 233-4545

6  Attorneys for Defendants and Counterclaimants
   CBR SYSTEMS, INC. and SUTTER HEALTH, INC.
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11  _____
                                        )
12  PHARMASTEM THERAPEUTICS, INC., a )  No. C 04 3072 JSW
    Delaware corporation,               )
13                                       )  **CBR SYSTEMS, INC.'S OPPOSITION TO**
                      Plaintiff,         )  **PHARMASTEM THERAPEUTICS, INC.'S**
14                                       )  **MOTION TO DISMISS CBR SYSTEMS,**
          vs.                            )  **INC.'S FIRST, SECOND, THIRD,**
15                                       )  **FOURTH, FIFTH, SIXTH AND SEVENTH**
    CORD BLOOD REGISTRY, INC., dba       )  **COUNTERCLAIMS PURSUANT TO FED.**
16  CBR, a California corporation; and SUTTER )  **R. CIV. P. 12(b)(6)**
    HEALTH, INC., a California corporation, )
17                                       )  **Date:        January 7, 2005**
                      Defendants.        )  **Time:        9:00 a.m.**
18                                       )  **Room:        Courtroom 2**
                                         )  **Judge:       Hon. Jeffrey S. White**
19                                       )
                                         )
20  _____ )
                                         )
21  CBR SYSTEMS, INC., dba CBR, a        )
    California corporation; and SUTTER   )
22  HEALTH, INC., a California corporation, )
                                         )
23                    Counterclaimants,  )
                                         )
24        vs.                            )
                                         )
25  PHARMASTEM THERAPEUTICS, INC.,       )
    a Delaware corporation; STEMBANC, INC., )
26  a Ohio corporation; NICHOLAS DIDIER; )
    and ARCHIBALD A. GRABINSKI,          )
27                                       )
                      Counterdefendants. )
28  _____ )

1

Table of Contents

2

Page

3   I.        STATEMENT OF FACTS...................................................................................... 1

4   II.       ARGUMENT. .................................................................................................... 5̶5̶5

5       A.    Standard For A Rule 12(b)(6) Motion............................................................ 5̶5̶5

6       B.    CBR Has Sufficiently Pleaded Its Claims Under California Law. ................. 6̶6̶6

7            1.    CBR has adequately pleaded a claim for intentional interference with
                  contractual or other economic relationships............................................... 6̶6̶6
8
9            2.    CBR has adequately pleaded a claim for negligent interference with
                  contractual or other economic relationships............................................... 8̶8̶8

10           3.    CBR has sufficiently pleaded that PharmaStem interfered with its
                  prospective economic relationships. .......................................................... 9̶9̶9
11
12      C.    CBR Has Sufficiently Pleaded Its Federal Unfair Competition Claim...... 1̶0̶1̶0̶10

13           1.    CBR has properly pleaded that PharmaStem acted in bad faith and that the
                  contested statements were false and misleading. .................................. 1̶0̶1̶0̶10
14           2.    CBR has properly alleged that PharmaStem's statements constitute
                  commercial speech within the meaning of Section 43(a). .................. 1̶2̶1̶2̶12
15
16      D.    CBR's Claims Are Not Barred By The Doctrine of *Res Judicata*............. 1̶3̶1̶3̶13

    III.      CONCLUSION. .......................................................................................... 1̶5̶1̶5̶15
17

18

19

20

21

22

23

24

25

26

27

28

1

Table of Authorities

2

Page

3

Cases

4

American Family Ass'n., Inc. v. City and County of San Francisco,
    277 F. 3d 1114 (9th Cir. 2002)..................................................5, 8, 10

5

Blonder-Tongue Laboratories v. University of Ill. Foundation,
    402 U.S. 313, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971) ..........................13

6

7

Burgert v. Lokelani Bernice Pauahi Bishop Trust,
    200 F. 3d 661 (9th Cir. 2000)........................................................5

8

Central Delta Water v. U.S.,
    306 F. 3d 938 (9th Cir. 2002)........................................................13

9

10

Coastal Abstract Service, Inc. v. First American Title Ins. Co.,
    173 F. 3d 725 (9th Cir. 1999).........................................................13

11

Conley v. Gibson,
    355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ....................5, 8, 10, 11

12

13

Della Penna v. Toyota Motor Sales, U.S.A., Inc.,
    11 Cal. 4th 376 (1995)................................................................6

14

Halicki v. United Artists Communications, Inc.,
    812 F. 2d 1213 (9th Cir. 1987).......................................................13

15

16

In re Quality Laser Works,
    211 B.R. 936 (9th Cir. 1997).........................................................14

17

J'Aire Corp. v. Gregory,
    24 Cal. 3d 799 (1979)..................................................................8

18

19

Janda v. Madera Community Hosp.,
    16 F. Supp. 2d 1181 (E.D. Cal. 1998)..............................................5, 7

20

Kournikova v. General Media Communications Inc.,
    278 F. Supp. 2d 1111 (C.D. Cal. 2003).............................................13

21

22

PPX Enters., Inc. v. Audiofidelity, Inc.,
    746 F. 2d 120 (2nd Cir. 1984)........................................................13

23

Quality Foods v. Latin American Agribusiness Development,
    711 F. 2d 989 (11th Cir. 1983).......................................................5

24

25

Robi v. Five Platters, Inc.,
    838 F. 2d 318 (9th Cir. 1988)........................................................14

26

Silicon Knights, Inc. v. Crystal Dynamics, Inc.,
    983 F. Supp. 1303 (N.D. Cal. 1997) ................................................9

27

28

*Speegle v. Board of Fire Underwriters of the Pacific,*
    29 Cal. 2d 34 (1946)..................................................................................................................5

*William H. Morris Co. v. Group W, Inc.,*
    66 F. 3d 255 (9th Cir. 1995)...................................................................................................11

*Williamson v. General Dynamics Corp.,*
    208 F. 3d 1144 (9th Cir. 2000), *cert. denied*, 531 U.S. 929, 121 S. Ct. 309,
    148 L. Ed. 2d 247 (2000) .........................................................................................................5

### Statutes and Codes

Business & Professions Code
    Section 17500...........................................................................................................................8

United States Code
    Title 28, section 1651 ............................................................................................................14

### Rules and Regulations

Federal Rules of Civil Procedure
    Rule 12(b)(6) ..........................................................................................................................12

### Other Authorities

Lanham Act
    Section 43(a) ..........................................................................................10, 11, 12, 13

CBR SYSTEMS, INC.'S OPPOSITION TO
PHARMASTEM'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

1    Defendant and Counterclaimant CBR Systems, Inc. ("CBR") respectfully requests that this

2    Court deny Plaintiff and Counterdefendant PharmaStem Therapeutics, Inc.'s ("PharmaStem")

3    Motion to Dismiss CBR's First, Second, Third, Fourth, Fifth, Sixth and Seventh Counterclaims

4    Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion to Dismiss").

5    **I.    STATEMENT OF FACTS.**

6        CBR preserves and stores umbilical cord blood that is collected at the birth of an infant.

7    *See* CBR's Answer and Counterclaims, p. 13 at ¶ 9 (the "Counterclaims"). Umbilical cord blood

8    provides a rich source of stem cells, a potentially life-saving asset that may have future therapeutic

9    value. *Id.*   An obstetrician or other health care provider collects the umbilical cord blood at the

10   patient's request in a kit that the patient has obtained from CBR. The umbilical cord blood is then

11   sent to CBR for preservation and storage. CBR markets its services to expectant parents who wish

12   to "bank" the umbilical cord blood for future use. *Id.* Doctors and hospitals collect the umbilical

13   cord blood only at their patient's request.

14        PharmaStem is the assignee/owner of U.S. Patent Nos. 5,004,681 ("the '681 Patent"),

15   5,192,553 ("the '553 Patent"), 6,461,645 ("the '645 Patent"), 6,569,427 ("the '427 Patent") and

16   6,605,275 ("the '275 Patent"). *Id.* at ¶ 10. On February 2002, PharmaStem filed suit in the United

17   States District Court for the District of Delaware against CBR and several other companies,

18   alleging infringement of the '681 and '553 patents. ("the Delaware Action"). *Id.* at ¶ 11.

19        After a jury trial in the Delaware Action in October 2003, a verdict was entered in favor of

20   PharmaStem and against CBR and the other companies, finding the patents valid and infringed, and

21   awarding damages to PharmaStem. *Id.* at ¶ 12. Post-trial motions were timely filed, including a

22   motion by CBR and the other defendants for judgment as a matter of law or for a new trial. *Id.* at ¶

23   13.    On September 15, 2004, a Memorandum Opinion and related Order were issued in the

24   Delaware Action overturning the verdict by finding as a matter of law that CBR and the other

25   defendants did not infringe the '553 Patent, and granting a new trial on the issue of infringement

26   and damages on the '681 Patent (the "September 15 Order"). *See* CBR System's, Inc.'s Request

27   for Judicial Notice in Support of Opposition to Motion to Dismiss ("Request for Judicial Notice"),

28   Ex. 1 and 2.

CBR SYSTEMS, INC.'S OPPOSITION TO
PHARMASTEM'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

On or about June 1, 2004, Counterdefendant Nicholas Didier ("Didier"), CEO and President of PharmaStem, sent letters to approximately 25,000 obstetricians and hospitals that contained false and misleading statements including, but not limited to, the following:

> Patent infringement occurs when a person or institution practices all or part of a patented process. In the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party.

Counterclaims at ¶¶ 14-15; see also, Declaration of Peter H. Nohle in Support of CBR Systems, Inc.'s Opposition to Motion to Dismiss ("Nohle Decl."), Ex. 1 at 21:7-22:2. The June 1, 2004 letter was sent to many individuals and entities residing in California and, more particularly, within this judicial district. See Nohle Decl., Ex. 2. The Honorable Gregory M. Sleet of the District of Delaware, the Judge in the Delaware Action, in response to a motion filed by CBR and the other defendants, issued an Order for Injunctive Relief on July 2, 2004 (the "July 2 Order") finding that "PharmaStem's June 1, 2004 letter to Obstetricians ("the PharmaStem Letter") contains false and misleading statements concerning the Court's rulings to date." Counterclaims at ¶¶ 17-20. Judge Sleet, in particular, found that:

> 1. PharmaStem's June 1, 2004 letter to Obstetricians (the "PharmaStem Letter") contains false and misleading statements concerning this Court's rulings to date. In particular, the Court finds the following statements in this PharmaStem Letter false and misleading:
>
>> A. "Patent infringement occurs when a person or institute practices all or part of a patented process." The Court finds this statement is misleading because it is black letter law that in order to prove contributory infringement of a method patent, the _entire_ patented process must be performed. By suggesting that infringement would occur when only part of a process in performed, the letter is misleading.
>>
>> B. "In the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party." The Court finds this statement misleading for at least the following reasons. _First_, the sentence states that "the Court ruled" with respect to the "case" of "umbilical cord blood collection by an Obstetrician." This Court never made any rulings regarding conduct by obstetricians. There were no such allegations advanced in the trial of this matter. _Second_, the sentence leaves out several important elements that must be proved to show contributory infringement. The missing elements include:

(1) that there must be a <u>sale</u> or <u>offer to sell</u> by the party that is accused of contributory infringement,

(2) that the party accused of contributory infringement must be "acting in concert or working together" with the other parties whose combined conduct performed each and every element of the patented process, and

(3) that, under §271(c), a sale of a service, as opposed to a sale of a tangible physical object, is not sufficient to satisfy the requirements of the contributory infringement statute.

The Court finds that without these elements, the statement is misleading. *Id.* at ¶ 19.

Judge Sleet granted an injunction against PharmaStem issuing further false or misleading communications directed to obstetricians. *Id.* at ¶ 20. The injunction was granted, in part, because the PharmaStem Letter did not mention: (i) the sale or offer to sell requirement of 35 U.S.C. Section 271(c) ("Section 271(c)"); (ii) the "acting in concert or working together" requirement; or (iii) that the sale of a service cannot satisfy Section 271(c). Counterclaims, Ex. B.

Despite Judge Sleet's July 2 Order, PharmaStem and Didier published a press release (the "Press Release") on August 2, 2004, that contained similar false and misleading statements to those found to be false and misleading by Judge Sleet. *Id.* at ¶ 21. Again, PharmaStem and Didier caused copies of the press release to be mailed to thousands of obstetricians, many of whom reside in California. *Id.*; *see also*, Nohle Decl., Ex. 1 at 22:9-14 and Ex. 2.

PharmaStem then filed a second wave of five separate suits, including this action. In each case, PharmaStem sued a private cord blood bank and one or more health care providers, *i.e.*, either individual physicians, group medical practices, or a hospital. *See* CBR's L.R. 3-13 Notice of Related Cases. In each of these cases, PharmaStem made a boilerplate allegation of infringement of the '427 patent against both a cord blood bank and at least one health care provider. *Id.* Shortly after filing suit in the Central District of California against CureSource, Inc. and twelve physicians, Didier sent a letter to the defendant physicians (who were represented by counsel), offering to "settle" with them by agreeing not to enforce PharmaStem's patents against them if the doctors agreed not to collect cord blood or provide any service for or "in connection with" CBR or other

1  private cord blood banks not licensed by PharmaStem, and not to market or offer any service of

2  CBR and the other cord blood banking companies. *See* Nohle Decl., Ex. 1 at 39:16-40:1; 41:8-12.

3  On August 20, 2004, PharmaStem and Didier sent another letter and a self-styled "amnesty

4  agreement" to thousands of obstetricians (the "Amnesty Agreement") that contained similar false

5  and misleading statements. *See* Nohle Decl., Ex. 1 at 22:3-8. As with the prior communications,

6  the recipients of the Amnesty Agreement included numerous individuals and entities in California,

7  some of whom reside within this judicial district. *Id.; see also,* Nohle Decl., Ex. 2. PharmaStem

8  and Didier demanded that the obstetricians sign the Amnesty Agreement to avoid legal action by

9  PharmaStem, and that the obstetricians only work with PharmaStem's licensees. In disregard of

10 the findings and orders of the Delaware District Court, the letter of August 20, 2004, states the

11 following: "It is PharmaStem's position, as asserted in the recent lawsuits, that obstetricians are

12 liable for patent infringement if they collect cord blood or market services for unlicensed cord

13 blood banks." Nohle Decl., Ex. 1 at 42:10-20. The Press Release and the letters of August 2004

14 failed to correct the earlier misrepresentations, failed to disclose the inaccuracy of the earlier

15 misrepresentations, and failed to disclose the rulings of the Delaware District Court.

16 PharmaStem and Didier issued these statements in bad faith for the clear purpose of

17 damaging CBR's business and creating false impressions with the consuming public and

18 obstetricians. Counterclaims at ¶ 23.

19 Even after Judge Sleet's September 15 Order, PharmaStem and Didier continued to make

20 false and misleading statements. In particular, on September 20, 2004, PharmaStem and Didier

21 issued a press release that mischaracterizes both the Delaware Court's ruling and the positions of

22 the defendants in that case. PharmaStem and Didier stated that the Court "agreed with the

23 defendants" based upon an argument that families who bank with the defendants could be liable for

24 infringement; in fact, the basis for the Court's decision was that the defendants did not sell or offer

25 to sell cord blood. Request for Judicial Notice, Ex. 1 and 2; Nohle Decl., Ex. 3. Defendants did

26 not argue that families are liable for infringing PharmaStem's patents; parents do not sell or offer to

27 sell cord blood, and therefore cannot be liable. Similarly, on the "licensing" page of its website,

28 PharmaStem and Didier continued to represent the validity of the defunct verdict in the Delaware

1  Action without any reference to the September 15 Order. Nohle Decl., Ex. 4. These are but the

2  latest false implications designed to deter patients from seeking medical services without regard to

3  the narrow limitations of PharmaStem's patents.

4      As a result of the actions of PharmaStem, Didier and the other counterdefendants, some

5  physicians have declined to collect cord blood for customers of CBR and have ceased to

6  recommend CBR's services.  Counterclaims at ¶¶ 24, 37 and 38.  Customers of CBR were

7  prevented from fulfilling their contracts with CBR, and others were dissuaded from contracting

8  with CBR at all, because of the actions of PharmaStem, Didier and the other counterdefendants.

9  *Id.*  Of course, such a response was exactly what  PharmaStem, Didier and the other

10  counterdefendants wanted to achieve. *Id.*

11  **II.    ARGUMENT.**

12      **A.    Standard For A Rule 12(b)(6) Motion.**

13      In considering a motion to dismiss, "[a]ll allegations of material fact are taken as true and

14  construed in the light most favorable to the nonmoving party." *American Family Ass'n., Inc. v.*

15  *City and County of San Francisco*, 277 F. 3d 1114 (9th Cir. 2002), *citing Burgert v. Lokelani*

16  *Bernice Pauahi Bishop Trust*, 200 F. 3d 661, 663 (9th Cir. 2000).  "A complaint should not be

17  dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

18  the claim that would entitle the plaintiff to relief." *Id., citing Williamson v. General Dynamics*

19  *Corp.*, 208 F. 3d 1144, 1149 (9th Cir. 2000), *cert. denied*, 531 U.S. 929, 121 S. Ct. 309, 148 L. Ed.

20  2d 247 (2000). The showing required of a party seeking to avoid dismissal is "exceedingly low."

21  *Quality Foods v. Latin American Agribusiness Development*, 711 F. 2d 989, 995 (11th Cir. 1983);

22  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  Furthermore,

23  "[p]leadings must be reasonably interpreted; they must be read as a whole and each part must be

24  given the meaning that it derives from the context wherein it appears." *Janda v. Madera*

25  *Community Hosp.*, 16 F. Supp. 2d 1181, 1189 (E.D. Cal. 1998) (citing *Speegle v. Board of Fire*

26  *Underwriters of the Pacific*, 29 Cal. 2d 34, 42 (1946)).  Each of CBR's Counterclaims clearly

27  meets and surpasses this "exceedingly low" threshold.

28

- 5 -

**B.    CBR Has Sufficiently Pleaded Its Claims Under California Law.**

PharmaStem asserts a variety of theories why CBR has failed to properly plead its claims under California law.  As demonstrated below, such assertions are without merit.

1.    CBR has adequately pleaded a claim for intentional interference with contractual or other economic relationships.

PharmaStem argues that CBR's first counterclaim, for intentional interference with contractual or other economic relationships, fails because CBR has not pleaded that: (a) there was an actual breach or disruption of a valid contract between it and a third party; (b) PharmaStem's actions cause such actual breach or disruption of such contract; (c) PharmaStem knew of such contract; (d) PharmaStem intentionally attempted to induce a breach or disruption of such contract; and (e) CBR was injured as a result of PharmaStem's behavior.  PharmaStem erroneously focuses on existing contracts; CBR properly claims interference with prospective economic relationships.

PharmaStem states the essential elements of a claim for intentional interference with an existing contract, but fails to state the elements of a claim for intentional interference with prospective economic advantage: (a) an economic relationship between the claimant and a third party, containing a probable future economic benefit or advantage to the claimant; (b) the offending party's knowledge of the existence of the relationship; (c) the offending party's intentionally wrongful conduct designed to interfere with that relationship; (d) actual disruption; and (e) damages to the claimant.  *See, e.g., Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1995).  CBR alleges each of these required elements.

CBR alleges that PharmaStem's conduct interfered with "CBR's *contractual or other economic relationships with persons who desire, or who may desire, to purchase their services* for cryopreservation and storage of umbilical cord blood," thereby satisfying the first element of its claim.[1]  Counterclaims at ¶ 37 [emphasis supplied]; *see also, id.* at ¶ 38  [emphasis supplied] (CBR

---

[1] The conduct alleged in the Counterclaims was, *inter alia,* as follows: (i) PharmaStem sent a letter to approximately 25,000 obstetricians and hospitals containing false and misleading statements regarding the findings of the court and verdict in the Delaware Action and the purported patent infringement liability faced by obstetricians and hospitals for collecting cord blood on behalf of CBR's clients; (ii) PharmaStem disseminated false and misleading press releases containing
(continued...)

PHARMASTEM'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

1   alleged that "but for" PharmaStem's actions, *it would have performed additional services for its*
2   *actual or potential clients).*  As to the second of the above elements, CBR alleged that PharmaStem
3   undertook its action with the "specific intent" of disrupting CBR's economic relationships with
4   such third parties.  *Id.* at ¶ 37.  Because PharmaStem could not possibly have specifically intended
5   to disrupt such economic relationships without knowledge thereof, CBR has sufficiently pleaded
6   the second element of its claim.  As to the third element, CBR has sufficiently pleaded that
7   PharmaStem's conduct was both wrongful and intentional, by alleging that PharmaStem used
8   "wrongful means"[2] to interfere with CBR's economic relationships with third parties, and that
9   PharmaStem "acted with the purpose of injuring CBR," was acting with "specific intent," and acted
10  in a "willful, wanton, unprivileged, and unjustified" manner.  Counterclaims at ¶¶ 25, 37 and 38.
11  CBR has likewise alleged that PharmaStem's actions actually disrupted its prospective economic
12  relationships and caused it damages.  *Id.* at ¶¶ 37 and 38 [emphasis supplied] (PharmaStem's
13  actions had their "intended damaging effect on CBR" and "*[a]s a result . . .* CBR has suffered
14  damages . . . in the form of lost profits on services they would have performed *but for*
15  [PharmaStem's] interference.")

16      In light of the above, PharmaStem's argument that CBR's pleading is insufficient is
17  unavailing.  Additionally, PharmaStem's method of analyzing CBR's allegations one-at-a-time, in
18  isolation and out of context is improper.  *See, e.g., Janda, supra,* 16 F. Supp. at 1189 ("[p]leadings
19  must be reasonably interpreted; they must be read as a whole and each part must be given the
20  meaning that it derives from the context wherein it appears.")  CBR's claim should not be
21  dismissed for failure to state a claim unless it appears beyond doubt that it can prove no set of facts

22

23  (...continued)
    misleading statements similar to those found in the letter; (iii) PharmaStem issued further false
24  and misleading statements directed at the consuming public regarding the nature of its services,
    the findings and verdict in the Delaware Action and the purported patent infringement liability
25  faced by obstetricians and hospitals for collecting cord blood on behalf of CBR's clients; and (iv)
    the specific conduct alleged in the Counterclaims were merely representative of PharmaStem's
26  conduct and not exclusive.  Counterclaims at ¶¶ 14-23

27  [2] In addition to the allegation that PharmaStem used "wrongful means," CBR has also specifically
    pleaded, *inter alia,* that PharmaStem's conduct violated both the common law of State of
28  California and California Business and Professions Code Section 17500.

CBR SYSTEMS, INC.'S OPPOSITION TO
PHARMASTEM'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

1   in support of its claim. *Conley v. Gibson*, 355 U.S. at 45-46; *American Family Association*, 277 F.

2   3d at 1120. Clearly, CBR has met this standard and sufficiently alleged a claim for intentional

3   interference with contractual or other economic relationships. Accordingly, PharmaStem's Motion

4   to Dismiss should be denied. Alternatively, if the Court should view CBR's pleading as deficient,

5   CBR should be granted leave to amend.

6           2.      CBR has adequately pleaded a claim for negligent interference with

7                   contractual or other economic relationships.

8           PharmaStem argues that CBR failed to adequately plead a claim for negligent interference

9   with contractual or other economic relationships because such claim requires that the offending

10  party owe the claimant a "duty of care." PharmaStem's conclusion that no duty of care between

11  the parties is pleaded is incorrect.

12          As held by the California Supreme Court in *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803

13  (1979) [emphasis supplied, citations omitted]:

> A duty of care may arise through statute or by contract. Alternatively, a duty may be
> premised upon the general character of the activity in which the defendant engaged,
> the relationship between the parties or even the interdependent nature of human
> society. *Whether a duty is owed is simply a shorthand way of phrasing what is
> "'the essential question - whether the plaintiff's interests are entitled to legal
> protection against the defendant's conduct.'"*

18          The *J'Aire* court also asserted that "[r]ather than traditional notions of duty, this court has

19  focused on foreseeability as the key component necessary to establish liability." *Id.* at 806. *J'Aire*

20  provided a six-factor test for determining duty: (1) the extent to which defendant's conduct was

21  intended to harm plaintiff; (2) the foreseeability of the harm; (3) the certainty that plaintiff actually

22  suffered harm; (4) the closeness of the connection between the conduct and the harm; (5) the moral

23  blame attached to defendant's conduct; and (6) the policy of preventing future harm. *Id.* at 804.

24          CBR has clearly pleaded facts that, read as a whole and viewed in a light most favorable to

25  CBR, warrant a finding of duty under the *J'Aire* factors. CBR pleaded that PharmaStem's conduct

26  violated both the common law of California and Section 17500, allegations that undeniably

27  demonstrate that CBR's interests are "entitled to legal protection against the defendant's conduct."

28  *Id.* at 804. In addition, Section 17500 specifically imposes a duty upon entities engaged in

                                    - 8 -

1  commercial speech to exercise "reasonable care" in making statements in furtherance of their
2  interests.

3      The remainder of PharmaStem's argument regarding CBR's claim for negligent
4  interference with contractual or other economic relationships restates its prior argument regarding
5  CBR's claim for intentional interference with contractual or other economic relationships. As
6  demonstrated in Section II.B.2., *supra*, CBR adequately pleaded all of the required elements for a
7  negligent interference claim.

8      Accordingly, PharmaStem's Motion to Dismiss should be denied. Alternatively, if the
9  Court should view CBR's pleading as deficient, CBR should be granted leave to amend.

10          3.    CBR has sufficiently pleaded that PharmaStem interfered with its
11                prospective economic relationships.

12      The sole case cited by PharmaStem in support of its argument that CBR has failed to
13  properly plead a claim of negligent or intentional interference with economic advantage based on
14  the "speculative nature" of the economic relationships and injuries it alleged is *Silicon Knights, Inc.*
15  *v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303 (N.D. Cal. 1997). The court in *Silicon Knights*,
16  however, held that a claim of tortious interference with economic relations can be properly pleaded
17  where a party has alleged acts of interference with potential customers that have resulted in
18  decreased sales of a specifically identified product. *Id.* at 1312 [emphasis supplied] ("[e]ven if
19  interference with potential customers is a legitimate basis for tortious interference with economic
20  relations, the complaint alleges only conclusory statements and no facts in support of its contention
21  that it lost potential customers . . . *[f]or example, there is no allegation that sales of a particular*
22  *software product identified with [plaintiff] decreased after these alleged statements were made by*
23  *[defendant]*.")

24      Here, CBR alleged, *inter alia*, that: (i) PharmaStem sent a letter to approximately 25,000
25  obstetricians and hospitals that contains false and misleading statements regarding the findings and
26  verdict in the Delaware Action and the purported patent infringement liability faced by
27  obstetricians and hospitals for collecting cord blood on behalf of CBR's actual or potential clients;
28  (ii) such conduct interfered with CBR's contractual or other economic relationships with persons

- 9 -

1  who desired to purchase their services for cryopreservation and storage of umbilical cord blood;

2  and (iii) CBR suffered damages in the form of lost profits on services they would have performed

3  but for PharmaStem's interference. Such allegations are sufficient. They identify a group of actual

4  or potential customers (*i.e.*, customers who employ the services of the obstetricians and hospitals

5  who received such correspondence) from whom CBR's sales of a specific service

6  (cryopreservation and storage of umbilical cord blood) have decreased as a result of PharmaStem's

7  statements.  Any doubt as to CBR's ability to proceed with its claim is eliminated by the

8  declaration of Terra Zarm that was submitted in the Delaware Action. *See* Nohle Decl., Ex. 5 at ¶¶

9  2-3 ("During my recent pregnancy, I enrolled with CBR for collection and storage of cord blood . .

10  . [o]n August 23, 2004, when I was eight months pregnant and in labor, I was apprised by my

11  obstetrician . . . that she would not collect cord blood from my baby due to concerns she had over

12  liability for patent infringement as represented in a letter from Nicholas Didier   . . . and

13  PharmaStem Therapeutics, Inc. . . .")

14      CBR, having properly pleaded its claim, has a right to pursue its claims and obtain

15  discovery regarding the economic relationships that were subject to PharmaStem's interference.

16  Accordingly, PharmaStem's Motion to Dismiss should be denied.  Alternatively, if the Court

17  should view CBR's pleading as deficient, CBR should be granted leave to amend.

18      **C.    CBR Has Sufficiently Pleaded Its Federal Unfair Competition Claim.**

19          1.    CBR has properly pleaded that PharmaStem acted in bad faith and that the

20              contested statements were false and misleading.

21      PharmaStem argues that CBR's claim under Section 43(a) of the Lanham Act ("Section

22  43(a)") fails because CBR failed to allege that PharmaStem acted in bad faith, and the statements at

23  issue are true. PharmaStem's argument, however, is misplaced. The issue for this Court to decide

24  is whether it appears beyond doubt that the CBR can prove no set of facts in support of its claim

25  that would entitle it to relief, not whether CBR will ultimately prevail on its claim that

26  PharmaStem's statements are false and misleading and were made in bad faith. *Conley*, 355 U.S.

27  at 45-46, *American Family Association*, 277 F. 3d at 1120. That ultimate determination is an issue

28  to be decided after the parties have had the opportunity to engage in discovery. *Conley*, 355 U.S. at

- 10 -

1  47-48. As detailed below, CBR has demonstrated that its counterclaim meets the standard of

2  sufficient pleading.

3  PharmaStem's argument that CBR failed to allege that PharmaStem acted in bad faith is

4  meritless. CBR alleged that PharmaStem's actions were designed to have a "damaging effect" on

5  CBR, and that PharmaStem acted "with the purpose of injuring CBR and its business and

6  property." Counterclaims at ¶¶ 24 and 25. More specifically, CBR alleged that PharmaStem acted

7  "with specific intent to harm CBR," and that its conduct was "willful," "wanton," and

8  "unprivileged." *Id.* at ¶¶ 37 and 38. Furthermore, CBR alleged that PharmaStem's conduct was

9  "extreme and outrageous," and that its statements were unsupportable by an proper interpretation

10  of the PharmaStem patents. *Id.* at ¶¶ 22 and 58. Such pleading clearly constitutes an allegation

11  that PharmaStem acted in bad faith. Thus, CBR has properly pleaded that PharmaStem's actions

12  were undertaken in bad faith.

13  CBR also alleged that PharmaStem made false or misleading statements regarding the

14  findings made by the court in the Delaware Action concerning the patent infringement liability of

15  physicians who work with CBR's actual or potential customers. Counterclaims at ¶¶ 14-15. Thus,

16  CBR pleaded that PharmaStem made false and misleading statements that, at the very least, tend to

17  deceive a substantial portion of the intended audience, *i.e.*, obstetricians and consumers.

18  PharmaStem, knowing the Delaware Court's findings and rulings, did not merely state an opinion

19  concerning an unsettled legal question, but rather made false statements regarding the decisions of

20  the Delaware Court. CBR also pleaded that the deception is material, in that it is likely to, and has,

21  influenced purchasing decisions. *Id.* at ¶¶ 37-38. Such allegations are all that is required of CBR

22  to avoid dismissal, as the facts as pleaded demonstrate that PharmaStem's false statements of fact

23  were meant to dissuade third parties from using the services of CBR in violation of Section 43(a).

24  *William H. Morris Co. v. Group W, Inc.*, 66 F. 3d 255, 257 (9th Cir. 1995) (to prevail on a claim

25  under Section 43(a), a plaintiff must show that: (1) the defendant made false or deceptive

26  advertisements and representations; (2) those advertisements and representations actually deceived

27  a significant portion of the consuming public; and (3) the plaintiff was injured by the defendant's

28  conduct).

- 11 -

1    In addition, to the extent CBR's claims are premised on PharmaStem's publications

2  regarding the purported patent infringement liability faced by obstetricians and other health care

3  workers who collect cord blood on behalf of CBR's customers, the Delaware Court issued a clear

4  and unambiguous ruling that obstetricians could not be liable for contributory infringement of all or

5  part of certain PharmaStem patents based on their collecting cord blood for their patients because,

6  *inter alia*, contributory infringement requires that there be a sale or offer to sell by the party that is

7  accused of contributory infringement. Counterclaims at ¶ 19. That same principle applies without

8  any need for interpretation of the potential liability of an obstetricians for contributory

9  infringement under all of PharmaStem's patents. *Id.* at ¶ 22. PharmaStem's material omission of

10  the outright lack of patent infringement liability faced by obstetricians and other health care

11  workers or, at the very least, the significant limitations on such liability, can constitute material

12  misrepresentations in violation of Section 43(a).

13    PharmaStem erroneously attempts to isolate each of its statements, and then argue that the

14  isolated statements, reviewed alone, are not actionable. This, of course, is not the way in which

15  this Court is to evaluate CBR's Counterclaims. The Court must evaluate the statements made by

16  PharmaStem and the allegations made by CBR regarding those statements as a whole, and

17  determine whether CBR sufficiently pleaded its claim. The allegations made by CBR, taken as a

18  whole, and evaluated in accordance with the standard required by a Rule 12(b)(6) motion,

19  demonstrate that CBR has sufficiently pleaded a claim under Section 43(a).

20    Accordingly, PharmaStem's Motion to Dismiss should be denied. Alternatively, if the

21  Court should view CBR's allegations as deficient, leave to amend should be granted.

22    2.    CBR has properly alleged that PharmaStem's statements constitute

23    commercial speech within the meaning of Section 43(a).

24    Equally unmeritorious is PharmaStem's argument that the contested language is not

25  "commercial speech" because PharmaStem and CBR are not direct competitors, and therefore

26  relief under Section 43(a) is unavailable. "Rather than engaging in simplistic labeling, the Court

27  must determine whether or not the two parties vie for the same dollars from the same consumer

28  group, and whether the conduct of the defendant, if true, could be said to create 'competitive

- 12 -

1    injury.'"  *Kournikova v. General Media Communications Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D.
2    Cal. 2003). Here, there no question that CBR and PharmaStem compete for the same dollars from
3    the same consumer group, and that PharmaStem's actions cause CBR competitive injury.
4    PharmaStem obtains a royalty from its licensees for the sale of cord blood-related services nearly
5    identical in nature to the services provided by CBR. Nohle Decl., Ex. 1 at 17:22-18:12. Some
6    portion of every dollar that is taken away from CBR by its direct competitors, PharmaStem's
7    licensees, goes on to benefit PharmaStem. *Id.* Thus, CBR has standing to maintain its action under
8    Section 43(a). *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F. 2d 120, 124-25 (2nd Cir. 1984)
9    (royalty interest in product competing with defendant's product creates standing for false
10   advertising claim). All that is required is that the conduct alleged be competitive in "some
11   discernable way." *Halicki v. United Artists Communications, Inc.*, 812 F. 2d 1213, 1214 (9th Cir.
12   1987); *See also, Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F. 3d 725 (9th
13   Cir. 1999) (plaintiff need not be a competitor of defendant in order to have standing under Section
14   43(a); the plaintiff need only have suffered a competitive injury). CBR has alleged that
15   PharmaStem engaged in conduct that is competitive in "some discernable way," and, accordingly,
16   this Court should not dismiss CBR's Counterclaims. Alternatively, if the Court should view
17   CBR's pleading as deficient, CBR should be granted leave to amend.

18           **D.    CBR's Claims Are Not Barred By The Doctrine of *Res Judicata*.**

19           PharmaStem's argument that CBR's claims are barred by the doctrine of *res judicata* is
20   without merit because: (i) there has been no "final judgment" and (ii) CBR could not have sought
21   the relief sought herein in the Delaware Action. *Res judicata* applies where the prior litigation: (i)
22   involved the same parties, or their privies, (ii) involved the same claim or cause of action as the
23   later suit, and (iii) was terminated by a final judgment on the merits. *Central Delta Water v. U.S.*,
24   306 F. 3d 938, 952 (9th Cir. 2002) (*citing Blonder-Tongue Laboratories v. University of Ill.*
25   *Foundation*, 402 U.S. 313, 323-24, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971)).

26           Here, there is no "final judgment on the merits" as required to invoke the doctrine of *res*
27   *judicata*. Indeed, there can be no such final judgment based on the nature of the contested actions
28   identified by PharmaStem. CBR's activities in the Delaware Action were unrelated to an

                                          - 13 -                CBR SYSTEMS, INC.'S OPPOSITION TO
                                                               PHARMASTEM'S MOTION TO DISMISS
                                                               CASE NO. C 04 3072 JSW

1 | independent claim against PharmaStem. Rather, CBR filed a motion for preliminary injunctive

2 | relief to prevent PharmaStem from usurping the power of the court in the Delaware Action while

3 | post-trial motions were pending. "The granting (or denial) of a preliminary injunction does not

4 | constitute a final adjudication of the ultimate rights in a controversy." *In re Quality Laser Works*,

5 | 211 B.R. 936 (9th Cir. 1997) (holding that the "Rooker-Feldman" doctrine, which "has the same

6 | effect as the preclusion doctrines of res judicata and collateral estoppel, and is concerned with the

7 | finality of state court judgments," could not be invoked based upon a prior suit in which a

8 | preliminary injunction was obtained). The subsequent motion complained of by PharmaStem, in

9 | which CBR brought the press release to the attention of the court, was merely a motion for

10 | contempt based on PharmaStem's violation of the court's prior restraining order. Such motion,

11 | which PharmaStem admits is "still pending," likewise does not bar CBR's current claims.

12 | Furthermore, as recognized by PharmaStem, "[c]laim preclusion 'prevents litigation of all

13 | grounds for . . . recovery that were previously available to the parties . . . .'" *Robi v. Five Platters,*

14 | *Inc.*, 838 F. 2d 318, 322 (9th Cir. 1988). CBR's motion for preliminary injunctive relief in the

15 | Delaware Action did not seek "recovery that [was] previously available to the parties." CBR's

16 | motion for preliminary injunctive relief was brought pursuant to the All Writs Act, 28 U.S.C. §

17 | 1651, and was expressly directed at preventing PharmaStem from undermining or mooting the

18 | court's post-trial process by misrepresenting the outcome of the court's proceedings. The

19 | procedural context and timing of CBR's motion were <u>not</u> such that CBR could have asserted

20 | counterclaims against PharmaStem based on its post-trial conduct. Accordingly, the claims at

21 | issue herein are not precluded by CBR's activity in the Delaware Action.

22 | / / /

23 | / / /

24 | / / /

25 | / / /

26 | / / /

27 | / / /

28 | / / /

CBR SYSTEMS, INC.'S OPPOSITION TO
PHARMASTEM'S MOTION TO DISMISS
CASE NO. C 04 3072 JSW

**III.    CONCLUSION.**

For all the foregoing reasons, Defendant and Counterclaimant CBR respectfully requests that the Court deny PharmaStem's Motion to Dismiss.

Dated: November 19, 2004.

PILLSBURY WINTHROP LLP

By _____ /s/ _____

Attorneys for Defendants and Counterclaimants
CBR SYSTEMS, INC. and SUTTER HEALTH, INC.